STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE
7TH JUDICIAL CIRCUIT

17154

PEOPLE OF THE STATE OF MICHIGAN
      Plaintiff,

CASE NO.: 05-14154-FC

v

**FILED**

NOV 04 2010

GENESEE COUNTY CLERK

BY _____ DEPUTY CLERK

OMAR RASHAD POUNCY,
      Defendant.

JUDGE: ARCHIE L. HAYMAN

**ORDER DENYING DEFENDANT'S
MOTION FOR RELIEF FROM
JUDGMENT**

---

DAVID S. LEYTON (P-35086)
Prosecuting Attorney
DALE A. DEGARMO (P-36501)
Assistant Prosecuting Attorney
100 Courthouse
Genesee County
Flint, Michigan 48502
(810) 257-3248

DANIEL D BREMER (P23554)
Attorney for Defendant
1133 East Bristol Rd.
Burton, MI 48529
(810) 232-6231


OMAR POUNCY
Inmate No: 571990
St. Louis Correctional Facility
8585 N. Croswell Rd.
St. Louis, MI 48880

---

**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT**

At a session of said Court
on this ___ day of November, 2010.

PRESENT: The Honorable Archie L. Hayman

     This case is before the Court on Defendant's Motion for Relief from Judgment.  It should be noted that in addition to the current Motion for Relief from Judgment and its supplements, Defendant has filed several in pro per motions[1] with this Court; however, due to the disposition of Defendant's Motion for Relief from Judgment, each of Defendant's pro per motions are moot and are THEREFORE **DENIED**.

---

[1] Filed July 22, 2009:  Motion for Expansion of the Record; Motion for a *Ginther* Hearing; Motion for Discovery; Motion for Appointment of Forensic Shoeprint Impression Expert Witness; and Motion for *Remmer* Hearing.

The factual background of this case was proficiently spelled out by the Court of Appeals[2] and is as follows:

**FACTS**

The Haynes Carjacking

In September 2005, Ralph Haynes had a Monte Carlo on display for sale in the front yard of Samuel Anderson's home. Ralph was selling the car to pay for anticipated funeral expenses associated with his impending death from cancer. Anderson explained that on Saturday, September 24, 2005, a person came to look at Ralph's car. At trial, Anderson identified defendant as the prospective buyer. Anderson testified that defendant had looked at the car on three or four previous occasions. Anderson explained that during defendant's first visit, which was probably on the Sunday or Monday before the 24th, defendant inquired about the price, stated that "[m]oney is no object," and then left. On defendant's second visit, probably on Tuesday, he asked to drive the car, but Anderson refused. Sometime during his Tuesday visit, defendant mentioned to Anderson his desire to take the vehicle to his mechanic. Defendant arranged to come over again on Wednesday, but Anderson did not meet with him. Instead, Ralph and his brother Dan Haynes remained at Anderson's house in order to meet with defendant and defendant's mechanic.

Dan testified that he went to Anderson's house with Ralph on Wednesday, September 21, 2005, in order to meet some people who were interested in purchasing the Monte Carlo. At trial, Dan identified defendant as the prospective buyer. After briefly discussing the car, defendant asked to take it for a test drive, but, because the car did not have a license plate, Dan offered to take defendant for a ride instead. Defendant agreed, but during the ride he told Dan that he really wanted to take the car to his mechanic. Dan refused, but told defendant that he would ask Ralph about it, and then took defendant back to Anderson's house. Ralph refused to let defendant take the car to his mechanic, so Dan offered to let defendant go get his mechanic and bring him back to Anderson's house. Dan stated that defendant then left and came back shortly thereafter with his mechanic. After defendant and his mechanic looked at the car, defendant asked whether he needed to leave a deposit, but Dan declined, promising that the car would still be there the next day. Defendant agreed to come back the next day at 12:30 p.m., but he never showed up. According to Dan, defendant called Ralph on Friday, apologized for not showing up, and asked to see the car again.

On September 24th, defendant arrived at Anderson's house and asked to take the car for a test drive. Anderson agreed to accompany defendant on the test. Anderson informed defendant that the car was not insured and instructed defendant on a specific route for the test drive. Anderson testified that part of the instructed route included getting on the expressway, but as they approached the expressway ramp, Anderson realized that defendant was in the wrong lane. When Anderson advised defendant that he needed to change lanes, defendant replied, "No, the car is mine now[,]" pulled out a gun, and pointed it at Anderson. Anderson told defendant he could have the car and asked to be let out. Defendant stopped at a red light and told Anderson,

---

[2] *People v Omar Rashad Pouncy*, (*on Reconsideration*) unpublished opinion per curiam of the Court of Appeals, issued March 25, 2008 (Docket Nos. 269298 & 270604).

"All right when that light turns green you better be out the door or I will blow you through the door." Anderson got out.

## The Brady Carjacking

Joseph Davis testified that Earl Brady brought a Camaro drag-racing car to his racecar chassis fabrication shop to display it for sale. Approximately four or five days before September 29, 2005, three men came to look at the Camaro; one of them identified himself as "Jacob Woods." At trial, Davis identified defendant as "Jacob Woods" and noted that he had been the one doing most of the talking. Defendant came back a second time and then a third time on the 29th. On September 29th, defendant called Davis and indicated that he was ready to make a deal, so Davis called Brady and told him to come over. Brady arrived in his truck with his friend Patrick Wendell. Defendant and two other men showed up later in a grey Intrepid. During negotiations, defendant told Davis that he wanted to take the Camaro to his mechanic at King Automotive. Brady agreed, loaded the Camaro onto a trailer attached to his truck, and they all left.

At trial, both Brady and Wendell identified the prospective buyer of the Camaro as defendant. The group arrived at a house where defendant said they would meet the mechanic and defendant asked Brady to back the truck into the driveway. Defendant and Brady were discussing the Camaro, when one of the defendant's associates pulled out a gun and demanded Brady's keys and cell phone. When Brady refused, the associate fired the gun up into the air; Brady then complied. The men also took Wendell's cell phone. The men told Wendell and Brady to walk across the street and into the woods. While in the woods, Brady and Wendell heard the vehicles drive away. Brady and Wendell walked to a nearby house and called the police.

Wayne Grimes, defendant's stepbrother, testified that he helped defendant commit the Brady carjacking. Grimes testified that he owned an Intrepid, in which he drove defendant and defendant's friend, Tiaqua, to Davis's race shop on September 29, 2005. After defendant spoke to some men about a car, defendant directed Grimes to drive to defendant's "engineer." On the way, defendant told Grimes that he planned to "take" the cars and sell them, and Tiaqua handed Grimes a gun. Grimes testified that they arrived at a house, and, after Grimes gave him the signal, he pointed the gun at one of the men and took his keys and cell phone. He testified that he shot the gun in the air when the man first refused. He also testified that he ordered the men to walk into the woods. According to Grimes, after the men walked into the woods, he got in his car and left defendant and Tiaqua. Grimes testified that he had pleaded guilty to armed robbery and felony firearm.

## The Sandstrom Carjacking

Thomas Sandstrom testified that on October 11, 2005, a man, who had already called the previous day, came to his home in a metallic Intrepid to see a Cadillac that Sandstrom had advertised for sale. At trial, both Thomas and his wife Maria Sandstrom identified defendant as the prospective buyer. Defendant asked to take the car to his mechanic at King Automotive and Thomas agreed. Thomas rode in the Cadillac with defendant, defendant's associate drove the

Intrepid, and Maria followed in her Corvette. They ended up at the last house on a dead end dirt road. Defendant asked Thomas for the title and they went to the Corvette to retrieve it from Maria. Thomas then felt defendant stick a gun in his side and defendant told Maria to get out of the Corvette. Thomas was asked for his wallet, and both the Sandstroms were ordered into the woods. Thomas heard the cars drive away, so he and Maria walked back to the road and flagged down a passing police car. Maria had memorized the license plate of the Intrepid and gave it to the police.

Grimes testified that he also helped defendant commit the Sandstrom carjacking. He testified that he, Tiaqua, and the defendant were driving around, and defendant was looking at automotive sales ads in the newspaper. At some point, defendant called about an ad and then directed Grimes to drive to the seller's house. After defendant spoke to a man about a car, defendant told Grimes that he was going to take the car for a test drive. On the way, Grimes "[f]ound out that . . . it's about to happen again" – that defendant planned to steal the cars. Grimes testified that just after they arrived at the house, he heard the women screaming, and he got out of his car, covered his license plate, and then drove away, leaving defendant and Tiaqua behind. Grimes admitted that, when he was first arrested, he denied any involvement in the carjackings.

