**Exhibit A**

*Speckin Forensic Laboratories*

2400 SCIENCE PARKWAY, SUITE 200
OKEMOS, MICHIGAN 48864
517-349-3528 • FAX 517-349-5538

PLEASE DIRECT CORRESPONDENCE & PAYMENT HERE:
110 E. BROWARD BOULEVARD, SUITE 1700
FORT LAUDERDALE, FLORIDA 33301
954-763-6134 • FAX 954-688-4941

www.4N6.com

LEONARD A. SPECKIN
RETIRED DOCUMENT ANALYST

MICHAEL J. SINKE
LATENT PRINT SPECIALIST
CRIME SCENE RECONSTRUCTION
FORENSIC DOCUMENT ANALYST

ROBERT D. KULLMAN
FORENSIC DOCUMENT ANALYST

LARRY A. DALMAN
COMPUTER RECOVERY SPECIALIST

GEORGE F. JACKSON Ph.D.
TOXICOLOGIST

ERICH J. SPECKIN
FORENSIC DOCUMENT ANALYST
INK DATING SPECIALIST

ROGER J. BOLHOUSE MBA
LABORATORY DIRECTOR
CRIME SCENE RECONSTRUCTION
FORENSIC ANALYST & CONSULTANT

THOMAS K. HUARD Ph.D.
DNA ANALYST & CONSULTANT

ROBERT B. CILWA
FORENSIC FIREARMS EXAMINER

DR. JULIE HOWENSTINE
SEROLOGIST
DNA ANALYST & CONSULTANT
CRIME SCENE RECONSTRUCTION

RICHARD L. BRUNELLE
RETIRED INK DATING CONSULTANT

PATRICIA J. GIEBINK M.S.
FORENSIC CHEMIST

LAURENCE R. SIMSON M.D.
FORENSIC PATHOLOGIST

JAY A. SIEGEL Ph.D.
ANALYTICAL CHEMIST

COLIN V. SHELLHORN
COMPUTER & GRAPHICS SPECIALIST

November 02, 2011

DANIEL D BREMER, Attorney at Law
1133 E Bristol Road
Burton, MI 48529

Reference: PEOPLE V. OMAR RASHAD POUNCY
Our File Number: 20110220

Evidence Submitted:

One color photograph depicting a partial footwear impression (questioned Impression).

Examination Task:

The examination task was to attempt to determine the type/brand of shoe depicted in the photograph and further attempt to determine the approximate size of the shoe and determine if this impression could have been made by a size 13 or 13 ½ shoe.

Results of Examination:

The questioned impression depicted in the photograph was that of a right athletic type shoe. Using the Foster & Freeman Crimeshoe Database, the shoe pattern depicted most closely matched those found on Puma brand GW models and Puma brand Urban Mosey Leather shoes (See attached report for specific information).

There was a ruler (scale) positioned properly within the photograph thus allowing for measurements to be made. The questioned shoe measured approximately 10 7/8 inches in length and 3.5 inches in width at the ball. Shoes similar to the above described Puma GW shoes were obtained in various sizes for comparison purposes. The known size 9 Puma measured 11 inches in length and 3.5 inches at the ball and the known size 13 Puma measured 12 ¼ inches in length and 4 inches at the ball. After review, comparison, and measurements of numerous shoes, it was determined that the questioned impression was made by a size 9 or smaller shoe and could not have been made by a size 13 or 13 ½ shoe.

2

DANIEL D BREMER

Roger J. Bolhouse
Forensic Analyst & Consultant



From an unidentified scene-of-crime shoe print to detailed footwear information in one simple step

# Search Results

Click here to visit crimeshoe.com

| Entry Reference Number: | **20010220-People v Pouncy (10019)** |
|---|---|
| Date Submitted: | 25th October 2011 |
| Number Images Submitted: | 1 |
| Result: | Information |
| Number pages: | 8 |
| Comments: | The analysis of the submitted print has produced information on two models of footwear. Both records are of footwear produced by Puma. |

**FEEDBACK**
**Click here to provide us with**
**feedback on this report.**

Information provided here is taken from the SoleMate reference database, which is available for purchase via your local Foster & Freeman representative.

All shoeprint records presented in this document are suggested examples of footwear that in someway match the shoeprint images submitted. No implication is made that these are the only possible matches. The contents of this document should be seen as intelligence only and used in that manner.

The contents of this document, in any form, may not, except for legitimate purposes connected with detecting the crime referenced above, be copied, reproduced, transferred, distributed or stored without the prior written permission of Foster & Freeman Limited

foster+freeman

Original Image(s)

SHOE PRINT DEAD END OF KELLAR

F:\DDPWIN\PICTURES\05-4219-SHOE PRINT.JPG



foster+freeman

2

Comparison Image

foster+freeman

**Result (1)**

**Reference:** 3/Puma 17
**Manufacturer's Name:** Puma
**Model Name:** G.V. Suede,   G.V. Special, GW Leather, California, G. Vilas (349279)
**Notes:** G.V. Special - In-Store Summer 2002
GW Leather - In-Store October 2003
California,  G. Vilas (349279- Q1 2011



Sole                                Sole (Photo)

foster+freeman

4

5









foster+freeman

GV Suede (Uppers)



foster+freeman

GV Leather (Uppers)

**Result (2)**

**Reference:** 39/Puma/1u
**Manufacturer's Name:** Puma
**Model Name:** Urban Mosey Leather (351999)
**Notes:** Urban Mosey Leather (351999) - Q1 2011





Sole

Sole (Photo)

7

foster+freeman

8



foster+freeman

Urban Mosey Leather (Uppers)

**Exhibit B**

VERIZON WIRELESS

10/18/2005  09:17     908-203-5860

Page 1

| | A Switch | B Date | C Time | D Dir | E MDN | F Called # | G CPN | H SZI |
|---|---|---|---|---|---|---|---|---|
| 1 | Detroit10 | 9/24/2005 | 3:30:55 PM | MO | (810) 348-9846 | (810) 955-5644 | (810) 348-9846 | 105 |
| 2 | Detroit10 | 9/24/2005 | 2:57:11 PM | MM | (810) 348-9846 | 348-741-0055 | (810) 741-0055 | 73 |
| 3 | Detroit8 | 9/24/2005 | | | (810) 348-9846 | | (810) 658-1596 | 235 |
| 4 | Detroit8 | 9/24/2005 | 2:16:12 PM | MT | (810) 348-9846 | (313) 402-2931 | (810) 658-1596 | 43 |
| 5 | Detroit8 | 9/24/2005 | 2:00:30 PM | MT | (810) 348-9846 | (313) 402-2963 | (810) 955-5644 | 60 |
| 6 | Detroit8 | 9/24/2005 | 1:41:48 PM | MO | (810) 348-9846 | (810) 955-5644 | (810) 348-9846 | 22 |
| 7 | Detroit10 | 9/24/2005 | 1:39:21 PM | MO | (810) 348-9846 | (810) 955-5644 | (810) 348-9846 | 26 |
| 8 | Detroit10 | 9/24/2005 | 1:37:02 PM | MT | (810) 348-9846 | (313) 648-9898 | (810) 955-5644 | 117 |
| 9 | Detroit10 | 9/24/2005 | 1:07:09 PM | LL | (810) 348-9846 | (313) 402-2975 | (810) 736-3648 | 36 |
| 10 | Detroit8 | 9/24/2005 | 12:59:09 PM | MT | (810) 348-9846 | (313) 402-2945 | (810) 836-5074 | 30 |
| 11 | Detroit8 | 9/24/2005 | 12:57:20 PM | MT | (810) 348-9846 | (313) 402-2963 | (810) 836-5074 | 46 |
| 12 | Detroit8 | 9/24/2005 | 12:49:02 PM | MO | (810) 348-9846 | 742-8725 | (810) 348-9846 | 22 |
| 13 | Detroit8 | 9/24/2005 | 11:45:52 AM | MT | (810) 348-9846 | (313) 402-2922 | (810) 836-5074 | 80 |
| 14 | Detroit8 | 9/24/2005 | 11:05:21 AM | MO | (810) 348-9846 | 513-0886 | (810) 742-8725 | 65 |
| 15 | Detroit8 | 9/24/2005 | 10:56:52 AM | MT | (810) 348-9846 | (313) 402-2918 | (810) 742-8725 | 70 |
| 16 | Detroit8 | 9/24/2005 | 10:52:46 AM | MT | (810) 348-9846 | 742-8725 | (810) 348-9846 | 72 |
| 17 | Detroit8 | 9/24/2005 | 10:26:16 AM | MT | (810) 348-9846 | (313) 402-2933 | (810) 836-5074 | 73 |
| 18 | Detroit8 | 9/24/2005 | 10:21:37 AM | MM | (810) 348-9846 | 348-9846 | (810) 444-8621 | 8 |
| 19 | Detroit8 | 9/24/2005 | 10:20:23 AM | MO | (810) 348-9846 | 618-9257 | (810) 348-9846 | 35 |
| 20 | Detroit8 | 9/24/2005 | 10:19:18 AM | MO | (810) 348-9846 | (810) 444-8621 | (810) 742-8725 | 58 |
| 21 | Detroit8 | 9/24/2005 | 10:14:25 AM | MT | (810) 348-9846 | (313) 402-2996 | (810) 742-8725 | 123 |
| 22 | Detroit8 | 9/23/2005 | 8:01:57 PM | MO | (810) 348-9846 | (1248) 249-0868 | (810) 348-9846 | 23 |
| 23 | Detroit8 | 9/23/2005 | 8:00:35 PM | MO | (810) 348-9846 | (1248) 627-5787 | (810) 836-5074 | 116 |
| 24 | Detroit8 | 9/23/2005 | 5:51:11 PM | MT | (810) 348-9846 | (313) 402-2994 | (810) 836-5074 | 37 |
| 25 | Detroit8 | 9/23/2005 | 4:57:25 PM | MO | (810) 348-9846 | 743-6090 | (810) 348-9846 | 81 |
| 26 | Detroit8 | 9/23/2005 | 4:42:28 PM | MO | (810) 348-9846 | 743-6090 | (810) 348-9846 | 54 |
| 27 | Detroit8 | 9/23/2005 | 4:37:13 PM | MO | (810) 348-9846 | 618-9257 | (810) 348-9846 | 28 |
| 28 | Detroit8 | 9/23/2005 | 4:25:24 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 7 |
| 29 | Detroit8 | 9/23/2005 | 3:46:39 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 2 |
| 30 | Detroit8 | 9/23/2005 | 3:43:22 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 5 |
| 31 | Detroit8 | 9/23/2005 | 3:35:49 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 3 |
| 32 | Detroit8 | 9/23/2005 | 3:33:28 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 6 |
| 33 | Detroit8 | 9/23/2005 | 3:32:23 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 7 |
| 34 | Detroit8 | 9/23/2005 | 3:31:49 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 7 |
| 35 | Detroit8 | 9/23/2005 | 3:31:05 PM | MO | (810) 348-9846 | | (810) 348-9846 | |
| 36 | Detroit8 | | | | | | | |

**EXHIBIT**
*13*

PAGE 05/05
VERIZON WIRELESS
10/18/2005  09:17   908-2   5860

Page 2

|   | A Switch | B Date | C Time | D Dir | E MDN | F Called # | G CPN | H Szr |
|---|---|---|---|---|---|---|---|---|
| 1 | Detroit8 | 9/23/2005 | 3:30:29 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 21 |
| 37 | Detroit8 | 9/23/2005 | 3:30:02 PM | MO | (810) 348-9846 | 743-4622 | (810) 348-9846 | 31 |
| 38 | Detroit8 | 9/23/2005 |  |  |  | 743-1575 | (810) 348-9846 | 36 |
|  |  | 9/23/2005 | 12:19:33 PM | MO | (810) 348-9846 | 743-7964 | (810) 348-9846 | 32 |
| 40 | Detroit8 | 9/23/2005 |  | NO | (810) 548-9846 | 743-7962 | (810) 348-9845 | 82 |
| 41 | Detroit8 | 9/23/2005 | 11:51:21 AM | NO | (810) 348-9846 | (313) 402-2959 | (810) 658-1596 | 145 |
| 42 | Detroit8 | 9/23/2005 | 9:35:30 AM | NT | (810) 348-9846 | 241-6157 | (810) 348-9846 | 37 |
| 43 | Detroit8 | 9/23/2005 | 9:20:55 AM | MM | (810) 348-9846 |  |  |  |

Explanation Form

| SWITCH | DATE | TIME | DIR | MDN | CALLED # | CPN | SZR |
|---|---|---|---|---|---|---|---|
| This is the switch that the call is hitting off of. | This is the date of the call. | This is the start time of the call. | MO=Outbound call | This is your target #. | If the call was an out going call=then the outgoing # that your target dialed will be in this column. | This is the calling party #. | This is the duration of the call in seconds |
| | | | MT=Incoming call | | If the call was an incoming #=then your target # will appear this column. | If the call was an outgoing call=then your target # will be in this column. | |
| | | | MF=Incoming call to voicemail=in rare cases, it could be mobile forwarding | | | If the call was an incoming call=then the incoming # to your target will appear in this column | |
| | | | MM=Mobile to mobile call | | | | |
| | | | LL, CN, TR and ME all pertain to routing information and will not be relevant to your investigation. | | | | |

**NOTES:**

When the # in the MDN column, CALLED # column and the CPN # column are all different, then you are looking at a routing #. The Routing # will appear in the CALLED # column.
(All three numbers are different)

If you see your target # in the MDN column, the CALLED # column and this CPN # column, then you are looking at your target checking his/her voicemail. (All three numbers are the same)

**Codes:**

#86 is voicemail retrieval
#228 is checking services balance
more or checking minutes
#777 is data/web services
#728 is prepaid voicemail retrieval
#729 is adding minutes for prepaid
*67 is used to block the mobile #
*32 is used to unblock the mobile #
#3282 is checking how many text messages sent/received

**Exhibit C**

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

PEOPLE OF THE STATE
OF MICHIGAN,

                Plaintiff,

vs

OMAR RASHAD POUNCY,

                Defendant.

File No. 05-017154-FC

JUDGE ARCHIE L. HAYMAN

David S. Leyton (P-35086)
Prosecuting Attorney
900 South Saginaw Street
Flint, Michigan 48502
(810) 257-3232

Daniel D. Bremer (P-23554)
Attorney for Defendant
1133 East Bristol Road
Burton, Michigan 48529
(810) 232-6231

## AFFIDAVIT OF QUILLIE B. STRONG

State of Michigan    )
                  ) ss.
County of Genesee  )

Quillie B. Strong deposes and says as follows:

1. I have previously signed an affidavit dated November 1, 2008 in which I said that I was the subscriber for the cell phone number 810-836-5074 and that I had this account set up for Jacob Joe Woods.

2. I said that I had this account set up because Mr. Woods was under 18 years of age at that time and he could not set up his own account.

3. I reaffirm everything that I said in the affidavit that I signed on November 1, 2008.



4. The person shown in the photograph that appears on this page is not the person known to me as Jacob Joe Woods.

5. I am willing to appear in court to testify that everything that I have said in this affidavit is true.

I DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.

Dated: 2- -5-

QUILLIE B. STRONG

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

PEOPLE OF THE STATE
OF MICHIGAN,

                    Plaintiff,                     File No. 05-017154-FC

                                                   JUDGE ARCHIE L. HAYMAN

vs

OMAR RASHAD POUNCY,

                    Defendant.

_____/

David S. Leyton (P-35086)                Daniel D. Bremer (P-23554)
Prosecuting Attorney                     Attorney for Defendant
900 South Saginaw Street                 1133 East Bristol Road
Flint, Michigan 48502                    Burton, Michigan 48529
(810) 257-3232                           (810) 232-6231

_____

## AFFIDAVIT OF QUILLIE B. STRONG

State of Michigan    )
                     ) ss.
County of Genesee    )

Quillie B. Strong deposes and says as follows:

1. I have previously signed an affidavit dated November 1, 2008 in which I said that I was the subscriber for the cell phone number 810-836-5074 and that I had this account set up for Jacob Joe Woods.

2. I said that I had this account set up because Mr. Woods was under 18 years of age at that time and he could not set up his own account.

3. I reaffirm everything that I said in the affidavit that I signed on November 1, 2008.

4. The person shown in the photo attached to this affidavit is the person known to me as Jacob Joe Woods.

5. I am willing to appear in court to testify that everything that I have said in this affidavit is true.

-1-

I DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.

Dated: 10-6-2011

QUILLIE B. STRONG

On this ___6th___ day of October, 2011, before me, a Notary Public in and for said County of Genesee personally appeared Quillie B. Strong, to be known to be the person listed above and who provided the aforementioned statements.

_____                    Genesee County, Michigan
Notary Public

RONALD P. ROLAND
NOTARY PUBLIC, STATE OF MI
COUNTY OF GENESEE
MY COMMISSION EXPIRES Mar 10, 2014
ACTING IN COUNTY OF

-2-



**Exhibit D**



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 913-315-0660   Fax: 816-600-3111
E-mail: Amy.Valencia@sprint.com

**Amy Valencia**
Subpoena Specialist

4/4/2011

Daniel Bremer
Daniel Bremer Law Firm
1133 East Bristol Road
Burton, MI 48529

Your Case Number: 05017154FC
Sprint Case Number: 2011-062900

Dear Daniel Bremer,

Pursuant to the above-referenced case, I am enclosing the requested information for the specified time period associated with the following number(s).

Should you have any questions or further inquiries, please contact the Sprint Subpoena Compliance Group at 866-259-7534.

Sincerely,

Amy Valencia
Subpoena Compliance
Sprint Corporate Security
Amy.Valencia@sprint.com

Enclosures

*Notice: If the records contained in the attached package are utilized in trial proceedings, and if you require a records custodian for authentication, be advised Sprint does not have local representatives. Sprint's Trial Team is located at our Corporate Headquarters in Overland Park, Kansas. You will need to contact the Trial Team at CSTrialTeam@Sprint.com or call our office at 913-315-8775. Our office will require at least two-weeks notice in addition to pre-paid travel arrangements by your office.

**Sprint L-Site**
Sprint has an interactive web tool for law enforcement known as L-Site. If you are unfamiliar with L-Site and wish to obtain further information, please send an email to: L-Site@Sprint.com.

1

NO DATA FOUND

\*\*\*\*\*\*\*\*\*\*\*\*EQUIPMENT\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
International Mobile Subscriber Identity(s) (IMSI(s))
316010031891287    Status Date: 8/25/2005 1:36:02 PM    Status: A

Mobile Station Identification Number(s) (MSID(s))
NO DATA FOUND

Subscriber Identity Module(s) (SIM)
000819690452310    Effective: 6/3/2005    Expiration: Active through Date
Searched

Electronic Serial Number (ESN(s)/MSN(s))
364YFE76CS    Effective: 6/21/2005    Expiration: Active through Date Searched

IMEI(s)
NO DATA FOUND

\*\*\*\*\*\*\*\*\*\*\*\*FEATURES\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Anytime Minutes  Effective: 9/12/2005    Expiration: Active through Date
Searched
Call Detail  Effective: 9/12/2005    Expiration: Active through Date Searched
Caller ID  Effective: 9/12/2005    Expiration: Active through Date Searched
Cellular Minutes  Effective: 9/12/2005    Expiration: Active through Date
Direct Connect Cross Flee  Effective: 9/12/2005    Expiration: Active through Date
Searched
Direct Connect on Nextel  Effective: 9/12/2005    Expiration: Active through Date
Searched
Domestic LD Rate $0  Effective: 9/12/2005    Expiration: Active through Date
Searched
Modified Nights and Weeke  Effective: 9/12/2005    Expiration: Active through Date
Searched
Nationwide Direct Connect  Effective: 9/12/2005    Expiration: Active through Date
Searched
SMS Text Messages  Effective: 9/12/2005    Expiration: Active through Date
Searched
Talkgroup(SM)  Effective: 9/12/2005    Expiration: Active through Date Searched
VoiceMail  Effective: 9/12/2005    Expiration: Active through Date Searched
Mobile To Mobile Minutes  Effective: 9/9/2005    Expiration: Active through Date
Searched
Sprint Data Services  Effective: 8/12/2005    Expiration: Active through Date
Searched
Packet Data Service  Effective: 8/12/2005    Expiration: Active through Date
Searched
Nextel Service and Repair  Effective: 3/3/2005    Expiration: Active through Date
Searched
Direct Protect Insurance  Effective: 2/10/2005    Expiration: Active through Date
Searched

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**Request Type:**    **Text Historic**
Date Range:    9/1/2005 to 10/31/2005
Subject Number:    8~~1008365074~~
3

# Sprint Subscriber Information
## Sprint Case #: 2011-062900
## Reference Case #: 05017154FC

**Request Type:**    CDR
Date Range:          9/1/2005 to 10/31/2005
Subject Number:      8108365074

Please see the attached records. As a regular business practice, Sprint Nextel only stores incoming digits and cell site information on its CDMA and IDEN networks for a finite period of time in an "online" call detail record (hereinafter, "CDR") archive. For both the CDMA network (formerly known as the Sprint PCS network), and for the IDEN network, (formerly known as the Nextel network), records are kept for approximately the most recent 18 month period from the date of processing. Sprint Nextel maintains CDR in the format of customer bills (which provide the date and time of an incoming call, but not the incoming digits or location information) for dates prior to the last 18 month period.
**********************************************

**Request Type:**    Subscription Info (Basic)
Date Range:          10/14/2005 to 10/14/2005
Subject Number:      8108365074

*************** ACCOUNT DETAILS ********************

Billing Account Number (BAN): 139884921
Account Establish Date: 2/10/2005
Account Expiration (Cancel) Date: Active through Date Searched

Account Billing Address(es):
Effective: 2/10/2005
QUILLIE STRONG
6128 STEM LN
MOUNT MORRIS, MI 48458

Account Contact Numbers:
Phone: 8107854898  Active Date: 9/12/2005

*************** SUBSCRIBER DETAILS ********************
SubscriberID: 2750740201
Personal Telephone Number (PTN / MDN)
8108365074  Status Date: 8/25/2005 1:36:02 PM        Status: A

Urban Fleet Mobile Identifier
(UFMI)              Effective
131*253542*5       8/25/2005 1:36:02 PM      Status: A

Internet Protocol (IP) Address
11.111.100.107  Status Date: 8/25/2005 1:36:02 PM     Status: A

Network Access Identifier
(NAI)
2

No text message content was found for this number during the requested time period. Due to the limitations of the iDEN network, Sprint may or may not have access to iDEN text messages. If available, iDEN text messaging is only retrievable for the most recent 7 day period.

*******************************************************

**Request Type:**      **Voicemail Access**
Date Range:          9/1/2005 to 9/1/2005
Subject Number:      8108365074

No voicemail messages were found for this number during the requested date range. This request was out of the retrieval date range. Voice mail messages are stored for 20 days from the date the message is left. Voice messages are stored for 30 days if they have been saved. If the voice message has been deleted by the subscriber we are not able to retrieve it.

*******************************************************

4

# SUBSCRIBER ACTIVITY DETAIL

## Cellular Services Call Detail

To view coverage maps and rates visit Sprint.com

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Min:Sec | Usage | *Long Dist/Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 09/24 | 12:22A | FLINT,MI | 810-280-7185 OP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 2 | 09/24 | 12:23A | FLINT,MI | 810-422-4121 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 3 | 09/24 | 12:26A | FLINT,MI | 810-280-7185 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |

---

**Account Number** 1393884921
**Account Name** ... LONG
**Billing Period** 09/24/05-10/23/05
**Invoice Date** October 27, 2005
**Page** ...

Sprint

## Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Min:Sec | Usage | *Long Dist/Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 4 | 09/24 | 06:02A | FLINT,MI | Voice Mail OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 5 | 09/24 | 06:07A | FLINT,MI | 810-577-5077 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 6 | 09/24 | 06:08A | FLINT,MI | 810-577-5077 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 7 | 09/24 | 10:01A | FLINT,MI | 810-813-7655 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 8 | 09/24 | 10:02A | FLINT,MI | 810-515-1053 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 9 | 09/24 | 10:17A | FLINT,MI | 810-515-1053 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 10 | 09/24 | 10:18A | FLINT,MI | 810-239-0033 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 11 | 09/24 | 10:19A | FLINT,MI | Unavailable OP/IMI | | 3:00 | 0.00 | 0.00 | 0.00 |
| 12 | 09/24 | 10:20A | Incoming | Unavailable OP/IMI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 13 | 09/24 | 10:25A | Incoming | Unavailable OP/IMI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 14 | 09/24 | 10:25A | DETROIT,MI | 810-836-5073 OP/IMI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 15 | 09/24 | 10:25A | Incoming | 810-836-5073 OP/IMI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 16 | 09/24 | 10:28A | Incoming | Voice Mail OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 17 | 09/24 | 10:31A | FLINT,MI | 810-785-4899 OP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 18 | 09/24 | 11:02A | FLINT,MI | 810-785-7720 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 19 | 09/24 | 11:03A | FLINT,MI | 810-785-7655 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 20 | 09/24 | 10:55A | FLINT,MI | Unavailable OP/ICM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 21 | 09/24 | 10:55A | Incoming | 810-836-4111 OP/IMI/PU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 22 | 09/24 | 11:02A | FLINT,MI | 810-785-7720 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 23 | 09/24 | 11:02A | Incoming | 810-785-7720 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 24 | 09/24 | 11:02A | Incoming | Voice Mail OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 25 | 09/24 | 11:08A | FLINT,MI | 810-785-7720 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 26 | 09/24 | 11:09A | FLINT,MI | 810-785-7655 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 27 | 09/24 | 11:14A | FLINT,MI | 810-813-7655 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 28 | 09/24 | 11:11A | FLINT,MI | Unavailable OP/IMI | | 3:00 | 0.00 | 0.00 | 0.00 |
| 29 | 09/24 | 11:14A | Incoming | 810-836-5073 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 30 | 09/24 | 11:15A | FLINT,MI | Voice Mail OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 31 | 09/24 | 11:27A | FLINT,MI | Voice Mail OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 32 | 09/24 | 11:36A | FLINT,MI | 810-788-1828 OP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 33 | 09/24 | 11:37A | FLINT,MI | Voice Mail OP/IMI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 34 | 09/24 | 11:40A | Incoming | 810-836-2206 OP/IMI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 35 | 09/24 | 11:45A | Incoming | 810-836-2206 OP/IMI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 36 | 09/24 | 11:52A | | 810-836-2206 OP/IMI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 37 | 09/24 | 11:52A | FLINT,MI | 810-516-1094 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 38 | 09/24 | 11:53A | FLINT,MI | 810-516-1093 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 39 | 09/24 | 12:02P | FLINT,MI | 810-785-4074 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 40 | 09/24 | 12:02P | Incoming | 810-785-4074 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 41 | 09/24 | 12:26P | FLINT,MI | 810-813-7655 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 42 | 09/24 | 12:41P | Incoming | 810-787-1828 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 43 | 09/24 | 12:55P | Incoming | 810-515-1053 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 44 | 09/24 | 01:00P | Incoming | 810-515-1053 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 45 | 09/24 | 01:00P | FLINT,MI | 810-836-5073 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 46 | 09/24 | 01:41P | FLINT,MI | 810-836-5470 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 47 | 09/24 | 01:51P | FLINT,MI | 810-785-7720 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 48 | 09/24 | 01:51P | DETROIT,MI | 810-785-0088 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 49 | 09/24 | 01:53P | FLINT,MI | 810-785-0088 OP/IMI/PU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 50 | 09/24 | 02:02P | FLINT,MI | 810-515-5043 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 51 | 09/24 | 02:02P | FLINT,MI | 313-768-0888 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 52 | 09/24 | 02:27P | FLINT,MI | 810-384-7301 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 53 | 09/24 | 02:35P | FLINT,MI | 810-515-5023 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 54 | 09/24 | 02:46P | FLINT,MI | 810-458-4074 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 55 | 09/24 | 03:04P | FLINT,MI | 810-835-0824 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 56 | 09/24 | 03:07P | Incoming | 810-813-7655 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 57 | 09/24 | 03:12P | FLINT,MI | 810-835-2206 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 58 | 09/24 | 03:00P | FLINT,MI | Voice Mail OP/PU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 59 | 09/24 | 03:32P | FLINT,MI | 810-743-7607 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 60 | 09/24 | 03:46P | FLINT,MI | 810-515-5043 OP/IMI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |

Continued...