**THE ARREST AND TRIALS**

Detective James Gagliardi testified that he was assigned to investigate the Brady carjacking, but his investigation hit a dead-end. However, on October 12, 2005, he received notice of the Sandstrom carjacking and, after investigating the Intrepid lead, he was able to locate Grimes. Grimes was arrested, and, during interrogation, he identified defendant as one of his accomplices. Gagliardi testified that he put together a photo showup of defendant, and that Davis, Brady, and the Sandstroms all immediately identified defendant as the carjacker. Gagliardi testified that defendant was taken into custody on Friday, October 14, 2005.

In late January and early February 2006, the trial court held the Brady trial. The trial lasted six days and included all charges stemming from both the Brady and the Sandstrom carjackings. The jury convicted defendant as charged of four counts of carjacking, four counts of armed robbery, two counts of felony firearm, and one count of being a felon in possession of a firearm.

The Haynes trial lasted four days in April 2006. After the close of proofs, the trial court convicted defendant of one count each of armed robbery, carjacking, being a felon in possession of a firearm, carrying a concealed weapon, and felony firearm.[3]

Thereafter, Defendant, while represented by SADO, appealed his convictions in the Brady/Sandstrom carjackings to the Michigan Court of Appeals. Defendant also filed an in pro per supplemental brief. The issues raised on direct appeal include:

---

[3] End of the recitation of facts as established by the Michigan Court of Appeals.

   I. Defendant's wavier of counsel was not voluntary or unequivocal and his conviction must be reversed;

  II. Defendant was denied his right to effective assistance of counsel; the Court erred by refusing to grant a continuance for Defendant to obtain substitute counsel;

 III. Defendant Pouncy was denied due process of law by the impermissible joinder of eleven charges based on two entirely separate incidents;

 IV. Defendant was denied due process of law by the use of suggestive photo identification procedures and the denial of a corporeal lineup;

  V. The trial court denied Defendant a fair trial, his right to present a defense, and a properly instructed jury by failing to instruct on the principal defense of alibi, on accomplice witness credibility, and on mere presence; Defendant was denied effective assistance of counsel by the lack of requests for those instructions;

 VI. Defendant was denied a fair trial by the introduction of other criminal acts that were not sufficiently similar to prove identity and that were unduly prejudicial;

 VII. The trial court denied Defendant a fair trial by allowing the star prosecution witness to testify, over objection, that he was telling the truth because of his religious beliefs;

VIII. The trial court denied Defendant a fair trial by admitting a highly inflammatory tape recording that was not sufficiently authenticated and that was so inaudible to be untrustworthy;

 IX. Defendant was sentenced on the basis of inaccurate information where OV 12 was misscored, and he is entitled to resentencing.

A supplemental brief was then filed by defendant's attorney raising two additional issues:

  I. The Prosecutor's failure to disclose the full extent of the promises of leniency given to the star prosecution witness in return for his testimony against defendant denied defendant his right to confrontation and his right to due process of law;

 II. The substantial departure from the verdict form was coercive and Defendant's convictions must be reversed.

Defendant then filed an in pro per supplemental brief raising the following issues:

  I. Defendant was deprived of a fair trial due to the substantial prejudice he suffered from the unnecessary, intentional, and prejudicial delay in his arrest, and his convictions must be reversed and charges dismissed;

 II. Defendant was deprived of his right to a public trial and reversal is required without the showing of actual prejudice;

 III. Defendant was impermissibly deprived of his right to confront witnesses as guaranteed by the Sixth Amendment, which is made obligatory on the states by the Fourteenth Amendment. Reversal is required without the showing of prejudice;

 IV. Defendant's waiver of counsel was ineffective due to the trial court's failure to advise him of the "accurate" maximum possible sentence. Failure to advise Defendant of the mandatory minimum sentence required by law of the charge of armed robbery and felony firearm at the time of the waiver, failure to advise him of all of the disadvantages involved in self-representation, failure to reaffirm the wavier at subsequent proceedings, and for

allowing Defendant to represent himself after he clearly told the trial court that he was not prepared for trial;

V. Defendant was denied his right to due process due to the suppression of exculpatory and impeaching evidence by the prosecution notwithstanding his constant request;

VI. Defendant was impermissibly deprived of his right to represent himself at the pretrial stages and his right to counsel of his choice (retained), due to the trial court's failure to appraise his request;

VII. Defendant Pouncy was denied a fair trial due to the prosecution's improper burden shifting arguments during closing argument concerning Defendant's alibi defense;

VIII. The cumulative amount of errors that reddled [sic] Defendant's trial wether [sic] deemed preserved or unpreserved deprived him of a fair trial.

The Court of Appeals, in an opinion addressing both trials, affirmed the conviction and sentencing in the case currently before this Court (the Brady/Sandstrom carjacking) but reversed the conviction in the Haynes bench trial. Defendant, while represented by SADO, appealed the same issues (including those presented in pro per) to the Michigan Supreme Court. The Supreme Court denied the application for leave to appeal.

Motion for Relief from Judgment

Thereafter and on December 1, 2008, Defendant requested this Court appoint counsel for purposes of pursuing post-appellate relief in the form of a Motion for Relief from Judgment. Because MCR 6.505(A) gives this Court the discretion to appoint counsel for the Defendant at any time during the proceedings under the subchapter, Defendant's request was granted. Thereafter, several attorneys were appointed on the case and each were allowed to withdraw. Subsequently, on May 21, 2009, the above named counsel, Daniel Bremer, was appointed to represent Defendant in his post-appellate relief. On July 22, 2009, a Motion for Relief from Judgment was filed by Attorney Bremer. After several proceedings were heard in this matter regarding in pro per motions, a Brief in Support of the Motion for Relief from Judgment was filed by post appellate counsel on December 21, 2009. On January 12, 2010, the Prosecution filed their Answer in Opposition to Defendant's Motion for Relief from Judgment. Thereafter, this Court received the following documents from the Defendant, in pro per: a letter of January 5, 2010 indicating the Defendant's discontent with Attorney Bremer, a Motion filed on January 25, 2010 requesting substitute appellate counsel and requesting the Brief in Support of the Motion for Relief from Judgment filed by Attorney Bremer be withdrawn and stricken, and a letter dated February 11, 2010 requesting that this Court allow Defendant, in pro per, to file his own Brief in Support of Motion for Relief from Judgment and requesting the ability to exceed the limit of 50 pages. On February 26, 2010, this Court denied Defendant's Motion for Substitution of Appellate Counsel and to have the Brief in Support of the Motion for Relief from Judgment withdrawn, but granted Defendant's request to supplement his brief in pro per. This Court allowed Defendant to file such supplement by April 14, 2010. On March 2, 2010, Defendant filed his substantial supplement[4] to his Motion for Relief from Judgment and on May 11, 2010, filed a response to the People's Answer in Opposition to Defendant's Motion for Relief from

---

[4] Defendant's in pro per supplemental brief totaled 255 pages.

- 6 -

Judgment.[5]  On April 20, 2010, this Court allowed the Prosecution to respond to Defendant's in pro per supplement.  Additionally, and on May 19, 2010, post appellate counsel filed a Supplemental Brief and Supplementation of Authority based on a Retroactive Change in the Law.  On July 29, 2010, the Prosecution filed their response to Defendant's in pro per supplement.  Defendant, also in pro per, and on October 15, 2010, filed his 258 page Response to People's Answer in Opposition to Defendant's pro per Supplemental Motion for Relief from Judgment as well as his 42 page Response to the People's Answer in Opposition to Defendant's Supplemental Issue Based on Retroactive Change in Law.  Each of these documents has been considered in this Court's Order.

## MOTION FOR RELIEF FROM JUDGMENT FILED BY DEFENSE COUNSEL

Entitlement to relief in this case is governed by MCR 6.508(D), which provides in pertinent part that the court may not grant relief to the defendant if the motion:

> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceedings under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates:
>
>> (a) good cause for failure to raise such grounds on appeal or in a prior motion, and
>>
>> (b) actual prejudice from the alleged irregularities that support the claim for relief.  As used in this subrule, "actual prejudice" means that,
>>
>>> (i) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal

It is under this standard that each of the defendant's arguments will be addressed beginning with the arguments presented by post appellate counsel:

**I.  The Defendant received ineffective assistance of appellate counsel and for this reason he has good cause for failing to raise the various issues set forth below to the extent that they are not based on newly discovered evidence.**

Post-appellate counsel first argues that Defendant received ineffective assistance of appellate counsel as though an appellate attorney can winnow out weaker issues, the issues argued by the appellate attorney are markedly weaker than those presented in the current motion.  This argument is without merit.