## SUBSCRIBER ACTIVITY DETAIL

**DETAIL CONTINUED... 5, continued**

### Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) Min/Sec | Usage | Long Dist/Other | Total Charges |
|---|---|---|---|---|---|---|---|---|
| 281 | 09/27 | 04:33P | Incoming | 810-785-0035 FP | 1:00 | 0.00 | 0.00 | 0.00 |
| 282 | 09/27 | 04:46P | FLINT,MI | 810-820-0445 FP | 1:00 | 0.00 | 0.00 | 0.00 |
| 283 | 09/27 | 04:46P | FLINT,MI | 810-812-2494 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 284 | 09/27 | 05:00P | FLINT,MI | 810-787-8161 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 285 | 09/27 | 05:07P | Voice Mail | PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 286 | 09/27 | 05:22P | FLINT,MI | 810-820-0445 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 287 | 09/27 | 05:22P | FLINT,MI | 810-422-4121 PP IMM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 288 | 09/27 | 05:23P | FLINT,MI | 810-238-7846 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 289 | 09/27 | 05:24P | FLINT,MI | 810-785-0035 PP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 290 | 09/27 | 05:26P | FLINT,MI | 810-377-5720 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 291 | 09/27 | 05:28P | FLINT,MI | 810-785-3720 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 292 | 09/27 | 05:32P | FLINT,MI | 810-785-3720 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 293 | 09/27 | 05:35P | Incoming | 989-323 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 294 | 09/27 | 05:38P | FLINT,MI | 810-391-0026 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 295 | 09/27 | 05:39P | FLINT,MI | 810-785-8461 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 296 | 09/27 | 05:40P | FLINT,MI | 810-785-8461 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 297 | 09/27 | 05:44P | FLINT,MI | 810-743-3489 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 298 | 09/27 | 05:47P | Incoming | 810-835-5073 OP/MM | 2:00 | 0.00 | 0.00 | 0.00 |
| 299 | 09/27 | 05:49P | FLINT,MI | 810-835-5073 OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 300 | 09/27 | 05:54P | FLINT,MI | 810-785-4517 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 301 | 09/27 | 05:54P | FLINT,MI | 248-910-5089 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 302 | 09/27 | 06:00P | Incoming | 810-785-6491 PP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 303 | 09/27 | 06:01P | FLINT,MI | 810-515-5554 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 304 | 09/27 | 06:09P | FLINT,MI | 810-515-5554 OP/MM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 305 | 09/27 | 06:09P | FLINT,MI | 810-835-5073 OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 306 | 09/27 | 06:15P | Incoming | 810-835-5073 OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 307 | 09/27 | 06:18P | FLINT,MI | 810-787-8161 OP | 2:00 | 0.00 | 0.00 | 0.00 |
| 308 | 09/27 | 06:32P | FLINT,MI | 810-377-5720 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 309 | 09/27 | 06:35P | FLINT,MI | 810-787-8161 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 310 | 09/27 | 06:38P | Incoming | 810-785-4898 OP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 311 | 09/27 | 06:39P | FLINT,MI | 810-377-8161 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 312 | 09/27 | 06:39P | Incoming | 810-787-8161 OP | 2:00 | 0.00 | 0.00 | 0.00 |
| 313 | 09/27 | 06:41P | Incoming | 478-742-2214 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 314 | 09/27 | 06:44P | Voice Mail | 810-397-9428 OP IMM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 315 | 09/27 | 06:49P | FLINT,MI | 810-423-2494 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 316 | 09/27 | 06:51P | FLINT,MI | 810-752-2554 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 317 | 09/27 | 06:53P | FLINT,MI | Voice Mail | 4:00 | 0.00 | 0.00 | 0.00 |
| 318 | 09/27 | 06:59P | FLINT,MI | 810-785-0728 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 319 | 09/27 | 07:00P | Incoming | 810-359-8033 OP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 320 | 09/27 | 07:04P | FLINT,MI | 810-787-8161 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 321 | 09/27 | 07:22P | FLINT,MI | 810-836-2206 OP/MM | 2:00 | 0.00 | 0.00 | 0.00 |
| 322 | 09/27 | 07:31P | Incoming | 810-347-3497 OP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 323 | 09/27 | 07:35P | Incoming | Voice Mail | 1:00 | 0.00 | 0.00 | 0.00 |
| 324 | 09/27 | 07:35P | Incoming | Unavailable OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 325 | 09/27 | 07:46P | Incoming | 810-422-4121 OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 326 | 09/27 | 07:42P | FLINT,MI | 810-422-4121 OP/IMM | 1:00 | 0.00 | 0.00 | 0.00 |
| 327 | 09/27 | 07:51P | FLINT,MI | 810-836-2206 OP IMM | 1:00 | 0.00 | 0.00 | 0.00 |
| 328 | 09/27 | 08:02P | FLINT,MI | 810-835-5073 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 329 | 09/27 | 08:09P | FLINT,MI | Unavailable OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 330 | 09/27 | 08:09P | FLINT,MI | 810-422-4121 OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 331 | 09/27 | 08:17P | Incoming | 810-422-4121 OP/MM | 4:00 | 0.00 | 0.00 | 0.00 |
| 332 | 09/27 | 08:17P | Incoming | Voice Mail | 1:00 | 0.00 | 0.00 | 0.00 |
| 333 | 09/27 | 08:19P | Incoming | 810-785-4898 OP | 1:00 | 0.00 | 0.00 | 0.00 |

### Cellular Services Call Detail

Account Number 1398884921
Billing Period 09/24/05-10/23/05
Page
Invoice Date October 27, 2005
Account Name CLIFFORD SPRING

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) Min/Sec | Usage | Long Dist/Other | Total Charges |
|---|---|---|---|---|---|---|---|---|
| 334 | 09/27 | 08:35P | Incoming | 810-785-0997 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 335 | 09/27 | 08:47P | Incoming | Unavailable OP/MM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 336 | 09/27 | 08:47P | FLINT,MI | 810-422-4121 OP/IMM/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 337 | 09/27 | 09:04P | FLINT,MI | Unavailable OP/MM | 2:00 | 0.00 | 0.00 | 0.00 |
| 338 | 09/27 | 09:05P | FLINT,MI | 810-422-4121 OP/MM | 2:00 | 0.00 | 0.00 | 0.00 |
| 339 | 09/27 | 09:09P | Incoming | 810-240-4751 OP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 340 | 09/27 | 09:15P | FLINT,MI | 810-785-4898 OP | 2:00 | 0.00 | 0.00 | 0.00 |
| 341 | 09/27 | 09:15P | Incoming | 810-835-5073 OP/MM | 2:00 | 0.00 | 0.00 | 0.00 |
| 342 | 09/27 | 09:15P | FLINT,MI | 810-835-5073 OP/MM | 2:00 | 0.00 | 0.00 | 0.00 |
| 343 | 09/27 | 09:16P | SOUTHFIELD,MI | 248-910-5089 OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 344 | 09/27 | 09:35P | SOUTHFIELD,MI | 810-835-5073 OP/MM | 2:00 | 0.00 | 0.00 | 0.00 |
| 345 | 09/27 | 09:37P | Incoming | 810-10-41A | 1:00 | 0.00 | 0.00 | 0.00 |
| 346 | 09/27 | 09:45P | FLINT,MI | 810-789-1253 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 347 | 09/27 | 09:50P | FLINT,MI | 810-785-4898 OP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 348 | 09/27 | 09:55P | Incoming | 810-449-3872 OP IMM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 349 | 09/27 | 10:00P | FLINT,MI | Voice Mail | 2:00 | 0.00 | 0.00 | 0.00 |
| 350 | 09/27 | 10:11P | Incoming | Voice Mail | 1:00 | 0.00 | 0.00 | 0.00 |
| 351 | 09/27 | 10:11P | FLINT,MI | 810-821-6238 PP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 352 | 09/27 | 10:14A | LENNON,MI | 810-821-6238 PP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 353 | 09/27 | 09:15A | FLINT,MI | Voice Mail | 3:00 | 0.00 | 0.00 | 0.00 |
| 354 | 09/28 | 09:15A | FLINT,MI | 810-577-8808 PP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 355 | 09/28 | 09:18A | Incoming | 989-531 OP IMM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 356 | 09/28 | 10:27A | FLINT,MI | 810-836-2206 OP/MM | 1:00 | 0.00 | 0.00 | 0.00 |
| 357 | 09/28 | 10:27A | Incoming | 810-257-2714 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 358 | 09/28 | 10:35A | FLINT,MI | 810-743-0479 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 359 | 09/28 | 10:57A | Incoming | 248-910-5089 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 360 | 09/28 | 11:07A | FLINT,MI | 810-789-1253 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 361 | 09/28 | 11:07A | FLINT,MI | 810-789-1233 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 362 | 09/28 | 11:14A | FLINT,MI | 810-789-1833 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 363 | 09/28 | 11:14A | FLINT,MI | Voice Mail | 1:00 | 0.00 | 0.00 | 0.00 |
| 364 | 09/28 | 11:14A | FLINT,MI | 810-789-1253 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 365 | 09/28 | 11:31A | SOUTHFIELD,MI | 248-910-5089 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 366 | 09/28 | 11:31A | TISBURG... | Voice Mail | 2:00 | 0.00 | 0.00 | 0.00 |
| 367 | 09/28 | 11:33A | FLUSHING,MI | 810-659-1100 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 368 | 09/28 | 11:33A | FLINT,MI | 810-618-5798 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 369 | 09/28 | 11:33A | FLINT,MI | 810-423-6911 PP/MM/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 370 | 09/28 | 11:35A | FLINT,MI | 810-423-6911 PP/MM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 371 | 09/28 | 11:41A | FLINT,MI | 810-423-3325 PP IMM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 372 | 09/28 | 11:43A | FLINT,MI | 810-785-8234 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 373 | 09/28 | 11:43A | Incoming | 810-785-1253 OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 374 | 09/28 | 11:44A | FLINT,MI | 810-234-807 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 375 | 09/28 | 11:46A | Incoming | 810-782-1928 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 376 | 09/28 | 12:04P | FLINT,MI | 810-223-4312 PP/MM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 377 | 09/28 | 12:21P | FLINT,MI | Voice Mail | 1:00 | 0.00 | 0.00 | 0.00 |
| 378 | 09/28 | 12:24P | FLINT,MI | 810-814-4074 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 379 | 09/28 | 12:55P | FLINT,MI | 810-785-4789 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 380 | 09/28 | 11:50A | Incoming | 810-836-2206 PP/MM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 381 | 09/28 | 12:55P | FLINT,MI | 810-789-1253 PP | 4:00 | 0.00 | 0.00 | 0.00 |
| 382 | 09/28 | 12:55P | FLINT,MI | 810-789-1253 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 383 | 09/28 | 12:51P | FLINT,MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 388 | 09/28 | 12:55P | FLINT,MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 389 | 09/28 | 12:55P | FLINT,MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 390 | 09/28 | 01:00P | FLINT,MI | | 4:00 | 0.00 | 0.00 | 0.00 |

Continued...



## SUBSCRIBER ACTIVITY DETAIL

### Cellular Services Call Detail — continued

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Min:Sec | Usage | "Long Dist/ Other" | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 506 | 09/25 | 09:28A | FLUSHING,MI | 810-659-1113 PP/PF | | 2:00 | 0.00 | 0.00 | 0.00 |
| 507 | 09/25 | 09:29A | FLINT,MI | 866-471-6163 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 508 | 09/29 | 09:17A | FLINT,MI | 810-257-2423 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 509 | 09/29 | 09:17A | FLINT,MI | 810-257-2423 PP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 510 | 09/29 | 09:05A | FLINT,MI | 810-659-1113 PP/CH | | 1:00 | 0.00 | 0.00 | 0.00 |
| 511 | 09/29 | 09:07A | FLINT,MI | 810-836-2206 PP/IM | | 3:00 | 0.00 | 0.00 | 0.00 |
| 512 | 09/29 | 09:14A | Incoming | 810-835-2206 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 513 | 09/29 | 10:34A | Incoming | 810-513-9109 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 514 | 09/29 | 10:35A | FLINT,MI | 810-513-9109 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 515 | 09/29 | 10:38A | Incoming | 810-835-2206 PP/IM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 516 | 09/29 | 10:44A | FLINT,MI | 810-835-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 517 | 09/29 | 10:49A | FLINT,MI | 810-257-2423 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 518 | 09/29 | 10:54A | Incoming | 810-835-2206 PP/IM/PU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 519 | 09/29 | 11:05A | Incoming | 810-515-6654 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 520 | 09/29 | 11:05A | FLINT,MI | 810-513-9109 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 521 | 09/29 | 11:28A | FLINT,MI | 248-910-0690 PP/PU | | 4:00 | 0.00 | 0.00 | 0.00 |
| 522 | 09/29 | 11:29A | FLINT,MI | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 523 | 09/29 | 11:30A | SOUTHFIELD,MI | 810-835-2206 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 524 | 09/29 | 11:31A | FLINT,MI | 810-835-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 525 | 09/29 | 11:43A | Incoming | 810-787-7492 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 526 | 09/29 | 11:43A | FLINT,MI | 313-769-0988 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 527 | 09/29 | 11:44A | Incoming | 810-787-7492 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 528 | 09/29 | 11:46A | FLINT,MI | 810-785-7720 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 529 | 09/29 | 11:47A | Incoming | 810-701-1211 PP/IM | | 3:00 | 0.00 | 0.00 | 0.00 |
| 530 | 09/29 | 11:55A | FLINT,MI | 810-701-3517 PP/IM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 531 | 09/29 | 12:07P | Incoming | 810-577-8989 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 532 | 09/29 | 12:10P | FLINT,MI | 810-577-8989 PP/IM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 533 | 09/29 | 12:12P | FLINT,MI | 810-394-8389 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 534 | 09/29 | 12:17P | FLINT,MI | 810-577-3281 PP/IM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 535 | 09/29 | 12:19P | FLINT,MI | 810-835-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 536 | 09/29 | 12:20P | FLINT,MI | 810-835-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 537 | 09/29 | 12:22P | FLINT,MI | 810-835-5073 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 538 | 09/29 | 12:23P | FLINT,MI | 810-835-2206 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 539 | 09/29 | 12:30P | FLINT,MI | 810-835-5073 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 540 | 09/29 | 12:33P | FLINT,MI | 810-835-2206 PP/IM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 541 | 09/29 | 12:35P | FLINT,MI | 810-234-4073 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 542 | 09/29 | 12:35P | FLINT,MI | 810-701-3041 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 543 | 09/29 | 12:35P | Incoming | 810-701-3041 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 544 | 09/29 | 12:44P | Incoming | Unavailable PP/CH | | 1:00 | 0.00 | 0.00 | 0.00 |
| 545 | 09/29 | 12:44P | FLINT,MI | 810-892-2292 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 546 | 09/29 | 12:44P | FLINT,MI | 810-479-8892 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 547 | 09/29 | 12:45P | Incoming | 866-471-6163 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 548 | 09/29 | 12:58P | Incoming | 810-835-5073 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 549 | 09/29 | 01:14P | Incoming | 810-691-1324 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 550 | 09/29 | 01:58P | FLINT,MI | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 551 | 09/29 | 02:19P | Incoming | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 552 | 09/29 | 02:35P | Incoming | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 553 | 09/29 | 02:35P | FLINT,MI | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |

Account Number 139884921
Account Name
Billing Period 09/24/05-10/23/05
Invoice Date October 27, 2005
Page
Sprint

### Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Min:Sec | Usage | "Long Dist/ Other" | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 554 | 09/29 | 02:35P | FLINT,MI | 810-836-2206 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 555 | 09/29 | 02:36P | FLINT,MI | 810-835-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 556 | 09/29 | 02:46P | Incoming | 810-836-2206 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 557 | 09/29 | 02:49P | FLINT,MI | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 558 | 09/29 | 03:11P | LA GRANGE,IL | 708-724-4737 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 559 | 09/29 | 03:15P | Incoming | 810-835-5470 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 560 | 09/29 | 03:15P | FLINT,MI | 810-835-5470 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 561 | 09/29 | 03:15P | Incoming | 810-743-7697 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 562 | 09/29 | 03:15P | Incoming | 810-836-2206 PP/IM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 563 | 09/29 | 03:16P | Incoming | 810-743-7697 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 564 | 09/29 | 03:17P | FLINT,MI | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 565 | 09/29 | 03:15P | LA GRANGE,IL | 708-724-4737 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 566 | 09/29 | 03:15P | Incoming | 810-836-2206 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 567 | 09/29 | 03:16P | FLINT,MI | 810-835-5470 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 568 | 09/29 | 03:16P | Incoming | 810-835-5470 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 569 | 09/29 | 03:27P | Incoming | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 570 | 09/29 | 03:30P | Incoming | 810-785-4599 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 571 | 09/29 | 03:36P | FLINT,MI | 810-785-4599 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 572 | 09/29 | 03:40P | Incoming | Unavailable PP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 573 | 09/29 | 03:40P | FLINT,MI | 810-743-7697 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 574 | 09/29 | 03:43P | FLINT,MI | 810-515-6763 PP/IM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 575 | 09/29 | 03:43P | Incoming | 810-577-2206 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 576 | 09/29 | 03:57P | Incoming | 708-724-4737 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 577 | 09/29 | 03:57P | FLINT,MI | 810-835-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 578 | 09/29 | 03:59P | FLINT,MI | 810-836-2206 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 579 | 09/29 | 04:05P | Incoming | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 580 | 09/29 | 04:08P | Incoming | 810-836-2206 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 581 | 09/29 | 04:08P | FLINT,MI | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 582 | 09/29 | 04:22P | Incoming | 810-835-4074 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 583 | 09/29 | 04:26P | Incoming | 810-701-0600 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 584 | 09/29 | 04:28P | FLINT,MI | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 585 | 09/29 | 04:30P | Incoming | 708-724-4737 PP/IM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 586 | 09/29 | 04:33P | LA GRANGE,IL | 708-724-4737 PP/IM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 587 | 09/29 | 04:37P | FLINT,MI | 810-877-2206 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 588 | 09/29 | 04:37P | FLINT,MI | 810-785-7720 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 589 | 09/29 | 04:38P | Incoming | 810-838-5073 PP/IM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 590 | 09/29 | 04:39P | FLINT,MI | 810-785-7720 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 591 | 09/29 | 04:49P | Incoming | 810-701-0600 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 592 | 09/29 | 04:49P | FLINT,MI | 810-701-0600 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 593 | 09/29 | 04:59P | Incoming | 810-701-0600 PP/IM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 594 | 09/29 | 04:59P | FLINT,MI | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 595 | 09/29 | 05:02P | FLINT,MI | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 596 | 09/29 | 05:08P | Incoming | Unavailable PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 597 | 09/29 | 05:09P | FLINT,MI | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 598 | 09/29 | 05:09P | Incoming | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 599 | 09/29 | 05:09P | FLINT,MI | 313-769-0988 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 600 | 09/29 | 05:09P | Incoming | 810-836-2206 PP/IM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 601 | 09/29 | 05:10P | Incoming | 810-516-2206 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 602 | 09/29 | 05:16P | FLINT,MI | 810-743-7697 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 603 | 09/29 | 05:21P | Incoming | 810-618-0449 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 604 | 09/29 | 05:22P | FLINT,MI | Unavailable PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 605 | 09/29 | 05:25P | Incoming | 810-515-6763 PP/IM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 606 | 09/29 | 05:27P | FLINT,MI | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 607 | 09/29 | 05:27P | Incoming | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 608 | 09/29 | 05:27P | FLINT,MI | 810-743-7697 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 609 | 09/29 | 05:30P | FLINT,MI | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 610 | 09/29 | 05:35P | FLINT,MI | 810-515-6763 PP/IM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |

Continued...



**SUBSCRIBER ACTIVITY DETAIL**

**DETAILS OF PROCESS 024, 5 continued**

## Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Usage Min:Sec | "Long Dist./Other" | Total Charges |
|-----|------|------|---------|--------|----------------------|---------------|--------------------|---------------|
| 721 | 09/30 | 04:46P | Incoming | 810-785-3534 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 722 | 09/30 | 04:47P | FLINT,MI | 517-577-0102 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 723 | 09/30 | 04:47P | FLINT,MI | 810-785-4898 PP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 724 | 09/30 | 04:49P | FLINT,MI | 810-785-3534 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 725 | 09/30 | 05:03P | Incoming | 810-785-4898 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 726 | 09/30 | 05:04P | FLINT,MI | 810-785-3534 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 727 | 09/30 | 05:05P | Incoming | 810-838-5264 PP/JM/PU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 728 | 09/30 | 05:08P | Incoming | 810-743-7697 PP/CM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 729 | 09/30 | 05:09P | Incoming | 810-785-4898 PP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 730 | 09/30 | 05:10P | FLINT,MI | 810-925-0957 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 731 | 09/30 | 05:11P | FLINT,MI | 810-577-0151 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 732 | 09/30 | 05:12P | FLINT,MI | 810-422-4121 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 733 | 09/30 | 05:15P | FLINT,MI | 810-691-1824 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 734 | 09/30 | 05:19P | FLINT,MI | 810-577-0151 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 735 | 09/30 | 05:19P | FLINT,MI | 810-785-5491 | | 1:00 | 0.00 | 0.00 | 0.00 |
| 736 | 09/30 | 05:21P | FLINT,MI | 810-785-3534 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 737 | 09/30 | 05:30P | FLINT,MI | 810-785-7470 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 738 | 09/30 | 05:36P | Incoming | 810-785-4898 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 739 | 09/30 | 05:38P | Incoming | 810-785-4898 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 740 | 09/30 | 05:38P | FLINT,MI | 810-449-0117 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 741 | 09/30 | 05:38P | Incoming | 810-836-5073 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 742 | 09/30 | 05:43P | Incoming | 810-232-5900 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 743 | 09/30 | 05:43P | FLINT,MI | 810-455-6713 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 744 | 09/30 | 05:43P | RANKIN,MI | 810-384-8389 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 745 | 09/30 | 05:44P | FLINT,MI | 810-787-2840 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 746 | 09/30 | 05:58P | FLINT,MI | 810-577-0151 OP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 747 | 09/30 | 05:59P | FLINT,MI | 810-239-6033 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 748 | 09/30 | 06:19P | FLINT,MI | 810-701-3044 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 749 | 09/30 | 06:20P | FLINT,MI | 810-204-0470 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 750 | 09/30 | 06:20P | FLINT,MI | 810-785-7840 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 751 | 09/30 | 06:28P | Incoming | 810-785-6461 OP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 752 | 09/30 | 06:46P | Incoming | 478-742-2214 OP | | 3:00 | 0.00 | 0.00 | 0.00 |
| 753 | 09/30 | 06:49P | RANKIN,MI | 810-785-6461 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 754 | 09/30 | 06:58P | FLINT,MI | 810-579-0574 OP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 755 | 09/30 | 06:59P | FLINT,MI | 810-210-7215 OP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 756 | 09/30 | 07:00P | FLINT,MI | 810-232-5900 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 757 | 09/30 | 07:00P | GRANDBLANC,MI | 810-394-8389 OP/PU | | 6:00 | 0.00 | 0.00 | 0.00 |
| 758 | 09/30 | 07:32P | FLINT,MI | 810-838-2206 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 759 | 09/30 | 07:43P | Incoming | Unavailable OP | | 3:00 | 0.00 | 0.00 | 0.00 |
| 760 | 09/30 | 07:25P | GRANDBLANC,MI | 708-724-6737 OP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 761 | 09/30 | 07:45P | FLINT,MI | 810-838-2206 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 762 | 09/30 | 07:28P | FLINT,MI | 810-291-0028 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 763 | 09/30 | 07:31P | FLINT,MI | 810-701-9147 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 764 | 09/30 | 07:33P | Incoming | 810-838-2206 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 765 | 09/30 | 07:45P | Incoming | 810-785-7720 OP/CM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 766 | 09/30 | 07:54P | Incoming | 810-785-7193 OP/CM | | 4:00 | 0.00 | 0.00 | 0.00 |
| 767 | 09/30 | 07:55P | FLINT,MI | 810-838-5073 OP/CM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 768 | 09/30 | 08:03P | Incoming | 810-836-6073 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 771 | 09/30 | 08:07P | Incoming | 810-347-0957 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 770 | 09/30 | 08:12P | Incoming | 810-347-0957 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 773 | 09/30 | 08:16P | FLINT,MI | 810-347-0957 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |

Account Number 139884921
Account Name
Billing Period 09/24/05-10/23/05
Invoice Date October 27, 2005
Page

## Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Usage Min:Sec | "Long Dist./Other" | Total Charges |
|-----|------|------|---------|--------|----------------------|---------------|--------------------|---------------|
| 774 | 09/30 | 08:17P | FLINT,MI | 810-347-0957 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 775 | 09/30 | 08:18P | FLINT,MI | 810-347-0957 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 776 | 09/30 | 08:22P | Incoming | 810-347-0957 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 777 | 09/30 | 08:28P | Incoming | 810-785-0957 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 778 | 09/30 | 08:35P | Incoming | 810-743-7697 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 779 | 09/30 | 08:38P | Incoming | 810-785-0957 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 780 | 09/30 | 08:46P | Incoming | 810-785-0957 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 781 | 09/30 | 08:46P | FLINT,MI | 810-836-2206 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 782 | 09/30 | 08:52P | Incoming | 810-836-2206 OP/JM | | 3:00 | 0.00 | 0.00 | 0.00 |
| 783 | 09/30 | 09:13P | FLINT,MI | 810-275-4769 OP/JM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 784 | 09/30 | 09:13P | FLINT,MI | 810-785-0957 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 785 | 09/30 | 09:18P | FLINT,MI | 810-785-0957 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 786 | 09/30 | 09:42P | Incoming | 810-836-2206 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 787 | 09/30 | 09:52P | FLINT,MI | 810-785-0957 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 788 | 09/30 | 09:58P | Incoming | 810-743-7697 OP | | 3:00 | 0.00 | 0.00 | 0.00 |
| 789 | 09/30 | 10:14A | Incoming | 810-743-7697 OP | | 21:00 | 0.00 | 0.00 | 0.00 |
| 790 | 09/30 | 11:12P | KALAMAZOO,MI | 269-257-8109 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 791 | 09/30 | 11:13P | KALAMAZOO,MI | 269-257-8760 OP/PU | | 4:00 | 0.00 | 0.00 | 0.00 |
| 792 | 09/30 | 11:33P | FLINT,MI | 810-223-5780 OP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 793 | 09/30 | 11:35P | FLINT,MI | 810-397-9571 OP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 794 | 09/30 | 11:43P | Incoming | 810-397-6571 OP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 795 | 09/30 | 11:41P | FLINT,MI | 810-618-2277 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 796 | 09/30 | 11:43P | Incoming | 810-618-2277 OP/JM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 797 | 09/30 | 11:43P | FLINT,MI | 810-618-5321 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 798 | 09/30 | 11:44P | Incoming | 810-618-5321 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 799 | 09/30 | 11:46P | FLINT,MI | 810-618-2277 OP/JM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 800 | 09/30 | 11:51P | FLINT,MI | 810-618-0957 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 801 | 09/30 | 11:44P | FLINT,MI | 810-618-2277 OP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 802 | 09/30 | 11:51P | FLINT,MI | 810-618-0957 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 807 | 10/01 | 12:11A | FLINT,MI | 810-666-4589 OP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 808 | 10/01 | 12:22A | FLINT,MI | 810-666-4375 OP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 809 | 10/06 | 08:15A | Voice Mail | PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 810 | 10/01 | 08:16A | FLINT,MI | 800-639-8111 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 811 | 10/01 | 08:30A | A&A Customer Care | | | 1:00 | 0.00 | 0.00 | 0.00 |
| 812 | 10/01 | 08:47A | FLINT,MI | 810-265-4375 PP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 813 | 10/01 | 09:06A | FLINT,MI | 810-785-0957 OP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 814 | 10/01 | 09:06A | FLINT,MI | 810-423-3494 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 815 | 10/06 | 09:13A | FLINT,MI | 810-913-0109 OP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 816 | 10/06 | 09:30A | FLINT,MI | 810-394-8389 PP/PU | | 4:00 | 0.00 | 0.00 | 0.00 |
| 817 | 10/01 | 09:34A | FLINT,MI | 810-394-8389 OP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 818 | 10/06 | 09:50A | Incoming | 810-785-0957 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 819 | 10/06 | 09:53A | Incoming | 810-785-0957 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 820 | 10/06 | 09:54A | FLINT,MI | 810-423-3494 PP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 821 | 10/06 | 09:54A | FLINT,MI | 810-394-8389 PP/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 822 | 10/06 | 09:55A | Incoming | 810-394-8389 PP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 823 | 10/06 | 09:55A | DETROIT,MI | 810-785-7720 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 824 | 10/06 | 09:58A | Incoming | 313-789-0888 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 825 | 10/06 | 10:15A | Incoming | 313-789-0888 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 827 | 10/06 | 10:24A | FLINT,MI | 810-785-7720 PP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 828 | 10/06 | 10:27A | DETROIT,MI | 313-789-0888 PP/JM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 829 | 10/06 | 10:27A | SOUTHFIELD,MI | 248-357-0957 OP/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 830 | 10/06 | 10:28A | FLINT,MI | 810-789-1828 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |


Sprint

Continued...