---

[5] Defendant's in pro per response to People's Answer in Opposition to Defendant's Motion for Relief from Judgment totaled 147 pages.

As stated within *People v Uphaus*, 278 Mich App 174; 748 NW2d 899 (2008):

> the test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel. *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). .... Appellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail. *People v Reed*, 449 Mich 375, 391; 535 NW2d 496 (1995).

Under *Strickland v Washington*, 466 US 668, 687-690; 104 S Ct 2052; 80 L Ed 2d 674 (1984), a criminal defendant must first show that his attorney's performance was deficient meaning that the attorney made errors so serious that his attorney was not performing as the counsel guaranteed by the Sixth Amendment. Furthermore, Defendant must rebut the presumption that his attorney's performance was the result of a sound trial strategy and that the defendant must also show that the deficient performance was prejudicial. Prejudice is established where there is a reasonable probability that, but for counsel's error, the result of the trial would have been different.

In this regard, given the multitude of arguments presented by appellate counsel on Defendant's direct appeal, and given the evidence of defendant's guilt, it is clear that Defendant's appellate counsel represented Defendant effectively and presented to the Court of Appeals valid and strong arguments on Defendant's behalf. Additionally, Defendant filed his own, in pro per Standard 4 brief to the Court of Appeal addressing claims he believed applicable. The Court of Appeals ruled on such in pro per arguments and still upheld the jury conviction in the case currently before the Court. Defendant cannot meet the heavy burden of proving that his appellate counsel was not performing as the counsel guaranteed by the Sixth Amendment. This argument is without merit.

## II. The prosecutor denied the Defendant due process of law by failing to correct false testimony of Wayne Grimes, a key witness.

Defendant next argues that due process was denied to Defendant when the Prosecution witness, Wayne Grimes, falsely testified that he had not previously been arrested. It is Defendant's contention that due process was denied when the prosecutor failed to correct the testimony of a witness which he knew to be false. *See Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173 (1959). Defendant claims that the docket entries of the 67th District Court show that Wayne Grimes was charged with carrying a concealed weapon on May 16, 2005 and though he technically may not have been arrested, his answer to the jury that he was never arrested was misleading. However, Defendant has presented absolutely no evidence that Wayne Grimes testimony was false and, because this Court is not required to search for authority to sustain or reject a party's position, Defendant's arguments are without merit. *People v Watson*, 245 Mich App 572, 629 NW2d 411 (2001). Additionally, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, nor can he establish actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**III. The prosecutor denied the Defendant due process of law by allowing a police officer to place a police report containing inadmissible evidence on the ledge of the juror box where it was visible to the jury.**

Defendant next argues that while Detective James Gagliardi was on the witness stand, he placed a Mt. Morris Township police report near him on the ledge of the jury box, within view of the jury. According to Defendant, this constitutes improper extrinsic influence on a jury. Pursuant to *People v Budzyn*, 456 Mich 77, 88-90; 566 NW2d 229 (1997), "where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." According to *Budzyn*:

> In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences. See *Marino v Vasquest*, 812 F2d 499, 504 (C.A.9, 1987). See also *United States v Caro-Quintero*, 769 FSupp 1564, 1573 (CD Cal., 1991). Second the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict. See *Hughes*, supra at 700. Generally in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict.

In this regard, Defendant has offered no evidence that the jury was exposed to any extraneous influences. Though the police report may have been placed in a position where a juror could have seen *a* page of the document, there is no evidence or indication that any individual juror saw a document page nor that a juror read any of the contents of that page or even what the contents of such page was. In fact, during the testimony, Defendant did not object to the fact that the jurors may have possibly seen the police report but rather objected that the testifying witness was looking at the report before he answered questions. In sum, there is no evidence that a juror saw the police report and if a juror did see the police report, there is no evidence that it constituted an "extraneous influence," or could have affected the jury's verdict. Defendant's argument is without merit. Additionally, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, or actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**IV. The Defendant was denied due process of law because the prosecutor failed to disclose potentially exculpatory evidence in the form of a written statement of one of the complainants, Thomas Sandstrom, before Mr. Sandstrom testified.**

The next argument presented concerns the failure of the prosecution to disclose the written statement of Thomas Sandstrom prior to trial. Defendant claims that the contents of this

statement may be favorable to Defendant and the prosecution, therefore, had an obligation to produce the statement. Unfortunately, Defendant cannot rely on mere conjecture and speculation as to what may be contained in a statement when the evidence presented to the jury was substantial and included the sworn testimony of Thomas Sandstrom. This argument presented by Defendant is, again, without merit. Additionally, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, or actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**V. There was a possible extraneous influence on the jury in the form of either discussion of a telephone call from the Genesee County Jail received by one juror, or telephone calls to other jurors that required a hearing, but no hearing was conducted.**

On Tuesday, January 31, 2006, during the trial in this case, a juror reported to the Court that he had received a telephone call from the Genesee County jail. Such juror was dismissed from the case and was informed not to speak to the other seated jurors. Defendant claims, however, that because no hearing was held pursuant to *Remmer v United States*, 347 US 227, 230; 74 S Ct 450 (1954) to determine whether possible extraneous information was prejudicial to the defendant, a new trial is warranted. Again, Defendant has no evidence that the removed juror informed the rest of the jury of the alleged contact from the County Jail. In fact, the record reflects that this Court stated that the juror did not have any contact with other jurors since the incident. As stated previously, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, or actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3) as Defendant cannot present mere conjecture and speculation as a showing of "actual prejudice."

**VI. The prosecutor denied the Defendant due process of law by making disparaging remarks about the Defendant in his capacity as his own attorney.**

Defendant next cites *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) for the proposition that the prosecution made inappropriate statements at closing arguments and, therefore, Defendant's guaranteed right to Due Process of law under the Fourteenth Amendment was deprived.

As stated in *Unger*:

> "Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329, 662 NW2d 501 (2003). Because the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error. *Id.* "Reversal is warranted only when plain error resulted in

the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Callon, supra* at 329, 662 NW2d 501.

Defendant's argument that a prosecutor may not question a defense counsel's veracity is correct. However, Defendant did not object to the alleged disparaging statements during trial and, therefore, the issue is not preserved. Furthermore, Defendant argues that the disparagement of a defendant, "who did not testify, was effectively the disparagement of an attorney and created prejudicial, reversible error." However, review of the trial transcripts evidences that Defendant was sworn as a witness on January 31, 2006 and testified in his own defense. (Trial Transcripts, 01/31/06, pp. 162-212). In this regard, "a prosecutor is not required to state his arguments in the blandest possible terms and may argue that a defendant's story is unworthy of belief as long as such argument is based on the evidence rater than on matters not of record or the prestige of the prosecutor's office." *People v Pawelczak*, 125 Mich App 231, 238; 336 NW2d 453 (1983). In this case, the Prosecution attacked Defendant's testimony as a "salesman's pitch" and further stated that defendant is a very smart individual. (Trial Transcripts 2/1/06 pp. 23 & 74). There is nothing within the arguments cited by Defendant that would constitute prosecutorial misconduct or would affect "the fairness, integrity, or public reputation of judicial proceedings." *Callon, supra.*

Additionally, and most importantly, Defendant's claim was already decided by the Michigan Court of Appeals. Specifically the Court of Appeals stated:

> In his Standard 4 brief, defendant raises numerous additional claims of error, which he contends warrant relief. Specifically, defendant argues that he was deprived of a fair trial . . . by the prosecution's improper closing arguments . . . We have carefully examined these claims of error and conclude that none of them have merit.

MCR 6.508(D)(2) provides that the court may not grant relief to the defendant if the motion: "alleges grounds for relief which were decided against the defendant in a prior appeal or proceedings under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision." Defendant has made no such allegations. As a result, Defendant's arguments are without merit.

## VII. The court denied the Defendant due process of law and the right to present a defense by preventing the Defendant from calling Wayne Grimes in his case in chief.