> SUBSCRIBER ACTIVITY DETAIL

**DETAIL OF CURRENT ACTIVITY 4, 5 continued**

## Cellular Services Call Detail

| No. | Date | Time | CallTo | Number | Footnote (See Pg. 2) | Min:Sec | Usage | *Long Dist/Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 1161 | 10/08 | 06:57P | Incoming | 810-835-2206 0P/MM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1162 | 10/08 | 06:58P | Incoming | 810-701-2005 0P/MM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1163 | 10/08 | 07:00P | Incoming | 810-515-5633 0P/MM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1164 | 10/08 | 07:11P | Incoming | 810-515-5633 0P/MM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1165 | 10/08 | 07:12P | Incoming | 810-785-6591 0P/MM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1166 | 10/08 | 07:28P | FLINT,MI | 810-785-6142 0P/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1167 | 10/08 | 07:29P | FLINT,MI | 810-257-0873 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1168 | 10/08 | 08:07P | Incoming | Unavailable 0P/JMM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1169 | 10/08 | 08:10P | Incoming | Unavailable 0P/JMM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1170 | 10/08 | 08:20P | Incoming | 810-836-8364 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1171 | 10/08 | 08:58P | FLINT,MI | 810-610-5600 0P/JMM | | 4:00 | 0.00 | 0.00 | 0.00 |
| 1172 | 10/08 | 09:10P | GRAND RPDS,MI | 616-322-7954 0P/JMM/FU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 1173 | 10/08 | 09:14P | FLINT,MI | 810-237-4747 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1174 | 10/08 | 09:56P | GRAND RPDS,MI | 616-322-7954 0P/CM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1175 | 10/08 | 10:00P | FLINT,MI | 810-237-4747 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1176 | 10/08 | 10:11P | Incoming | Voice Mail 0P/MM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1177 | 10/08 | 10:20P | FLINT,MI | 810-836-5073 0P/JMM/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1178 | 10/08 | 10:26P | Incoming | 810-257-0873 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1179 | 10/08 | 10:30P | FLINT,MI | 810-248-8761 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1180 | 10/08 | 10:33P | Incoming | 810-836-5073 0P/JMM/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1181 | 10/08 | 10:43P | FLINT,MI | 810-610-5600 0P/JMM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1182 | 10/08 | 10:46P | FLINT,MI | 616-424-6521 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1183 | 10/08 | 10:21P | FLINT,MI | 616-322-7954 0P/JMM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1184 | 10/08 | 10:22P | FLINT,MI | 810-743-8400 0P/FU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 1185 | 10/08 | 10:28P | Incoming | 810-287-5595 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1186 | 10/08 | 10:29P | FLINT,MI | 810-287-5595 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1187 | 10/08 | 10:31P | FLINT,MI | 810-785-6591 0P | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1188 | 10/08 | 10:31P | Incoming | 616-322-7954 0P/JMM/FU | | 21:00 | 0.00 | 0.00 | 0.00 |
| 1189 | 10/08 | 10:38P | FLINT,MI | 810-610-5600 0P/JMM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1190 | 10/08 | 11:02P | Incoming | 810-610-5600 0P/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1191 | 10/08 | 11:15P | FLINT,MI | 810-610-5600 0P/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1192 | 10/08 | 11:18P | Incoming | 616-322-7954 0P/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1193 | 10/09 | 11:33P | Incoming | 616-322-7954 0P/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1194 | 10/09 | 01:46A | GRAND RPDS,MI | 616-322-7954 0P/JMM/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1195 | 10/09 | 02:02A | FLINT,MI | 810-836-4223 0P/JMM/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1196 | 10/09 | 02:07A | GRAND RPDS,MI | 616-322-7954 0P/JMM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1197 | 10/09 | 02:08A | FLINT,MI | 810-515-2572 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1198 | 10/09 | 02:11A | Incoming | 810-515-2572 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1199 | 10/09 | 02:13A | GRAND RPDS,MI | 616-322-7954 0P/JMM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1200 | 10/09 | 02:15A | Incoming | 616-322-7954 0P | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1201 | 10/09 | 03:16A | Incoming | 810-610-5600 0P/JM | | 3:00 | 0.00 | 0.00 | 0.00 |
| 1202 | 10/09 | 03:36A | Incoming | 616-322-7954 0P/JMM/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1203 | 10/09 | 07:32A | Incoming | 616-322-7954 0P/JMM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1204 | 10/09 | 08:33A | Incoming | 810-610-5600 0P | | 3:00 | 0.00 | 0.00 | 0.00 |
| 1205 | 10/09 | 09:31A | Incoming | Unavailable 0P/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1206 | 10/09 | 09:34A | GRAND RPDS,MI | 616-322-7954 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1207 | 10/09 | 09:37A | Incoming | 810-785-6591 0P | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1208 | 10/09 | 09:38A | Incoming | 810-785-6591 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1209 | 10/09 | 09:38A | Incoming | 810-701-3044 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1210 | 10/09 | 09:55A | Incoming | 810-785-6591 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1211 | 10/09 | 09:57A | Incoming | 810-785-6591 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1213 | 10/09 | 10:04A | Incoming | 810-785-6591 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |

## Cellular Services Call Detail

Account Number 139884921
Account Name

Billing Period 09/24/05–10/23/05
Invoice Date October 27, 2005
Page

| No. | Date | Time | CallTo | Number | Footnote (See Pg. 2) | Min:Sec | Usage | *Long Dist/Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 1214 | 10/09 | 10:11A | FLINT,MI | 810-257-3588 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1215 | 10/09 | 10:15A | Incoming | Unavailable 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1216 | 10/09 | 11:13A | Incoming | 810-701-3044 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1217 | 10/09 | 11:14A | FLINT,MI | 810-701-5565 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1218 | 10/09 | 11:33A | Incoming | 810-423-3494 0P/JM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1219 | 10/09 | 11:51A | FLINT,MI | 810-785-6591 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1220 | 10/09 | 11:57A | Incoming | 810-257-0873 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1221 | 10/09 | 11:42A | Incoming | 810-787-0857 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1222 | 10/09 | 11:45A | FLINT,MI | 810-785-6591 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1223 | 10/09 | 11:46A | Incoming | 810-785-6591 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1224 | 10/09 | 11:46A | FLINT,MI | 810-785-6591 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1225 | 10/09 | 11:53A | GRAND RPDS,MI | 616-322-7954 0P/JM/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1226 | 10/09 | 11:54A | Incoming | 810-757-3428 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1227 | 10/09 | 11:40A | FLINT,MI | 810-257-3588 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1228 | 10/09 | 11:40A | Incoming | 810-257-3588 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1229 | 10/09 | 11:48A | FLINT,MI | 810-836-5073 0P/JMM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1230 | 10/09 | 11:49A | Incoming | 810-836-5073 0P/JMM | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1231 | 10/09 | 12:03P | Incoming | 810-701-3044 0P/FU | | 6:00 | 0.00 | 0.00 | 0.00 |
| 1232 | 10/09 | 12:14P | Incoming | 810-220-7840 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1233 | 10/09 | 12:22P | FLINT,MI | 810-215-0084 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1234 | 10/09 | 12:29P | Incoming | 810-237-4747 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1235 | 10/09 | 12:50P | FLINT,MI | 810-237-4747 0P/CM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1236 | 10/09 | 12:52P | Incoming | 810-836-2206 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1237 | 10/09 | 12:55P | Incoming | 810-257-0873 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1238 | 10/09 | 01:00P | FLINT,MI | 810-257-3588 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1239 | 10/09 | 01:15P | Incoming | 810-743-0564 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1240 | 10/09 | 01:28P | FLINT,MI | 810-743-0564 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1241 | 10/09 | 01:28P | FLINT,MI | 810-743-0564 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1242 | 10/09 | 01:31P | FLINT,MI | 810-743-0564 0P/FU | | | | | |
| 1243 | 10/09 | 01:... | ... | ... | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1244 | 10/09 | 02:16P | Incoming | 810-787-0857 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1245 | 10/09 | 02:23P | FLINT,MI | 810-515-6812 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1246 | 10/09 | 02:32P | FLINT,MI | 810-515-5633 0P/MM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1247 | 10/09 | 03:45P | Incoming | Voice Mail 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1248 | 10/09 | 04:15P | FLINT,MI | 810-836-2206 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1249 | 10/09 | 04:15P | Incoming | Voice Mail 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1250 | 10/09 | 04:13P | FLINT,MI | 810-257-0873 0P | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1251 | 10/09 | 04:15P | Incoming | 810-241-4789 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1252 | 10/09 | 04:40P | Incoming | 810-701-5565 0P/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1253 | 10/09 | 04:41P | Incoming | 810-701-5565 0P/FU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 1254 | 10/09 | 04:59P | Incoming | 810-701-3044 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1255 | 10/09 | 05:10P | Incoming | 810-701-3120 0P/JM/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1256 | 10/09 | 05:11P | Incoming | 810-701-3120 0P/JM/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1257 | 10/09 | 05:17P | FLINT,MI | 810-241-3044 0P/FU | | 3:00 | 0.00 | 0.00 | 0.00 |
| 1258 | 10/09 | 05:39P | Incoming | 810-241-3044 0P/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1259 | 10/09 | 05:45P | Incoming | 810-241-4789 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1260 | 10/09 | 06:03P | GRAND RPDS,MI | 616-322-7954 0P/JMM/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1261 | 10/09 | 06:38P | Incoming | 810-836-5073 0P/JMM/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1262 | 10/09 | 07:22P | FLINT,MI | 810-610-5600 0P/JM/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1263 | 10/09 | 07:20P | FLINT,MI | 810-610-5600 0P/JMM/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1264 | 10/09 | 07:31P | FLINT,MI | 810-610-5600 0P/JMM/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1265 | 10/09 | 07:34P | Incoming | Unavailable 0P/JM | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1266 | 10/09 | 07:35P | Incoming | 810-836-5073 0P/JMM/FU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1267 | 10/09 | 07:31P | Incoming | 810-836-5073 0P/JMM/FU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1268 | 10/09 | 07:18P | FLINT,MI | 810-785-0725 0P | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1269 | 10/09 | 07:32P | FLINT,MI | 810-785-0725 0P | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1270 | 10/09 | 07:34P | FLINT,MI | 810-836-5073 0P/JMM/FU | | 1:00 | 0.00 | 0.00 | 0.00 |

Continued...


Sprint




**Sprint**

DETAIL OF CELLULAR SUBSCRIBER ACTIVITY, 5 continued

▶ SUBSCRIBER ACTIVITY DETAIL

## Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See Pg. 2) | Usage Min:Sec | *Long Dist/ Other | Total Charges |
|-----|------|------|---------|--------|---------------------|---------------|-------------------|---------------|
| 1271 | 10/09 | 07:44P | FLINT,MI | 810-836-5073 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1272 | 10/09 | 07:44P | FLINT,MI | 810-836-5073 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1273 | 10/09 | 08:13P | Incoming | 810-836-5073 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1274 | 10/09 | 07:50P | FLINT,MI | 810-836-5073 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1275 | 10/09 | 07:54P | FLINT,MI | 810-785-6591 OP | | 1:00 | 0.00 | 0.00 |
| 1276 | 10/09 | 07:58P | Incoming | 810-836-4589 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1277 | 10/09 | 08:46P | FLINT,MI | 810-836-4589 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1278 | 10/09 | 08:04P | FLINT,MI | 810-836-4589 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1279 | 10/09 | 08:04F | FLINT,MI | 810-515-6554 OP/IMI | | 8:00 | 0.00 | 0.00 |
| 1280 | 10/09 | 08:11F | Incoming | 810-836-4589 OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1281 | 10/09 | 08:12P | Incoming | 810-836-4589 OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1282 | 10/09 | 08:50P | FLINT,MI | 810-515-6554 OP/IMI/PU | | 2:00 | 0.00 | 0.00 |
| 1283 | 10/09 | 08:19P | FLINT,MI | 616-322-7954 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1284 | 10/09 | 09:29P | Incoming | Unavailable OP/IMI | | 3:00 | 0.00 | 0.00 |
| 1285 | 10/09 | 09:13P | Incoming | 810-785-6591 OP | | 6:00 | 0.00 | 0.00 |
| 1286 | 10/09 | 09:27P | Incoming | Unavailable OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1287 | 10/09 | 09:37P | FLINT,MI | 810-701-3044 OP/PU | | 1:00 | 0.00 | 0.00 |
| 1288 | 10/09 | 09:41F | Incoming | 616-322-7954 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1289 | 10/09 | 09:49P | FLINT,MI | 616-423-3494 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1290 | 10/09 | 09:49P | FLINT,MI | 616-423-3494 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1291 | 10/09 | 09:49P | FLINT,MI | 616-423-3494 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1292 | 10/09 | 09:50P | FLINT,MI | 616-423-3494 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1293 | 10/09 | 09:50P | FLINT,MI | 616-423-3494 OP/IMI/PU | | 4:00 | 0.00 | 0.00 |
| 1294 | 10/09 | 09:29P | Incoming | 616-423-3494 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1295 | 10/09 | 09:31P | Incoming | 810-785-6591 OP | | 1:00 | 0.00 | 0.00 |
| 1296 | 10/09 | 09:33P | Incoming | Unavailable OP/IMI | | 22:00 | 0.00 | 0.00 |
| 1297 | 10/09 | 03:37P | FLINT,MI | 810-701-3044 OP/PU | | 1:00 | 0.00 | 0.00 |
| 1298 | 10/09 | 05:51P | Incoming | 616-322-7954 OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1299 | 10/09 | 10:03P | Incoming | 616-322-7954 OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1300 | 10/09 | 09:46P | Incoming | 616-322-7954 OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1301 | 10/09 | 09:42P | FLINT,MI | 616-322-7954 OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1302 | 10/09 | 10:04P | FLINT,MI | 810-610-2339 OP/PU | | 1:00 | 0.00 | 0.00 |
| 1303 | 10/09 | 08:48P | Incoming | 810-785-0035 OP/PU | | 1:00 | 0.00 | 0.00 |
| 1304 | 10/09 | 08:52P | Incoming | 810-785-0035 OP/PU | | 22:00 | 0.00 | 0.00 |
| 1305 | 10/09 | 09:50P | FLINT,MI | 616-322-7954 OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1306 | 10/09 | 10:05P | Incoming | 810-785-0035 OP/PU | | 2:00 | 0.00 | 0.00 |
| 1307 | 10/09 | 10:09P | Incoming | Unavailable OP/CW | | 1:00 | 0.00 | 0.00 |
| 1308 | 10/09 | 10:22P | FLINT,MI | 810-785-7533 OP/PU | | 1:00 | 0.00 | 0.00 |
| 1309 | 10/09 | 10:23P | Incoming | 810-789-7533 OP/PU | | 1:00 | 0.00 | 0.00 |
| 1310 | 10/09 | 10:36P | FLINT,MI | 810-785-5600 OP/IMI | | 3:00 | 0.00 | 0.00 |
| 1311 | 10/09 | 10:48P | Incoming | 616-322-7954 OP/IMI | | 1:00 | 0.00 | 0.00 |
| 1312 | 10/09 | 11:13P | FLINT,MI | 810-610-5600 OP/IMI | | 2:00 | 0.00 | 0.00 |
| 1313 | 10/09 | 11:15P | Incoming | | Voice Mail PP/PU | | 1:00 | 0.00 | 0.00 |
| 1314 | 10/09 | 11:55P | FLINT,MI | | | 1:00 | 0.00 | 0.00 |
| 1315 | 10/09 | 11:53P | FLINT,MI | | | 1:00 | 0.00 | 0.00 |
| 1316 | 10/09 | 11:53P | FLINT,MI | | | 1:00 | 0.00 | 0.00 |
| 1317 | 10/09 | 11:54P | FLINT,MI | | | 1:00 | 0.00 | 0.00 |
| 1318 | 10/09 | 11:54P | FLINT,MI | | 810-877-0142 PP/PU | | 1:00 | 0.00 | 0.00 |
| 1323 | 10/10 | 09:05A | FLINT,MI | | | 1:00 | 0.00 | 0.00 |

---

Account Number 13984921
Account Name QUEENSPEAKING
Invoice Date October 27, 2005
Billing Period 09/24-10/23/05
Page ... of ...
Invoice Date October 27, 2005

## Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See Pg. 2) | Usage Min:Sec | *Long Dist/ Other | Total Charges |
|-----|------|------|---------|--------|---------------------|---------------|-------------------|---------------|
| 1324 | 10/10 | 09:07A | FLINT,MI | Voice Mail PP/PU | | 5:00 | 0.00 | 0.00 |
| 1325 | 10/10 | 09:25A | Incoming | 810-836-5073 OP/IMI/PU | | 2:00 | 0.00 | 0.00 |
| 1326 | 10/10 | 09:28A | Incoming | 810-785-6591 OP | | 3:00 | 0.00 | 0.00 |
| 1327 | 10/10 | 09:21A | GRAND RPDS,MI | 616-322-7954 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1328 | 10/10 | 09:23A | GRAND RPDS,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1329 | 10/10 | 09:35A | Incoming | 810-767-0957 PP/PU | | 1:00 | 0.00 | 0.00 |
| 1330 | 10/10 | 09:35A | Incoming | 810-767-0957 PP/PU | | 1:00 | 0.00 | 0.00 |
| 1331 | 10/10 | 09:44A | Incoming | 810-836-5073 OP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1332 | 10/10 | 09:40A | FLINT,MI | 810-513-1049 PP | | 1:00 | 0.00 | 0.00 |
| 1333 | 10/10 | 10:05A | Incoming | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1334 | 10/10 | 10:14A | GRAND RPDS,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1335 | 10/10 | 10:15A | GRAND RPDS,MI | 810-424-7200 PP | | 1:00 | 0.00 | 0.00 |
| 1336 | 10/10 | 10:15A | FLINT,MI | 810-743-7400 PP/PU | | 1:00 | 0.00 | 0.00 |
| 1337 | 10/10 | 10:18A | FLINT,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1338 | 10/10 | 10:33A | GRAND RPDS,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1339 | 10/10 | 10:50A | FLINT,MI | 616-322-7954 PP/IMI/PU | | 4:00 | 0.00 | 0.00 |
| 1340 | 10/10 | 10:50A | FLINT,MI | 810-766-4124 PP | | 1:00 | 0.00 | 0.00 |
| 1341 | 10/10 | 11:03A | FLINT,MI | 810-577-8898 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1342 | 10/10 | 11:05A | FLINT,MI | 810-785-6591 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1343 | 10/10 | 11:09A | FLINT,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1344 | 10/10 | 11:11A | GRAND RPDS,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1345 | 10/10 | 11:16A | GRAND RPDS,MI | 810-701-9147 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1346 | 10/10 | 11:17A | GRAND RPDS,MI | 810-513-1049 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1347 | 10/10 | 11:36A | Incoming | 810-513-1049 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1348 | 10/10 | 11:37A | Incoming | 810-577-8898 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1349 | 10/10 | 11:37A | Incoming | 810-618-9545 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1350 | 10/10 | 11:43A | FLINT,MI | 810-618-9545 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1351 | 10/10 | 11:40A | FLINT,MI | 616-322-7954 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1352 | 10/10 | 11:44A | Incoming | 616-322-7954 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1353 | 10/10 | 11:54A | GRAND RPDS,MI | 616-322-7954 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1354 | 10/10 | 12:09P | FLINT,MI | 810-785-6591 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1355 | 10/10 | 12:20P | Incoming | 810-513-1049 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1356 | 10/10 | 12:07P | Incoming | 810-785-6591 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1357 | 10/10 | 12:07P | Incoming | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1358 | 10/10 | 12:16P | Incoming | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1359 | 10/10 | 12:08P | GRAND RPDS,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1360 | 10/10 | 12:26P | GRAND RPDS,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1361 | 10/10 | 12:30P | Incoming | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1362 | 10/10 | 12:30P | GRAND RPDS,MI | 616-322-7954 PP/IMI/PU | | 2:00 | 0.00 | 0.00 |
| 1363 | 10/10 | 12:30P | FLINT,MI | 616-322-7954 PP/IMI/PU | | 1:00 | 0.00 | 0.00 |
| 1364 | 10/10 | 12:30P | Incoming | 810-648-5058 PP/PU | | 4:00 | 0.00 | 0.00 |
| 1365 | 10/10 | 12:31P | FLINT,MI | 810-648-5058 PP | | 1:00 | 0.00 | 0.00 |
| 1366 | 10/10 | 12:35P | SANDUSKY,MI | 810-648-5058 PP/PU | | 2:00 | 0.00 | 0.00 |
| 1367 | 10/10 | 12:42P | Incoming | 810-610-5600 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1368 | 10/10 | 12:58P | FLINT,MI | 810-767-0957 PP/PU | | 3:00 | 0.00 | 0.00 |
| 1369 | 10/10 | 12:50P | Incoming | 810-767-0957 PP/PU | | 1:00 | 0.00 | 0.00 |
| 1370 | 10/10 | 12:42P | Incoming | 810-785-6591 PP/CW | | 1:00 | 0.00 | 0.00 |
| 1371 | 10/10 | 12:47P | FLINT,MI | 810-785-6591 PP/PU | | 1:00 | 0.00 | 0.00 |
| 1372 | 10/10 | 12:47P | FLINT,MI | 616-322-7954 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1373 | 10/10 | 12:59P | FLINT,MI | 810-743-7400 PP/PU | | 1:00 | 0.00 | 0.00 |
| 1374 | 10/10 | 12:59P | FLINT,MI | 810-610-5600 PP/PU | | 3:00 | 0.00 | 0.00 |
| 1375 | 10/10 | 01:05P | FLINT,MI | 810-767-0957 PP/PU | | 1:00 | 0.00 | 0.00 |
| 1376 | 10/10 | 01:05P | Incoming | 810-785-6591 PP/CW | | 1:00 | 0.00 | 0.00 |
| 1377 | 10/10 | 01:09P | Incoming | 616-322-7954 PP/IMI | | 2:00 | 0.00 | 0.00 |
| 1378 | 10/10 | 01:17P | Incoming | 810-836-4589 PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1379 | 10/10 | 01:38P | Incoming | Unavailable PP/IMI | | 1:00 | 0.00 | 0.00 |
| 1380 | 10/10 | 01:40P | Incoming | 810-701-3044 PP | | 1:00 | 0.00 | 0.00 |

Continued...