The next argument presented by post-appellate counsel states that because Defendant was precluded by the Court from calling his co-defendant, Wayne Grimes, during Defendant's case in chief he was denied due process of law constituting reversible error. In support, Defendant cites *Washington v Texas*, 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967) as well as *People v Yost*, 278 Mich App 341; 749 NW2d 753 (2008) wherein the Defendants in the respective cases were precluded from calling certain witnesses. In *Washington, supra*, the court held that the denial of Defendant's right to call his co-defendant based on a Texas statute was a denial of his

right to have compulsory process for obtaining witnesses in his favor.  In *Yost, supra* the Michigan Appeals Court held that the sanction of witness preclusion for failure to comply with the trial court's previous order was reversible error.  In either case, however, the Defendant was precluded from calling witnesses altogether.   Both fact patterns, however, are entirely distinguishable from the case at bar as Mr. Grimes did take the stand and, further, was subjected to a lengthy cross examination by Defendant.  In addition, Defendant stated to the Court that the reason he wanted to recall Mr. Grimes was because he was "[a]bout just really getting more down to the truth of this situation you know."  Defendant gave no specific reason to the Court as to why Mr. Grimes should be recalled.  Again, Defendant's claims have no merit.  Additionally, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, or actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**VIII.  The Defendant's trial attorney was ineffective in failing to have competent evidence to show the shoe size of the shoe print impression left at the alleged crime scene.**

Defendant's next argument relates to ineffective assistance of trial counsel.  Specifically, Defendant argues that the Mt. Morris Township police photographed a shoe print impression at the crime scene and that, prior to trial Defendant requested his attorney to have the shoe print impression analyzed.  Defendant's attorney failed to hire a shoe print impression expert and Defendant claims that this constitutes ineffective assistance of counsel.

Under *Strickland v Washington*, 466 US 668, 687-690; 104 S Ct 2052; 80 L Ed 2d 674 (1984), a criminal defendant must first show that his attorney's performance was deficient meaning that the attorney made errors so serious that his attorney was not performing as the counsel guaranteed by the Sixth Amendment.   The Michigan Court of Appeals, in Defendant's appeal of right, stated:

> [i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* But neither must the defendant show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* Instead, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Accordingly, in order to warrant a new trial, defendant must show that, but for his trial counsel's decision . . . there is a reasonable probability that he would not have been convicted of the charged offenses.

Additionally, as stated by the Court of Appeals in denying Defendant's motion in a similar argument:

Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy. Further, "a defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." [*People v Davis*, 250 Mich App 357, 368-369; 649 NW2d 94 (2002)(citations omitted).]

As applicable to his direct appeal and to this collateral attack, Defendant has failed to overcome this presumption. In this regard, Defendant has presented no evidence, whether prior to trial and while being represented by Attorney Breczinski or during trial while self represented, that Defendant had an expert to testify which would contradict the Prosecution's evidence or who would have testified regarding the size of the shoe print. Defendant has also offered no evidence that he currently has an expert who will testify that the shoe print impression left at the alleged crime scene was not, in fact, a shoe print of Defendant Pouncy. Because of this, there is no way for this Court to determine that any expert witness on the subject of a shoe print would have changed the outcome of this case, especially given the "considerable evidence that defendant committed the charged offenses, including the testimony of defendant's coconspirator in the carjackings." *People v Pouncy, supra* pp 19. Additionally, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, nor can he establish actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

## IX. Standby Counsel had no authority to stipulate that the Defendant had been convicted of an unspecified felony.

The next argument presented claims that Attorney Breczinski, as standby counsel, had no authority to stipulate that Defendant had been convicted previously of an unspecified felony for purposes of the felon in possession instruction. Defendant claims that as the Court was reading the instructions to the jury, the Prosecutor asked to approach the bench and both the Prosecutor and standby counsel approached with the Defendant remaining seated, though Defendant was representing himself at the time. Defendant claims that such stipulation infringed on Defendant's right to represent himself. In this regard, Defendant argues that denying a criminal defendant his right to represent himself or to be represented by the attorney of his choice is a structural error requiring automatic reversal pursuant to *United States v Gonzalez-Lopez*, 548 US 140, 150; 126 S Ct 2557; 165 L Ed 2d 409 (2006). However, during the trial, Defendant was, in no way, denied his right to represent himself. A stipulation as to whether Defendant had been previously convicted of an unspecified felony so that the Prosecution was not required to prove or place into the record the nature and type of offense Defendant was previously convicted of in no way denied Defendant's right of self-representation. Defendant's argument in this regard is without merit. Additionally, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, nor can he establish actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**X. There is newly discovered evidence in the form of an affidavit from Tiakawa Pierce who was unavailable at the time of the trial.**

The next argument presented is that newly discovered evidence warrants a new trial on behalf of Defendant. The newly discovered evidence presented is an affidavit from Tiakawa Leondis-Terrel Pierce signed November 1, 2008 which states that he was a former codefendant of Defendant and claims that Defendant was not involved in the crimes that were committed in this case but rather it was Mr. Pierce, Wayne Grimes Jr. and a Jacob Woods that were involved. Mr. Pierce further states that at the time of Defendant's trial he was "out of touch," did not know there was a warrant out for his arrest, nor did he know that Defendant was being accused for something he had nothing to do with. However, this affidavit cannot be given any credence. It is true that Mr. Pierce was charged as a codefendant with Defendant for carjacking and armed robbery of the Sandstroms and Brady. However, when Mr. Pierce pled guilty before this Court on February 14, 2010 to the crime of accessory after the fact to carjacking, Mr. Pierce stated, also under oath, that on October 11, 2005 he was with Defendant and Wayne Grimes when the crimes occurred and, specifically, that Defendant Pouncy engaged in the crime of carjacking.

Pursuant to *People v Cress*, 468 Mich 678, 692, 664 NW2d 174 (2003):

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) 'the evidence itself, not merely its materiality, was newly discovered'; (2) 'the newly discovered evidence was not cumulative'; (3) 'the party could not, using reasonable diligence, have discovered and produced the evidence at trial'; and (4) the new evidence makes a different result probable on retrial.

(*citing People v Johnson*, 451 Mich 115, 118 n. 6; 545 NW2d 637 (1996)). "However, where newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). Because it is not necessary to delve much further into the topic suffice it to say that such contradictory evidence could not make a different result probable on retrial. Further, should Defendant know where Mr. Pierce is currently located and assuming that Mr. Pierce would be ready to testify at a retrial held for Defendant, it should be noted that Mr. Pierce is currently an absconder from probation in the Genesee County Circuit Court under case number 07-21200-FC and an outstanding bench warrant exists for his arrest. Further, because Defendant testified at trial that he did not engage in the alleged criminal activity, the testimony of Mr. Pierce, should Mr. Pierce decide to testify in the county where a bench warrant exists for his arrest, such testimony would be cumulative. Again, Defendant's claims are without merit.

**XI. There is newly discovered evidence in the form of an affidavit from Quillie B. Strong that shows that the telephone number used by the person who called one of the complainants on September 24, 2005, was traceable to a person other than the Defendant, contrary to the representations made by the prosecutor during the trial.**

The next argument presented by Defendant is that the telephone number (810-836-5074) used on September 24, 2005 to call Ralph Haynes, the complainant in the Haynes bench trial case 05-17448-FC was not Defendant's cell phone but the cell phone of a "Jacob Joe Woods." To support this contention, Defendant provides the affidavit of Quillie B. Strong dated November 1, 2008, which states that he is the cell phone subscriber of 810-836-5074 and that he had the account set up for Jacob Joe Woods given that Mr. Woods was under 18. It should be noted that during the trial currently under collateral attack, Earl Brady testified that Defendant identified himself as Jacob Woods.

To begin, Defendant's conviction in the Haynes trial was overturned and Defendant is not currently incarcerated on such charges. Additionally, the affidavit of Quillie B. Strong uses the date of September 24, 2005 but does, in no way, indicate or have any bearing on whether defendant committed the crimes on September 29, 2005 and October 11, 2005. The alleged newly discovered evidence in the form of the affidavit of Quille B. Strong is, therefore, irrelevant. Additionally, because Defendant himself testified that he was not involved in the crimes, the alleged newly discovered evidence would be considered cumulative and, therefore, does not warrant a new trial. Again applying the elements in *Cress, supra*, Defendant's arguments are without merit.