**DETAILED USAGE CHARGES** continued

# SUBSCRIBER ACTIVITY DETAIL

## Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See Pg. 2) | Min/Sec | Usage | *Long Dist/ Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 1381 | 10/10 | 01:40P | FLINT,MI | 810-513-1049 | PF/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1382 | 10/10 | 01:41P | FLINT,MI | 810-513-1049 | PF | 1:00 | 0.00 | 0.00 | 0.00 |
| 1383 | 10/10 | 01:58P | Incoming | 810-648-5058 | PF | 1:00 | 0.00 | 0.00 | 0.00 |
| 1384 | 10/10 | 02:11P | SANDUSKY,MI | 810-648-5058 | PF/MI | 3:00 | 0.00 | 0.00 | 0.00 |
| 1385 | 10/10 | 02:25P | FLINT,MI | 810-836-4589 | PF/MI | 1:00 | 0.00 | 0.00 | 0.00 |
| 1386 | 10/10 | 02:25P | FLINT,MI | 810-210-6727 | PF/MI | 2:00 | 0.00 | 0.00 | 0.00 |
| 1387 | 10/10 | 02:31P | Incoming | 810-836-4589 | PF/MI | 1:00 | 0.00 | 0.00 | 0.00 |
| 1388 | 10/10 | 02:45P | FLINT,MI | 810-836-4589 | PF/MI | 5:00 | 0.00 | 0.00 | 0.00 |
| 1389 | 10/10 | 02:49P | FLINT,MI | 810-210-6727 | PF/MI | 1:00 | 0.00 | 0.00 | 0.00 |
| 1390 | 10/10 | 03:05P | FLINT,MI | 810-210-6727 | FP | 2:00 | 0.00 | 0.00 | 0.00 |
| 1391 | 10/10 | 03:10P | FLINT,MI | 810-513-1049 PP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1392 | 10/10 | 03:15P | Incoming | 810-241-4789 PF/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1393 | 10/10 | 03:16P | Incoming | 810-241-4789 PF/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1394 | 10/10 | 03:20P | FLINT,MI | 810-241-4789 OF/MI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1395 | 10/10 | 03:27P | FLINT,MI | 810-648-5058 PF | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1396 | 10/10 | 03:36P | Incoming | 810-691-6957 PF/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1397 | 10/10 | 03:38P | FLINT,MI | 810-241-4789 PF/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1398 | 10/10 | 04:06P | FLINT,MI | 810-241-4789 PF/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1399 | 10/10 | 04:06P | Voice Mail | *86 | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1400 | 10/10 | 04:33P | Incoming | 810-835-5073 PF/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1401 | 10/10 | 04:33P | Incoming | 810-835-5073 PF/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1402 | 10/10 | 04:33P | Incoming | 810-835-5073 PF/MI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1403 | 10/10 | 04:34P | FLINT,MI | 810-241-4789 PF/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1404 | 10/10 | 04:45P | FLINT,MI | 810-241-4789 PF/MI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1405 | 10/10 | 04:45P | FLINT,MI | 810-241-4789 PF/MI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1406 | 10/10 | 04:54P | FLINT,MI | 810-797-0142 PF/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1407 | 10/10 | 04:56P | FLINT,MI | 810-797-0142 PF/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1408 | 10/10 | 05:07P | Incoming | 810-743-7340 PF/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1409 | 10/10 | 05:14P | FLINT,MI | 810-743-7340 PF/MI | | 3:00 | 0.00 | 0.00 | 0.00 |
| 1410 | 10/10 | 05:14P | FLINT,MI | 810-241-4789 PF/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1411 | 10/10 | 05:15P | Incoming | 810-797-4044 PF | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1412 | 10/10 | 05:19P | FLINT,MI | 810-797-4044 PF/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1413 | 10/10 | 06:02P | Incoming | 734-457-6379 MP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1414 | 10/10 | 06:10P | FLINT,MI | 616-322-7954 OF/IMM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1415 | 10/10 | 06:11P | Incoming | 810-648-5058 PF | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1416 | 10/10 | 06:14P | FLINT,MI | 810-648-5058 PF | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1417 | 10/10 | 06:40P | FLINT,MI | 810-743-7697 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1418 | 10/10 | 06:44P | FLINT,MI | 810-743-7697 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1419 | 10/10 | 06:54P | GRAND RPDS,MI | 810-785-0893 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1420 | 10/10 | 06:55P | FLINT,MI | 810-743-0247 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1421 | 10/10 | 07:05P | FLINT,MI | 810-743-7697 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1422 | 10/10 | 07:10P | FLINT,MI | 810-743-7697 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1423 | 10/10 | 07:22P | Incoming | 810-835-0540 OP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1424 | 10/10 | 07:29P | FLINT,MI | 810-835-0540 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1425 | 10/10 | 07:29P | FLINT,MI | 810-423-3494 OF/MI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1426 | 10/10 | 07:38P | FLINT,MI | 810-423-3494 OF | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1427 | 10/10 | 07:40P | FLINT,MI | 810-618-0540 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1428 | 10/10 | 07:41P | Incoming | 810-835-0540 OP/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1429 | 10/10 | 07:48P | FLINT,MI | 810-394-8062 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1430 | 10/10 | 07:48P | FLINT,MI | 810-394-8062 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1431 | 10/10 | 07:57P | Incoming | 810-394-8062 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1432 | 10/10 | 08:15P | FLINT,MI | 810-394-8062 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1433 | 10/10 | 08:18P | Incoming | 810-394-8062 OP | | 1:00 | 0.00 | 0.00 | 0.00 |

Account Number 139884921
Billing Period 09/24 (05-10)/23/05
Page (continued)
Invoice Date October 27, 2005
Account Name (REDACTED)

## Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See Pg. 2) | Min/Sec | Usage | *Long Dist/ Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 1434 | 10/10 | 08:11P | Incoming | 616-322-7954 OP/MI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1435 | 10/10 | 08:24P | FLINT,MI | 810-449-7935 OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1436 | 10/10 | 08:54P | GRAND RPDS,MI | 616-322-7954 OP/IMM/PU | | 13:00 | 0.00 | 0.00 | 0.00 |
| 1437 | 10/10 | 08:54P | FLINT,MI | 810-836-4589 OP/IMM/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1438 | 10/10 | 08:55P | Incoming | 810-836-4589 OP/IMM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1439 | 10/10 | 08:44P | Incoming | 810-789-7935 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1440 | 10/10 | 08:45P | Incoming | 616-449-7935 OP | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1441 | 10/10 | 08:46P | Incoming | 810-789-7935 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1442 | 10/10 | 08:56P | FLINT,MI | 810-449-7935 OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1443 | 10/10 | 08:57P | FLINT,MI | 810-210-6727 OP/MI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1444 | 10/10 | 09:06P | FLINT,MI | 810-449-7935 OP/MI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1445 | 10/10 | 09:00P | Incoming | 810-440-3572 OP/MI | | 20:00 | 0.00 | 0.00 | 0.00 |
| 1446 | 10/10 | 09:39P | FLINT,MI | 616-322-7954 OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1447 | 10/10 | 09:11P | GRAND RPDS,MI | 810-743-7697 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1448 | 10/10 | 09:23P | Incoming | 616-322-7954 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1449 | 10/10 | 09:32P | Incoming | 810-282-0121 OP/PU | | 4:00 | 0.00 | 0.00 | 0.00 |
| 1450 | 10/10 | 09:38P | Incoming | 810-515-4680 OP/MI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1451 | 10/10 | 09:38P | Incoming | 810-515-4680 OP/IMM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1452 | 10/10 | 09:39P | FLINT,MI | 810-515-4680 OP/MI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1453 | 10/10 | 09:39P | FLINT,MI | 810-835-5073 OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1454 | 10/10 | 09:44P | Incoming | 810-515-1842 OP/IMM/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1455 | 10/10 | 09:50P | Incoming | 810-618-0600 OP | | 5:00 | 0.00 | 0.00 | 0.00 |
| 1456 | 10/10 | 09:56P | Incoming | Unavailable OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1457 | 10/10 | 09:59P | FLINT,MI | 810-440-7697 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1458 | 10/10 | 10:08P | Incoming | 810-440-7935 OP/IMM/PU | | 6:00 | 0.00 | 0.00 | 0.00 |
| 1459 | 10/11 | 10:11P | FLINT,MI | 616-322-7954 OP/CW | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1460 | 10/10 | 10:11P | FLINT,MI | 810-835-5073 OP/CW | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1461 | 10/10 | 10:22P | Incoming | 810-835-5073 OP/MI | | 4:00 | 0.00 | 0.00 | 0.00 |
| 1462 | 10/10 | 10:28P | Incoming | 810-835-5073 OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1463 | 10/10 | 10:29P | FLINT,MI | 810-515-4680 OP/MI | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1464 | 10/10 | 10:34P | FLINT,MI | 810-515-4680 OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1465 | 10/10 | 10:35P | FLINT,MI | 810-835-4589 OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1466 | 10/10 | 10:50P | FLINT,MI | 810-835-4589 OP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1467 | 10/10 | 11:11P | FLINT,MI | 810-835-4589 OP/MI/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1468 | 10/10 | 11:15P | FLINT,MI | 810-515-4680 OP/MI/PU | | 22:00 | 0.00 | 0.00 | 0.00 |
| 1469 | 10/11 | 12:03A | FLINT,MI | 810-835-4589 OP/MI | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1470 | 10/11 | 11:09P | FLINT,MI | 810-835-4589 OP/MI/PU | | 22:00 | 0.00 | 0.00 | 0.00 |
| 1471 | 10/11 | 11:11P | FLINT,MI | 810-618-0600 OP/MI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1472 | 10/11 | 12:24A | Incoming | 810-515-4680 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1473 | 10/11 | 12:24A | FLINT,MI | 810-515-4680 OP/MI/PU | | 4:00 | 0.00 | 0.00 | 0.00 |
| 1474 | 10/11 | 12:27A | FLINT,MI | 810-618-0600 OP/MI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1475 | 10/11 | 12:33A | FLINT,MI | 810-618-0600 OP/3W/PU | | 22:00 | 0.00 | 0.00 | 0.00 |
| 1476 | 10/11 | 12:33A | FLINT,MI | 810-618-0600 OP/PU | | 22:00 | 0.00 | 0.00 | 0.00 |
| 1477 | 10/11 | 12:33A | FLINT,MI | 810-618-0600 OP/PU | | 22:00 | 0.00 | 0.00 | 0.00 |
| 1478 | 10/11 | 12:33A | FLINT,MI | 810-835-4589 OP/CW | | 21:00 | 0.00 | 0.00 | 0.00 |
| 1479 | 10/11 | 12:33A | FLINT,MI | 810-835-4589 OP/CW | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1480 | 10/11 | 12:55A | FLINT,MI | 810-835-4589 OP/MI/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1481 | 10/11 | 01:00A | Incoming | 810-835-4589 OP/PU | | 2:00 | 0.00 | 0.00 | 0.00 |
| 1482 | 10/11 | 01:00A | Incoming | 810-618-0600 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1483 | 10/11 | 01:05A | FLINT,MI | 810-835-4589 OP | | 4:00 | 0.00 | 0.00 | 0.00 |
| 1484 | 10/11 | 01:34A | Incoming | 810-835-4589 OP | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1485 | 10/11 | 01:34A | FLINT,MI | 810-835-4589 OP/MI | | 12:00 | 0.00 | 0.00 | 0.00 |
| 1486 | 10/11 | 01:00A | Incoming | 810-835-5073 OP/CW | | 4:00 | 0.00 | 0.00 | 0.00 |
| 1487 | 10/11 | 01:24A | FLINT,MI | 810-327-4589 OP/CW | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1488 | 10/11 | 01:25A | FLINT,MI | 810-835-4589 OP/MI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1489 | 10/11 | 01:33A | Incoming | 810-618-5600 OP/MI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |
| 1490 | 10/11 | 01:35A | FLINT,MI | 810-618-5600 OP/MI/PU | | 1:00 | 0.00 | 0.00 | 0.00 |

Continued...



## SUBSCRIBER ACTIVITY DETAIL

DETAILS for XXX-XXX-XXXX, 5 continued

Cellular Services Call Detail

Account Number 139884921
Account Name XXXXXXXX
Billing Period 09/24/05-10/23/05
Invoice Date October 27, 2005
Page

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) Min/Sec | Usage | Long Dist/Other | Total Charges |
|---|---|---|---|---|---|---|---|---|
| 1491 | 10/11 | 01:35A | FLINT,MI | 810-618-0540 0P/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1492 | 10/11 | 01:40A | FLINT,MI | 810-787-2094 0P/PU | 3:00 | 0.00 | 0.00 | 0.00 |
| 1493 | 10/11 | 01:45A | FLINT,MI | 810-322-7954 0P/PU | 6:00 | 0.00 | 0.00 | 0.00 |
| 1494 | 10/11 | 01:51A | Incoming | Unavailable PP | 2:00 | 0.00 | 0.00 | 0.00 |
| 1495 | 10/11 | 01:57A | Voice Mail | *86 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1496 | 10/11 | 01:40A | FLINT,MI | 810-235-9168 PP/PU | 3:00 | 0.00 | 0.00 | 0.00 |
| 1497 | 10/11 | 07:56A | FLINT,MI | 810-322-7954 0P/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1498 | 10/11 | 07:57A | Incoming | Unavailable PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1499 | 10/11 | 01:40A | FLINT,MI | 810-235-9168 PP/PU | 3:00 | 0.00 | 0.00 | 0.00 |
| 1500 | 10/11 | 08:28A | FLINT,MI | 810-423-3494 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1501 | 10/11 | 08:28A | Incoming | 810-423-3494 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1502 | 10/11 | 08:29A | FLINT,MI | 810-423-3494 PP/IM | 2:00 | 0.00 | 0.00 | 0.00 |
| 1503 | 10/11 | 08:30A | Incoming | 810-423-3494 PP/IM | 3:00 | 0.00 | 0.00 | 0.00 |
| 1504 | 10/11 | 08:30A | Incoming | 810-789-6311 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1505 | 10/11 | 08:34A | FLINT,MI | 810-758-2400 PP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 1506 | 10/11 | 08:34A | FLINT,MI | 810-789-6311 PP/PU | 5:00 | 0.00 | 0.00 | 0.00 |
| 1507 | 10/11 | 08:54A | Incoming | 810-423-3494 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1508 | 10/11 | 08:56A | Incoming | 810-423-3494 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1509 | 10/11 | 09:57A | Incoming | 810-836-4589 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1510 | 10/11 | 10:03A | GRAND RPDS,MI | 810-836-5073 PP/IM | 3:00 | 0.00 | 0.00 | 0.00 |
| 1511 | 10/11 | 10:08A | Incoming | 810-836-4589 PP/IM | 2:00 | 0.00 | 0.00 | 0.00 |
| 1512 | 10/11 | 10:57A | Incoming | 810-743-7400 PP/IM | 3:00 | 0.00 | 0.00 | 0.00 |
| 1513 | 10/11 | 11:01A | FLINT,MI | 810-836-4589 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1514 | 10/11 | 11:02A | Incoming | 810-322-7954 PP/IM | 2:00 | 0.00 | 0.00 | 0.00 |
| 1515 | 10/11 | 11:08A | FLINT,MI | 810-836-2206 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1516 | 10/11 | 11:12A | FLINT,MI | 810-836-4589 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1517 | 10/11 | 11:27A | FLINT,MI | 810-787-0142 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1518 | 10/11 | 11:27A | FLINT,MI | 810-836-2206 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1519 | 10/11 | 11:34A | Incoming | 810-836-2206 PP/IM | 4:00 | 0.00 | 0.00 | 0.00 |
| 1520 | 10/11 | 11:37A | FLINT,MI | 616-322-7954 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1521 | 10/11 | 11:37A | Incoming | 810-789-1828 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1522 | 10/11 | 12:29P | Incoming | 616-322-7954 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1523 | 10/11 | 11:45A | Incoming | 810-789-1828 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1524 | 10/11 | 11:47A | Incoming | 616-322-7954 PP/IM | 2:00 | 0.00 | 0.00 | 0.00 |
| 1525 | 10/11 | 11:45A | Incoming | 810-836-2206 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1526 | 10/11 | 11:47A | Incoming | 810-789-1828 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1527 | 10/11 | 11:45A | Incoming | 810-845-6911 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1528 | 10/11 | 12:23P | FLINT,MI | 810-836-0035 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1529 | 10/11 | 12:24P | FLINT,MI | 810-785-6591 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1530 | 10/11 | 12:23P | FLINT,MI | 810-836-2206 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1531 | 10/11 | 12:23P | FLINT,MI | 616-322-7954 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1538 | 10/11 | 01:15P | Incoming | 989-288-3144 PP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 1539 | 10/11 | 01:18P | Incoming | 810-515-4690 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1540 | 10/11 | 01:23P | DURAND,MI | 810-787-2159 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1541 | 10/11 | 01:29P | DURAND,MI | 989-288-3144 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1542 | 10/11 | 01:46P | FLINT,MI | 810-235-9168 PP/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 1543 | 10/11 | 01:46P | FLINT,MI | | 1:00 | 0.00 | 0.00 | 0.00 |

Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) Min/Sec | Usage | Long Dist/Other | Total Charges |
|---|---|---|---|---|---|---|---|---|
| 1544 | 10/11 | 01:55P | Incoming | 810-787-0857 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1545 | 10/11 | 01:59P | Incoming | 810-845-6911 PP | 2:00 | 0.00 | 0.00 | 0.00 |
| 1546 | 10/11 | 02:15P | Incoming | 989-288-3144 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1547 | 10/11 | 02:18P | DURAND,MI | 810-787-2094 PP/PU | 4:00 | 0.00 | 0.00 | 0.00 |
| 1548 | 10/11 | 02:20P | FLINT,MI | 810-515-5654 PP/IM/PU | 7:00 | 0.00 | 0.00 | 0.00 |
| 1549 | 10/11 | 02:24P | FLINT,MI | 810-515-6554 PP/IM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1550 | 10/11 | 02:29P | FLINT,MI | 810-743-7697 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1551 | 10/11 | 02:31P | FLINT,MI | 810-743-7697 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1552 | 10/11 | 02:33P | FLINT,MI | 810-787-0142 PP/PU | 3:00 | 0.00 | 0.00 | 0.00 |
| 1553 | 10/11 | 02:40P | Incoming | 810-234-3939 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1554 | 10/11 | 02:43P | Incoming | 989-288-3144 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1555 | 10/11 | 02:33P | FLINT,MI | 810-787-2094 PP/IM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1556 | 10/11 | 02:15P | Incoming | Unavailable PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1557 | 10/11 | 03:24P | FLINT,MI | 800-275-5042 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1558 | 10/11 | 03:25P | FLINT,MI | 810-234-3939 PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1559 | 10/11 | 03:30P | DURAND,MI | 810-835-5073 PP/IM | 3:00 | 0.00 | 0.00 | 0.00 |
| 1560 | 10/11 | 03:31P | Incoming | 810-835-5073 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1561 | 10/11 | 03:34P | FLINT,MI | 810-516-9284 PP/IM/PU | 2:00 | 0.00 | 0.00 | 0.00 |
| 1562 | 10/11 | 03:35P | FLINT,MI | 810-423-3494 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1563 | 10/11 | 03:41P | Incoming | Unavailable PP/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1564 | 10/11 | 03:45P | Incoming | 810-835-5073 PP/IM | 4:00 | 0.00 | 0.00 | 0.00 |
| 1565 | 10/11 | 03:55P | Incoming | 810-836-2206 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1566 | 10/11 | 03:59P | Incoming | 810-835-2206 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1567 | 10/11 | 04:33P | FLINT,MI | 810-835-2206 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1568 | 10/11 | 04:50P | Incoming | 810-743-7697 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1569 | 10/11 | 05:09P | Incoming | 810-743-7697 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1570 | 10/11 | 05:40P | Incoming | 810-761-3044 PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 1571 | 10/11 | 05:48P | FLINT,MI | 810-618-0540 PP/IM/PU | 1:00 | 0.00 | 0.00 | 0.00 |
| 1572 | 10/11 | 05:57P | Incoming | 810-610-5600 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1573 | 10/11 | 05:45P | FLINT,MI | 810-610-5600 PP/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1574 | 10/11 | 05:49P | FLINT,MI | 810-610-5600 0P/IM | 2:00 | 0.00 | 0.00 | 0.00 |
| 1575 | 10/11 | 06:01P | FLINT,MI | 810-610-5600 0P/IM | 4:00 | 0.00 | 0.00 | 0.00 |
| 1579 | 10/11 | 06:10P | FLINT,MI | 810-836-2206 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1580 | 10/11 | 06:13P | FLINT,MI | 810-836-2206 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1581 | 10/11 | 06:19P | Incoming | 810-836-2206 0P/CV | 1:00 | 0.00 | 0.00 | 0.00 |
| 1582 | 10/11 | 06:31P | Incoming | 810-836-2206 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1583 | 10/11 | 06:33P | FLINT,MI | 810-835-2206 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1586 | 10/11 | 06:37P | Incoming | 810-835-2206 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1587 | 10/11 | 06:43P | Incoming | 810-610-5600 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1588 | 10/11 | 06:47P | Incoming | 810-835-2206 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1589 | 10/11 | 06:48P | Incoming | 810-610-5600 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1590 | 10/11 | 06:49P | FLINT,MI | 810-743-7697 0P | 1:00 | 0.00 | 0.00 | 0.00 |
| 1591 | 10/11 | 06:55P | Incoming | 810-743-0218 0P | 1:00 | 0.00 | 0.00 | 0.00 |
| 1592 | 10/11 | 06:59P | FLINT,MI | 517-303-1940 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1597 | 10/11 | 07:25P | LANSING,MI | 517-303-1040 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |
| 1598 | 10/11 | 07:35P | FLINT,MI | 810-922-7641 0P | 1:00 | 0.00 | 0.00 | 0.00 |
| 1599 | 10/11 | 07:00P | Incoming | 810-743-7697 0P | 1:00 | 0.00 | 0.00 | 0.00 |
| 1600 | 10/11 | 08:15P | FLINT,MI | 810-449-7935 0P/IM | 1:00 | 0.00 | 0.00 | 0.00 |

Continued...





### CERTIFICATION

I hereby certify, to the best of my knowledge information, and belief, that:

My name is Amy Valencia. I am a United States citizen and I am over eighteen years of age. I am the custodian of records of the business named below, or I am otherwise qualified as a result of my position with the business named below to make this decision.

I am in receipt of a Subpoena requesting specified records of the business named below. This certification is for documents provided on 4/4/2011 for the following number 810-836-5074 in regards to Sprint case number 2011-062900. I hereby certify that the records attached hereto:

1. were made at or near the time of the occurrence of the matters set forth in the records, by, or from information transmitted by, a person with knowledge of those matters;

2. were kept in the course of the regularly conducted business activity; and

3. were made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury the foregoing is true and correct.

Executed on 4/4/2011.

*Amy Valencia*

Amy Valencia
Subpoena Specialist

Sprint

1

Exhibit E

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff,

OMAR RASHAD POUNCY,

Defendant.

CASE NO. 05-17448-FC

JUDGE ARCHIE L. HAYMAN

_____/

**BENCH TRIAL**

BEFORE THE HONORABLE ARCHIE L. HAYMAN, CIRCUIT JUDGE

Flint, Michigan – Thursday, April 6, 2006

APPEARANCES:

For the People:

Christopher D. Larobardiere, (P-60954)
Assistant Prosecuting Attorney
Genesee County Prosecutor's Office
900 South Saginaw Street
Flint, Michigan 48502
Telephone: (810)

Of Counsel
For the Defendant:

Michael J. Breczinski, (P-33705)
5005 Lapeer Road
Burton, Michigan 48509
Telephone: (810)743-2960

Transcribed By:

Melanie K. Bellamy, CER#7502
Certified Electronic Recorder
628 South Meade Street
Flint, Michigan 48503
Telephone: (810) 233-0841

RECEIVED

SEP 11 2006

APPELLATE DEFENDER OFFICE

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **WITNESSES:   PEOPLE** |  |
| Sergeant Meoachy Proby | 96 |
|   Direct Examination by Mr. Larobardiere | 96 |
|   Cross Examination by Mr. Pouncy | 114 |
| **WITNESSES:   DEFENDANT** |  |
| Sergeant Eligio Soto | 29 |
|   Direct Examination by Mr. Pouncy | 29 |
|   Cross Examination by Mr. Larobardiere | 48 |
|   Redirect Examination by Mr. Pouncy | 53 |
| Dan Haynes | 62 |
|   Direct Examination by Mr. Pouncy | 62 |
| Omar Rashad Pouncy | 72 |
|   Direct Examination by Mr. Breczinski | 72 |
|   Cross Examination by Mr. Larobardiere | 76 |
|   Redirect Examination by Mr. Breczinski | 87 |
| Detective Demeo | 89 |
|   Direct Examination by Mr. Pouncy | 89 |

| EXHIBITS | Introduced | Admitted |
|---|---|---|
| Dx. 4 - Work release documents Memo regarding DNA testing Work verfivication | 90 | 90 |
| Px. 5 - Certified copy of CCW Conviction | 4 | 4 |
| Dx. 5 - Order for fingerprints | 95 | 95 |

1   don't think I kept an exhibit.

2                 MR. POUNCY:  Remember you got it from

3   (inaudible) - -

4                 THE COURT:  Yeah here it is.  You're right.  I

5   have it.

6                 MR. POUNCY: Thanks.

7                 THE COURT:  Yeah.  Uhm uhm.  Thanks.

8   A September 18 is that what you're saying?

9   Q Yes.  Well, can I let you - - could you uhm - - what I - -

10      yes September (inaudible) - - September - - do - - are you

11      aware of September 18 is a Sunday correct?

12  A Uhm - - if you say so.  No I wasn't aware.

13                MR. POUNCY:  Well can we show him a calendar so

14  we can of September 18 of 2005.

15                THE COURT:  Do you guys all agree that - -

16                MR. LAROBARDIERE:  Yes.

17                THE COURT:  - - that September 18 was a Sunday?

18                MR. LAROBARDIERE:  Yes.

19  Q Could you state my work schedule after the memos entered in

20      September 7, is that the day she said, 2005?

21                THE COURT:  Yes, I think she said September 7

22  is when there was a change.

23  Q My work hours - - not my work hours - -

24                THE COURT:  Stick with one question.  You're

25  kind of bouncing around.  Let's kind of stick with one

                                                              32

1  question.  First question I think had to do with what - - how

2  many hours were you allowed out of the County Jail on

3  September 18 of 2005 right?  And then September 21 and

4  September 24 is that correct?

5              MR. POUNCY:  Yeah, because I didn't want to - -

6  I don't want to say.

7              THE COURT:  Go ahead.  However you want to

8  proceed.  I thought that's where you were going.  Go right

9  ahead.

10             MR. POUNCY:  I don't want to - - I wanted to

11 get to was I even allowed out on September 18 first.

12             THE COURT:  Go right ahead.  Let's start back

13 over.

14 A  That's a Sunday?

15 Q  Yes, that's a Sunday.

16 A  Okay, I'm going to say that you weren't allowed out on

17    Sunday.  We wouldn't allow that.

18 Q  Did uhm - - have anyone ever been able to talk to you about

19    why you be brought here today?

20 A  No.

21 Q  No one indicated to you why you would be brought here today?

22 A  No.

23 Q  No one at all.  Have you had a chance to talk to Detective

24    Dunkinson?

25 A  I said, "Hi."

33

Exhibit F

| STATE OF MICHIGAN<br>67th JUDICIAL DISTRICT<br>7th JUDICIAL CIRCUIT<br>District Court ORI: MI250095J<br>630 S. Saginaw St., Flint, MI 48502 | MOTION/ORDER<br>OF NOLLE PROSEQUI<br>Circuit Court ORI:MI250015J<br>900 S. Saginaw St., Flint, MI  48502 | JUDGE: Archie Hayman<br>CIRCUIT: 05-017448-FC |
|---|---|---|

|  | v | Defendant name, address, and telephone no.<br>OMAR RASHAD POUNCY<br>2617 GIBSON<br>FLINT, MI 48507 |
|---|---|---|
| THE PEOPLE OF<br>THE STATE OF MICHIGAN |  | CTN<br>25-05004305-01   SID<br>2487773M   DOB<br>05/03/1987 |

| COUNT | CRIME | CHARGE CODE(S) |
|---|---|---|
| 1 | ARMED ROBBERY | 750.529 |
| 2 | CARJACKING | 750.529A |
| 3 | POSSESSION BY FELON | 750.224F |
| 4 | CARRYING CONCEALED WEAPON | 750.227 |
| 5 | FELONY FIREARM | 750.227B-A |

**Motion**

DAVID S. LEYTON, prosecuting official, moves for a nolle prosequi in this entire case.

07/14/2008
Date

For DAVID S. LEYTON   P35086

**ORDER**

IT IS ORDERED:

[X] 1. Motion for nolle prosequi is granted and the case is dismissed without prejudice.

[ ] 2. Motion for nolle prosequi is granted as to the following charge(s) which are dismissed without prejudice.

[ ] 3. Motion for nolle prosequi is denied.

[ ] 4. Defendant shall be immediately discharged from confinement in this case.

[ ] 5. Bond, if posted, is cancelled and shall be returned after costs are deducted.

[ ] 6. Bond/Bail is continued.