**XII. There was prosecutorial misconduct when the prosecutor produced a power point slide during his opening statement and closing argument that proclaimed "Omar Pouncy is guilty". Also, the prosecutor produced a slide during his closing argument referring to Mr. Pouncy as "a seller's worst nightmare." The prosecutor vouched for the credibility of Wayne Grimes. Alternatively, Defendant's attorney was constitutionally ineffective in failing to object to this misconduct.**

The next argument presented by post-appellate counsel again makes a claim of prosecutorial misconduct during opening and closing arguments. Yet again, Defendant states that because Defendant did not testify, the statements made against Defendant by the prosecution were an attack on Defendant in his capacity as an attorney. Such argument was address previously under subsection VI and because Defendant did, in fact, testify at trial, Defendant's arguments are without merit. The jury was instructed by the Court that the lawyer's statements and arguments are not evidence. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Additionally, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, nor can he establish actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**XIII. The armed robbery instruction denied the Defendant due process of law by referring to the complainants as "victims".**

Defendant next argues that he was denied due process of law as the Court, within the armed robbery instruction, referred to the complainants as "victims." Defendant did not object to this instruction during the trial. As argued by defense counsel, the use of the term "victims" by the Court during jury instructions forecloses the jury's consideration of whether in fact the

complainants had been victims of a crime. According to Defendant, and pursuant to *People v Petrella*, 424 Mich 221, 227; 380 NW2d 11 (1985), it is error to give an erroneous or misleading jury instruction on an essential element of the offense and when the Court used the term "victim" rather than the name of the complainant, this implied that the judge instructed the jury that the offense actually took place. However, this Court did not err or give a misleading instruction on an essential element of the offense. The jury was in no way precluded from determining whether the crime was actually committed by the simple use of the term "victim" during one instruction. In fact, the Court of Appeals, while ruling on a similar issue involving the use of the term "victim" on the verdict form, stated:

> Even assuming that the jury form constituted "misdirection of the jury" for failure to indicate that they could choose not to render a verdict on one or more of the counts, there is no indication in the record that the jury would have chosen that option even had it been offered. The trial court polled each member of the jury to ask him or her if he or she agreed with the verdict and each responded affirmatively.

*People v Pouncy, supra*, pp 29. No substantial right of the defendant was infringed upon to warrant a new trial as required by *People v Bauder*, 269 Mich App 174, 180; 712 NW2d 506 (2005) and as cited by Defendant. Furthermore, such issue was argued in Defendant's direct appeal to the Michigan Court of Appeals which held that:

> Although defendant claims that the trial court entrusted the selection of jury instructions to Breczinski, the record demonstrates that defendant took an active role in deciding which instructions the court should give. Further, the trial court specifically asked both Breczinski and defendant if they were satisfied with the reading of the instructions and both expressed satisfaction with the reading. By expressly approving the instructions, defendant waived any claim of error. *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002).

*People v Pouncy, supra*, pp 21. MCR 6.508(D)(2) provides that the court may not grant relief to the defendant if the motion: "alleges grounds for relief which were decided against the defendant in a prior appeal or proceedings under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision." Defendant has made no such allegations. As a result, Defendant's arguments are without merit.

**XIV. Trial counsel was constitutional ineffective in failing to produce at trial three exculpatory witnesses, Charles Smith, Willie Joyce McKinley and Carrice Byrom, two alibi witnesses, Carrice Byrom and Helen Carr, as well as Sheriff Deputies in charge of the work release program, and in failing to investigate possible credit card transactions with credit cards alleged stolen from the complaining witnesses.**

- 16 -

The next argument presented also attacks Defendant's trial counsel and states Mr. Breczinski was constitutionally ineffective for failing to produce several witnesses at trial. However, during the actual trial in this case, Defendant asserted his right of self representation. In this regard, a defendant who asserts his right to self-representation has no entitlement to the effective assistance of advisory counsel. *People v Kevorkian*, 248 Mich App 373, 425-426; 639 NW2d 291 (2001). Because Defendant wished to represent himself during the pendency of his trial, it was his obligation to procure those witnesses that he deemed necessary for his defense. Defendant's argument is without merit. Additionally, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, nor can he establish actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**XV. The cumulative effect of the errors and absence during the trial of the newly discovered evidence set forth above deprived the defendant of due process guaranteed under the United States and Michigan Constitutions.**

Finally, post-appellate counsel states that the cumulative effect of the aforementioned arguments deprived the Defendant of due process of law. However, given the aforementioned disposition of Defendant's claims, and based on the denial of all Defendant's alleged errors, Defendant's Motion for Relief from Judgment in this regard must be **DENIED**.

**DEFENDANT POUNCY'S IN PRO PER SUPPLEMENT**

In addition to the numerous aforestated arguments, Defendant, in pro per, has also presented 255 pages in supplement. Defendant's in pro per arguments will also be addressed in turn. With regard to Defendant's Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment as well as Defendant's Response to People's Answer in Opposition to Defendant's Pro Per Supplemental Motion for Relief from Judgment, all arguments have been addressed and considered in this Court's Order and no further analysis is required in this regard.

**I. Defendant's wavier of counsel was constitutionally ineffective**

Defendant, in pro per, first argues that his court appointed counsel, Mr. Breczinski, was constitutionally ineffective and that his waiver of counsel was constitutionally ineffective for the following reasons:

1. Since Defendant Pouncy was forced to choose between self admitted unprepared counsel or no counsel at all Defendant Pouncy's waiver of counsel was not a product of a free and meaningful choice;
2. Due to Defendant Pouncy being erroneously misled by the trial court, the prosecuting attorney, and trial counsel concerning the sentencing guidelines range Defendant Pouncy was subject to if convicted, renders Defendant Pouncy's waiver unknowingly and unintelligently made;

- 17 -

3. Due to the trial court's failure to ensure that Defendant Pouncy understood the charges and their associated penalties at the time of the waiver of counsel renders the waiver of counsel unknowingly and unintelligently made;

4. Due to the trial court failing to inform Defendant Pouncy of the statutory 2 year minimum sentence associated with the armed robbery offenses renders Defendant Pouncy's waiver of counsel unknowingly and unintelligently made;

5. Due to the trial court's failure to advise Defendant Pouncy of the potential problems that an incarcerated Defendant might encounter in obtaining evidence and locating and questioning witnesses before allowing him to represent himself, renders the waiver of counsel unknowingly and unintelligently made;

6. Due to the trial court failing to make an inquiry into the voluntariness of Defendant Pouncy's waiver of counsel on the record, voluntariness can not be presumed from the silent record and Defendant Pouncy's waiver of counsel must be assumed to be involuntary.

Despite these numerous arguments regarding Defendant's waiver of counsel within this motion, such issues were already decided against him in his prior appeal. As applicable to this issue and as stated by the Court of Appeals:

> In the present case, the record demonstrates that the trial court properly advised defendant of the risks of self-representation. The trial court told defendant that he would be a "fool" to represent himself and warned him that the court would treat him "like any other lawyer." Indeed, the trial court explained that defendant would be bound to comply with the court rules, which included making "objections and everything else." After defendant effectively asserted his right to represent himself, the trial court was not required to repeatedly pressure defendant into relinquishing that right. *People v Morton*, 175 Mich App 1, 7; 437 NW2d 284 (1989). Based on the totality of the exchanges, we conclude that the trial court properly apprised defendant of the risks associated with self-representation. . . . Moreover, the record reflects that the trial court repeatedly advised defendant of the charges against him, including the minimum and maximum prison sentences associated with the various charges, both at the beginning of trial and at every subsequent proceeding. See MCR 6.005(D). Additionally, the record reflects that throughout the entire proceedings, Breczinski was available to advise defendant as standby counsel and actively participated in the trial by performing voir dire and questioning witnesses. See MCR 6.005(D)(2).

*People v Pouncy, supra*, pp. 10. Pursuant to MCR 6.508(D), this Court "may not grant relief to the defendant if the motion: (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceedings under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision." Defendant has not argued a retroactive change in the law applicable to such waiver. Defendant's in pro per arguments are without merit.

It should be noted that Defendant Pouncy argues at length that his choice between incompetent counsel and self representation is no choice at all. His arguments regarding the incompetence of counsel include failure to be prepared for trial and failure to hire an investigator. However, the Court of Appeals also decided this issue against Defendant Pouncy in his prior appeal. The Court looked to the multiple arguments of ineffective assistance of counsel presented by Defendant and ultimately held that Mr. Breczinski was not ineffective.