7/16/08
Date

Archie Hayman   Judge

**A TRUE COPY**
Michael J. Carr, Clerk

If Item 1 is checked the clerk of the court shall send a photocopy of this order to the Michigan State Police Central Records Division to delete this criminal history record as required under MCL 769.16a.

cc: MARK N. CLEMENT 714 BEACH ST  FLINT, MI 484502

**Exhibit G**

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

PEOPLE OF THE STATE
OF MICHIGAN,

                Plaintiff,            File No. 05-017154-FC

                                  JUDGE ARCHIE L. HAYMAN

vs

OMAR RASHAD POUNCY,

                Defendant.

_____/

David S. Leyton (P-35086)          Daniel D. Bremer (P-23554)
Prosecuting Attorney               Attorney for Defendant
900 South Saginaw Street           1133 East Bristol Road
Flint, Michigan 48502              Burton, Michigan 48529
(810) 257-3232                   (810) 232-6231

_____

## AFFIDAVIT OF WILLIE McKINLEY JOYCE

State of Michigan   )
                 ) ss.
County of Genesee  )

      Willie McKinley Joyce deposes and says as follows:

    1. On October 11, 2005, I resided at 5349 Kellar in Mt. Morris Township.

    2. At about 5:45 p.m. to 6:00 p.m. on that date, Charles Smith, who was also living at 5349 Kellar at that time, told me that someone had pulled a white Cadillac into my driveway. I then heard a knock on the door. An African-American male in a beige or tan hooded coat and blue jeans, about 5'10" in height and weighing about 185 to 190 pounds, was at the door. He asked me if I wanted him to mow his lawn. I said "no" because this sounded suspicious.

    3. I did not see any other people outside at this time. I saw a red vehicle in the roadway. I did not look outside any more after this to see what was going on.



4. The person shown in the photograph that appears on this page is not the person who came to my door on October 11, 2005 at approximately 5:45 p.m. to 6:00 p.m.

5. At no time did Omar Pouncy's trial lawyer or investigator contact me before the trial of Omar Pouncy. If I had been contacted I would have testified at trial that everything that I have said in this affidavit is true.

6. I am willing to appear in court to testify that everything that I have said in this affidavit is true.

I DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.

Dated: October 29, 2010

WILLIE McKINLEY JOYCE

State of Michigan  )
                   ) ss
County of Genesee )

Subscribed and sworn to before me, a Notary Public, this 29th day of October, 2010

_Daniel D. Bremer, Notary Public, Genesee County, Michigan_

Acting in Genesee County

My commission expires:  August 10, 2016

**Exhibit H**

*Exhibit A*

STATE OF MICHIGAN       )
                        )ss:
COUNTY OF GENESEE       )
G

 

    Helen L. Carr, being duly sworn, deposes and says:

 

 

    On September 24, 2005 I recieved several collect phone calls coming from the Genesee County Jail, from Omar Rashad Pouncy. The first collect phone call I recieved was at approximately 11:00 a.m...then at approximately 12:30 p.m., then one at approximately 5:45 p.m.

 

    I have been, and continue to be, willing to testify to these events at any trial or hearing.

 

 

*Helen L. Carr*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Helen L. Carr

 

Subscribed and sworn to me on ___AUGUST 11, 2006___

In the County of ___GENESEE___, State of Michigan.

My commission expires on: ___MARCH 10, 2007___

 

*Ronald P. Roland*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Notary Public/Clerk

RONALD P. ROLAND
NOTARY PUBLIC, GENESEE CO., MI
MY COMMISSION EXPIRES Mar 10, 2007

**EXHIBIT**
**8**
‾‾‾‾‾‾

**Exhibit I**

**Mt. Morris Township Police L _partment**
**Standard Incident Report**

| Incident No: 05-004219 |
| Page No:  5 |

Original Narrative (continued):

stopped in front of her. She was at the back of the Intrepid. She stated she observed that the unknown B/M approached the house and it appeared that he spoke with the homeowner at that house. She stated that the suspect came back from the house and was speaking with her husband. She stated that Mr SANDSTROM came to her and asked her for the title. While she was trying to retrieve the title for Mr SANDSTROM she observed that the unknown B/M had a gun on her husband and did advise her to "get the fuck out of the car". Once they got out of the car, the unknown B/M then advised Mr SANDSTROM to give him his wallet and advised both of them to start walking into the woods. Ms SANDSTROM stated that a short time later the suspects drove away in their Corvette and white Eldorado. At this time they walked back to Coldwater Road where they did observe police.

I asked Mrs SANDSTROM what the suspect with the gun looked like. She stated he was a dark skinned B/M with a beige coat with blue jeans, approximately 5'10", 180 lbs and that he had a black pistol. Ms SANDSTROM stated that there were two other people involved and she didn't get a good look at the suspects. She stated she got a look at one of the suspects but couldn't tell if it was a man or a woman. She stated that they were medium build and had a ponytail. She could not get a good description on the other two suspects other than that. I asked Mr and Mrs SANDSTROM if they had ever seen these suspects before. They stated that they had not. I asked them if they had caller I.D. at the home when the suspects called. They stated no. I advised them to retrieve their phone records for that day of 10/10/05 and 10/11/05 and have that information forwarded to our detective bureau for further information.

At this time I had already let them contact a family member to come and pick them up. They did leave a contact number for this officer.

Myself and officer WILLIAMS and Sgt TOMALIA did go over to 5349 Kellar at approximately 8:28 p.m. where Mr SANDSTROM stated the robbery had occurred. We did make contact with the man in the home. He was identified as CHARLES SMITH JR, 1/20/50. I asked Mr SMITH if he is the homeowner. He stated that he is not, that his friend, WILLIE JOYCE is the registered owner of the home. I asked him if he had talked to someone at approximately 5:45 to 6:00. He stated that he did not but he did look outside where he observed a white in color Cadillac sitting at the end of the driveway. Mr SMITH stated that he immediately advise Mr JOYCE that someone had parked in the driveway. He stated that a short time later that an unknown B/M came up to the door and spoke with Mr JOYCE. Mr SMITH stated that he did not see this B/M at any time and did not talk to him and does not know what he looked like. I asked him if he observed any other vehicles in the street or in the area. He stated that he did not see any other vehicle other than the Cadillac. I asked him when the B/M came to the door if he knew what he talked to Mr JOYCE about. Mr SMITH stated that JOYCE advised him that the B/M wanted to know if he wanted to mow his yard. Mr JOYCE stated that he did not. I asked him when Mr JOYCE was to be home. He stated that he does not know. I advised him when Mr JOYCE comes home to call 911 to speak with this officer.

Myself and officer WILLIAMS then went to the house at 6093 Penwood to see if the beige Intrepid was in the driveway. We did stationary patrol for a period of time at 6093 Penwood but no beige Intrepid ever came to the house.

At approximately 9:30 p.m. myself and officer WILLIAMS did go back over to 5349 Kellar and tried to make contact with the homeowner Mr JOYCE. I did go and knocked on the door where I was met by Mr JOYCE. I asked him at approximately 5:45 to 6:00 p.m. if he had a conversation with a man in the

Mt. Morris Township Police L_partment

Standard Incident Report

| Incident No: 05-004219 |
| Page No:    6 |

Original Narrative (continued):

driveway. He stated at about that time he was advised by his roommate Mr SMITH that someone had pulled into the driveway in a white Cadillac. He stated that he heard a knock on the door where he was approached by a dark skinned B/M wearing a beige or tan in color hooded coat who asked him if he wanted him to mow his yard for some money. Mr JOYCE stated that he found this suspicious and told him no. I asked Mr JOYCE what the male looked like. He stated that he was a dark skinned B/M wearing a beige or tan hooded coat wearing blue jeans, approximately 5'10", 185-190 lbs. Mr JOYCE stated that he observed a red in color vehicle in the roadway but couldn't get a good look at it. I asked Mr JOYCE if he saw any other people outside at any time. He stated that he did not. He stated that after the suspect left his door he did not look outside any longer to see what was going on. At this time I then cleared the scene.

I had Mr and Mrs SANDSTROM write out a written statement as to what occurred. This information will be attached to this report for further review. This information will be forwarded to the detective bureau. Nothing further.

Respectfully Submitted
Joseph Phillips #58
Mt Morris Township Police Department

Transcribed: D Pierce

Supplement/Gagliardi, dated 10/14/05, by Officer Gagliardi:
Sir:

On Tuesday, October 4, 2005, R/t. GAGLIARDI was given complainant #4034-05 regarding a carjacking for follow up investigation. Upon receiving the complainant, I did discover that on September 29, 2005, Officer ROBERT FARMER of the Mt Morris Township PD had taken a car jacking complaint from EARL EDWARD BRADY, w/m, 9/30/50 and his friend PATRICK ALAN WENDELL, w/m, 1/27/44.

Upon receiving this information, I did make contact with the victim, EARL BRADY via tx at his residence. Upon speaking to Mr. BRADY he advised that he had a 1979 Chevy Camaro that was customized and built for racing that he was trying to sell. BRADY stated that he had attempted to sell this vehicle down in the White Lake area, which is where Mr. BRADY resides, however, there wasn't much of a market for this type of vehicle in that area. BRADY stated that he has a friend, JOSEPH SCOTT DAVIS who owns, Mr. Davis Racing located at 3614 Richfield Dr. in Flint. BRADY states that he spoke to DAVIS and asked him if it would be possible to park his camaro out in front of his business in an attempt to sell the vehicle. BRADY states that he had transported his vehicle up to Davis Racing and parked the 79 Camaro in front of the business in hopes of making a sale. BRADY states that he was contacted by his friend, DAVIS who advised him that he had an individual who was interested in purchasing the Camaro and asked if it would be possible for BRADY to meet this individual at Davis Racing. BRADY states that he agreed and he and his friend, PATRICK WENDLE got into their 2003 Ford pick up and headed towards Flint in order to meet up with the potential buyer.

BRADY states that when he arrived at Davis Racing, there were three black males waiting for him along side of a late model Dodge Intrepid that was gray in color. BRADY states that he and his friend, PATRICK WENDLE got out of the truck and began to speak with these subjects about the vehicle. BRADY describes the subjects as subject #1, who he states did all the talking about purchasing the

**Exhibit J**

STATE OF MICHIGAN

67TH DISTRICT COURT IN THE COUNTY OF GENESEE

FILED

PEOPLE OF THE STATE OF MICHIGAN

-vs-

C.C. #07-021200-FC
D.C. #FY005-C1034

TIAKAWA LEONDIS TERREL PIERCE,

JUDGE NEITHERCUT

Defendant.
/

PRELIMINARY EXAMINATION

BEFORE THE HONORABLE CHRISTOPHER ODETTE, DISTRICT JUDGE

Flint, Michigan - Tuesday, August 28, 2007

APPEARANCES:

For the People:          MICHELLE L. RICHARDSON (P57485)
                         Assistant Prosecutor
                         900 S. Saginaw Street
                         Flint, Michigan 48502
                         (810) 257-3232

For the Defendant:       SAMUEL A. RAGNONE (P23157)
                         Attorney at Law
                         1019 Church Street
                         Flint, Michigan 48502
                         (810) 767-1670

Recorded by:             Tammy Ewka, CER-5727
                         Certified Electronic Recorder
                         (810) 257-3170
Transcribed by:          Ann L. Habermehl, CER-4273
                         Certified Electronic Recorder
                         (810) 257-3170

1        10:59 p.m., and testified as follows:

2                    DIRECT EXAMINATION

3   BY MR. RAGNONE:

4   Q    Would you state your name, please.

5   A    Jaawkawa McGruder.

6   Q    Can you spell that first name, please, and last?

7   A    J-a-a-w-k-a-w-a.  McGruder, M-c --

8                THE COURT:  J -- Hold on.  J-a-a-w-k-a --

9                THE WITNESS:  -- w-a.

10               THE COURT:  Okay.

11               THE WITNESS:  McGruder, M-c-g-r-u-d-e-r.

12               THE COURT:  Okay.

13  BY MR. RAGNONE.

14  Q    Mr. McGruder, how old are you, sir?

15  A    Twenty-three.

16  Q    Twenty-three.  And are you related to the Defendant,

17       Tiakawa Pierce?

18  A    Yes.

19  Q    How are you related?

20  A    Ah, we have the same mother.

21  Q    Okay, and you are presently serving -- you're

22       incarcerated in the Department or Corrections, correct?

23  A    Yes.

24  Q    And what are you serving time for, please?

25  A    Ah, felony -- well, several counts, seve -- felony

                           21

1    fleeing officer, ah, felony firearm, and CCW.

2  Q  Okay.  And there came a time when you were arrested and

3    placed in the Genesee County Jail prior to going to

4    prison, is that correct?

5  A  Well, when I was in Genesee County I didn't go to prison,

6    I got sent to the Boot Camp.

7  Q  I see.  But you were in the Genesee County Jail at some

8    time?

9  A  Yeah.

10 Q  And do you recall if that was back maybe in October of

11    2005?

12 A  Yeah.

13 Q  Okay, and while you were in the Genesee County Jail, did

14    you have a chance to meet Wayne Grimes?

15 A  Yeah, I did.

16 Q  Okay.  Did you know Wayne Grimes prior to seeing him in

17    jail?

18 A  Yes.

19 Q  Okay, and how did you know Wayne Grimes?

20 A  Um, through family.

21 Q  Is he part of your family also?

22 A  Not really, but --

23 Q  Well, when you -- Did you have a conversation with Mr

24    Grimes in prison?

25 A  Yeah, I did.

22

1  Q    I mean -- I'm sorry, in the Genesee County Jail?

2  A    Well, yes.

3  Q    Okay.

             MS. RICHARDSON:  Your Honor, again I object on

the testimony that -- or any words that Mr. Grimes may

have said to this witness because that is hearsay.

             MR. RAGNONE:  It certainly is not, Judge.  The

man testified that in fact Tiakawa Pierce, the only thing

he did in these robberies was he had the gun and handed

it to me.  Tiakawa --

             THE COURT:  I wanna get into specifics like

what is it about the testimony that your -- would make it

not hearsay of Mr. Grimes.  He's not here, not subject --

             MR. RAGNONE:  We can bring him back.  Happy to

bring him back if that's what the Court wants to do.  I

mean --

             THE COURT:  No, I don't wanna do that.  You've

had plenty of chances to bring him and he's not coming

back I can assure of that.  So let's -- Don't get clever

with me here on the record, okay?

             MR. RAGNONE:  I wasn't --

             THE COURT:  What's the basis for what, what

your response to her --

             MR. RAGNONE:  Well, first of all I wasn't

trying to be clever, Judge.  I apologize.

                              23

1      THE COURT:  All right.

2      MR. RAGNONE:  Second of all, Judge, this is the

3  heart of the Prosecutor's case what this man testified

4  to, Mr. Grimes, okay?  This is an exception to the

5  hearsay rule because it goes to his credibility.  And Mr.

6  McGruder had a direct --

7      THE COURT:  Thank you.

8      MR. RAGNONE:  conversation with --

9      THE COURT:  I'll let you continue at this

10  point.  Go ahead.  I'll overrule the objection.

11      MR. RAGNONE:  Thank you, Judge.

12      THE COURT:  You're welcome.

13      MR. RAGNONE:  And again I'm sorry.

14      THE COURT:  That's all right.

15      MR. RAGNONE:  All right.

16  BY MR. RAGNONE:

17  Q   So you have a conversation with Mr. Grimes in Genesee

18      County Jail?

19  A   Yes.

20  Q   Okay.  And with that conversation did you ask him why he

21      was in jail?

22  A   Yeah, I did.

23  Q   And what did he tell you?

24  A   He said for, ah, several armed robberies and stuff like

25      that.

                        24

1 Q  Okay, and did he say that the police were looking for

2    some other people?

3 A  Yeah, he did.

4 Q  And who was that?

5 A  Somebody by the initial of O.

6 Q  Okay.

7 A  And Tiakawa.

8 Q  And what did you say to him when he told you that?

9 A  I said what they looking Tiakawa for?

10 Q  And what was his response?

11 A  He said he don't know, he had nothing to do with it, so

12    he said he had no idea why they was looking for him.

13 Q  Okay, he said he had nothing to do with it, is that

14    correct?

15 A  Yes.

16 Q  Okay, and did he talk to you at all about having a gun?

17 A  Yeah.

18 Q  What'd he say?

19 A  He told me that the police got his gun and that was it.

20 Q  Okay.  Did you know -- Do you know Johnna Miller?

21 A  Yeah, I do.

22 Q  Okay. Were you aware prying (sic) to -- prior to seeing

23    Wayne Grimes in the Genesee County Jail that, um, Johnna

24    Miller had bought a gun?

25 A  Can you rephrase the question?

25

1  Q    Were you aware, um, that Mr. Grimes had received a gun

2       from Johnna Miller?

3  A    Oh, yes.

4  Q    Okay, and how -- when did you find that out?

5  A    I found that out before both of us was locked up.

6  Q    Okay.  During the summer of 2005?

7  A    Yeah.

8  Q    Okay, and the -- you don't know what kind of gun it was,

9       do you?

10 A    Yeah, I do.

11 Q    What kind of gun?

12 A    A 9 millimeter --

13            MS. RICHARDSON:  Your Honor, I'm going to

14 object unless he can establish how he knows that.

15            THE COURT:  I'll -- I'll sustain that.

16            MR. RAGNONE:  I'm sorry.

17 BY MR. RAGNONE:

18 Q    How do you know what kind of gun it is?  Did you ever see

19      it?

20 A    Yup.

21 Q    Oh, you saw the gun.  You saw it with -- in Mr. Grimes'

22      possession?

23 A    Yeah.

24 Q    Okay.  He showed it to you?

25 A    Yeah.

26

1  Q  Okay.  Did he show it -- Was it in a box?

2  A  Was it in a box?  No, it was his hand.

3  Q  Did you ever see a box with a -- that the gun came in?

4  A  Yeah, I did.

5  Q  Okay.  I'll show you Defense Exhibit Number 6 and ask you

6     if you ever seen this box before?

7  A  Yeah, he kept it under his driver's seat.

8  Q  What, the box?

9  A  Yup.

10  Q  Okay, and you say you saw the gun in his waistband?

11  A  Yup.

12  Q  Okay, and do you remember if that was -- when that was?

13  A  Like probably around the summertime.

14  Q  Of 2005?

15  A  Yeah.

16  Q  Okay.  And had you been -- ever been in Mr. Grimes' car?

17  A  Yeah.

18  Q  Okay.  Is that how you saw the box in the car?

19  A  Yeah.

20  Q  Okay.  Was there anybody else -- are you sure that Mr.

21     Grimes said to you in the jail that Tiakawa had nothing

22     to do with this?

23  A  Highly sure.

24  Q  Okay, and you're sure that the gun that came in that box,

25     or the gun that he had, belonged to Mr. -- was in Mr.

27

```
 1         Grimes' possession?

 2    A    Yes.

 3    Q    Okay.

 4              MR. RAGNONE:  I have no further questions.

 5    Thank you.

 6              THE COURT:  Cross-examination?

 7              MS. RICHARDSON:  Thank you, your Honor.  If I

 8    might approach.

 9                      CROSS-EXAMINATION

10   BY MS. RICHARDSON:

11    Q    Did you ever see a gun box before, sir?

12    A    Yeah.

13    Q    How many have you seen?

14    A    About three.

15    Q    How can you tell one from the other?

16    A    Because the others I seen was red.

17    Q    Okay.  And so this looked like every -- any other black

18    gun box you might have ever seen in your life?

19    A    Nope.

20    Q    So other than the fact that the other box you've seen was

21    red, what's the difference between that box and the other

22    boxes that you've seen?

23    A    Probably the size.

24    Q    And you said you saw a few.  How many total have you

25    seen?
```

28

1    A    Three.

2    Q    Were the other two red?

3    A    Yup.

4    Q    How'd you tell those two apart?

5    A    From the high point signs.

6    Q    And when is summer?

7    A    When is summer?

8    Q    Yeah.

9    A    Tell me.

10            MR. RAGNONE:  Objection.  I don't know -- I

11    don't know what the -- what the purpose of -- this isn't

12    a -- a geography class or weather class.

13            THE COURT:  That would be a chro -- a

14    chronology class maybe.

15            (Laughter.)

16            All right.

17            MR. RAGNONE:  Well, in Geography you gotta

18    figure out the climate, you know what I'm saying to you

19    there?  Does anybody disagree with that?  Don't get angry

20    with me.

21            MS. RICHARDSON:  May I ask the question, your

22    Honor?

23            THE COURT:  Sure, go ahead.

24    BY MS. RICHARDSON:

25    Q    When is summer?

29

1    A    I have no idea.  I can tell you the month.

2    Q    Okay, what month did you see Wayne Grimes?

3    A    Around July.

4    Q    Around July.  And it's -- what gun was it that you saw

5         him with in July?

6    A    A 9 millimeter.

7    Q    Okay, what -- what make was it, do you remember?

8    A    Nope.

9    Q    Was it the gun that went in that -- that box?

10   A    I'm pretty sure it was.

11   Q    Well, how are you pretty sure about that?

12   A    Because he wouldn't have a empty box and the gun that

13        don't go to the box, right?

14   Q    Okay. And so the gun that you saw in July, a 9

15        millimeter, was that a Taurus gun?

16   A    Have no idea.  I don't remember asking the brand of it.

17   Q    Okay.  Is that the gun that he got from Johnna Miller?

18   A    Yep, that's what he told me.

19   Q    That's what he told you.  You and Mr. Pierce have the

20        same mother, that would make you brothers, correct?

21   A    Correct.

22   Q    And Mr. Grimes, was he aware that you and Tiakawa were

23        brothers?

24   A    You'd have to ask him.

25   Q    Did you ever tell him that?

30

1   A   No.

2   Q   Okay.   What about when he was having this discussion with

3       you about O and Tiakawa Pierce?   You didn't say, hey,

4       that's my brother, what's up with that?

5   A   Nope.

6   Q   But you said that you knew Wayne Grimes?

7   A   Yeah.

8   Q   How long you known Wayne Grimes?

9   A   Probably a couple months or maybe a year.

10  Q   Where do you know him from?

11  A   From my cousin.

12  Q   Who's your cousin?

13  A   Omar.

14  Q   And you spend any time with your brother?

15  A   Not really.   I stay in a different city.

16  Q   Okay, but you knew Omar?

17  A   Yeah.

18  Q   And Mr. Grimes saw you before with Omar?

19  A   Yep.

20  Q   And Omar didn't like Mr. Grimes, is that correct?

21  A   Um, that's not true.

22  Q   Didn't they have problems with each other that you were

23      aware of?

24  A   Nope.

25  Q   Did they get along well whenever you saw them together?

31

1    A    Yeah.

2    Q    Best of friends?

3    A    Yeah.

4    Q    Like brothers?

5    A    Yeah.

6    Q    Hang out a lot?

7    A    Not really, but --

8            MS. RICHARDSON:  Nothing else, your Honor.

9            MR. RAGNONE:  Nothing further of this witness,

10    Judge.

11            THE COURT:  I've got just one question, or two

12    or three myself just to clarify something.

13                    EXAMINATION

14    BY THE COURT:

15    Q    Now, you saw this -- You saw Mr. Grimes -- or Mr. Grimes

16    told you about the gun in July, is that correct?

17    A    Yeah.

18    Q    Okay, and he -- you saw the gun box in July?

19    A    Yeah, around that time, yes, sir.

20    Q    Okay, and told -- where did he tell you he got the gun?

21    A    He got from Johnna Miller.

22    Q    Okay, and where did -- where did you see the gun in July?

23    A    When I seen it he was his car.  I walked up to the car,

24    it was on his lap.

25    Q    And that's -- And this is the gun box that you saw under

                        32

1       the seat?

2   A   Yeah.

3   Q   All right.  Thank you.

4               THE COURT:  No questions.

5               MR. RAGNONE:  No more questions.  Thank you

6       very much, Mr. McGruder.

7               THE COURT:  Thank you.  This witness may be

8       excused.

9               (Witness excused at 11:10 a.m.)

10              Any further witnesses?

11              MR. RAGNONE:  Meteorologist is what I meant to

12      say and --

13              Judge, I have no more witnesses at this time,

14      but I do have one more exhibit that the Prosecutor and I

15      have agreed for exam purposes only it can be admitted

16      into evidence.  It's Defense Exhibit Number 4.  And,

17      Judge, it is a police report of arrest dated 5/14/2005 of

18      Wayne Demetrius Grimes when he was charged with carrying

19      a concealed weapon.  And it shows the, um, gun that was

20      in fact he had on his possession at that time, which is a

21      Stoeger, S-t-o-e-g-e-r, Arms Llama, L-l-a-m-a, 380

22      caliber handgun, Serial Number 5-3-1-2-3-0.  And for

23      purposes of exam I'd like to show that to the Court,

24      entered as an exhibit.

25              THE COURT:  Any objection?

                                33

1

2

STATE OF MICHIGAN)
                 ) ss.
COUNTY OF GENESEE)

I, the undersigned Certified Electronic Court Recorder in and for the 67th District Court, County of Genesee, State of Michigan, do here state that the foregoing 47 pages are a true and accurate transcript, <u>to the best of my ability</u>, of the proceedings heard on Tuesday, August 28, 2007, in the matter of the PEOPLE OF THE STATE OF MICHIGAN versus TIAKAWA LEONDIS TERREL PIERCE, Case Number FYO05-C1034.

October 20, 2007

Ann L. Habermehl, CER=4273
Certified Electronic Recorder
67th District Court
630 S. Saginaw Street
Flint, Michigan 48502
(810) 257-3170u

49

**Exhibit K**



Genesee County Sheriff's Dept.
10/13/2005 8:33:12 AM

AGENCY:

REQUESTED BY:

PREPARED BY: Dwyre, Dave

NOTES:

Genesee County Sheriff's Dept.

Inmate LineUp Record of: 10-13-2005
LineUp Record No:       10/13/2005 8:33:12 AM

| LineUp Frame | PIN Number | Booking Number | Suspect Name | Suspect DOB |
|---|---|---|---|---|
| #1 | 92458 | 509294 | WILLIAMS, STEVEN LAVAR | 10/6/1978 |
| #2 | 116247 | 508743 | PIERCE, TIAKAWA LEONDIS | 8/5/1987 |
| #3 | 116446 | 509352 | GUISE, JAMARCUS OMAR | 1/3/1988 |
| #4 | 116492 | 509494 | MCGRUDER, JAAKAWA EDWARD | 6/7/1984 |
| #5 | 116464 | 509404 | MILLER, ERIC DUANE | 1/21/1988 |
| #6 | 114708 | 509532 | GRIMES, WAYNE DEMETRIUS | 10/6/1987 |

Search Criteria used to prepare this LineUp:

Race:              b
Gender:            m
Age:
Height:
Weight:
Hair Color:
Hair Style:
Eye Color:
Eye Glasses:
Build:
Complexion:
Facial Hair:
Dexterity:
Marks:

**Exhibit L**

STATE OF MICHIGAN
IN THE SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

Supreme Court No. 145994
Court of Appeals File No. 276454
LCN No. 06-10096-FH;

v.