Additionally, within Defendant's in pro per Response to People's Answer in Opposition to Defendant's pro per Supplemental Motion for Relief from Judgment, Defendant cites at length the case of *Massaro v United States*, 538 US 500; 123 S Ct 1690 (2003) for the proposition that, whether argued specifically before the Court of Appeals or newly within this motion for relief from judgment, the claims of ineffective assistance of counsel claims are best brought before the trial court on collateral review and are not required to be presented on direct appeal. However, in *Massaro*, the Supreme Court was ruling under 28 USCA §2255. No argument has been raised making this holding applicable to a motion under MCR 6.500 *et al.* Defendant's arguments in this regard are without merit.

**II. Defendant Pouncy is entitled to a new trial due to the prosecution misleading the defense, trial court, and jury into believing that the complainant's phone records were of no value to defendant Pouncy's defense, when the prosecution erroneously misinformed that the phone calls from the perpetrator to the complainants weren't capable of being traced, when the phone calls were indeed capable of being traced to someone other than defendant Pouncy, and thereby effectively prevented defendant Pouncy from discovering and presenting exculpatory evidence.**

The next argument presented by Defendant in pro per relates to the alleged misconduct on the part of the prosecution to misinform the Defendant and the Court that the alleged phone calls from the perpetrator were incapable of being traced. Such argument was made by post-appellate counsel under section XI as well as in Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and likewise at this juncture requires denial as Defendant's arguments are without merit.

**III. The Prosecutor's unproved allegations during opening statement that defendant Pouncy himself carjacked the '79 Camaro, and '03 truck, that defendant Pouncy robbed the complainants of their cell phones, that Wayne Grimes gave defendant Pouncy the cell phone after the robbery, that it was agreed upon in the car that they were going to rob the complainants of their cell phones, that Wayne Grimes ordered the complainants to give their cell phones up to defendant Pouncy, that defendant Pouncy drove the vehicles away from the scene of the crime, and that defendant Pouncy made the gun used during the Sept. 29, 2005 carjacking available so that Wayne Grimes could complete the robbery were so prejudicial and ultimately deprived defendant of his right to a fair trial.**

Defendant next argues prosecutorial misconduct during opening statements and further that the allegations asserted by the Prosecution were not substantiated during trial and were, therefore, highly prejudicial and deprived Defendant of his right to a fair and impartial trial.

Specifically, Defendant takes issue with the Prosecution's statements that Defendant carjacked the 1979 Camaro and the 2003 truck, that Defendant stole the victim's cell phone, that it was agreed prior to the commission of the crimes that the cell phones should be taken and, finally that Defendant make a gun available to Wayne Grimes to be used in the robbery.

As cited by the parties, "[t]he general rule is that when a prosecutor states that evidence will be submitted to the jury, which subsequently is not presented, reversal is not warranted if the prosecutor acted in good faith." *People v Pennington*, 113 Mich App 688, 694-695; 318 NW2d 542 (1982). In this regard, and during trial, the prosecution presented evidence through the testimony of Co-Defendant Wayne Grimes as to how the crimes were committed as well as Defendant's culpability therein. In addition, and as stated in post-appellate counsel's previous argument regarding prosecutorial misconduct during opening and closing statements, the jury was instructed by the Court that the lawyer's statements and arguments are not evidence. It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Furthermore, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, nor can he establish actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**IV. Defendant Pouncy's Sixth Amendment right to confrontation was violated when the prosecution placed a police report on the ledge which was ever admitted into evidence and only presented the prosecution's theory of the case and statements from non-testifying witnesses.**

The next argument presented again deals with prosecutorial misconduct and the placement of a police report in a location where jurors potentially could see the document. This argument was addressed previously by post-appellate counsel under subsection III as well as in Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and is again, without merit for the aforestated reasons. The jurors were instructed that they could only consider evidence which was properly admitted and the jury is presumed to follow the instructions as given. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

**V. Defendant Pouncy was denied his right to discovery, when the prosecution failed to provide the defense with the written statement of its complainant, Thomas Sandstrom, and reversal is required.**

Defendant next argues, in pro per, that he was denied a written copy of the statement of Thomas Sandstrom requiring reversal. This argument was addressed previously in subsection IV of post-appellate counsel's motion as well as in Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and similarly without merit for the aforestated reasons.

**VI. Defendant Pouncy was deprived of his right to due process due to the prosecution's failure to correct the false testimony of its "star witness", Wayne Grimes.**

- 20 -

Yet again, Defendant's in pro per argument regarding the false testimony of Wayne Grimes was addressed previously post-appellate counsel in subsection II as well as in Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and remains without merit for the aforestated reasons. However, it should be noted that Defendant does offer the City of Clio Police Report regarding the arrest of Wayne Demetrius Grimes Jr. on May 14, 2005 on the charge of carrying a concealed weapon in a motor vehicle. In this regard, "a conviction will be reversed and a new trial will be ordered . . . only if the tainted evidence is material to the defendant's guilt or punishment." *Smith v Phillips*, 455 US 209, 219; 102 S Ct 940; 71 L Ed 2d 78 (1982); *Giglio v United States*, 405 US 150, 154-155; 92 S Ct 763; 31 Led 2d 104 (1972). There is no merit to Defendant's argument that the testimony concerning the arrest of Wayne Grimes was in any way material to Defendant's guilt or punishment. Additionally, Defendant had full and ample opportunity to cross examine Mr. Grimes during the trial. Furthermore, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, nor can he establish actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**VII. When the prosecutor argued that defendant Pouncy created a lot of dust, threw up a lot of smoke, threw up a lot of mirrors, was a smooth talker, used a salesman's pitch in representing himself, was trying to talk his way out of the charges, and was very scheming this constitutes impermissible and inflammatory prosecutorial misconduct which attached defendant Pouncy in the capacity of being his own counsel and ultimately deprived him of a fair trial and constitutes a failure to respect defendant Pouncy's right to self-representation, which requires automatic reversal.**

Again, the argument of prosecutorial misconduct in the form of disparaging remarks aimed at Defendant in his capacity as his own attorney was addressed in the Motion for Relief from Judgment submitted by post-appellate counsel under subsection V as well as in Defendant's Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and for the aforestated reasons, is without merit.

**VIII. Due to the newly discovered evidence of the complaining witness, Thomas Sandstrom, identifying Wayne Grimes, as the perpetrator after trial, instead of defendant Pouncy, a new trial is required.**

Defendant's next in pro per argument claims that after Defendant's conviction, the complaining witness, Thomas Sandstrom, recanted his previous testimony and identification of Defendant as the perpetrator of the convicted crimes and, instead, identified Wayne Grimes as the perpetrator. In support of this, Defendant cites to the allocution of Mr. Sandstrom during the sentencing of Mr. Grimes that: " We've had to change all the locks on our door, Uh, our credit cards were stolen and he charged $4,000.00 that evening." (*People v Wayne Grimes*, 05-17155-FC, Sentencing Tr 02-02-06, pp. 12-13). Defendant contends that by Mr. Sandstrom's use of the word "he," Mr. Sandstrom unequivocally changed his identification of the perpetrator from Defendant to Wayne Grimes. Mr. Sandstrom gave no indication that he was changing his identification of the perpetrator. The statement of Mr. Sandstrom while at Mr. Grimes' sentencing is not evidence, was not under oath, and in no way contradicts Mr. Sandstrom's

previous sworn identification of Defendant. This argument as well is wholly without merit. Furthermore, because Defendant's argument as to ineffective assistance of appellate counsel has failed, Defendant cannot establish good cause for failure to raise such grounds on appeal or in a prior motion, nor can he establish actual prejudice stemming from the alleged irregularities as required under MCR 6.508(D)(3).

**IX. The impermissible prosecutorial misconduct deprived defendant Pouncy of his right to a fair trial.**

Within the in pro per brief, Defendant argues he was denied his right to a fair trial based on the prosecutor's inflammatory statements during opening and closing arguments. Specifically, Defendant takes exception to the following:

1. The prosecutors display of a sign on the courtroom's overhead projector which said "Omar Pouncy is Guilty" both during opening statements and closing arguments, which effectively communicated to the jury that the prosecutor personally believed that Defendant Pouncy was guilty, and ultimately deprived Defendant Pouncy of his right to a fair trial;
2. The prosecutor's inflammatory characterizations of Defendant Pouncy as "A seller's worst nightmare" which deprived Defendant Pouncy of his right to a fair trial;
3. The prosecutor's improper vouching for its Star Witness, concerning the veracity of his testimony, deprived Defendant Pouncy of his right to a fair trial.

Again, these arguments were specifically addressed within the Motion for Relief from Judgment filed by post-appellate counsel in section XII as well as in to Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment. For the aforestated reasons, Defendant's arguments are without merit.