OMAR RASHAD POUNCY,

Defendant-Appellant.                                                    /

GENESEE COUNTY PROSECUTORS'S OFFICE
Attorney for Plaintiff-Appellee

LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES
By:    David L. Moffitt (P30716)
Attorneys for Defendant-Appellant Omar Rashad Pouncy                    /

LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES
THE BINGHAM CENTER
30600 TELEGRAPH ROAD SUITE 2185
BINGHAM FARMS, MICHIGAN 48025
[v] 248-644-0880 [f] 248-307-9545 [e] DLMOFFITTASSOC@AMERITECH.NET    [web] DAVIDLMOFFITT.COM

## AFFIDAVIT OF LEONARD ACCARDO, P.I.

LEONARD ACCARDO, being first duly sworn, deposes and says that the facts set forth are true to the best of my knowledge, that he is not disqualified from being a witness, that if called to testify could do so competently and from personal knowledge, except where same may be stated to be based upon information and belief, and as to those matters, he believes them to be true, says:

1.    That Affiant is the investigator, retained by Michael J Brezinski ; to handle all investigative matters in connection with the above-captioned cause, at the trial court level;

2.    Everything I did in connection with this case is reflected in my testimony, which I am advised is attached as Appendix H, along with the previous affidavit of mine, in the most recent filings in this matter;

3.    Although I sought to locate and interview some potential "defense witnesses" provided to me by defendant Pouncy, I was never directed to locate and interview any of the prosecution witnesses listed below, during the pretrial investigative stages of the cause:

1. Wayne Grimes; 2. Thomas Sandstrom; 3. Officer Joe Phillips; 4.. Officer Edwards; 6. Joseph Davis; 7. Willie McKinley; 8. Fingerprint expert; 9. Smitty's Towing; 10. Sgt. David Dwyer; 11. Tlikuala Leondis-Terrel Pierce; 12 Maria Sandstrom; 13. Detective Steve Warda; 14 Officer Bob Farmer; 15. Officer Chris Watts; 16. Allen Diedrich; 17. Charles Smith Jr.; 18. Sammy Wood; 19. C. Corrin; 21. Earl Brady; 22. Officer Randy Yount; 23. Officer James Williams; 24. Sgt. George Thomas; 25. Jason Hickey; 26. Agent Jeff Lowe; 27. Jacob Wood; 28. Terry Roby; 29. Samuel Anderson; 30. Dan Haynes

4.      Had I been asked to locate, contact, and interview any of these witnesses during the pretrial stages of this matter I would have, since I was the only defense investigator, to my knowledge;

5.      I was never asked to locate a shoe print impression expert. Had I been asked to, I would have attempted to contact one. I never represented myself as a shoe print impression expert to Michael J Breczinski, prior to trial;

6.      Although I was asked to interview co-defendant Wayne Demetrius Grimes, Jr., prior to trial, time did not permit this to take place prior to trial because I would have had to go through his attorney to contact him.

7.      I am  willing to verify any of the above during any judicial proceedings.

Further Affiant sayeth not.

_Bernard Cereador_
Affiant

STATE OF MICHIGAN        )
                         )SS
COUNTY OF _OAKLAND_)

Subscribed and sworn to before me
on this 4th day of FEBRUARY 2013.

_(signature)_
Notary Public

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

PEOPLE OF THE STATE
OF MICHIGAN,

                Plaintiff,

vs

OMAR RASHAD POUNCY,

                Defendant.

_____/

File No. 05-017154-FC

JUDGE ARCHIE L. HAYMAN

David S. Leyton (P-35086)
Prosecuting Attorney
900 South Saginaw Street
Flint, Michigan 48502
(810) 257-3232

Daniel D. Bremer (P-23554)
Attorney for Defendant
1133 East Bristol Road
Burton, Michigan 48529
(810) 232-6231

## AFFIDAVIT OF LEONARD ACCARDO

State of Michigan  )
                ) ss.
County of Genesee )

    Leonard Accardo deposes and says as follows:

    1. I was the investigator retained by Michael J. Breczinski for the Defendant, Omar Pouncy. To my knowledge, I was the only investigator retained by Mr. Breczinski and he entrusted all investigative matters to me.

    2. The excerpt from the trial transcript that is attached to this affidavit accurately reflects all of the matters that Mr. Breczinski requested that I investigate. During the pretrial investigative stage, Mr. Breczinski never asked me to locate a witness named Willie McKinley Joyce. I would have attempted to locate and interview this witness if Mr. Breczinski had requested this.

    3. Mr. Breczinski did not ask me to locate a shoe print impression expert.

    4. Mr. Breczinski did not ask me to locate or interview Carrice Byrom, Robert Kelly, Helen Carr, Alan Diedrich, or Jason Hickey. I would have attempted to locate and interview these witnesses if Mr. Breczinski had requested this.

-1-

5. I never told Mr. Breczinski that I was a shoe print impression expert, nor did Mr. Breczinski ask if I had any experience in this field.

6. I am willing to testify to any of the above facts if necessary.

I DECLARE THAT THE STATEMENTS ABOVE ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF.

Dated: _1-11-11_

LEONARD ACCARDO

1    hand, sir.  Do you solemnly swear or affirm the testimony you

2    give today will be the truth so help you God?

3                MR. ACCARDO:  I do.

4                THE COURT:  Please pull the door toward you and step

5    up, sir.  And if you would have a seat.  And Mr. Breczinski,

6    you may proceed, sir.

7                          LEONARD ACCARDO

8    called to testify at 11:06 a.m., sworn by the court,

9    testified;

10                          VOIR DIRE

11   BY MR. BRECZINSKI:

12   Q    Would you say your name for the record?

13                THE COURT:  Before you do that, just let me, Mr.

14   Pouncy, you—you're okay with Mr. Breczinski, at this stage.

15   Is that correct?

16                MR. POUNCY:  Who—for this questioning?

17                THE COURT:  Yes.

18                MR. POUNCY:  Yes.

19                THE COURT:  So you don't have a problem with

20   interrogating Mr. Accardo?

21                MR. POUNCY:  No, I don't.

22                THE COURT:  Okay.  Mr. Breczinski, proceed.

23   BY MR. BRECZINSKI:

24   Q    Can you state your name for the record?

25   A    Leonard Accardo.

                                    91

CD 1-27-06, 8:49

1    Q    And what do you do for a living now?

2    A    I'm a licensed private investigator and I'm also a certified

3         legal investigator.

4    Q    And what did you do before that?

5    A    I was a police officer for approximately twenty years, most of

6         that as a detective.

7    Q    And for what department?

8    A    I retired in 1989 from the City of Burton.

9    Q    Now, in this matter you were hired to do investigation in

10        this.  Is that correct?

11   A    Basically, yes.

12   Q    And you were supplied with police reports?

13   A    Yes.

14   Q    And you were also supplied with the proffer (sic) statement of

15        Mr. Grimes?

16   A    Yes, I was.

17   Q    And you were supplied with a couple—some transcripts of

18        Preliminary Exams?

19   A    Yes, sir.

20   Q    And various pictures of evidence and every—basically, you took

21        my file and copied it.  Is that not correct?

22   A    That is true.

23   Q    And as other things came in I got them to you and you got

24        copies.

25   A    You did.

CD 1-27-06, 8:49

1    Q    All right.  And you've met with me and Mr. Grimes at the

2         County Jail on at least one occasion where the three of us—

3              MR. POUNCY:  Pouncy.

4    Q    —with, I mean, Mr. Pouncy on at least one occasion where we

5         all sat down together and talked.

6    A    Yes.

7    Q    And we went over issues of alibi and a number of other things,

8         motive for Mr. Grimes to—that he might—

9              MR. POUNCY:  Pouncy.

10   Q    I don't.  Excuse me.  For Mr. Grimes to have a dispute—

11             THE COURT:  Mr. Pouncy.  Wait a second.

12   Q    —with Mr. Pouncy.  Is that correct?

13   A    Would you repeat your question, please?

14   Q    We went over the fact that there were some issues that Mr.

15        Grimes might have to dispute with Mr. Pouncy or have some bad

16        blood.

17   A    Yes, we did.

18   Q    And we talked about tether and the limits of it.  Did we not?

19   A    Yes.

20   Q    And we talked about alibi witnesses.

21   A    Yes.

22   Q    And you were given some names including possible witnesses

23        that—the homeowners where he'd been working and the owner of

24        it and some other witnesses, correct?

25   A    I was given the name of witnesses.  I'm not sure if it was

                                 93

1      homeowners or not.

2   Q   And what did you do, subsequently?

3   A   Well, we—I was up to see Mr. Pouncy at least two times

4       subsequent to our original meeting with him and discussed

5       various aspects.  He provided the phone number for his mother,

6       which in just speaking with her a few moments ago, apparently

7       was one digit off because I never received phone calls back

8       from her, okay.  There was an issue he wanted me to clarify

9       with her.  In addition to that, we were provided with the name

10      of his then employer.  And being unable to find him in the

11      phone book, his computer data basis attempting to locate him

12      and found addresses for him going back to 1995, I think it

13      was.  And as late as this past Monday or Tuesday morning I was

14      still looking for the employer.  I believe his name is Timothy

15      or Tim Moore.  I could find no one home or indication that

16      even people were living there, this one house in particular.

17      I was on Franklin Avenue in Flint, Darrell Avenue up in the

18      Beecher district, another address somewhere in Mount Morris.

19      And was unable to locate him.

20  Q   You wanted to go over the statement Mr. Moore had given to the

21      police, correct?

22  A   That's true, yes.

23  Q   Okay.

24  A   In addition to that, we sought an opportunity to speak with

25      Mr. Grimes, Mr. Pouncy's stepbrother.  Through his attorney

                                94

CD 1-27-06, 8:49

1    Mr. Tosto, we never received that. We did later receive the

2    proffer statement that I had a chance to review and look at.

3  Q Is there anything else that you've done in this matter?

4  A I became aware of late in this that there could be a

5    girlfriend dispute, hard feelings between the two gentlemen

6    regarding a lady of mutual interest. I was given a basic

7    location of where she lived, but not specific, a neighborhood

8    and a first name only.

9  Q Were you able to locate her?

10  A No.

11  Q Did you make some sort of an attempt to do that?

12  A I went through the neighborhood trying to get the bearings,

13    but I just didn't knock on the doors. I wasn't convinced that

14    it was a necessary issue and we were running out of time.

15  Q And was there any other matters that you have done?

16  A I can't recall right now any more.

17  Q You spent approximately how many hours working on this?

18  A Oh, probably in the neighborhood of fifteen-twenty hours.

19      MR. BRECZINSKI: I have no further questions for

20    this.

21      THE COURT: Mr. Larobardiere, any questions you

22    would have, sir?

23      MR. LAROBARDIERE: No, your Honor.

24      THE COURT: I'm sorry. No questions?

25      MR. LAROBARDIERE: No.

CD 1-27-06, 8:49

1   THE COURT:  All right.  Mr. Breczinski, why don't

2   you find out Mr. Pouncy wants before we let this witness off.

3   MR. BRECZINSKI:  Oh, I did have one last question.

4   BY MR. BRECZINSKI:

5   Q   As a result of that, did you find any witnesses that were

6   helpful for the Defense?

7   A   Um, I was just about to interview his mother when I was called

8   back into court, so.  I would also indicate that there was a

9   question of foot size, the shoe print I think they found.  And

10   I was able to secure a measuring device and took the

11   measurements so of two people, their foot today in front,

12   prior to this.

13   THE COURT:  What two people are "they"?

14   WITNESS:  Mr. Pouncy would be the second.

15   THE COURT:  All right.  What size was Mr. Grimes'

16   foot?  What did you find that to be, by the way?

17   WITNESS:  He was wearing an extremely heavy sock and

18   then he put his foot with all his weight on it and I had him

19   lean forward and it came out to a twelve.

20   THE COURT:  Twelve.

21   WITNESS:  Yes, sir.

22   THE COURT:  All right.  And with respect to Mr.

23   Pouncy, what shoe size does he have?

24   WITNESS:  He's right between a thirteen and a

25   thirteen-and-a-half.

96

CD 1-27-06, 8:49

1        MR. POUNCY:  With the shoe off?

2        WITNESS:  With the shoe off, yes.

3        THE COURT:  Okay.  Any other questions, Mr.

4   Breczinski?

5        MR. BRECZINSKI:  I have no more questions.

6        THE COURT:  All right.  Then, you may step down,

7   sir.  Is there any need for him to remain here?  Is there any

8   testimony that he's going to give that you need, Mr. Pouncy?

9   (at 11:13 a.m., witness excused)

10       MR. POUNCY:  Yes.  I want to get my foot measured in

11  front of the jury.

12       THE COURT:  In front of the jury?

13       MR. POUNCY:  Yes.

14       THE COURT:  All right.  I think—is that going to be

15  it for him, is just having him measure your foot in front of

16  the jury?

17       MR. POUNCY:  Yes.

18       THE COURT:  Okay.  Then what I'm going to suggest is

19  that when we—we're going to bring the jury right back up here

20  now and we're going to have him do that in front of the jury

21  right now.  Okay?  So that's taken care of.  Mr. Breczinski?

22       MR. BRECZINSKI:  Then I would ask Mr. Accardo finish

23  his interview with the mother.

24       THE COURT:  I'm sorry.  Yeah.  Yes.  He can finish

25  his interview with the mother and then he probably should make

97

1   you guys aware of what he got from that interview and to see

2   whether or not there's a need to call her to the witness

3   stand.  Okay?

4           MR. BRECZINSKI:  Also, there's one other thing.  And

5   I would think it's relevant.  There was an issue about what he

6   wanted to get into was the records for the—records that show

7   when he was—

8           THE COURT:  Oh, for the Sheriff's Department.  Yeah.

9   Now that document, it—it's—could be considered a business

10  record.  I mean, I think a foundation could be laid but you'll

11  probably need the deputy here to that unless Mr. Larobardiere

12  is willing to just waive that issue.  Do you guys want

13  Sergeant Proby here, is what I need to know also?  Is that an

14  expectation that you're going to want—

15          MR. BRECZINSKI:  That would be the person that I

16  would like—that would be the natural person.

17          THE COURT:  If she's going to be here, then you

18  would certainly be able to bring that report in through her

19  and I would suggest that if she's going to be here, then that

20  would be the way to do it.  Okay?

21          MR. BRECZINSKI:  Right.  Because that's who's listed

22  on his—

23          THE COURT:  But have you guys looked into making

24  sure she's available today or can be here?

25          MR. POUNCY:  She's subpoenaed.

98

CD 1-27-06, 8:49

1      THE COURT:  She has?  Was she subpoenaed for today?

2      MR. LAROBARDIERE:  I think so.

3      THE COURT:  Was she?

4      MR. LAROBARDIERE:  Well, she was subpoenaed, but—

5  she's a listed witness, so.

6      THE COURT:  Now, when—are you calling her?

7      MR. LAROBARDIERE:  I—we haven't made that decision

8  yet.  But—

9      THE COURT:  I want to make sure she is here.  So now

10  is she going to be here like right after the afternoon or when

11  are you guys planning to bring her over here?

12      MR. LAROBARDIERE:  Well, I was—she was listed for us

13  as a rebuttal witness.

14      THE COURT:  Well, I want her here right after the

15  lunch break, okay?  So I'm going to ask that you guys contact

16  her over at the Sheriff's Department and tell her that we want

17  her here at, you know, we're probably going to try to start

18  back up at about 1:30.  So you tell her we want her here at

19  1:30, okay?

20      All right, then, Jackie is going to get the jury.

21  And Mr. Accardo, we'll have you take care of that and then

22  you'll leave to talk to his mother.

23      Mr. Pouncy, there's a concern here that when you're

24  being regis—measured by Mr. Accardo that the jurors don't see

25  the device that's on your leg.  Now, which leg is it on?  Do

99

CD 1-27-06, 8:49

1    you know?

2              MR. POUNCY:  Right.

3              THE COURT:  The right leg?  Well, which foot did you

4    want to have measured, your right or your left?

5              MR. POUNCY:  Well, um, I think they both wear the

6    same thing.  It would be the left.  I would rather it be the

7    right.

8              THE COURT:  The right?  Then what I'm going to

9    suggest is that, Mr. Accardo, when you measure his foot that

10   you can do it right over here.  The jury don't have to see it,

11   okay?  And then you can report the results.

12             CLERK:  Everyone rise, please.

13             THE COURT:  Everyone stand, please.

14   (at 11:17 a.m., jurors return)

15             THE COURT:  All right.  Have a seat, ladies and

16   gentlemen.  We are still on the record.

17             And at this time, ladies and gentlemen, we're going

18   to deviate just for a second here and we're going to have Mr.

19   Accardo do a measurement on Mr. Pouncy's right foot.  And, Mr.

20   Pouncy, if you would stand and allow him to conduct that

21   measurement right now.

22             MR. POUNCY:  (inaudible)

23             THE COURT:  You'll be able to do that right after we

24   do the measurement first.  Yeah, go right ahead, right there.

25   (at 11:18 a.m., measurement taken)

                              100

CD 1-27-06, 8:49

1           THE COURT:  All right.  And Mr. Accardo, if you

2    would step to the podium here, just for one second.  And then

3    we'll let you go.  And you would just state your name for the

4    record, please?

5           MR. ACCARDO:  Leonard Accardo.

6           THE COURT:  And Mr. Accardo, if you would raise your

7    right hand and do you solemnly swear or affirm the testimony

8    you give will be the truth so help you God?

9           MR. ACCARDO:  I do.

10          THE COURT:  All right.  Mr. Pouncy, you want to

11   question him about the measurement right quick and then we'll

12   be able to let him go?

13          MR. POUNCY:  May I approach the podium?

14          THE COURT:  You can question him from right there if

15   you like.  And you can stand and question him.

16                   LEONARD ACCARDO

17   called to testify at 11:18 a.m., sworn by the court,

18   testified;

19                   DIRECT EXAMINATION

20   BY MR. POUNCY:

21   Q    Upon your discovery—you are a certified legal investigator,

22        right?

23   A    Yes, sir, I am.

24   Q    Upon your discovery of measuring my right foot, what size did

25        you discover?

                                   101

CD 1-27-06, 8:49

1   A   Size thirteen-and-a-half.

2   Q   That was with the shoe on or off?

3   A   Shoe off.

4           MR. POUNCY:  Thank you, sir.

5           THE COURT:  That's all, Mr. Pouncy?

6           MR. POUNCY:  Yes, sir.

7           THE COURT:  Mr. Larobardiere.

8                       CROSS EXAMINATION

9   BY MR. LAROBARDIERE:

10  Q   Mr. Accardo, this piece of evidence this is a footprint of a

11      foot with the shoe on, correct?

12  A   Yes, it is.

13  Q   And the measurement taken of this shoe print with the shoe on

14      was a ruler in inches, correct?

15  A   Yes, sir.

16  Q   And the shoe size tool is—measures in shoe sizes, it's not

17      inches, correct?

18  A   Correct.

19          MR. LAROBARDIERE:  Thank you.

20          THE COURT:  Well, while—you left it begging the

21      question.  And Mr. Larobardiere, what, then is, Mr. Accardo,

22      if you can tell us, what would be the difference in scale

23      between the inches on the ruler and what's on the shoe sizer?

24          WITNESS:  To be very honest with you, your Honor,

25      I'm not sure.

                                102

CD 1-27-06, 8:49

1          THE COURT:  You have no idea.

2          WITNESS:  I have no idea.

3          THE COURT:  All right.  So, you can't say whether—

4     how they compare with each other then, the ruler versus the

5     shoe scaler.  Is that correct?

6          WITNESS:  I cannot.

7          THE COURT:  All right.  Thank you, sir.

8     (at 11:20 a.m., witness excused)

9          THE COURT:  All right.  Mr. Larobardiere, call your

10    next witness.

11         MR. LAROBARDIERE:  Thank you, Judge.  We call Dan

12    Haynes.

13         MR. POUNCY:  I have an objection, your Honor.

14         THE COURT:  Just one second.  Any objection to call

15    Dan Haynes?

16         MR. POUNCY:  Yes.

17         THE COURT:  All right.  And state your objection.

18         MR. POUNCY:  He's on the witness list for March—or

19    February 16 or March 7 or 19 or something like that.  He's not

20    on the witness list for—

21         THE COURT:  Oh, so he's—in other words, he's

22    involved in something else.

23         MR. POUNCY:  Yes.

24         THE COURT:  I get your point.  All right.  What's

25    your position on that, Mr. Larobardiere?

CD 1-27-06, 8:49

**Exhibit M**

State of Michigan
In the Circuit Court for the County of Genesee
7th Judicial Circuit

People of the State of Michigan,
　　　　　Plaintiff,

Circuit Court No. 05-017154-FC

Judge: Hayman

vs

Omar Rashad Pouncy,
　　　　　Defendant.

Attorney for Plaintiff:

David S. Leyton,  P35086
Prosecuting Attorney
Genesee County, Michigan

Dale A. DeGarmo,  P36501
Assistant Prosecuting Attorney
100 Courthouse
Flint, MI  48502
(810) 257-3248

Attorney for Defendant:

Daniel D. Bremer,  P23554
1133 East Bristol Road
Burton, MI  48529
(810) 232-6231

### People's Answer in Opposition to Defendant's Motion for Relief From Judgment

Defendant Omar Pouncy was charged with multiple counts in two separate files. Both cases arise out of defendant's involvement in carjackings during which defendant posed as a potential buyer of vehicles advertised for sale.  In each incident, after arranging to take the vehicle for a drive, defendant would pull a gun on the seller and steal the vehicle.  In this case, 05-017154-FC, defendant was jury convicted for carjacking Earl Brady and Thomas and Maria Sandstrom (Brady jury trial).  This Court also held a separate bench trial for carjacking Ralph Haynes. 05-017448-FC (Haynes bench trial).

1

On February 1, 2006, defendant was jury-convicted in file 05-017154-FC, (Brady jury trial), of four counts of carjacking, MCL 750.529a, four counts of armed robbery, MCL 750.529, two counts of carrying a firearm during commission of a felony (felony firearm), MCL 750.227b, and one count of being a felon in possession of a firearm (felon in possession), MCL 750.224f. This court sentenced defendant as a third offense habitual offender, MCL 769.11, to concurrent sentences of 2 years each for the felony firearm counts, followed by concurrent sentences of 562 months to 800 months' imprisonment for each of the four counts of carjacking, to 562 months to 800 months' imprisonment for each of the four counts of armed robbery, and two to 10 years' imprisonment for felon in possession. (Judgment of Sentence, 3-9-06).

In file 05-017448-FC (Haynes bench trial), defendant was convicted on April 7, 2006 of one count each of carjacking, armed robbery, felony firearm, felon in possession, and carrying a concealed weapon, MCL 750.227. The conviction was reversed by the Court of Appeals. *People v Omar Rashad Pouncy, (On Reconsideration)*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2008 (Docket No. 269298). Following remand to this Court the prosecution dismissed the charges.

* * *

Defendant Pouncy was represented at Preliminary Exam and at the beginning of the Brady jury trial by attorney Michael Breczinski. During the jury trial defendant began representing himself and conducted his own defense.

Defendant is currently incarcerated with the Michigan Department of Corrections.

## Counter Statement of Facts[1]

## The Brady Carjacking [05-017154-FC]

Joseph Davis testified that Earl Brady brought a Camaro drag-racing car to his racecar chassis fabrication shop to display it for sale. Approximately four or five days before September 29, 2005, three men came to look at the Camaro; one of them identified himself as "Jacob Woods." At trial, Davis identified defendant as "Jacob Woods" and noted that he had been the one doing most of the talking. Defendant came back a second time and then a third time on the 29th. On September 29th, defendant called Davis and indicated that he was ready to make a deal, so Davis called Brady and told him to come over. Brady arrived in his truck with his friend Patrick Wendell. Defendant and two other men showed up later in a grey Intrepid. During negotiations, defendant told Davis that he wanted to take the Camaro to his mechanic at King Automotive. Brady agreed, loaded the Camaro onto a trailer attached to his truck, and they all left.

At trial, both Brady and Wendell identified the prospective buyer of the Camaro as defendant. The group arrived at a house where defendant said they would meet the mechanic and defendant asked Brady to back the truck into the driveway. Defendant and Brady were discussing the Camaro, when one of defendant's associates pulled out a gun and demanded Brady's keys and cell phone. When Brady refused, the associate fired the gun up into the air; Brady then complied. The men also took Wendell's cell phone. The men told Wendell and Brady to walk across the street and into the woods. While in the woods, Brady and Wendell

---

[1] The facts presented here are copied from the Court of Appeals Opinion, *People v Omar Rashad Pouncy, (on Reconsideration)* unpublished opinion per curiam of the Court of Appeals, issued March 25, 2008 (Docket Nos. 269298 & 270604).

heard the vehicles drive away. Brady and Wendell walked to a nearby house and called the police.

Wayne Grimes, defendant's stepbrother, testified that he helped defendant commit the Brady carjacking. Grimes testified that he owned an Intrepid, in which he drove defendant and defendant's friend, Tiaqua, to Davis's race shop on September 29, 2005. After defendant spoke to some men about a car, defendant directed Grimes to drive to defendant's "engineer." On the way, defendant told Grimes that he planned to "take" the cars and sell them, and Tiaqua handed Grimes a gun. Grimes testified that they arrived at a house, and, after Grimes gave him the signal, he pointed the gun at one of the men and took his keys and cell phone. He testified that he shot the gun in the air when the man first refused. He also testified that he ordered the men to walk into the woods. According to Grimes, after the men walked into the woods, he got in his car and left defendant and Tiaqua. Grimes testified that he had pleaded guilty to armed robbery and felony firearm.

### The Sandstrom Carjacking

Thomas Sandstrom testified that on October 11, 2005, a man, who had already called the previous day, came to his home in a metallic Intrepid to see a Cadillac that Sandstrom had advertised for sale. At trial, both Thomas and his wife Maria Sandstrom identified defendant as the prospective buyer. Defendant asked to take the car to his mechanic at King Automotive and Thomas agreed. Thomas rode in the Cadillac with defendant, defendant's associate drove the Intrepid, and Maria followed in her Corvette. They ended up at the last house on a dead end dirt road. Defendant asked Thomas for the title and they went to the Corvette to retrieve it from Maria. Thomas then felt defendant stick a gun in his side and defendant told Maria to get out of the Corvette. Thomas was asked for his wallet, and both

4

the Sandstroms were ordered into the woods. Thomas heard the cars drive away, so he and Maria walked back to the road and flagged down a passing police car. Maria had memorized the license plate of the Intrepid and gave it to the police.

Grimes testified that he also helped defendant commit the Sandstrom carjacking. He testified that he, Tiaqua, and defendant were driving around, and defendant was looking at automotive sales ads in the newspaper. At some point, defendant called about an ad and then directed Grimes to drive to the seller's house. After defendant spoke to a man about a car, defendant told Grimes that he was going to take the car for a test drive. On the way, Grimes "[f]ound out that ... it's about to happen again"-that defendant planned to steal the cars. Grimes testified that just after they arrived at the house, he heard the women screaming, and he got out of his car, covered his license plate, and then drove away, leaving defendant and Tiaqua behind. Grimes admitted that, when he was first arrested, he denied any involvement in the carjackings.

## The Arrest and Trial

Detective James Gagliardi testified that he was assigned to investigate the Brady carjacking, but his investigation hit a dead-end. However, on October 12, 2005, he received notice of the Sandstrom carjacking and, after investigating the Intrepid lead, he was able to locate Grimes. Grimes was arrested, and, during interrogation, he identified defendant as one of his accomplices. Gagliardi testified that he put together a photo showup of defendant, and that Davis, Brady, and the Sandstroms all immediately identified defendant. Sometime around October 13, 2005, Anderson and Dan Haynes viewed a photo showup, and both men identified defendant as the carjacker. (05-17448-FC) Gagliardi testified that defendant was taken into custody on Friday, October 14, 2005.