**X. Stand-by Counsel had no authority to stipulate that defendant Pouncy's right to possess a firearm had not been restored pursuant to Michigan law, thereby stipulating that defendant Pouncy was a convicted felon. This interference by stand-by counsel blatantly failed to respect defendant Pouncy's right to self-representation and constitutes a denial of his right to self-representation and its denial is not amendable to harmless error analysis.**

The next argument presented by Defendant in pro per and also previously addressed concerns stand by counsel Breczinski's stipulation that Defendant Pouncy was a convicted felon for purposes of the felon in possession charge brought against Defendant. Such arguments were presented in subsection IX of Defendant's Motion for Relief from Judgment filed by post-appellate counsel as well as in Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and are without merit for the aforementioned reasons.

**XI. Defendant Pouncy was deprived of his right to the effective assistance of counsel and was thereby prejudiced.**

Defendant's next in pro per argument relates to alleged ineffective assistance of counsel of Attorney Breczinski. Defendant specifically argues the following:

1. Counsel was ineffective for failing to object to the trial court's unconstitutional practice of closing the courtroom to the general public during jury selection, when the trial court told the audience to go in the hallway during jury voir dire and certain motion hearings, thereby allowing Defendant Pouncy to be deprived of his absolute right to a fair public trial;

2. Counsel was constitutionally ineffective when he failed to move to have the prosecution's star witness barred from testifying, when a valid legal basis existed to do so, when Wayne Grimes was present during the entire preliminary examination, and thereby was in violation of the sequestration order issued by the district court Judge;

3. Counsel was ineffective for failing to move for a continuance to properly prepare for trial once he learned on the day of trial that the prosecution would be permitted to introduce evidence of crimes he knew nothing about;

4. Counsel was constitutionally ineffective when he failed to object to the prosecutor displaying a sign representing the prosecutor's personal belief in Defendant Pouncy's guilt during opening statements;

5. Counsel was constitutionally ineffective when he failed to interview exculpatory witnesses and witnesses who the prosecution had endorsed as witnesses they intended to produce at trial, thereby failing to investigate.

Though Defendant attempts to argue that trial counsel Breczinski was ineffective, the Michigan Court of Appeals specifically held otherwise and stated succinctly "Defendant was not deprived of the effective assistance of counsel." *People v Pouncy, supra,* pg 23. Though several of the distinct issues presented herein may have not specifically been argued and ruled upon by the Court of Appeals, "[i]neffective assistance of counsel is a single ground for relief no matter how many failings a lawyer may have displayed." *People v US,* 403 F3d 844, 894 (CA 7, 2007). "It is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *Id.* Given that the Court of Appeals has previously decided this issue against Defendant, this Court may not grant relief pursuant to MCR 6.508(D).

**XII. Defendant Pouncy's counsel's incompetent advice concerning his guideline range, which resulted in defendant Pouncy's rejection of the plea offer constitutes ineffective assistance of counsel. Based on the inaccurate information provided to defendant Pouncy, concerning the sentencing guideline range he faced, by the trial court, the prosecutor, and trial counsel the plea agreement which was offered must be reinstated.**

Again, Defendant argues ineffective assistance of trial counsel. Whether regarding Mr. Breczinski as standby counsel or Defendant Pouncy in his capacity as his own attorney, based on

the foregoing analysis and the Court of Appeals prior ruling, Defendant's arguments are without merit pursuant to MCR 6.508(D).

**XIII. Counsel was constitutionally ineffective for failing to file a motion for severance when the right existed because the joinder of two separate carjacking/armed robbery incidents arising out of two separate transactions embarrassed and confounded defendant Pouncy in making his defense, where defendant Pouncy, against his wishes, testified concerning both transactions, when he had only wished to testify concerning one of the carjacking/armed robbery transactions and wished to remain silent on the other and the joinder was prejudicial because it compromised his right to remain silent.**

Again, Defendant argues ineffective assistance of counsel for failure to file a motion for severance, an issue that was specifically brought before the Court of Appeals and denied. In *People v Pouncy*, *supra*, pp. 17 the Court of Appeals stated:

> Under some circumstances, a defendant's trial counsel might reasonably conclude that it would best serve the client's interests to defend against charges, which could otherwise by severed under MCR 6.120(C), at a single trial. In the present case, defendant's trial counsel may very well have determined, among other things, that defendant had a better chance of obtaining an acquittal of some or all of the charges in a trial before a single jury. The fact that this decision proved to be wrong does not transform an otherwise reasonably competent decision into one that falls below an objective standard of reasonableness. See *People v Mitchell*, 454 Mich 145, 171; 560 NW2d 600 (1997) ("[T]he Sixth Amendment guarantees a range of reasonably competent advice and a reliable result. It does not guarantee infallible counsel."). Because defendant failed to overcome the strong presumption that his trial counsel's decision not to request a severance was sound trial strategy, he is not entitled to a new trial on the basis of ineffective assistance of counsel for failing to request a severance.

Pursuant to MCR 6.508(D), this Court "may not grant relief to the defendant if the motion: (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceedings under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision." Defendant has not argued a retroactive change in the law applicable and, therefore, Defendant's in pro per arguments are without merit.

**XIV. Trial counsel was constitutionally ineffective for failing to have the prosecution specify with time (dates) of the alleged offenses, where time was of an essence and was necessary in order for defendant Pouncy to put forth an effective defense, the 13 day time period (September 29, 2005 through October 11, 2005) in which the jury had to conclude the offenses occurred on was too broad, and made it possible that some jurors may have found that the offenses occurred on September 29, 2005, while others**

may have found the offenses occurred October 11, 2005 and other jurors were permitted to conclude that the offenses occurred on any other date all within the (September 29, 2005 through October 11, 2005) time period. It was therefore impossible for defendant to effectively defend against the charges due to the wide time period in which the jury was permitted to find that the offenses occurred on.

Again, Defendant argues ineffective assistance of counsel. Whether applicable to Mr. Breczinski as standby counsel or Defendant Pouncy in his capacity as his own attorney, based on the foregoing analysis and the Court of Appeals prior ruling, Defendant's arguments are without merit pursuant to MCR 6.508(D).

**XV.** **Trial counsel provided ineffective assistance by failing to investigate and have the shoe print impression from the scene of the crime examined by a defense expert to determine the shoe size, to show to the jury that the shoe print impression did not belong to defendant Pouncy, in support of the defense theory that defendant Pouncy was not present a the scene of the crime.**

Defendant's fifteenth argument also claims ineffective assistance of counsel. As stated previously, whether applicable to Mr. Breczinski as standby counsel or Defendant Pouncy in his capacity as his own attorney, based on the Court of Appeals prior ruling and the disposition of post-appellate counsel's argument in subsection VIII of Defendant's Motion for Relief from Judgment, Defendant's arguments are without merit pursuant to MCR 6.508(D).

**XVI.** **Defendant Pouncy is entitled to a new trial based on the newly discovered evidence, an affidavit signed by one of his codefendants who was unavailable at the time of trial who is going to offer exculpatory testimony in defendant Pouncy's favor and thereby testify that defendant Pouncy did not commit the offenses and was not involved.**

Defendant brings his next in pro per argument based on the alleged newly discovered evidence in the form of an affidavit of co-defendant Tiakawa Leondis-Terrel Pierce. This is the same argument presented by post-appellate counsel in subsection X and for the same reasons addressed above, Defendant's argument is without merit.

**XVII.** **The trial court arbitrarily deprived defendant Pouncy of his right to present a defense when it barred defendant Pouncy from calling Wayne Grimes during the defense side of the case "to get down to the truth."**

Defendant, in pro per, argues yet again that he was denied his right to present a defense as he was unable to call Wayne Grimes during his case in chief. This argument was presented in subsection VII of Defendant's Motion for Relief from Judgment filed by post-appellate counsel as well as in Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and is without merit for the aforementioned reasons.

**XVIII.** **The trial court's instruction which told the jury that as a matter of law the complainants were indeed actually "victims," took away essential elements away [sic]**

from the offenses, overemphasized the prosecution's theory, and ultimately invaded the province of the jury.

Defendant's eighteenth argument again addresses this Court's instruction by referring to the complainants as victims. This argument was addressed previously in subsection XIII of post-appellate counsel's motion as well as in Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and is without merit for the aforestated reasons.