5

In late January and early February 2006, the trial court held the Brady jury trial. At the beginning of trial, defendant expressed dissatisfaction with his appointed attorney. Defendant claimed that he and his attorney Michael Breczinski were "really not on the same page." Defendant indicated that he was not comfortable with Breczinski's representation because Breczinski had not filed some requested motions or an alibi notice and the longest contact he had with Breczinski was a 15-minute conversation on the day of trial. Defendant requested replacement counsel. The trial court explained that Breczinski could not file legal documents without a proper basis and that defendant did not have the knowledge or experience to know whether the requested motions were proper. The trial court also assured defendant that Breczinski was a very experienced attorney. The trial court denied defendant's request for new counsel, noting that "we're here on the day of trial, we got a jury downstairs that's ready to go and we're gonna try this case today[.]" Although the trial court denied defendant's request, it still inquired about the efforts Breczinski had taken with regard to defendant's alibi and other matters. Breczinski explained that he had taken steps to investigate defendant's alibi and address the other issues raised by defendant.

After jury selection, defendant proffered an objection. The trial court advised the defendant on the record regarding the waiver of counsel. After the prosecution's opening statement, defendant requested permission to give his own opening statement. The trial court again advised defendant about the waiver of counsel. This court then determined that Breczinski should continue representing defendant and make the opening statement. Just before Breczinski was about to cross-examine the first trial witness, Breczinski told the court that defendant had passed him a note during the direct examination that stated, "I'm gonna

represent myself from now on so you can tell the Judge." Yet again this court advised defendant about self-representation.

The trial lasted six days and included all the charges stemming from both the Brady and Sandstrom carjackings. The jury convicted defendant as charged of four counts of carjacking, four counts of armed robbery, two counts of felony firearm, and one count of being a felon in possession of a firearm.

*People v Omar Rashad Pouncy*, (On Reconsideration), unpublished opinion per curiam of the Court of Appeals, issued March 25, 2008 (Docket No. 269298 & 270604).

Additional facts not referenced in the Slip Opinion will be provided in the argument portion of this answer. The most significant fact is that defendant testified in his own defense. (TT 1-31-06, 00163-213) This is contrary to defendant's current claim that "Mr. Pouncy did not testify".

### The Haynes Carjacking [05-17448-FC]

In September 2005, Ralph Haynes had a Monte Carlo on display for sale in the front yard of Samuel Anderson's home. Ralph was selling the car to pay for anticipated funeral expenses associated with his impending death from cancer. Anderson explained that on Saturday, September 24, 2005, a person came to look at Ralph's car. At trial, Anderson identified defendant as the prospective buyer.

Dan Haynes testified that he went to Anderson's house with Ralph on Wednesday, September 21, 2005, in order to meet some people who were interested in purchasing the Monte Carlo. At trial, Dan identified defendant as the prospective buyer. On September 24th, defendant arrived at Anderson's house and asked to take the car for a test drive. Anderson agreed to accompany defendant on the test. Anderson informed defendant that the

car was not insured and instructed defendant on a specific route for the test drive. Anderson testified that part of the instructed route included getting on the expressway, but as they approached the expressway ramp, Anderson realized that defendant was in the wrong lane. When Anderson advised defendant that he needed to change lanes, defendant replied, "No, the car is mine now[,]" pulled out a gun, and pointed it at Anderson. Anderson told defendant he could have the car and asked to be let out. Defendant stopped at a red light and told Anderson, "All right when that light turns green you better be out the door or I will blow you through the door." Anderson got out.

The Haynes bench trial lasted four days in April 2006. (05-17448-FC) At the close of proofs, this Court convicted defendant of one count each of carjacking, armed robbery, felony firearm, felon in possession, and carrying a concealed weapon, MCL 750.227. Defendant appealed to the Court of Appeals. The Court found only one dispositive and held that defendant was deprived counsel during a critical stage of the proceedings because he did not unequivocally waive his right to counsel during the pretrial proceedings. For that reason, defendant's convictions were reversed. *People v Omar Rashad Pouncy, (On Reconsideration)*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2008 (Docket No. 269298 & 270604).

### Direct Appeal

### A. Defendant Pouncy's Appeal to the Court of Appeals:

Defendant, represented by SADO attorney, Chari Grove, filed an appeal of right to the Michigan Court of Appeals on March 28, 2006.

In his brief defendant presented nine issues:

8

I:   Defendant's waiver of counsel was not voluntary or unequivocal and his conviction must be reversed.

II:  Defendant was denied his right to effective assistance of counsel; the court erred by refusing to grant a continuance for defendant to obtain substitute counsel.

III: Defendant Pouncy was denied due process of law by the impermissible joinder of eleven charges based on two entirely separate incidents.

IV:  Defendant was denied due process of law by the use of suggestive photo identification procedures and the denial of a corporeal lineup.

V:   The trial court denied defendant a fair trial, his right to present a defense, and a properly instructed jury by failing to instruct on the principal defense of alibi, on accomplice witness credibility, and on mere presence; defendant was denied effective assistance of counsel by the lack of requests for those instructions.

VI:  Defendant was denied a fair trial by the introduction of other criminal acts that were not sufficiently similar to prove identity and that were unduly prejudicial.

VII: The trial court denied defendant a fair trial by allowing the star prosecution witness to testify, over objection, that he was telling the truth because of his religious belief.

VIII: The trial court denied defendant a fair trial by admitting a highly inflammatory tape recording that was not sufficiently authenticated and that was so inaudible to be untrustworthy.

IX:  Defendant was sentenced on the basis of inaccurate information where OV 12 was misscored, and he is entitled to resentencing.

(Appellant's Amended Brief on Appeal, *People v Pouncy*, COA 269298, filed Dec 4, 2006).

Defendant, in pro per, filed a Standard 4 Brief on February 28, 2007.  Defendant

presented eight additional claims of error:

I.   Defendant was deprived of a fair trial due to the substantial prejudice he suffered from the unnecessary, intentional, and prejudicial delay in his arrest, and his convictions must be reversed and charges dismissed.

II.   Defendant was deprived of his right to a public trial and reversal is required without the showing of actual prejudice.

III.  Defendant was impermissibly deprived of his right to confront witnesses as guaranteed by the Sixth Amendment, which is made obligatory on the states by the Fourteenth Amendment, reversal is required without the showing of prejudice.

IV.  Defendant's waiver of counsel was ineffective due to the trial court's failure to advise him of the "accurate" maximum possible sentence, failure to advise defendant of the mandatory minimum sentence required by law for the charge of armed robbery and felony firearm at the time of the waiver, failure to advise him of all of the disadvantages involved in self-representation, failure to reaffirm the waiver at subsequent proceedings, and for allowing defendant to represent himself after he clearly told the trial court that he was not prepared for trial.

V.   Defendant was denied his right to due process due to the suppression of exculpatory and impeaching evidence by the prosecution notwithstanding his constant request.

VI.  Defendant was impermissibly deprived of his right to represent himself at the pretrial stages and his right to counsel of his choice (retained), due to the trial court's failure to appraise his request.

VII. Defendant Pouncy was denied a fair trial due to the prosecution's improper burden-shifting arguments during closing argument concerning defendant's alibi defense.

VIII. The cumulative amount of errors that riddled defendant's trial whether deemed preserved or unpreserved deprived him of a fair trial.

(Appellant's Pro Per Supplemental Brief on Appeal, *People v Pouncy*, COA 269298, filed Feb 28, 2007)

Defendant later filed a Supplemental Brief on Appeal raising two more issues:

I.   The prosecutor's failure to disclose the full extent of the promises of leniency given to the star prosecution witness in return for his testimony against defendant denied Mr. Pouncy his right to confrontation and his right to due process of law.

II.  The substantial departure from the verdict form was coercive and defendant's conviction must be reversed.

10

(Appellant's Supplemental Brief on Appeal, *People v Pouncy*, COA 269298, filed May 15, 2007).

The Court of Appeals, in an opinion addressing both trials, affirmed defendant's convictions and sentences in this case, the Brady jury trial, 05-17154-FC, but reversed the convictions and remanded in the Haynes bench trial, 05-17448-FC. *People v Omar Rashad Pouncy (On Reconsideration)*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2008 (Docket Nos. 269298 & 270604). [Hereafter "Slip op"]

The Court of Appeals held that "the trial court did not clearly err when it determined that defendant knowingly, intelligently and voluntarily waived his right to counsel. Therefore, the trial court did not err when it permitted defendant to represent himself." (*Pouncy*, Slip op, p 12).

The Court also held: "Although defendant claims that the trial court entrusted the selection of jury instructions to Breczinski, the record demonstrates that defendant took an active role in deciding which instructions the court should give. Further, the trial court specifically asked both Breczinski and defendant if they were satisfied with the reading of the instructions and both expressed satisfaction with the reading. By expressly approving the instructions, defendant waived any claim of error. *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002)." (*Pouncy*, slip op, p 21).

"Defendant also argues that Breczinski, although serving only as standby counsel, was ineffective for failing to request instructions on the defense of alibi, accomplice credibility, and mere presence. However, a defendant who asserts his right to self-representation has no entitlement to the effective assistance of advisory counsel. *People v Kevorkian*, 248 Mich App 373, 425-426; 639 NW2d 291 (2001). Accordingly, there were

no instructional errors warranting relief." (*Pouncy*, slip op, p 21).

**B. Michigan Supreme Court:**

   Defendant Pouncy, represented by SADO, filed an application for leave to appeal in the Michigan Supreme Court. He repeated the same thirteen issues that he had raised his original brief on appeal and supplemental brief on appeal in the Court of Appeals and also attached his pro per brief that contained eight issues and requested the Supreme Court review these issues. *People v Omar Rashad Pouncy*, SC # 136202 (Defendant's Application for Appeal, filed April 11, 2008).

   The Supreme Court denied the application: "because we are not persuaded that the questions presented should be reviewed by this Court." *People v Omar Rashad Pouncy*, 482 Mich 895 (July 29, 2008).

**C. Defendant's Motion for Relief from Judgment:**

   Defendant, represented by attorney Daniel D. Bremer, filed a motion for relief from judgment on July 22, 2009. The Brief in Support of Motion for Relief From Judgment was not filed until December 21, 2009 and presents fifteen issues [hereafter "Def's Brief"]:

  I.  The Defendant received ineffective assistance of appellate counsel and for this reason he has good cause for failing to raise the various issues set forth below to the extent that they are not based on newly discovered evidence.

  II. The Prosecutor denied the defendant due process of law by failing to correct the false testimony of Wayne Grimes, a key witness.

  III. The Prosecutor denied defendant due process of law by allowing a police officer to place a police report containing inadmissible evidence on the ledge of the juror box where it was visible to the jury.

  IV. The Defendant was denied due process of law because the prosecutor failed to disclose potentially exculpatory evidence in the form of a

written statement of one of the complainants, Thomas Sandstrom, before Mr. Sandstrom testified.

V.   There was a possible extraneous influence on the jury in the form of either discussion of a telephone call from the Genesee County jail received by one juror, or telephone calls to other jurors that require a hearing, but no hearing was conducted.

VI.   The Prosecutor denied defendant due process of law by making disparaging remarks about the Defendant in his capacity as his own attorney.

VII.   The Court denied the defendant due process of law and the right to present a defense by preventing the defendant from calling Wayne Grimes in his case in chief.

VIII.   The defendant's trial attorney was ineffective in failing to have competent evidence to show the shoe size of the shoe print impression left at the alleged crime scene.

IX.   Standby counsel had no authority to stipulate that the defendant had been convicted of an unspecified felony.

X.   There is newly discovered evidence in the form of an affidavit from Tiakawa Pierce who was unavailable at the time of the trial.

XI.   There is newly discovered evidence in the form of an affidavit from Quillie B. Strong that shows that the telephone number used by the person who called one of the complainants on September 24, 2005 was traceable to a person other that the defendant, contrary to the representations made by the prosecutor during the trial.

XII.   There was prosecutorial misconduct when the prosecutor produced a power point slide during his opening statement and closing argument that proclaimed "Omar Pouncy is guilty." Also the prosecutor produced a slide during his closing argument referring to Mr. Pouncy as "A seller's worst nightmare." The prosecutor vouched for the credibility of Wayne Grimes. Alternatively, defendant's attorney was constitutionally ineffective in failing to object to this misconduct.

XIII.   The armed robbery instruction denied the defendant due process of law by referring to the complainants as "victims".

XIV.   Trial counsel was constitutionally ineffective in failing to produce at trial three exculpatory witnesses, Charles Smith, Willie Joyce McKinley,

13

and Carrice Byrom, two alibi witnesses, Carrice Byrom and Helen Carr, as well as sheriff deputies in charge of the work release program, and in failing to investigate possible credit card transactions with credit cards alleged stolen from the complaining witnesses.

XV. The cumulative effect of the errors and absence during the trial of the newly discovered evidence set forth above deprived the defendant of due process.

[Def's Brief, pp i-ii]

## D: Defendant's Pro Per Motions:

Defendant, pro per, filed five motions dated July 9, 2009: Motion for Expansion of Record; Motion for a *Ginther* Hearing; Motion for Discovery; Motion for Appointment of Forensic Shoeprint Impression Expert Witness; and, Motion for a *Remmer* Hearing. (Motions filed July 22, 2009) All five motions were signed by defendant, not by appointed counsel Daniel Bremer. (Order appointing counsel entered May 21, 2009)

This Court entered an order directing that the prosecutor file a response "addressing the allegations in Defendant's Motion for Relief from Judgment". (Order entered Dec 26, 2009). The People will address the allegations in the Motion for Relief From Judgment but will not address the issues raised in defendant's pro per motions because they are not contained in the motion for relief from judgment.

## ARGUMENTS

Defendant brings this motion pursuant to MCR 6.500. The people maintain that the trial court may not grant defendant's request where the motion alleges grounds for relief which were decided against the defendant in a prior appeal [MCR 6.508(D)(2)] or an issue that was not, but could have been raised in a prior appeal, the defendant must show both good cause for the failure to raise the issue and actual prejudice from the alleged irregularities that support the claim for relief [MCR 6.508(D)(3)]. *People v Reed*, 449 Mich 375; 535 NW2d 496 (1995).

Defendant argues fifteen issues in this motion for relief from judgment as grounds for relief to wit: appellate counsel was ineffective (Issue I): the prosecutor's failure to correct false testimony (Issue II): the prosecutor allowing witness to place a police report before the jury (Issue III): the prosecutor's failure to disclose potentially exculpatory evidence (Issue IV): possible extraneous influence on the jury (Issue V): the prosecutor's remarks about defendant (Issue VI): the court preventing defendant from calling a witness (Issue VII): ineffective assistance of trial counsel for alleged error regarding shoe print impressions (Issue VIII): standby counsel's stipulation to defendant's prior felony conviction (Issue IX): newly discovered evidence (Issues X & XI): prosecutor misconduct by use of a power point (Issue XII): jury instruction used the word "victim" (Issue XIII): trial counsel was ineffective for failing to produce witnesses at trial (Issue XIV): and, cumulative error (Issue X).

Defendant either raised these issues in this prior appeal or he could have done so. Because requests for *habeas corpus* type review, such as motions for relief from judgment, are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by

collateral, as opposed to direct attack. *Ciak v United States*, 59 F3d 296, 301 (1995) citing *United States v Frady*, 456 US 152, 165 (1982). "The specific purpose for creating the post-conviction procedure was to provide finality of judgments affirmed after one full and fair appeal and to end repetitious motions for new trials." *Reed, supra*, at 381. "Neither the guarantee of a fair trial nor a direct appeal entitles a defendant to as many attacks on a final conviction as ingenuity may devise. *Reed, supra* 389-390." *People v Clark*, 274 Mich App 248 (2007). The burden is on the defendant to establish that he is entitled to relief. MCR 6.508(D).

### MCR 6.508(D)(2)

**A. Defendant is not entitled to relief from judgment based on his claim ineffective assistance of trial counsel was raised in his prior appeal and decided against defendant, MCR 6.508(D)(2).**

Defendant argues ineffective assistance of trial counsel for alleged error regarding shoe print impressions (Issue VIII), error by standby counsel's stipulation to defendant's prior felony conviction (Issue IX) and, trial counsel was ineffective for failing to produce witnesses at trial (Issue XIV). The people maintain that this court must deny the defendant's motion for relief on his claims regarding ineffective assistance of trial counsel because the issue was decided against him in his a prior appeals.

The rule is clear: "The court may not grant relief to the defendant if the motion alleges grounds for relief which were decided against the defendant in a prior appeal . . . unless defendant establishes that a retroactive change in the law has undermined the prior decision." MCR 6.508(D)(2). In defendant's appeal of right he alleged trial counsel was ineffective by the lack of requests for instructions regarding on the principal defense of alibi, accomplice witness credibility, and on mere presence.

Defendant's motion for relief from judgment does not involve a separate action, but rather a new request for post conviction review involving the same suit. Accordingly this case involves application of the law of the case doctrine. The doctrine holds that a ruling by a reviewing court on a particular issue binds the reviewing court and all lower tribunals with respect to that issue. Thus, a question of law decided by the reviewing court will not be decided differently on remand or in a subsequent appeal in the same case. The primary purpose of the doctrine is to maintain consistency and to avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Higgins Lake Prop Owners Assn' v Gerrish Twp*, 255 Mich App 83, 91; 662 NW2d 387 (2003). The law of the case applies to issues actually decided, either implicitly or explicitly, in the prior appeal. *Grievance Admin v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2001).

Courts have applied the law of the case doctrine to collateral challenges in federal habeas cases. "[F]ederal courts employ the more flexible doctrine of law of the case even when rules of preclusion do not govern. . . . . This is true in collateral proceedings as well as in normal civil litigation. *Sanders v United States*, 373 US 1; 83 S Ct 1068; 10 L Ed 2d 148 (1963), restated these common-law norms, which have been modified by the Antiterrorism and Effective Death Penalty Act for successive collateral reviews, but left in place for the initial round. (Although *Sanders* dealt with successive rounds of collateral proceedings, the Court has held that its approach applies equally when the same issue is raised on direct appeal and again on an initial round of collateral review. See *Davis v United States*, 417 US 333, 342; 94 S Ct 2298; 41 L Ed 2d 109 (1974). The Court held in *Sanders* that an initial federal determination controls in subsequent rounds of review if "(1) the same ground presented in the subsequent application was determined adversely to the applicant on the

prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." 373 US at 15. *Peoples v United States*, 403 F3d 844, 847 (CA 7, 2005).

"Ineffective assistance of counsel is a single ground for relief no matter how many failings a lawyer may have displayed." Id. at 848. "[I]t is the overall deficient performance [by a defendant's attorney], rather than a specific failing, that constitutes the ground of relief," the purposes behind the rules of procedural default requires a party to present to the court both the facts and the law on which he relies. Thus, the failure to alert the court to a complaint about one aspect of counsel's assistance will lead to a procedural default. *Stevens v McBride*, 489 F3d 883, 894 (CA 7, 2007).

In this case the Court of Appeals held that trial counsel was not ineffective. Defendant is procedurally defaulted from raising ineffective assistance of trial counsel in a motion for relief from judgment.

## MCR 6.508(D)(3)

**B. The defendant is not entitled to relief from judgment because he failed to raise the issues in his prior appeals to the Michigan Court of Appeals and the Michigan Supreme Court.**

The people also maintain that this Court may not grant defendant's request where the motion alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from his conviction and sentence unless defendant demonstrates **both** good cause for failure to raise an issue and actual prejudice resulting from the alleged irregularity. *Reed, supra.*

18

"The specific purpose for creating the post conviction procedure was to provide finality of judgments affirmed after one full and fair appeal and to end repetitious motions for new trials.  MCR 6.508(D) is identical to the federal standards for habeas corpus relief under 28 USC § 2255.  Post conviction relief is provided for the extraordinary case in which a conviction constitutes a miscarriage of justice." *Reed, supra*, 381.

### Good Cause

The Court of Appeals in applying MCR 6.508(D)(3) held the rule "requires a defendant to show good cause for failure to raise a claim in an appeal if one is filed."  The Court also reaffirmed that the rule requires that "the trial court must articulate on the record that it found good cause and identify what the good cause is." *People v Clark*, 274 Mich App 248 (2007).  In this case defendant's allegation of good cause is ineffective assistance of appellate counsel. (Def's Brief , Issue I, pp 5-6).  Defendant alleges ineffective appellate counsel for the failure to raise "markedly stronger" issues that he raised in this motion for relief from judgment. (Def's Brief, p 6).

### A. Defendant's self-representation precludes a claim of ineffective assistance of counsel.

The People contend that ineffective assistance of appellate counsel cannot be good cause for defendant's failure to raise the issues in his prior appeals because he was self-represented when he filed his pro per Standard 4 brief in the Court of Appeals and his pro per application was submitted with his application to the Supreme Court.

A review of defendant Pouncy's arguments indicate that the various claims: the prosecutor's failure to correct false testimony (Issue II); the prosecutor allowing witness to place a police report before the jury (Issue III); the prosecutor's failure to disclose potentially

exculpatory evidence (Issue IV); possible extraneous influence on the jury (Issue V); the prosecutor's remarks about defendant (Issue VI); the court preventing defendant from calling a witness (Issue VII); ineffective assistance of trial counsel for alleged error regarding shoe print impressions (Issue VIII); standby counsel's stipulation to defendant's prior felony conviction (Issue IX); prosecutor misconduct by use of a power point (Issue XII); jury instruction used the word "victim" (Issue XIII); trial counsel was ineffective for failing to produce witnesses at trial (Issue XIV); and, cumulative error (Issue XI); all rest on facts previously available to him when he acted *pro se* in the Michigan Court of Appeals and Michigan Supreme Court. Defendant was present for the trial, represented himself at trial, and was well aware of all the testimony and arguments relied on for the challenges he argues in this motion.

   Again, ineffective assistance of appellate counsel cannot form the basis of good cause for defendant's own failure to raise the issues because he was self-represented in his prior appeals to the Michigan Court of Appeals. Defendant could have raised any of these issues in his Standard 4 Brief. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'." *People v Burden*, 141 Mich App 160, 164 (1985) quoting *Faretta v California*, 422 US 806, 835, fn 46; 95 S Ct 2525; 45 L Ed 2d 562 (1975). Defendant was not precluded from raising his current issues in his *pro per* brief in the Court of Appeals or his *pro per* application to the Supreme Court. There is no ineffective assistance of counsel to excuse his procedural default. See also *Rockwell v Palmer*, 559 F Supp 2d 817, 834 (2008).

   In sum, defendant fails to establish cause for failing to raise his current issues in his prior appeals. Defendant is not entitled to claim ineffective assistance of counsel due to his

self-representation. This Court should deny defendant's motion because he has failed to show good cause for failing to raise these issues in his prior appeal.

## B. Appellate counsel was not ineffective.

Arguendo. If this court were to hold that defendant's self-representation does not preclude him from establishing good cause based on ineffective assistance of appellate counsel, defendant must establish ineffective assistance of appellate counsel.

Defendant argues that appellate counsel, SADO attorney Chari Grove, was ineffective because the issues she raised on appeal "were unsuccessful" and "the issues raised in his Motion for Relief from Judgment are markedly stronger issues." (Def's Brief, p 6) Attorney Grove represented defendant in his prior appeals to the Court of Appeals and Supreme Court, attaching a copy of defendant's pro per brief in the Court of Appeals to the Application to the Supreme Court. Defendant's mere allegation of ineffective assistance of appellate counsel because the issues raised on appeal "were unsuccessful" does not establish his claim of ineffective assistance.

Michigan has defined "good cause" under MCR 6.500 as "proving ineffective assistance of appellate counsel, pursuant to the standard set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), or by showing that some external factor prevented counsel from previously raising the issue." *People v Reed*, 449 Mich 375, 378 (1995). While defendant alleges that appellate counsel did not raise his current claims in his appeal, the decisions hold that the failure to present every colorable issue does not constitute ineffective representation. *Jones v Barnes*, 77 L Ed 2d 987 (1983); *People v Pickens*, 446 Mich 298 (1994).

Claims of ineffective assistance of counsel are reviewed under the test set forth in *Strickland*, and *Pickens*, at 302-303. To merit a new trial because of ineffective assistance of counsel, the defendant has the heavy burden of demonstrating that defense counsel's performance was so deficient that he was not functioning as constitutionally guaranteed "counsel" and that defense counsel's performance prejudiced the defendant to the extent that it is reasonably probable that the outcome of the proceedings would have been different. *People v Carbin*, 463 Mich 590, 600, quoting *Strickland*.

When claims of ineffective assistance of counsel are not properly preserved, the Court's review is "limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48 (2004). Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v Stanaway*, 446 Mich 643, 687 (1994).

Under a deferential standard of review, appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail does not constitute ineffective representation. *Reed* at p 391. The decisions state that while ineffective representation may constitute "cause" for procedural default, the fact that defendant's lawyer failed to recognize a factual or legal basis for an assignment of error, or failed to raise a claim despite recognizing it, does not constitute "cause" for procedural default of a claim sufficient to overcome the default and permit the court to review the merits of the claim. The people respectfully submit that defendant Pouncy's conclusory claims of ineffective representation do not warrant the granting of his motion for relief from judgment. See e.g., *James by Borg*, 24 F3d 20, 26 (1994). Accordingly, this Court should conclude that defendant has not demonstrated he was denied effective assistance of counsel on appeal.

A review of the record, including the Brief on Appeal filed by appellate counsel Grove, clearly establishes that there is no basis for a finding appellate counsel was not functioning as a lawyer. Defendant's two cases were consolidated for appeal and counsel raised numerous issues, a total of nine, in the brief on appeal in the Court of Appeals. The Court of Appeals extensively reviewed defendant's claims in a 38-page opinion. Contrary to defendant's claim that the issues raised by Ms. Grove were "unsuccessful", appellate counsel successfully argued for reversal in the consolidated case, 05-17448-FC (the Haynes bench trial). There is no basis in the record to support defendant's allegation that Ms. Grove was not functioning as a lawyer as guaranteed by the constitution.

The second prong of the *Strickland* analysis requires a finding that appellate counsel's performance prejudiced the defendant to the extent that it is reasonably probable that the outcome of the proceedings would have been different. *Carbin, supra.* As discussed below, defendant's current claims do not have merit; therefore there is no probability that the appellate court would have reversed.

Finally, because defendant's current claims do not have merit, it would have been frivolous for attorney Grove to argue these issues in the appeal of right. Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless claim. *People v Riley,* 468 Mich 135, 142 (2003).

Defendant has failed to establish good cause and this court should deny defendant's motion.

### Actual Prejudice

Defendant must also satisfy the actual prejudice analysis of MCR 6.508(D)(3)(b) to establish that he is entitled to relief. Defendant fails to establish actual prejudice for each of

his claims. "Actual prejudice" is defined by rule. "As used in this subrule, 'actual prejudice' means that, (i) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonable likely chance of acquittal."   MCR 6.508(D)(3)(b)(i).

The People will address the "actual prejudice" requirement as it applies to each issue raised by the defendant.

**Issue I:** The Defendant received ineffective assistance of appellate counsel and for this reason he has good cause for failing to raise the various issues set forth below.

As discussed above, defendant received effective assistance of appellate counsel. There is not actual prejudice to defendant because of the representation provided by appellate counsel Grove.