**XIX. The trial court interfered with defendant Pouncy's stated and federal constitutional rights to a fair jury trial when he refused to hold an evidentiary hearing on the question of whether jurors were prejudiced or biased due to any "extraneous influences" when one juror reported to the court that he received a phone call from the Genesee County Jail during a weekend recess and he believed defendant Pouncy was the individual who called him.**

Defendant next addresses the issue of extraneous influence on the jury. This argument was addressed previously in subsection IV of post-appellate counsel's motion as well as in Defendant's in pro per Response to the People's Answer in Opposition to Defendant's Motion for Relief from Judgment and is without merit for the aforestated reasons.

**XX. The trial court violated defendant Pouncy's right to due process by failing to recuse itself sua sponte, knowing that it had deep seated antagonism against defendant Pouncy and due to the trial court's preconceived notion of guilt.**

Defendant next argues that this Court violated his right to due process by failing to recuse itself due to an alleged deep seated antagonism and preconceived notion of guilt. Under MCR 2.003(C)(1)(a) (formerly MCR 2.113(B)(1)) disqualification of a judge is warranted if "[t]he judge is biased or prejudiced for or against a party or attorney. Pursuant to *Cain v Michigan Department of Corrections*, 451 Mich 470, 500; 548 NW2d 210 (1996):

> Simply stated, a showing of "personal" bias must usually be met before disqualification is proper. This requirement has been interpreted to mean that disqualification is not warranted unless the bias or prejudice is both personal and extrajudicial. Thus, the challenged bias must have its origin in events or sources of information gleaned outside the judicial proceeding.

In this regard, Defendant cites to statements made by the Court on February 2, 2006 at the sentencing of a co-defendant which occurred after a six day trial between January 24, 2006 and February 1, 2006. Specifically, Defendant refers to this Court's following statement referring to Defendant: "he's got issues, unfortunately." Defendant cites no law or makes no argument that such statements were personal or extrajudicial nor is there any indication that the origin of such statements came from information gleaned outside the judicial proceeding. As previously stated, this court had just finished a six day trial wherein Defendant was jury convicted. Again, Defendant's arguments are without merit.

**XXI. Defendant Pouncy was deprived of his right to a fair trial due to the cumulative effect of errors that riddled his trial.**

Defendant next argues that he was deprived of his right to a fair trial based on the cumulative effect of the above argued "errors." However, "[b]ecause no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

**XXII. Appellate counsel's failure to timely file the motion for permission to file brief in excess of 50 page constitutes ineffective assistance of counsel and defendant Pouncy was thereby prejudiced because this error prevented him from having the issues, raised herein on the motion for relief from judgment, raised on his direct appeal of right. Had the issues raised herein been raised on his direct appeal of right it's a reasonable probability that the outcome of his direct appeal would have been different.**

Defendant next argues that appellate counsel's failure to timely file a motion for permission to file a brief in excess of 50 pages in the Court of Appeals was ineffective assistance of counsel because all the arguments currently presented to the Court were not presented to the Court of Appeals in Defendant's direct appeal. Such argument was addressed previously under subsection I of post-appellate counsel's Motion for Relief from Judgment and as stated above, Defendant was not deprived of effective assistance of appellate counsel.

**XXIII. The good cause requirement is satisfied in this case, because appellate counsel's ineffectiveness on direct appeal of right prevented defendant Pouncy, raising the issues which are being raised herein, on the motion for relief from judgment during his direct appeal of right. The only recourse available is to raise the remaining issues that could not be contained in the initial brief on direct appeal is to raise them at the motion for relief form judgment stage.**

Argument twenty-three relates directly to appellate counsel's alleged ineffectiveness. Again, such arguments are without merit and Defendant has failed to establish good cause for his failure to raise these issues in his prior appeals of right.

**XXIV. The actual prejudice requirement is also satisfied in the case at bar, because but for some of the issues raised herein defendant would have had a reasonable likely chance of acquittal, and some of the irregularities were so offensive to the maintenance of a sound judicial process that the convictions should not be allowed to stand regardless of its effect on the outcome of the case.**

Defendant's final argument within his Supplemental Motion for Relief from Judgment is that he has satisfied the actual prejudice requirement of MCR 6.508(D)(3). However, Defendant has not established actual prejudice. Again, the multitude of arguments presented by Defendant within this supplemental motion are meritless and absolutely no showing has been made under the law that "but for the alleged error, the defendant would have had a reasonably likely chance

of acquittal." As stated by the Court of Appeals "[a]t trial, there was considerable evidence that defendant committed the charged offenses, including the testimony of defendant's coconspirator in the carjackings." *People v Pouncy, supra,* pp. 19. Based on the foregoing analyses of both Defendant's Motion for Relief from Judgment as well as Defendant's in pro per Supplemental Motion for Relief from Judgment as well as each additional supplement and response filed by Defendant in pro per, as a whole, Defendant's Motion for Relief from Judgment must be **DENIED**.

## RETROACTIVE CHANGE IN LAW

Finally, and within a separate supplement filed by post-appellate counsel on May 19, 2010, Defendant argues that he is entitled to a new trial based on *Presley v Georgia*, 558 US ___; 130 S Ct 721; ___ : ___ L Ed 2d ___ (2010). Within *Presley*, the United States Supreme Court held that the defendant's Sixth Amendment right to a public trial was violated when the trial court excluded the public from the voir dire of prospective jurors. From this, defendant argues that a new trial should be ordered in this case. This same argument was presented to the Michigan Court of Appeals (though admittedly before the Supreme Court's decision in *Presley*) and specifically the Court of Appeals held:

> In his Standard 4 brief, defendant raises numerous additional claims of error, which he contends warrant relief. Specifically, defendant argues that he was deprived of a fair trial . . . by the trial court's deprivation of the defendant's right to have the public present during certain motion hearings and voir dire. . . We have carefully examined these claims of error and conclude that none of them have merit.

*People v Pouncy, supra,* pp. 31. MCR 6.508(D)(2) provides in pertinent part that the court may not grant relief to the defendant if the motion: "alleges grounds for relief which were decided against the defendant in a prior appeal or proceedings under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision"

In this regard, Defendant contends that *Presley, supra,* established such a retroactive change in the law that undermined the prior decision. However, the United States Supreme Court in *Presley* did not announce a new right nor was it a change in the law. The *Presley* Supreme Court relied heavily on their prior precedent and stated, citing *Gannett Co v DePasquale*, 443 US 368, 380; 99 S Ct 2898; 61 L Ed 2d 608 (1979): "Our cases have uniformly recognized the public-trial guarantee . . ." The highest Court gave no indication within *Presley* that it was either establishing a new right or law or that such new right or law was to be retroactive. Therefore, and pursuant to MCR 6.508(D)(2), this Court is unable to provide relief to Defendant Pouncy in this regard.

WHEREFORE, Defendant's Motion for Relief from Judgment in its entirety and including and an all supplements is hereby **DENIED**. Any further documents filed or submitted by Defendant will be addressed pursuant to the Court Rules and pursuant to MCR 6.502(G).

**IT IS SO ORDERED.**

Dated: 11/3/10

Honorable Archie L. Hayman
Circuit Court Judge (P37516)

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE**
**7TH JUDICIAL CIRCUIT**

PEOPLE OF THE STATE OF MICHIGAN          CASE NO.:  05-14154-FC
      Plaintiff,

v

                                    JUDGE:  ARCHIE L. HAYMAN

OMAR RASHAD POUNCY
      Defendant.          **PROOF OF SERVICE**

---

DAVID S. LEYTON (P-35086)          DANIEL D BREMER (P23554)
Prosecuting Attorney          Attorney for Defendant
DALE A. DEGARMO (P-36501)          1133 East Bristol Rd.
Assistant Prosecuting Attorney          Burton, MI 48529
100 Courthouse          (810) 232-6231
Genesee County
Flint, Michigan  48502          OMAR RASHAD POUNCY
(810) 257-3248          Inmate No: 571990
                                         Carson City Correctional Facility
                                         PO Box 5000
                                         Carson City, MI 48811

---

## PROOF OF SERVICE

I, Jessica R. Mainprize-Hajek, after being duly sworn, depose and state that on September _21_, 2010, by First Class United States Mail, a true copy of the ORDER DENYING DEFENDANT'S PRO PER MOTION TO STRIKE PEOPLE'S UNTIMELY ANSWER was sent to defense counsel and the defendant at the aforestated addresses and to the prosecution through interoffice mail.

Dated: _9·21·10_          _____
                                         Jessica R. Mainprize-Hajek
                                         Judicial Advisory Assistant to
                                         The Honorable Archie L. Hayman