**Issue II:** The Prosecutor failed to correct the false testimony of Wayne Grimes, a key witness

Defendant alleges that witness Wayne Grimes' testimony that he had never been arrested before was "possibly" false because he had been charged for a prior crime. (Def Brief, p 6)  The portion of Grimes' testimony defendant now claims was false was his explanation on defendant's cross-examination regarding a prior inconsistent statement about the carjacking. (TT, 1-27-06, p 22)  Grimes told the jury that the reason he had given a different version to the police was because this was the first time he had been arrested and taken into custody and he was scared.  "When I got arrested, they took me down-no, they took me to Mount Morris Police Township. I was out there sitting in a cell." (TT, 1-27-06, p 22)

Defendant, while asserting that Grimes had been charged previously, acknowledges that Grimes was not arrested for the prior offense, but voluntarily appeared in court, a "walk in". (Def's Brief, p 7).  There is no evidence that the testimony of Grimes was false.

Even if the prosecution presents perjured testimony, [there was no false testimony in this case], a new trial is not always required. "[A] conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment. *Smith v Phillips*, 455 US 209, 219; 102 S Ct 940; 71 L Ed 2d 78 (1982); *Giglio v United States*, 405 US 150, 154-155; 92 S Ct 763; 31 L Ed 2d 104 (1972); *People v Cassell*, 63 Mich App 226, 227-229 (1975). Thus, it is the "misconduct's effect on the trial, not the blameworthiness of the prosecutor, [which] is the crucial inquiry for due process purposes." *Phillips, supra* at 220 n. 10, 102 S Ct 940. The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. *Id.* at 219, 102 S C. 940." *People v Aceval*, 282 Mich App 379, 389-390; 764 NW2d 285 (2009).

Defendant impeached witness Grimes with his prior inconsistent statement. (TT, 1-27-06, p 22) Defendant's current claim that the witness' explanation was inaccurate did not deny defendant a fair trial.

**Issue III**: The Prosecutor allowed a police officer to place a police report containing inadmissible evidence on the ledge of the juror box where it was visible to the jury.

During the examination of Det. James Gagliardi a copy of his report was placed on the ledge near the jury. Defendant requested that the "report be removed from away from his (the witness') vision because he is continuing to look at it before he answers the question." (TT, 1-27-06, p 228) In response the Court directed that the report be removed the ledge and commented that the jurors could see it. (TT, 1-27-06, p 228)

Defendant did not object to the possibility that a juror may have viewed the report and there is no indication in the record that any juror looked at the report. Additionally there is no record of what "report" was on the ledge and whether there was any "evidence" in the

report that was not testified to by the witness. Defendant did not object on the grounds he now asserts and did not request a curative instruction. Defendant has failed to establish prejudice.

Defendant's argument that this was an "extrinsic influence" on the jury and his citation to *People v Budzyn*, 456 Mich 77 (1997) and *Remmer v United States*, 347 US 227; 74 S Ct 450; 98 L Ed 654 (1954) are without jurisprudential significance. The witness' report on the ledge while he testified does not amount to "extrinsic influence".

In *Budzyn* the "extrinsic influence" was "(1) the juries viewed the film *Malcolm X* as a group near the end of trial, (2) the juries, or a member, were exposed during deliberations to the fact the City of Detroit was bracing for a riot in the event of an acquittal, and (3) the juries were exposed to extrinsic information, in part inaccurate, that defendants were previously members of the STRESS police unit." *Budzyn, supra,* at 92-93.

In *Remmer, supra,* after the jury had returned its verdict, the petitioner learned for the first time that during the trial a person unnamed had communicated with a certain juror, who afterwards became the jury foreman, and remarked to him that he could profit by bringing in a verdict favorable to the petitioner. The juror reported the incident to the judge, who informed the prosecuting attorney. As a result, the Federal Bureau of Investigation was requested to make an investigation and report, which was accordingly done. The F.B.I. report was considered by the judge and prosecutors alone, and they apparently concluded that the statement to the juror was made in jest, and nothing further was done or said about the matter. Neither the judge nor the prosecutors informed the petitioner of the incident, and he and his counsel first learned of the matter by reading of it in the newspapers after the verdict. *Remmer, supra,* at 228.

None of these factors are present in this case. The complained of conduct of placing the report on the ledge occurred in open court with all the parties present, there was no external contact with any juror. There is no evidence proffered by defendant to establish any contents of the report that are prejudicial to him.

Finally, the jury was instructed "you may only consider the evidence that has properly been admitted in this case; * * * Evidence includes only the sworn testimony of the witnesses, the exhibits admitted into evidence and anything else I told you to consider as evidence." (TT, 2-1-06, p 83) The jury is presumed to follow the instructions as given. There is no record to support any claim that the report on the ledge contained inadmissible evidence or that the jury considered the report that was never admitted. Defendant is not entitled to relief.

**Issue IV**: The Defendant was denied due process of law because the prosecutor failed to disclose potentially exculpatory evidence in the form of a written statement of one of the complainants, Thomas Sandstrom, before Mr. Sandstrom testified.

Defendant acknowledges that he became aware of the alleged missing written statement in April 2006 during the Haynes bench trial, file 05-17448-FC. (Def's Brief, p 11) This was well in advance of his filings, both by appellate counsel and pro per, in the Court of Appeals and Supreme Court.

Defendant also fails to offer the alleged written statement. Defendant merely alleges that the written statement is "potentially" exculpatory, but he offers no evidence that the statement is exculpatory. "'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority.'" *People v Watson,*

245 Mich App 572, 587 (2001) quoting *People v Kelly,* 231 Mich App 627, 640-641 (1998). Such cursory treatment constitutes abandonment of the issue. *Id.* Without any evidence to support his claim defendant has failed to establish actual prejudice and he is not entitled to relief.

**Issue V**: There was a possible extraneous influence on the jury in the form of either discussion of a telephone call from the Genesee County jail received by one juror, or telephone calls to other jurors that require a hearing, but no hearing was conducted

As stated in defendant's motion, on January 31, 2006, a juror reported to the court that he had been contacted by phone from the Genesee County Jail. This Court inquired of the juror whether he could continue as a juror. Following questioning by the Court it was determined that the juror should be excused. (TT, 1-31-06, p 4) Defendant did not object to the juror being excused but did inquire if the juror had talked to other jurors. This Court stated: "No this juror has not had contact with the other jurors since this incident." (TT, 1-31-06, p 12)

Defendant now argues that there was "possible extraneous influence on the jury." (Def's Brief, p 13) Defendant correctly states that reversal is permitted only if the Court determines that the ex parte communication with the jury prejudiced the defendant. In this case there is no prejudice to defendant because this Court determined that there was no contact with the other jurors and the juror that had been contacted was removed prior to deliberations. Because there was no prejudice to defendant there is no entitlement to relief.

**Issue VII**: The Prosecutor made disparaging remarks about the defendant in his capacity as his own attorney.

In presenting his argument defendant misstates a material fact by claiming that defendant "did not testify." (Def's Brief, p 15) This is contrary to the record. On January 31, 2006 defendant stated, "I'm gonna take the stand." He was then sworn as a witness and testified in his own defense. (TT, 1-31-06, pp 162-212)

Defendant represented himself in this trial, including closing argument. (TT, 2-1-06, pp 24-69) Defendant now argues that he is entitled to a new trial because of improper comments by the prosecutor during closing and rebuttal arguments regarding his capacity as his own attorney. This is a misrepresentation of the arguments presented by the prosecutor. The arguments made by the assistant prosecuting attorney were a proper comment of the evidence presented during trial including defendant's sworn testimony and defendant's closing argument. Defendant did not object to the prosecutor's argument therefore the alleged error is unpreserved.

Preserved claims of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. *People v Bahoda*, 448 Mich 261, 266-267 (1995); *People v Abraham*, 256 Mich App 265, 272 (2003). Where the alleged error is not preserved with an appropriate objection at trial, review is limited to plain error affecting the defendant's substantial rights. *Id.* at 274. Further, the Court will not reverse if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction upon request. *People v Joezell Williams II*, 265 Mich App 68, 70-71 (2005).

Defendant did not object to the alleged instances of prosecutorial misconduct; therefore, this issue is unpreserved, and review is for plain error. *People v Watson*, 245 Mich App 572, 586 (2001). As the Court has explained:

> The test for prosecutorial misconduct is whether [defendant] was denied a fair and impartial trial. Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. Appellate review of allegedly improper conduct is precluded if the defendant fails to timely and specifically object, unless an objection could not have cured the error or a failure to review the issue would result in a miscarriage of justice.

*People v Rodriguez*, 251 Mich App 10, 29-30 (2002) [citations omitted].

"[A] prosecutor is not required to state his arguments in the blandest possible terms and may argue that a defendant's story is unworthy of belief as long as such argument is based on the evidence rather than on matters not of record or the prestige of the prosecutor's office." *People v Pawelczak*, 125 Mich App 231, 238 (1983). Further, the Court has indicated that argument suggesting that defense counsel was intentionally trying to mislead the jury is improper where the prosecutor "chastis[es] defense counsel and defendant's entire defense," but is not improper where the prosecutor takes issue with specific parts of the defense, as was the case here. *People v Dalessandro*, 165 Mich App 569, 579-580 (1988). Considering the prosecutor's remarks in context, defendant received a fair and impartial trial where the remarks were made in response to defendant's testimony. *Watson, supra* at 586, 592-593.

**Issue VII**: The Court prevented the defendant from calling Wayne Grimes in his
case in chief.

The defendant contends that this Court erred in refusing to permit him to recall
witness Wayne Grimes. Such matters are within the discretion of the trial court. *People v
Poe*, 27 Mich App 422, 428 (1970).

Wayne Grimes was called as a witness by the prosecution. He testified on direct (TT
1-26-06, pp 104-124) and was subject to extensive cross-examination by defendant. (TT 1-
26-06, pp 124-144 and TT 1-27-06, pp 11-85).

After defendant rested and the jury was excused, this Court asked defendant what he
wanted to recall Wayne Grimes about? Defendant failed to offer any specific reason for
recalling the witness and only offered the vague explanation; "About just really getting' more
down to the truth of this situation you know. It's just a couple questions I haven't asked him.
I wasn't gonna be nowhere near as long as I was last time. I know I was a long time." (TT, 1-
31-06, pp 268-269)

Based on this representation this Court ruled that defendant had extensively
questioned Wayne Grimes and that defendant had failed to provide a basis "to have us to
continue the same litany all over again." (TT 1-31-06, p 270)

Years after the conviction and appeal defendant now argues that he wanted to
question witness Wayne Grimes about a tether report prepared by the Genesee County
Sheriff Department. He did not offer this reason to the Court at the time of his request.
Defendant has failed to establish that he was prejudice by the Court's denial of his request to
recall the witness. The tether report that defendant argues supported his claim of innocence
was admitted. Grimes did not author the report and there is no indication that he had any

knowledge of the report or its contents. Any questions of Grimes regarding the report would have called for speculation and would have been inadmissible.

This Court did not abuse its discretion in precluding defendant from recalling a witness where he had already extensively cross-examined the witness.

**Issue VIII:** The defendant's trial attorney was ineffective in failing to have competent evidence to show the shoe size of the shoe print impression left at the alleged crime scene.

Defendant alleges trial counsel was ineffective for failure to have competent evidence to show the shoe size of the shoe print impression left at the alleged crime scene was different from his shoe size.

As the Court of Appeals held in this case, "a defendant who asserts his right to self-representation has no entitlement to the effective assistance of advisory counsel. *People v Kevorkian,* 248 Mich App 373, 425-426 (2001)." (*Pouncy*, slip op p 21). Accordingly, there is no error warranting relief.

Additionally, to establish a claim of ineffective assistance of counsel, defendant must show that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment, and that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124 (1996); *People v Pickens*, 446 Mich 298, 303, 338 (1994). Stated another way, "To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the fact finder would not have convicted the defendant." *People v Snider*, 239 Mich App 393, 423-424 (2000), citing *Pickens*, 446 Mich at 312 and *Johnson*, 451 Mich at 124.

The first prong of the *Strickland* test is that counsel was not functioning as counsel. There is no support in the record for this claim. Trial counsel represented defendant prior to trial, however at trial defendant took over his own defense.

Defendant first contends that trial counsel was ineffective for failure to call a competent witness on shoe size and shoe print impressions.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey,* 237 Mich App 74, 76 (1999). A defendant may establish ineffective assistance of counsel based on defense counsel's failure to call witnesses only if the failure deprives the defendant of a substantial defense, i.e., one that might have made a difference in the outcome of the trial. *Id.* at 22. But a Court will not find ineffective assistance merely because a strategy backfires, or assess counsel's competence with the benefit of hindsight. *Id.; Rockey, supra* at 76-77.

Defense counsel's failure to investigate and call a witness does not amount to ineffective assistance of counsel unless the defendant shows prejudice as a result. *People v. Caballero,* 184 Mich App 636, 640-642 (1990). In other words, defense counsel's failure to call an expert witness in the instant case can only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense. *People v Dixon,* 263 Mich App 393, 398 (2004); *People v Hyland,* 212 Mich App 701, 710 (1995), vacated in part on other grounds 453 Mich. 902 (1996). A substantial defense is one that might have made a difference in the outcome of the trial. *Hyland, supra* at 710-711. Moreover, the decision whether to call a witness is presumed to be a matter of trial strategy, *Dixon, supra* at 398, and we will not, in hindsight, substitute our judgment for that of counsel regarding matters of trial strategy, *People v Matuszak,* 263 Mich App 42, 58 (2004).

Defendant has not shown that he was denied a substantial defense by defense counsel's failure to call an expert witness. The record does not indicate that there was any expert witness who would have testified regarding the shoe size of the shoe print. Thus, this case is distinguishable from cases where trial counsel failed to present witnesses who could actually have directly contradicted the prosecution's case. See, e.g., *Grant, supra* at 493-495; *People v Johnson,* 451 Mich 115, 118 (1996). Because there is no evidence that an expert witness would have testified on defendant's behalf in a manner consistent with his theory of defense and contrary to the prosecution's theory, this court cannot conclude that the failure to call an expert witness was outcome determinative. Defendant has failed to overcome the presumption of effective assistance of counsel.

**Issue X:** There is newly discovered evidence in the form of an affidavit from Tiakawa Pierce who was unavailable at the time of the trial.

Defendant attempts to support his claim of newly discovered evidence with the affidavit of Tiakawa Pierce. (Def Ex C, attached to Motion filed July 22, 2009). The affidavit is dated November 1, 2008. Pierce alleges Omar Pouncy was not with him at the time of the carjacking on October 11, 2005. This is directly contrary to his sworn testimony at his plea and his statement in his Presentence Investigation Report (PIR). See *People v Tiakawa Leondis-Terrel Pierce*, 07-21200-FC.

Tiakawa Pierce was charged as a codefendant with defendant for carjacking and armed robbery of the Sandstroms and Brady. The warrant was authorized on October 15, 2005 but he was not arraigned on the charges until March 30, 2007. (Docket entries 67th Dist Ct FYO05C1034). At Pierce's Preliminary Exam on August 28, 2007 defendant Pouncy testified on behalf of Pierce. (PE 8-28-2007, pp 8-20) On February 14, 2008, Pierce pled

guilty to accessory after the fact involving the car jacking and armed robbery of Brady and Sandstorm. At the plea Pierce stated, under oath, that on October 11, 2005 he was in Mt. Morris Township with Omar Pouncy and Wayne Grimes when they carjacked a 1973 Cadillac and a Corvette from the victims at gun point. (*People v Tiakawa Pierce*, 07-21200-FC; Guilty Plea 2-14-08)(transcript has not been prepared but the video recording of the plea is available for the Court's review).

Additionally a PIR was prepared prior to Pierce's sentencing in which he provided a "Defendant's Version of the Offense". In Pierce's own handwriting he states, "I drove away a car during a robbery with Wayne Grimes and Omar Pouncy, the year of 2005, around October." (signed by Pierce, dated 2-22-08; Copy attached) [Pierce was sentenced to probation and is currently an absconder from probation with an outstanding bench warrant. *People v Tiakawa Pierce*, 07-21200-FC, docket entries].

The Supreme Court rules provide that before a new trial may be granted on the basis of newly discovered evidence, a defendant must show: (1) "the evidence itself, not merely its materiality, was newly discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and, (4) the new evidence makes a different result probable on retrial. *People v Cress,* 468 Mich 678, 692; 664 NW2d 174 (2003), quoting *People v Johnson,* 451 Mich 115, 118 n 6; 545 NW2d 637 (1996). Defendant must show each of these elements. Defendant Pouncy fails on each element.

First, the evidence itself is not newly discovered. Defendant's alleged newly discovered evidence, the testimony of Tiakawa Pierce, was known to defendant well in advance of trial. From the very beginning of the case defendant was charged as a

codefendant with Tiakawa Pierce. Thus, Pierce is not a newly discovered witness, and his possible testimony that he committed the carjackings/robberies with Wayne Grimes and Jacob Woods, not defendant, was also not newly discovered evidence. See *People v Dixon,* 217 Mich App 400, 409-410 (1996) (The defendant claimed newly discovered evidence in the form of an eyewitness that would allegedly substantiate the defendant's innocence, but the defendant knew of the existence of the eyewitness well before trial commenced.) The proffered testimony of Pierce is not "newly discovered evidence".

Second, the alleged newly discovered evidence is cumulative. Defendant Pouncy testified at his own trial that he was not involved in the carjackings/robberies. The current alleged testimony of Tiakawa Pierce, even if believed, would only be cumulative to the defendant's own testimony.

Third, witness Pierce was always known to defendant, and using reasonable diligence could have produced him at trial. From the very beginning of the case defendant was charged as a codefendant with Tiakawa Pierce. Kevin Grimes repeatedly stated that Tiakawa Pierce, along with defendant, was involved in the crimes, his statement was in the police report provided to defendant, he testified at preliminary exam, and he testified at trial. Defendant alleges no facts to support a claim that he used reasonable diligence to interview the witness prior to trial or to call him at trial. In fact defendant acknowledges that he did nothing because he did not think the witness would testify.

Fourth, the fact that Pierce may have testified at trial does not make a different result probable on retrial. If a retrial were granted the result would be the same. The fact that Pierce is currently an absconder with an outstanding bench warrant, there is no reason to believe that he would appear. See *People v Tiakawa Pierce*, 07-21200-FC, docket entries]

Additionally, if he were called by the defendant his testimony would be cumulative to the defendant's own testimony.

Based on all of the factors there is no legal basis to find that defendant has established any "newly discovered" evidence. The affidavit of Tiakawa Pierce, the plea convicted co-defendant, is contrary to his sworn testimony at his plea and his statement to this Court contained in his PIR. The People maintain that defendant has failed to establish that the alleged evidence is "newly discovered."

**Issue XI:** There is newly discovered evidence in the form of an affidavit from Quillie B. Strong that shows that the telephone number used by the person who called one of the complainants on September 24, 2005 was traceable to a person other that the defendant, contrary to the representations made by the prosecutor during the trial.

Defendant argues that the telephone number (810-836-5074) used on September 24, 2005 to call Ralph Haynes, the complainant in the Haynes bench trial case (05-17448-FC) was not his cell phone but the cell phone of a "Jacob Joe Woods". Defendant attempts to establish this irrelevant fact with the alleged affidavit of a Quillie B. Strong. Presumably Mr. Strong would testify at a retrial regarding a cell phone used on September 24, 2005.

The People maintain that defendant has failed to establish that the alleged evidence merits a new trial.

Before even applying the factors in *Cress*, 468 Mich 678, 692, it must be noted that this alleged new evidence is irrelevant. The date of the crimes at issue in the Brady jury trial and subject to challenge in this motion were committed on September 29, 2005 (Brady carjacking) and October 11, 2005 (Sandstrom carjacking). The ownership of a cell phone that called Mr. Haynes on September 24, 2005 is irrelevant. No evidence regarding the

Haynes carjacking was admitted in the jury trial. The facts surrounding the calls to Haynes on September 24, 2005 would be inadmissible evidence in the Brady jury trial.

Additionally, the brief statement in the affidavit, of Quillie Strong that he provided a cell phone with a number used on September 24, 2008, to a Jacob Joe Woods, does not even establish who used the cell phone on September 24, 2005. Mr. Strong offers no allegations of where that cell phone was on September 24, 2005 or who was using it.

Again, for a defendant to be granted a new trial based on newly discovered evidence he must show: (1) "the evidence itself, not merely its materiality, was newly discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and, (4) the new evidence makes a different result probable on retrial before a new trial may be granted on the basis of newly discovered evidence. *Cress,* 468 Mich 678, 692. Defendant Pouncy fails on each element.

First, the evidence itself is not newly discovered. As stated above, the ownership of a cell phone used to make calls on September 24, 2005 is not "evidence" in this case. Even in the Haynes bench trial Mr. Strong's belated offer would not merit a new trial.

Second, the alleged evidence is cumulative. Defendant Pouncy testified at his own trial that he was not involved in the carjackings/robberies. The affiant, Quillie Strong, even if believed, would not have any bearing on the events of September 29, 2005 (Brady carjacking) and October 11, 2005 (Sandstrom carjacking) and would not contradict defendant's own testimony that he did not commit the crimes.

Third, defendant offers no explanation of who Quillie B. Strong is and why he did not come forward until three years after the conviction. The name Jacob Woods was known to

defendant.  Earl Brady testified that defendant identified himself as "Jacob Woods."  At trial, Joseph Davis identified defendant as "Jacob Woods" and noted that he had been the one doing most of the talking.  Using reasonable diligence defendant could have produced Jacob Woods (if such a person exists) and Quillie Strong at trial.

Fourth, the fact that Strong may have testified does not make a different result probable on retrial.  If a retrial were granted the result would be the same.  The fact that Strong was a registered owner of a cell phone used on September 24, 2005 to call another victim would not be admissible.

Based on all of the factors there is no legal basis to find that defendant has established any "newly discovered" evidence.

**Issue XII:** There was prosecutorial misconduct when the prosecutor produced a power point slide during his opening statement and closing argument that proclaimed, "Omar Pouncy is guilty."  Also the prosecutor produced a slide during his closing argument referring to Mr. Pouncy as "A seller's worst nightmare."  The prosecutor vouched for the credibility of Wayne Grimes.  Alternatively, defendant's attorney was constitutionally ineffective in failing to object to this misconduct.

Defendant provides no citation to authority for his position that use of Power Point is error.  A party "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Johnigan,* 265 Mich App 463, 467; 696 NW2d 724 (2005), citing *People v Kelly,* 231 Mich App 627, 640-641, 588 N.W.2d 480 (1998)."

Defendant's again states that "Mr. Pouncy did not testify."  (Def's Brief p 30).  This is false.  Defendant testified in his own defense. (TT 1-31-06, pp 163-213)

The argument advanced in this issue is that the prosecutor improperly used "Power Point" slides in opening statement and in closing argument. The complained of slides contained the statement "Omar Pouncy is guilty" and "A seller's worst nightmare".

A prosecutor, like defense counsel, is free to emphasize any particular theory of the case which is based on the evidence, and is under no obligation to give equal prominence to other theories. *People v Bahoda,* 448 Mich 261, 282 (1995). Clearly it was the prosecution's theory that defendant was "guilty". The prosecutor did not allege that he had special knowledge. There is no misconduct in a prosecutor stating to the jury that he was guilty.

Even before the invention of Power Point presentations the use of blackboards, charts, and other visual aids at a trial were common practice and accepted. *Campbell v Menze Constr Co,* 15 Mich App 407, 409 (1968). Counsel for both sides should be encouraged to present their case in a way that will be most clearly understood by the jury. The extent to which visual aids can be used and any comment to be made by final instructions that such visual aids are not evidence rests within the sound discretion of the trial court. *People v Ng,* 156 Mich App 779, 787 (1986); *Campbell, supra* at 409.

In this case the demonstrative aid was used in opening statement and closing argument, it was not admitted into evidence or provided to the jury, and the jury was instructed to disregard any attorney arguments that were not supported by the evidence. "The lawyers statements and arguments are not evidence." (TT, 2-1-06, p 83). Under the circumstances, this Court did not abuse its discretion in allowing the demonstrative aid at trial.

**Issue XIII**: The armed robbery instruction denied the defendant due process of law by referring to the complainants as "victims".

Defendant argues that this Court committed reversible error by referring to the complaining witnesses as "victims" one time in the instructions to the jury because it "forecloses the jury's consideration of whether in fact the complainants had been victims of a crime." (Def's Brief p 31)  During the instructions this Court, using the standard jury instructions and informed the jury of the elements of the offenses.  In the instruction defining armed robbery this Court used the word "victims" a single time in place of the word "complainant" or the name of the complainant. (TT 2-1-06, p 94)  Defendant did not object to the instructions as given.

The Court of Appeals has already held that defendant may not allege error on the basis of misdirection of the jury because he failed to object.  "Defendant also argues that Breczinski, although serving only as standby counsel, was ineffective for failing to request instructions on the defense of alibi, accomplice credibility, and mere presence. However, a defendant who asserts his right to self-representation has no entitlement to the effective assistance of advisory counsel. *People v Kevorkian,* 248 Mich App 373, 425-426 (2001). Accordingly, there were no instructional errors warranting relief."  (*Pouncy*, slip op, p 21)

There is no evidence to support defendant's argument that the one time reference by the Court to the complainants as victims denied defendant a fair trial.  At the beginning of the trial, this Court instructed the jury that its words were not meant to reflect its own personal opinions about the facts of the present case. (TT, 1-24, 2006, p 198) "It is well established that jurors are presumed to follow their instructions." *People v Graves,* 458 Mich 476, 486 (1998).

41

Also, defendant did not argue that the carjackings/robberies did not occur and the "complainants" of the carjackings/robberies were not "victims". It was and remains defendant's claim that if the carjackings/robberies did occur that the complainants were "victims". Defendant's argument is that he did not commit the crime but others did. See Issues X and XI.

**Issue XIV:** Trial counsel was constitutionally ineffective in failing to produce at trial three exculpatory witnesses, Charles Smith, Willie Joyce McKinley, and Carrice Byrom, two alibi witnesses, Carrice Byrom and Helen Carr, as well as sheriff deputies in charge of the work release program, and in failing to investigate possible credit card transactions with credit cards alleged stolen from the complaining witnesses.

Defendant represented himself at trial. Any failure to call witness may not be blamed on standby counsel. The Court of Appeals has already held that "a defendant who asserts his right to self-representation has no entitlement to the effective assistance of advisory counsel. *People v Kevorkian,* 248 Mich App 373, 425-426; 639 NW2d 291 (2001)." (*People v Pouncy*, slip op, p 21).

**Issue XV:** The cumulative effect of the errors and absence during the trial of newly discovered evidence set forth above deprived the defendant of due process.

Defendant also contends that the cumulative effect of his claims denied him a fair trial. "It is true that the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc,* 465 Mich 575, 591 (1992). Cumulative error actually refers to unfair prejudice. *Id.* at 592 n 12. Only the unfair prejudice of actual errors are aggregated to satisfy the standard set forth in *Carines, supra* at 592 n 12. There are no trial errors to aggregate, which denied defendant a fair trial or caused unfair prejudice to defendant. *People v Ackerman,* 257 Mich App 434, 454

(2003). "Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128 (1999).

**Relief**

Wherefore, the people pray that this Court will deny defendant's motion for relief from judgment pursuant to MCR 6.508.

Date:  January 12, 2010

Respectfully submitted,

Dale A. DeGarmo P 36501
Assistant Prosecuting Attorney