## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**OMAR RASHAD POUNCY,**

    Petitioner,

Case No. 2:13-CV-14695
Honorable Matthew F. Leitman

v.

**CARMEN D. PALMER,**

    Respondent.

LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES
By: David L. Moffitt (P30716)
Attorney for Petitioner Omar Rashad Pouncy

_____/

LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES
THE BINGHAM CENTER
30800 TELEGRAPH ROAD SUITE 1705
BINGHAM FARMS, MICHIGAN 48025
[e] DLMOFFITTASSOC@AMERITECH.NET
[web] DAVIDLMOFFITT.COM
[v] 248-644-0880 [f] 248-307-9545

## PETITIONER OMAR RASHAD POUNCY'S
## MOTION FOR
## SUMMARY JUDGMENT

NOW COMES, Petitioner OMAR RASHAD POUNCY ("Petitioner"), by and through his attorney, LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES, by David L. Moffitt, and moves this Honorable Court to grant Summary Judgment, stating as follows in support thereof:

1.    Petitioner Omar Rashad Pouncy ("Pouncy") filed his Petitioner for Writ of Habeas Corpus on November 13, 2013.

2.    Amongst other grounds Petitioner sought habeas relief due to the unconstitutional deprivation of his Sixth Amendment right to a public trial during both the entire duration of voir dire of prospective jurors and a variety of prosecution initiated motions. The claim was presented as follows:

I.

PETITIONER WAS ARBITRARILY DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL WHEN THE TRIAL COURT JUDGE NOT ONLY CONDUCTED VOIR DIRE OF PROSPECTIVE JURORS

1

IN SECRECY, BUT ALSO HEARD AND RULED ON SEVERAL PROSECUTION MOTIONS IN A STAR CHAMBER-LIKE ATMOSPHERE, TO THE EXTENT THAT THE PROCEEDINGS WERE EXECUTED OUTSIDE OF THE PRESENCE OF THE GENERAL PUBLIC, RESULTING IN STRUCTURAL ERROR.

(*See* Petition for Writ of Habeas Corpus, at p 3-4).

<u>SUPPORTING FACTS</u>

On the date scheduled for jury selection, Petitioner's family, friends, and general supporters all gathered inside the courtroom in anticipation of observing the proceedings. Without any explanation, the trial court judge instead emptied the courtroom of all members of the public, and then entertained several prosecution motions:

> **THE COURT:** Okay and Mr. Pouncy it would be correct that you're not interested in taking the prosecutor's offer is that correct?

> **MR. POUNCY:** I will never take the plea to nothing I did [sic: didn't do] 'cause I didn't do it.

> **THE COURT:** Okay then, I think we should get ready to have the jury brought down and Trish if you'll go get the jury and we'll start jury selection. **<u>I want to ask those of you in the audience if you would step in the hallway from now just until we get the jury selected and then we'll go from there.</u>**

> **MR. LAROBARDIERE:** [Assistant Prosecuting Attorney] Judge I did have, I talked to Mr. Breczinski, I do have a couple of preliminary matters before we do that. (TRIAL TRANSCRIPT, hereinafter, "T", 1-24-06, 23).

Immediately after the trial court expelled Petitioner's family, friends, and general supporters the trial court entertained and granted the prosecution's motion as to MRE 404(B) evidence, in which the prosecution was granted leave to introduce evidence from the third carjacking, *i.e.,* the Haynes carjacking. (T 1-24-06, 23-29). The trial court also entertained and granted the prosecutor's motion to introduce a tape recording allegedly reflecting Petitioner threatening the Complainants. (T 1-24-06, 29-34). After that point, the

2

secret voir dire of prospective jurors commenced. (T 1-24-06, 35-190). The courtroom remained closed during the entire duration of the jury selection phase.

The expulsion of the public during motion hearings and jury selection without satisfying the substantive and procedural components set forth by the United States Supreme Court in *Waller v Georgia,* 467 US 39 (1984) deprived Petitioner of his Sixth Amendment right to a public trial during these critical judicial proceedings. The courtroom was ordered closed:

>--**without** any identified overriding interest;

>--**without** ensuring that the closure was no broader than necessary;

>--**without** the consideration of any reasonable alternative to the closure; and

>--**without** making any findings adequate to support the closure.

The intentional and unjustified exclusion of the public for the entirety of juror voir dire and the motion hearings unquestionably violated Petitioner's Sixth Amendment right to a public trial warranting automatic reversal.

3.      The constitutional violation pertaining to the closure of the courtroom was challenged by Petitioner on his direct appeal of right.

4.      The State completely neglected to respond to this issue on direct appeal, thereby forfeiting any and all conceivable state procedural defenses. (*See Wood v Milyard,* 132 SCt 1826, 1832 (2012) (holding that an affirmative defense, once forfeited, is excluded from the case, and as a rule, cannot be asserted on appeal).

5.      Since the State did not assert any procedural defenses, the Michigan Court of Appeals proceeded directly to the merits, ultimately, albeit contrarily, to clearly established

3

United States Supreme Court precedents, concluding that the claim lacked merit. Specifically, the Court of Appeals held as follows:

> "In his Standard 4 brief, defendant raises numerous additional claims of error, which he contends warrant relief. Specifically, defendant argues that he was deprived of a fair trial . . . by the trial court's deprivation of the defendant's right to have the public present during certain motion hearings and voir dire . . . We have carefully examined these claims of error and conclude that none of them have merit."

*See People v Omar Rashad Pounc* (on reconsideration), unpublished opinion *per curiam* of the Court of Appeals, issued March 25, 2008, p. 31 (*See* Court of Appeals Opinion attached as Appendix A).

      6.     Petitioner proceeded to fully exhaust this claim by filing a timely application for leave to appeal to the Michigan Supreme Court.

      7.     On July 29, 2008, the Michigan Supreme Court denied leave to appeal (*See, People v Omar Rashad Pouncy,* 482 Mich 895 (July 29, 2008)).

      8.     Instead of seeking certiorari or immediate federal relief, Petitioner returned to the trial court seeking post-conviction collateral relief by filing a motion for relief from judgment on July 22, 2009, and a brief in support on December 21, 2009, raising a variety of claims unrelated to the unconstitutional deprivation of the Sixth Amendment right to a public trial.

      9.     Less than thirty (30) days after Petitioner filed his brief in support of his motion for relief from judgment, on January 19, 2010, the United States Supreme Court issued *Presley v Georgia,* 130 SCt 721 (2010) (*per curiam*). In *Presley*, the Supreme Court explicitly condemned as unconstitutional and contrary to clearly established precedents the exact same forbidden practice implemented in the instant case. The United States Supreme Court's decision in *Presley* was not simply a *per curiam* decision but it was a decision

delivered by "summary disposition" because the law is crystal clear on this point. The Court in *Presley* held in pertinent part as follows:

> While *Press-Enterprise I* was heavily relied upon in *Waller*, the jury selection issue in the former case was resolved under the first, not the Sixth Amendment . . . In the instant case, **the question then arises whether it is so well settled that the Sixth Amendment right extends to jury voir dire that this Curt may proceed by summary disposition.**

*Presley*, 130 SCt at 723-724 (emphasis added).

10.     Since the United States Supreme Court's decision in *Presley* unequivocally undermined the prior decision of the Michigan Court of Appeals, to the extent that Petitioner Pouncy and Petitioner Presley suffered an identical constitutional infirmity, *i.e.,* unconstitutional closure of courtroom during voir dire of prospective jurors, and since one of the provisions of MCR 6.501 *et seq*, to wit: MCR 6.508(D)(2), provides a retroactivity exception to the *res judicata* doctrine, on May 19, 2010, Petitioner re-raised his public trial violation claim in light of *Presley*.

11.     For the first time, on collateral attack, the State filed a response to the violation of the right to a public trial challenge.  The State never disputed the substantive merits of the claim, *i.e.,* it never argued that the unconstitutional closure did not occur.  The State expressly waived any procedural defense it may have had in regards to the failure to comply with the procedural requirement to lodge a contemporaneous objection when it explicitly conceded in its response that no objection was required to raise the denial of the right to a public trial claim on appeal.  (*See, Wood v Milyard, supra* 130 SCt at 1832, n 4) ("A waived claim or defense is one that a party has knowingly and intelligently relinquished . . .); (*See* People's Answer in Opposition to Defendant's Supplemental Issue Based on Retroactive Change in Law, filed 7-28-10, page 7, attached as Appendix B).  The State

instead, while openly acknowledging that the United States Supreme Court's decision in *Presley* did not announce a new rule or right and consequently merely applied a settled rule, oxymoronically and contrarily to clearly established United States Supreme Court precedents argued that *Presley* did not apply on collateral attack. This is clearly contrary to the retroactivity doctrine and clearly established precedents addressing retroactivity. The United States Supreme Court in *Chaidez v United States*, 133 SCt ___, ___, 195 LEd2d 149, 155 (2013) recently re-declared that when the Supreme Court applies a settled rule in a newly released decision, a litigant may avail themselves to the benefit of the newly released decision on collateral attack:

> *Teague v Lane,* 109 SCt 1060 (1989)] makes the retroactivity of our criminal procedural decisions turn on whether they are novel. When we announce a "new rule," a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding. **Only when we apply a settled rule may a person avail [them] self of the decision on collateral review** . . .

*Chaidez,* 133 SCt at ___, 185 LEd2d at 155.

In the instant case, the State has conceded that *Presley* merely applied a settled rule so this fact and admission alone is dispositive as to *Presley's* positive retroactive applicability on collateral review.

12.     On November 3, 2010, despite the fact that the trial court acknowledged: (1) that MCR 6.508(D)(2) provided a retroactivity exception to the doctrine of *res judicata*; (2) that "*Presley* did not announce a new right;" and (3) that the "*Presley* Supreme Court relied heavily on their prior precedent," the trial court refused to re-review the merits of Petitioner's Sixth Amendment violation to his right to a public trial claim. (*See* Order Denying Defendant's Motion for Relief from Judgment, November 3, 2010, page 28, attached as Appendix C).

13.     On June 6, 2014, Petitioner filed a motion seeking summary judgment premised on the same basis, however, the motion was denied without adjudicating the merits of the motion.

14.     On August 11, 2014, the Honorable Sean F. Cox, (now disqualified) District Court Judge, entered an opinion and order denying Petitioner's motion for summary judgment, because the Court had not, as of that point, reviewed the state court materials. (*See Omar Rashad Pouncy v Carmen D. Palmer,* Civil No. 2:13-cv-14695, Opinion and Order, issued 8-11-14).

15.     Petitioner filed a motion for reconsideration.

16.     On November 6, 2014, the Honorable Sean F. Cox issued an order and opinion denying the motion for reconsideration, on the basis that the Respondent had not yet been given "a full and fair opportunity to reply [to] Petitioner's claims."  Judge Cox, although respondent had not requested such relief,  provided the Respondent an additional 90 days (until February 4, 2015) to file a supplemental answer to Petitioner's claims, and vowed to adjudicate the merits of Petitioner's motion for summary judgment thereafter:

> "The Court will address the merits of the case after Respondent is given a full and fair opportunity to reply [to] Petitioner's claims."

(*See Omar Rashad Pouncy v Carmen D. Palmer,* Civil No. 2:13-cv-14695, Opinion and Order, issued 8-11-14).

17.     On January 7, 2015, the Honorable Sean F. Cox entered an order granting Petitioner's motion to disqualify, and the case at bar was reassigned to this Honorable Court. (*See Omar Rashad Pouncy v Carmen D. Palmer,* Civil No. 2:13-cv-14695, Opinion and Order, issued 1-7-15).

18. Petitioner subsequently filed a motion for clarification asking Judge Cox to clarify whether he was vacating his previous opinions, issued under the circumstances that petitioner submits had resulted in his recusal or leaving them in place.

19. On January 23, 2015, Judge Cox issued an order declaring that he did not adjudicate Petitioner's motion for summary judgment on the merits and only denied it as being "premature" at the time of its initial filing. (*See Omar Rashad Pouncy v Carmen D. Palmer,* Civil No. 2:13-cv-14695, Opinion and Order, issued 1-23-15).

20. February 3, 2015, consistent with Judge Cox's order allowing the Respondent an additional 90 days to file a supplemental answer to Petitioner's petition for writ of habeas corpus, the Respondent filed a supplemental answer in opposition to Petitioner petition for writ of habeas corpus.

21. Now that the Respondent has had its "full and fair opportunity to reply [to] Petitioner's claims" Petitioner's motion for summary judgment is ripe for adjudication on the merits.

22. As the United States District Court for the Eastern District of Tennessee held in *Paul Gregory House v Ricky Bell,* 2007 US Dist LEXIS 94176 *16-17 (ED Tenn, Dec 20, 2007), a writ of habeas corpus can be issued by way of summary judgment:

> The Federal Rules of Civil Procedural apply to habeas corpus petitioner. Rule 11 of the Rules Governing Section 2254 Cases In the United States District Courts. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp v* Alexander, 822 F2d 1432, 1435 (6th Cir 1987). *See also Celotex Corp v Catrett,* 477 US 317, 327, 106 SCt

> 2548, 91 Led2d 265 (1986); *Kochins v Linden-Alimak, Inc, 799 F2d 1128, 1133 (6th Cir 1986); Securities and Exchange Commission v Blavin,* 760 F2d 706, 710 (6th Cir 1985). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Smith v Hudson,* 600 F2d 60, 63 (6th Cir 1979).

*House,* 2007 US Dist LEXIS 94176 *16-17.

23.    Summary judgment is warranted in this matter because as shown in Respondent's Answers the Respondent does not dispute that Petitioner was indeed deprived of his Sixth Amendment right to a public trial when the trial court arbitrarily expelled the public from the courtroom.  Petitioner accordingly asks that this Honorable Court accept the Respondent's failure to dispute the substantive merits of Petitioner's violations of his Sixth Amendment right to a public trial claim as a confession of error.  *See Cristini v McKee,* 526 F3d 888, 894, n1 (6th Cir 2008) ("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations.").    In light of the on-the-record facts clearly demonstrating that Petitioner was arbitrarily deprived of his sixth Amendment right to a public trial and the Respondent's complete failure to dispute this point, there can be no genuine issue as to any material fact.  The facts unequivocally demonstrate that the courtroom was unconstitutionally closed to the public.

24.    Summary judgment is warranted based upon the abundance of clearly established Supreme Court precedents, *e.g. Waller v Georgia,* 104 SCt 819 (1984); *Johnson v United States,* 520 US 461, 468, 117 SCt 1544, 137 LEd2d 718 (1997) (defendant's Sixth Amendment right to a public trial is of such importance that any error affecting it is deemed "structural," making denial of the right one of the "limited class of cases" where reversal is

required without showing prejudice), and *Presley v Georgia,* 130 SCt 721 (2010) that are clearly on point and entitle Petitioner to judgment as a matter of law.

25.     Summary judgment is warranted because the United States Supreme Court's decision in *Presley* provides that the closure of the courtroom to the public without complying with the substantive or procedural components of *Waller* is a forbidden practice and where, as here, this forbidden practice is implemented, summary judgment is not only available, but is mandated.  *See Presley,* 130 SCt at 723-24 (concluding that the principle at stake was "so well settled" by *Press-Enterprise I* and *Waller* that "summary disposition" was warranted).

26.     The Respondent's sole defense to Petitioner's Sixth Amendment right to a public trial violation acclaim is inapplicable, as a matter of fact and clearly established law, to the case at bar.  The Respondent for the first time after over 7 years of litigation pertaining to this particular claim asserts that this claim is procedurally defaulted based on a lack of objection in the trial court.  (*See* Supplemental Answer in Opposition to petitioner for Writ of Habeas Corpus, filed 2-3-15, at pages 7-8).

27.     As a matter of fact and clearly established law Petitioner's Sixth Amendment right to a public trial violation claim is not procedurally defaulted for three reasons.

28.     Petitioner's Sixth amendment right to a public trial violation claim is not procedurally defaulted, because the State court made an unrestricted ruling on the merits and did not enforce a procedural bar of any kind.  A claim is procedurally defaulted on if **"state courts actually enforced the state procedural sanction."**  *See Maupin v Smith,* 785 F2d 135, 138 (6th Cir 1986).  The Sixth Circuit in *Lovins v Parker,* 712 F3d 283 (6th Cir 2013)

recently reaffirmed that a Federal Constitutional violation is not procedurally barred if the

State court never invoked a procedural bar and exclusively decided the claim on the merits:

> "Under the independent and adequate state ground doctrine, a federal habeas claim is procedurally defaulted when:
>
> (1) the petitioner fails to comply with a state procedural rule; **(2) the state courts enforced the rule;** (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.
>
> *Guilmette v Howes,* 624 F3d 286, 290 96th Cir 2010) (*en banc*). The second prong of this requires that the state courts **"actually enforce []" the state procedural rule in denying relief.** *Stone v Moore,* 644 F3d 342, 346 (6th Cir 2011) (quoting *Maupin v Smith,* 785 F2d 135, 138 (6th Cir 1986)). In other words, **"it is not sufficient that the state court could have applied a procedural default under state law; it must actually have done so."** *Skipper v French,* 130 F3d 603, 609 (4th Cir 1997) (citing *Caldwell v Mississippi,* 472 US 320, 327, 105 SCt 2633, 86 Led2d 231 (1985)."

*Lovins,* 712 F3d at 296.

The Sixth Circuit has repeatedly held even where a petitioner may have failed to comply with a state procedural rule, if the last reasoned state court judgment reached the merits of the constitutional claim and did not use the procedural rule to deny review, actual enforcement will not be found. *Manning v Huffman,* 269 F3d 720, 724 (6th Cir 2001). This is a common way to avoid invocation of the procedural default rules. The Sixth Circuit in *Durr v Mitchell,* 487 F3d 423 (6th Cir 2007), found that a Federal Constitutional claim was not procedurally defaulted because the state court never enforced a procedural bar:

> "As the Warden conceded, the district court incorrectly determined that habeas claim forty-two was procedurally defaulted, because the state court adjudicated this claim on the merits on post-conviction review. Although Durr could have presented the claim on

direct appeal, because the state courts did not "actually enforce" the procedural rule requiring presentation of claims on direct appeal, **the procedural default doctrine is not applicable.**  *See, Caldwell v Mississippi,* 472 US 320, 327, 105 SCt 2633, 86 Led2d 231 (1985) (stating that "[t]he mere existence of a basis for a state procedural bar does not deprive . . . [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case"); *Bowling v Parker,* 344 F3d 487, 499 (6th Cir 2003) (stating that "there must be unambiguous state-court reliance on a procedural default for it to block" this Court's review.  Therefore, we review the merits of habeas claim forty-two.

*Durr,* 487 F3d 432-433.

For further support that this claim is not procedurally barred, because the State court reviewed the claim on the merits and never invoked a procedural bar of any kind, Petitioner directs this Honorable Court's attention to *Cone v Bell,* 129 SCt 1769, 1782 (2009).  In *Cone, supra,* the United States Supreme Court held that the federal claim is not waived for federal habeas corpus purposes where the State court has not ruled that the claim was waived:

> "When a state court declines to find that a claim has been waived by a petitioner's alleged failure to comply with state procedural rules, our respect for the state-court judgment counsels us to do the same.  Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims, *Lee v Kemna,* 534 US, at 375, 122 SCt 877, we have no concomitant duty to apply state procedural rules where state courts have themselves declined to do so."

*Cone,* 129 SCt at 1782.

Petitioner's Sixth amendment right to a public trial violation claim is not procedurally barred because the State court reviewed the claim on the merits and never invoked a procedural bar of any kind.  The Respondent's claim that this claim is waived must fail as a matter of fact and law.

29.     Furthermore, the Respondent has forfeited its option to claim that Petitioner's Sixth Amendment right to a public trial violation claim is procedurally defaulted because the State lost their privilege to assert that this claim was procedurally barred when it did not respond to this claim in State court on Petitioner's direct appeal of right when this claim was first raised.  Both State and Federal precedents unequivocally establish that the Respondent does not have the standing to claim, for the first time after over seven (7) years of litigation, that this claim is procedurally barred.  *See People v Hamacher,* 432 Mich 157, 167-168 (1989) (holding that prosecutor's argument that defense waived objection to the admission of evidence at trial was itself waived where the prosecution did not raise this claim prior to its brief in the Michigan Supreme Court ).  *See also Willis v Jones,* 329 Fed Appx 7 (6th Cir 2009) (*quoting United States v Ford,* 184 F3d 566, 578 n3 (6th Cir 1999) (holding "Even appellees waive arguments by failing to brief them."); *Trest v Cain,* 522 US 87, 89, 118 SCt 478, 139 LEd2d 444 (1997) (holding that procedural default is a defense "that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter.").

Pursuant to state, federal court, and United States Supreme Court precedents,  the Respondent has lost the option to claim at this late date that this claim is procedurally barred.  Petitioner first raised this claim over several (7) years ago, in February, 2007, on his direct appeal of right and the State decided not to respond to this claim at all.  The State did not assert any substantive or procedural defenses.  In fact, Petitioner also raised this claim in the Michigan Supreme Court and the State still failed to assert any form of procedural defense.  The Respondent has lost any right it had to assert that this claim is procedurally defaulted.

30.    More importantly, the State waived its right to claim that this claim is procedurally barred because the State itself conceded when Petitioner re-raised this claim on collateral attack that:

> "[a] defendant need not object to a closure in order to raise the issue on appeal . . ."

*(See* People's Answer in Opposition to Defendant's Supplemental Issue Based on Retroactive Change in Law, filed 7-28-10, page 7, attached as Appendix B).

The State never briefed any argument on direct appeal claiming that "Petitioner's claim that his right to a public trial was violated" was procedurally barred, and expressly waived any argument to that effect by conceding that no objection was needed to raise the issue on appeal.  There is accordingly an "intentional relinquishment or abandonment of [the] known right or privilege" to argue that any procedural requirements had not been complied with by Petitioner Pouncy, which constitutes a waiver on the State's behalf. *Wood,* 132 SCt at 1832, n4.  Since the State chose not to say anything in this regard in the State court proceeding they cannot be permitted to do so at this late date.

31.    This claim is ripe for review and is not procedurally defaulted because the State court never enforced a procedural bar and ruled purely on the merits, because the State forfeited its ability to assert that this claim is procedurally barred because it never filed any arguments to this claim on Petitioner's direct appeal of right, and because the State explicitly waived their option to assert that this claim was procedurally barred when it conceded on collateral attack in State court that Petitioner did not have to object to the unconstitutional closure of the courtroom during jury selection and various prosecution initiated motions.

## RELIEF REQUESTED

14

WHEREFORE, for the foregoing reasons and those set forth in the accompanying memorandum of law, Petitioner prays that this Honorable Court grant summary judgment and issue a conditional writ of habeas corpus to "guard against [an] extreme malfunction[] in the state criminal justice system[].

LAW OFFICES OF DAVID L. MOFFITT
& ASSOCIATES

s/David L. Moffitt
_____
By: David L. Moffitt (P 30716)
Attorney for Petitioner Omar Rashad Pouncy

Dated: March 6, 2015

**PETITIONER OMAR RAHAD POUNCY'S
MEMORANDUM OF LAW IN SUPPORT
OF
MOTION FOR SUMMARY JUDGMENT**

### SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.CivP.56(C); *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 249, 106 SCt 2505, 91 LEd2d 202 (1986); *Sanders v. Freeman*, 221 F3d 846,

15

851 (6th Cir 2000). The summary judgment rule applies to habeas proceedings. *Redmond v. Jackson,* 295 FSupp2d 767, 770 (ED Mich 2003).

As will be set forth in detail *infra*, Petitioner carries his burden in regard to entitlement to summary judgment. Since Petitioner is seeking summary judgment based on the deprivation of his Sixth Amendment right to a public trial and this unconstitutional deprivation requires automatic reversal once proven, in order to carry his burden for summary judgment, Petitioner has to prove just two things. First, Petitioner must prove that there was indeed an unconstitutional exclusion of the public from the courtroom during judicial proceedings, *i.e.* that the public was expelled and the courtroom was closed without considering or complying with the substantive or procedural components of the test enunciated in *Waller v. Georgia*, 104 Sc.D. 2210 (1984). This will demonstrate that there is "no genuine issue as to any material fact." Second, Petitioner must prove that his constitutional claim is squarely accredited by clearly established United States Supreme Court precedents. This will demonstrate that Petitioner "is entitled to judgment as a matter of law." *See, e.g. Liles v. Saffle*, 945 F2d 333 (10th Cir 1991), cert. denied, 112 Sc.D. 956 (1992) (district court properly granted Petitioner's motion for summary judgment on basis of excerpts from state record and other affidavits showing that petitioner was denied psychiatric assistance at guilt and sentencing phases of trial in violation of *Ake v. Oklahoma*, 470 US 68 (1985)); *Marzano v. Kincheloer*, 915 F2d 549, 552 (9th Cir 1990) (petitioner-initiated summary judgment motion granted because on its face, state statute could not constitutionally be read to permit sentence imposed on petitioner); *Bailey v. Hamby*, 744 F2d 25, 26 (6th Cir 1984) (summary judgment for petitioner based on facts in state court record); United States *ex rel Ross v. Frazen*, 668 F2d, 933, 939 (7th Cir 1982) (record flatly contradicts state fact findings; writ granted without hearing).

The United States Supreme Court's by-summary-disposition per curiam decision in *Presley v. Georgia*, 130 Sc.D. 721, 723-724 (2010) is dispositive here on each point. *Presley* held that the closure of the courtroom to the public without complying with the substantive and procedural components of the test enunciated in *Waller* is a forbidden practice that warrants mandatory reversal. *Presley* further holds that if this forbidden practice is implemented, summary judgment is not simply available but is *mandated*.

## AGUMENTS

### I.

### Summary Judgment is Warranted Where:

#### A.

The undisputable record unequivocally demonstrates that the trial court judge summarily deprived Petitioner of his Sixth Amendment right to a public trial when it expelled all of the members of the general public from the courtroom and proceeded to entertain various prosecution motions and executed voir dire of prospective motions and executed voir dire of prospective jurors in secrecy without considering or complying with the substantive and procedural components of the test enunciated in *Waller v. Georgia*, 104 Sc.D. 2210 (1984).

#### B.

The United States Supreme Court in *Presley v. Georgia*, 130 Sc.D. 721 92010) (Per Curiam) summarily condemned the very practice as unconstitutional and held that the forbidden practice contravened its clearly established precedents.

#### C.

The constitutional deprivation amounts to a structural defect thereby mandating automatic reversal because prejudice is presumed.

#### D.

The State Court's decision that the claim lacked merit is unquestionably contrary to clearly established federal law as determined by the United States Supreme Court.

E.

There are absolutely no procedural basis because none were ever asserted by the State in State Court and none were ever enforced by any State Court.

<u>DISCUSSION</u>

A.

The trial court's summary denial of Petitioner's Sixth Amendment Rights to a Public Trial.

On the date scheduled for jury selection, Petitioner's family, friends, and general supporters all gathered inside of the trial court judge's court room in anticipation of being able to observe the proceedings. Without any explanation, the trial court judge instead emptied the courtroom of all members of the public, and then entertained several prosecution motions

> **THE COURT:** Okay and Mr. Pouncy it would be correct that you're not interested in taking the prosecutor's offer is that correct?
>
> **MR. POUNCY:** I will never take the plea to nothing I did [sic: didn't do] 'cause I didn't do it.
>
> **THE COURT:** Okay then I think we should get ready to have the jury brought down and Trish if you'll go get the jury and we'll start jury selection. <u>I want to ask those of you in the audience if you would step in the hallway for now just until we get the jury selected and then we'll go from there.</u>
>
> **MR. LARABARDIERE:** [Assistant Prosecuting Attorney] Judge I did have, I talked to Mr. Brzezinski, I do have a couple of Preliminary matters before we do that. (TRIAL TRANSCRIPT, hereinafter "T", 1-24-06, 23).

Immediately after the trial court expelled Petitioner's family, friends and general supporters the trial court entertained and granted the prosecution's motion as to MRE 404(B) evidence, in which the prosecution was granted leave to introduce evidence from a third carjacking, *i.e.,* the Hanes carjacking. (T 1-24-06, 23-29). The trial court also entertained and granted the prosecution's motion to introduce a tape recording allegedly reflecting Petitioner

threatening the complainants. (T 1-24-06, 29-34). After that point, the secret voir dire of prospective jurors commenced. (T 1-24-06, 35-190).

The expulsion of the public during motion hearings and jury selection without satisfying the substantive and procedural components set forth by the United States Supreme Court in *Waller v. Georgia*, 467 US 39 (1984) deprived petitioner of his Sixth Amendment right to a public trial during these critical judicial proceedings. The courtroom was ordered closed:

> --*without* any identified overriding interest;
>
> --*without* ensuring that the closure was no broader than necessary;
>
> --*without* the consideration of any reasonable alternatives to the closure; and
>
> -- *without* making any findings adequate to support the closure;

The intentional and unjustified exclusion of the public for the entirety of juror voir dire and the motion hearings unquestionably violated petitioner's Sixth Amendment right to a public trial warranting automatic reversal.

Based on the undisputable fact that the courtroom was closed to the general public without considering or complying with *Waller*, there can be no and "there is no genuine issue as to any material face," concerning Petitioner's claims of an unconstitutional deprivation of his Sixth Amendment right to a public trial.

B.

Long Standing Clearly Established United States Supreme Court
Precedents Mandates Summary Relief.

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ...." US Const., amend. VI. This right is applicable to the states through the Fourteenth Amendment.

*Duncan v. Louisiana*, 391 US 145, 148-149, 88 SCt 1444, 20 LEd2d 491 (1968).  The United

States Supreme Court has observed that:

> """The requirement of a public trial is for the benefit of the
> accused; that the public may see he is fairly dealt with and not
> unjustly condemned, and that the presence of interested spectators
> may keep his triers keenly alive to a sense of their responsibility
> and to the importance of their functions ...."" [*Gannett Co, Inc v.
> DePasquale*, 443 US 368, 380 (1979)] (quoting *In re Oliver*, 333
> US 257, 270 N.25, 58 SCt 499, 506, n.25, 92, Led 682 (1948), in
> turn quoting T. Cooley, constitutional Limitations 647 (*the d.
> 1927)).

*Waller v. Georgia*, 467 US 39, 46 (1984); *see In re Oliver*, 333 US 257, 270 (1948) ("The

knowledge that every criminal trial is subject to contemporaneous review in the forum of public

opinion is an effective restraint on possible abuse of judicial power").

The Sixth Amendment right to a public trial is founded on the long-standing fear of secret

trials, as the Court explained in its decision in *In re Oliver*:

> "The traditional Anglo-American distrust for secret trials has been
> variously ascribed to the notorious use of this practice by the
> Spanish Inquisition, to the excesses of the English Court of Star
> Chamber, and to the French Monarchy's abuse of the letter de
> cachet.  All of these institutions obviously symbolized a menace to
> liberty.  In the hands of despotic groups each of them had become
> an instrument foe the suppression of political and religious heresies
> in ruthless disregard of the right of any accused to a fair trial.
> Whatever other benefits the guarantee to an accused that his trial
> he conducted in public may confer upon our society, the guarantee
> has always been recognized as a safeguard against any attempt to
> employ our courts as instruments of persecution.  The knowledge
> that every criminal trial is subject to contemporaneous review in
> the forum of public opinion is an effective restraint on possible
> abuse of judicial power.  One need not wholly agree with a
> statement made on the subject by Jeremy Bentham over 120 years
> ago to appreciate the fear of secret trials felt by him, his
> predecessors and contemporaries.  Benthan said: '***suppose the
> proceedings to be completely secret, and the court, on the
> occasion, to consist of no more than a single judge, that judge will
> be at once indolent and arbitrary: how corrupt solver his inclination

> may be, it will find no check, at any rate no tolerably efficient check, to oppose it. Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account. Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks, as cloaks in reality, as checks only in appearance!"

*In re Oliver*, 333 US at 268-71 (footnotes omitted) (quoting Jeremy Benthan, 1 Rationale of Judicial Evidence 524 91827)).

The Sixth Circuit, *Johnson v. Sherry*, 586 F3d 439 (6[th]Cir 2009), and this United States District Court have not only honored this federal principle and right but has indeed remedied this very Sixth Amendment violation by the issuance of a writ of habeas corpus. *See Salem v. Yukins*, 414 FSupp. 2d 687 (ED Mich 2006).

The right to a public trial will only "give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 US at 45, 104 SCt 2210. "But to justify a denial of the public trial right, 'the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced ....'" *Johnson*, 586 F3d at 443 (quoting *Waller*, 467 US at 48, 104 SCt 2210). In *Waller*, the Supreme Court defined the contours of the criminal defendants' Sixth Amendment right to a public trial, and ruled that the criminal defendants' Sixth Amendment right to a public trial, and that the test set out in *Press-Enterprise Co v. Superior Court of California*, (Press-Enterprise I), 464 US 501, 104, SCt 819, 78 Led2d 629 (1984), governed closures of pretrial proceedings (suppression hearing in *Waller*, jury selection in Press-Enterprise I), stating:

> In several recent cases, the Court found that the press and public have a qualified First Amendment right to attend a criminal trial ....We also have extended that right not only to the trial as such but

also to the <u>voir dire</u> proceeding in which the jury is selected.
*Press-Enterprise Co v. Superior Court of California*, 464 US 501,
104 SCt 819, 78 Led2d 629 (1984) ....

In each of these cases the Court has made clear that the right to an open trial may give

way in certain cases to other rights or interest, such as the defendant's right to a fair trial or the

government's interest not to disclose sensitive information. Such circumstances will be rare,

however, and the balance of interests must be struck with special care. The applicable rules were

stated in *Press-Enterprise*:

> "The presumption of openness may be overcome only by an
> overriding interest based on findings that closure is essential to
> preserve higher values and is narrowly tailored to serve that
> interest. The interest is to be articulated along with findings
> specific enough that a reviewing court can determine whether the
> closure order was properly entered."

*Waller*, 467 US at 44-45, 104 SCt 2210 (quoting *Press-Enterprise I*, 464 US at 510, 104
SCt 819).

The *Waller-Press-Enterprise I* test has both substantive and procedural components. In

*United States v. Antar*, 38 F3d 1348 (3d Cir 1994), the United States Court for the Third Circuit

explained that *there is a presumptive right of public access to voir dire proceedings*, and that:

> "[the right to public trial] may not be abridged absent the
> satisfaction of substantive and procedural protections. On the
> substantive side, a court ordering closure must first establish that
> the competing interest asserted is not only "compelling" but also
> that it outweighs the First Amendment right of access. Second, it
> must determine that the limitations imposed are both necessary to
> and effective in protecting that interest. One part of establishing
> the necessity of a limitation is a consideration of alternative
> measures and a showing that the limitation adopted is the lease
> restrictive means of accomplishing the goal ... On the procedural
> side, these determinations must be covered by specific,
> individualized findings articulated on the record before closure
> ...."

38 F3d at 1359.

Although the *Antar* Court directly addressed the media's first Amendment right of access, "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit first amendment right of the press and public." *Waller*, 467 US at 46, 104 SCt at 2210).

The record here clearly shows that before expelling the public and conducting the secret motion hearings and voir dire of prospective jurors, the trial court didn't even bother considering or complying with the *Waller-Press-Enterprise I* test's substantive and procedural components. Without compliance "the trial could not constitutionally close the voir dire." *Press-Enterprise I*, 464 US at 511. The failure to satisfy the *Waller-Press-Enterprise* requirements made conducting the secret hearings and secret voir dire not only forbidden but blatantly unconstitutional.

1.

The Supreme Court's Per Curiam Summary Disposition Decision
in *Presley v. Georgia*, 130 SCt 721 (2010).

Based on the foregoing principles, the United States Supreme Court re-announced *via summary disposition* in *Presley* that the unconstitutional closure of any judicial proceeding will continue to mandate reversal. The *Presley* decision presents a set of circumstances remarkably similar to the instant case. In *Presley*, the petitioner sought certiorari on the grounds that his Sixth and Fourteenth Amendment right to a public trial was violated when the Supreme Court of Georgia affirmed the trial court's exclusion of the public, in particular his uncle, from voir dire. The trial court had excluded the public from jury selection because, "there just isn't space for them to sit in the audience" and the court did not want family members in the courtroom to intermingle with the jurors and sit directly behind the jurors where they might overhear some inadvertent comment or conversation." *Presley*, 130 SCt at 722. The Supreme Court of Georgia agreed that "the trial court certainly had an overriding interest in ensuring that potential jurors

heard no inherently prejudicial remarks from observers during voir dire," and rejected Presley's argument that the trial court was required to consider alternatives prior to closing the courtroom. *Id* at 130 SCt at 723.

The United States Supreme Court held via summary disposition that the "Supreme Court of Georgia's affirmance contravened this Court's clear precedents." *Id* at 130 SCt at 722 (emphasis added). In a Per Curium Opinion the Supreme Court explained:

> The case now before the Court is brought under the Sixth Amendment, for it is the accused who invoked his right to a public trial. An initial question is whether the right to a public trial in criminal cases extends to the jury selection phase of trial, and in particular the voir dire of prospective jurors. In the First Amendment context that question was answered in Press-Enterprise I .... Later in the same term as Press-Enterprise II, the ... *Waller* court relied heavily upon Press-Enterprise I in finding that the sixth Amendment right to a public trial extends beyond the actual proof at trial. It ruled that the pretrial suppression hearing must be open to the public because "there can be little doubt that the explicit Sixth Amendment right of the accused is no les protective of a public trial than the implicit first Amendment right of the press and public." ...
>
> While Press-Enterprise I was heavily relied upon in *Waller*, the jury selection issue in the former case was resolved under the first, not the Sixth, Amendment .... In the instant case, the question then arises whether it is so well settled that the sixth Amendment right extends to jury voir dire that this Court may proceed by summary disposition.
>
> The point is well settled under Press-Enterprise I and *Waller*....
>
> 130 SCt at 723-24 (citations omitted; emphasis added).

The United States Supreme Court in *Presley* reaffirmed that the substantive and procedural components of *Waller* must be applied "before excluding the public from any stage" of a criminal trial, and reiterated *Press-Enterprise I's* rule that trial courts are "obligated to take every reasonable measure to accommodate public attendance at criminal trials," and that absent "consideration of alternatives to closure, the trial court could not constitutionally close the voir

dire, "even when alternatives are not offered by the parties. *Presley*, 130 SCt at 724-25 (quoting *Press-Enterprise I*, 646 US at 505, 511, 104 SCt 819). The Court also observed that the "conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear not only from this court's precedents but also from the premise that '[t]he process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system.' " *Presley*, 130 SCt 724 (quoting *Press-Enterprise I*, 464 US at 505, 104 ST 819).

Finally, *Presley* observed there are "no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing voir dire," but even in such cases, "the particular interest, and threat to that interest, must 'be articulated along with the findings specific enough that a reviewing court can determine whether the closure order was properly entered." Presley, 130 SCt at 725 (quoting Press-Enterprise I, 646 US at 510, 104 SCt 819).

In the case at bar, no one can discern why the closure order was entered. There was a wholesale failure to even attempt to satisfy the *Waller* test. The record shows, and clearly established United states Supreme Court precedents supports, that petitioner's Sixth Amendment right to a public trial was violated, entitling Petitioner to summary relief.

C.

Petitioner Is Entitled To Judgment As A Matter Of Law Because A
Constitutional Violation Of This Magnitude Equates To Structural
Error Mandating Automatic Reversal Because Prejudice Is
Presumed.

Just as long as the United States Supreme Court has condemned the unconstitutional closure of judicial proceedings it has also remained firm in classifying the violation of the right to a public trial as structural error. At this point, it is absolutely clear that Petitioner was

unconstitutionally deprived of his Sixth Amendment right to a public trial. Petitioner need not show prejudice from this violation to obtain relief. Denial of the right to a public trial is the sort of "structural error" that intangibly, but palpably, infects the entire proceeding and demands redress. *See, e.g.,Waller*, 467 US at 50 N9, 104 SCt 2210 (because of the "great, thought intangible, societal loss that flows from closing courthouse doors, the denial of a right to a public trial is considered a structural error for which prejudice is presumed) (quoting *People v. Jones*, 47 NY2d 409, 418 NYS2d 359, 391 NE2d 1335, 1340 (1979). "A requirement that prejudice be shown 'would in most cases deprive [the defendant] of the [public trial] guarantee, for it would be difficult to envisage a case in which he would have evidence of specific injury.'" *Waller*, 467 US at 50, n9, 104 SCt 2210 (quoting United States *ex rel Bennett v. Rundle*, 419 F2d 599, 608 (3d Cir 1969)); *Johnson v. United States*, 520 US 461, 468, 117 SCt 1544, 137 LEd2d 718 (1997) (defendant's Sixth Amendment right to a public trial is of such importance that any error affecting it is deemed "structural," making denial of the right one of the "limited class of cases" where reversal is required without showing prejudice); *Neder v. United States,* 527 US 7, 8, 119 SCt 1827, 144 Led2d 35 (1999) (characterizing denial of Sixth Amendment right to public trial as a "structural" error, citing *Waller*, 467 US at 39, 104 SCt 2210).

In the case at bar, as a matter of law, redress is mandated, and petitioner is thereby entitled to judgment as a matter of clearly established United states Supreme Court precedents, and that judgment, at this juncture, is the issuance of a conditional writ of habeas corpus.

### D.

The Court Of Appeals' Decision That Petitioner's Violation Of The Right To A Public Trial Claim Lacked Merit Is Directly Contrary To Long Standing, Clearly Established United States Supreme Court Precedents

1.

Habeas Corpus Standard of Review

Petitioners' habeas petition was filed in 2013;  it is therefore governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See, Benge v. Johnson*, 474 F3d 236, 241 (6th Cir 2007); 28 USC §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

28 USC §2254(d).

"A state court's decision is 'contrary to' … clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 US 12, 15-16 (2003) (per curium) (quoting *Williams v. Taylor*, 529 US 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins v. Smith*, 529 US 510, 520 (2003) (quoting *Williams,* 529 US at 413.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 529 US at 520-21 (citation omitted); *see also, Williams*

529 US at 409." A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v Richter*, 562 US ___, 131 SCt 770, 789, 178 Led2d 624 (2011) (quoting *Yarborough v Alvarado*, 541 US 152, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal....As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the stated court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 786-87 (internal quotation omitted).

The instant matter presents a classic case of the Michigan Court of Appeals' decision simply being directly contrary to clearly established Supreme Court precedents. A cursory survey of *Presley* demonstrates that Petitioner Pouncy and Petitioner Presley suffered the exact same constitutional infirmity at the trial court level, and that both the Michigan court in Petitioner Pouncy's case and the Georgia Court in Petitioner Presley's case denied relief even though both Petitioner Pouncy and Petitioner Presley respectively briefed and relied on the clearly established United States Supreme Court's precedents of *Waller* and *Press-Enterprise I*. In *Presley,* the United States Supreme Court declared that the Supreme Court of Georgia's affirmance *"contravened this Court's clear precedents."* 130 SCt at 722 (emphasis added).

If Petitioner Pouncy and Petitioner Presley suffered identical constitutional infirmities, if they both challenged the exact same constitutional infirmity on appeal, if they both relied on the exact same United States Supreme Court's precedents as controlling in challenging the constitutional infirmity, and both states' courts disregarded that precedent, then both states'

courts "affirmance contravened [United States Supreme] Court's clear precedents," *Presley*, 130 SCt at 722, and absolutely no "fair-minded jurist could disagree" on the [contrariness] of the [Michigan] state court's decision.'" *Harrington*, 131 SCt at 789.

In this case at bar, in connection with Petitioner Pouncy's challenge to the unconstitutional closure of the courtroom during both a variety of prosecution motions and voir dire of prospective jurors, the Michigan Court of Appeals rendered this perfunctory decision:

> In his Standard 4 brief, defendant raises numerous additional claims of error, which he contends warrant relief. Specifically, defendant argues that he was deprived of a fair trial ... by the trial court's deprivation of the defendant's right to have the public present during certain motion hearings and voir dire ... We have carefully examined these claims of error and conclude that none of them have merit.

*People v. Omar Rashad Pouncy*, (On Reconsideration) unpublished opinion per Curium of the Court of Appeals, issued March 25, 2008, p 31 (*See* Court of Appeals Opinion attached as Appendix A).

There is nothing materially distinguishable between the facts in Petitioner Pouncy's and Petitioner Presley's case. Petitioner Pouncy's case is far more constitutionally egregious because he not only suffered the Constitutional deprivation of his Sixth Amendment right to a public trial when the public was barred from attending voir dire of prospective jurors but also when the public was barred from being in attendance when the trial court entertained a variety of prosecution initiated motions. The Michigan Court of Appeals decision flies directly in the face of *Presley*, which was dictated by clearly established precedents from the United States Supreme Court's decisions in *Waller* and *Press-Enterprise I*, both in existence and controlling for in excess of 20 years prior to the time the Michigan Court of Appeal's issued its contrary decision. Petitioner is entitled to a writ of habeas corpus even under the "difficult to meet"

standard, *Harrington*, 131 SCt at 786, of the Antiterrorism and Effective Death Penalty Act of 1996, Publ. L No 104-132, 110 stat 1214, April 24, 1996 ("AEDPA") as amended.

Petitioner is also entitled to a writ of habeas corpus under section 2254(d) because the unconstitutional deprivation of the right to a public trial is an example of an "'extreme malfunction [ ] in the state criminal justice system [ ].'" *Harrington*, 131 SCt at 786 quoting *Jackson v. Virginia*, 443 US 307, 332 n5, 99 SCt 2781, 61 Led2d 560 (1979)). The United States Supreme Court held that a public Juror selection process:

> "is itself a matter of importance, not simply to the adversaries but
> to the criminal justice system."

*Presley*, 558 US at 214, 130 SCt at 724 (quoting *Press-Enterprise* I, 464 US at 505, 104 SCt 819).

Without the protections provided by a public trial not only during juror selection but also during prosecution initiated motions, "extreme malfunctions in the state criminal justice system [ ]," are inevitable. This is precisely why the United States Supreme Court identified the denial of the right to a public trial as a "structural defect" that "def[ies] analysis by 'harmless-error' standards" because a structural defect affects the "framework within which the trial proceeds" and is "not simply an error in the trial process itself." *Unites States v. Gonzalez-Lopez*, 548 US 140, 148-149; 126 SCt 2557; 165 Led2d 409 (2006) (citation and quotation marks omitted). This is not an "ordinary error" and in light of *Waller*, *Press-Enterprise I*, and especially *Presley* there is no question that "the state court's ruling" on Petitioner's violation of his right to a public trial claims "was so lacking in justification that there was an error well understood, and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 SCt at 786-87 (internal quotation omitted).

The fact that the Michigan court's decision was directly contrary to clearly established Supreme Court precedents is further supported by the decision in *Constant v. Pennsylvania Dept of Corrections*, 912 FSupp2d 279 (WD Pa 2012). In *Constant*, just as in Petitioner Pouncy's case, the court excluded and barred the general public from attending voir dire of prospective jurors without complying with *Waller*. *Id* at 912 FSupp2d 285. Petitioner Constant was convicted after a trial and filed a post-trial motion for new trial, on "the issue of exclusion of the public from jury selection," which was denied because the trial court concluded that Petitioner Constant's claim was "without merit." *Id* at 286. Petitioner Constant continued his appeal on this basis to the Superior Court of Pennsylvania and Supreme Court of Pennsylvania, which also denied the claim. *Id* at 286-287. Petitioner constant reasserted the claim again on collateral attack, but the court denied relief based on res judicata, a claim that space was limited, and that Petitioner Constant was not prejudiced. *Id* at 287-288. Petitioner Constant again sought relief from the Pennsylvania Superior Court on the public trial violation issue. By this time, *Presley* had been announced by the United States Supreme Court; this was acknowledged by the Pennsylvania Superior Court, yet they denied relief on res judicata basis. *Id* at 289.

Petitioner Constant sought a writ of habeas corpus asserting that "the Pennsylvania Courts violated clearly established federal law which guarantees a defendant's right to a public trial, including jury selection." *Id* at 289. "After careful consideration of the Petition for Writ of Habeas Corpus, the Commonwealth of Pennsylvania respondent's Answer, numerous exhibits attached by the parties, and the original state court records, and mindful of the deferential standard of review of decisions of state courts mandated by the Antiterrorism and Effective Death penalty Act of 1996, Pub L No 104-132, 110 Stat 1214, April 24, 1996 ("AEDPA"), as amended" the Court in *Constant* concluded that, "the exclusion of petitioner's wife and the

general public from jury selection was contrary to, or an unreasonable application of long standing, controlling United States Supreme Court precedent, and violated Mr. Constant's Sixth Amendment right to a public trial. The error is structural, and prejudice is presumed." *Id* at 308. The Court in *Constant* specifically held as follows, in concluding that the state court's decision was contrary to clearly established law:

> The Pennsylvania courts' decision on the right to a public trial at jury selection is contrary to *Waller* and Press-Enterprise I, substantively and procedurally. Although petitioner briefed and signed *Waller* and Press-Enterprise I to Superior Court as controlling, "clearly established Federal law," the state courts disregarded that precedent. Constant, 925 A2d at 817, n3 ("We decline to apply the federal court's holdings under the circumstances present in this case.")

Constant, 912 FSupp2d at 299.

In light of the incontrovertible unconstitutional deprivation of the right to a public trial in the case at bar, the United States Supreme Court's decisions in *Waller*, Press-Enterprise I and Presley, and the conclusion reached in Constant, there is no question that the Michigan Court's decision was contrary to clearly established Supreme Court precedents and Petitioner is entitled to a writ of habeas corpus.

E.

> This claim is not procedurally barred because the State forfeited and waived any potential procedural default claim and the State court never enforced any procedural bar and ruled solely on the merits.

Petitioner first raised the claim involving the denial of his right to a public trial on direct appeal on February 28, 2007 via a supplemental brief pursuant to Administrative Order 2004-6, Standard 4 (*See,* Appellate Court Docket Sheet, *People v. Omar Rashad Pouncy*, Court of

Appeals Case #269298, attached as Appendix D).Although, per applicable Michigan Court Rule, the Appellee Genesee County Prosecutor's Office, were permitted to file an answer registering any defenses to the claims asserted, they never filed an answer, (*See*, Appendix D), which resorted in the State forfeiting any state procedural defense they may have had. In *Wood v. Milyard*, 132 SCt 1826, 1832 n4 (1012), the United State Supreme Court noted the distinction between defenses that are "waived" and those that are "forfeited." The Court held as follows:

> "A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve."

*Wood*, 132 SCt at 1833 n4 (citing *Kontrick v. Ryan*, 540 US 443, 458, n13, 1248 SCt 906, 157 Led2d 867 (2004; *United States v. Olano*, 507 US 725, 733, 113 SCt 1770, 123 Led2d 508 (1993)).

Since the State forfeited any procedural defense it may have had, which "exclu[ded] [any procedural defenses] from the case as a rule," *Wood*, 132 SCt 1832 (citations omitted), the Michigan Court of Appeals proceeded directly to the merits and never invoked any kind of state procedural bar. Where no state court ever stated that its judgment rested on a state procedural bar, there is no bar to habeas review.

The Court in *Guilmette v. Howes*, 557 FSupp2d 904, 909 (ED Mich 2008), aff'd 624 F3d 286 (6th Cir 2010), held as follows, in its pertinent part:

> "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case '"clearly and expressly"' states that its judgment rests on a state procedural bar." *Harris v Reed*, 489 US 255, 263, 109 SCt 1038, 103 Led2d 308 (1989) (quoting *Caldwell v Mississippi*, 472 US 320, 327, 105 SCt 2633, 86 Led2d 231 (1985) quoting *Michigan v. Long*, 463 US 1032, 1041, 103 SCt 3469, 77 Led2d 1201 (1983)). Courts must "look through" unexplained orders to the last reasoned state court decision when determining whether a judgment rests on a state procedural bar.

> *Ylst v. Nunnemaker,* 501 US 797, 804, 111 SCt 2590, 115 Led2d 706 (1991). If an order appears to rest primarily on federal law, a reviewing court must presume that a subsequent unexplained order did not invoke a procedural default and left the earlier order in place. *Id* at 803, 111 SCt 2590.

*Guilmette,* 577 FSupp2d 909.

Because the Michigan Court of Appeals made a merits determination on Petitioner's constitutional claim that he was unconstitutionally deprived of his right to a public trial and did not invoke a procedural bar, this Court must presume that the subsequent unexplained orders did not invoke a procedural default and left the Michigan Court of Appeals' decision in place. "Therefore, Petitioner's claim[] [is] not procedurally defaulted." *Id* at 910.

Even when re-raised in connection with his motion for relief from judgment the State did not raise any procedural defenses and in fact expressly waived any procedural defense when it conceded that:

> "[a] defendant need not object to a closure in order to raise the issue on appeal ..."

> *See* People's Answer In Opposition to Defendant's Supplemental Issue Based on Retroactive Change in Law, filed 7-28-10, page 7, attached as Appendix B.

The State never briefed any argument on direct appeal claiming that Petitioner's claim that his right to a public trial was violated was procedurally barred, and expressly waived any argument to that effect by conceding that no objection was needed to raise the issue on appeal. There is accordingly an "intentional relinquishment or abandonment of [the] known right or privilege" to argue that any procedural requirements had not been complied with by Petitioner Pouncy, which constitutes a waiver on the state's behalf. *Wood,* 132 SCt at 1832 n4. Since the State chose not to say anything in this regard in its Answer during the state court proceeding, they cannot be permitted to do so now. *See People v. Hamacher,* 432 Mich 157, 167-168 91989)

(holding that prosecutor's argument that defense waived objection to the admission of evidence at trial was itself waived where the prosecution did not raise this claim prior to its brief in the Michigan Supreme Court). *Also see Willis v Jones*, 329 Fed Appx 7 (6th Cir 2009) (quoting *United States v. Ford*, 184 F3d 566, 578 n3 (6th Cir 1999) (holding "Even appellees waive arguments by failing to brief them.").

Furthermore, when the trial court judge entered its order denying the motion for review from judgment it only invoked MCR 6.508(D)(2) and said that it was unable to provide relief due to the prior merit based decision of the Michigan Court of Appeals on direct review. (*See* Appendix C, page 28). This is not a procedural bar to federal review.

The Sixth Circuit in *Amos v. Renica*, 683 F3d 720, 727 (6th Cir 2012) clearly held that the invoking of MCR 6.508(D)(2) does not operate to bar future federal habeas review:

> The Michigan trial court denied this prosecutional misconduct claim under MCR 6.508(D)(2) which precludes relief if a court in any earlier appeal has already denied the petitioner's grounds for relief. This Court has previously ruled in an unpublished opinion that this is a collateral estoppel rule that will not procedurally default a claim for habeas relief. *Skinner v. McLenore*, 425 Fed Appx 491, 495 (6th Cir 2011); *see, also, Cone v. Bell*, 556 US 449, 466, 129 SCt 1769, 173 Led2d 701 (2009) ("When a state court decline to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review").

*Amos*, 683 F3d at 727.

Petitioner timely filed his petition for writ of habeas corpus, this claim is fully exhausted, there are no issues of retroactivity, and the State court never invoked any procedural bars of any sort. This claim is ripe for review.

## SUMMARY

Summary judgment is warranted where:

1.      Petitioner was unconstitutionally stripped of his Sixth Amendment right to a public trial. This is incontrovertible and clearly supported by the on-the-record facts. In this case there is absolutely no genuine issue as to any material fact.

2.      A long line of long standing United Stated Supreme Court precedents unequivocally entitles Petitioner to judgment as a matter of law, in light of the deprivation of his Sixth Amendment right to a public trial.

3.      The state courts' decision on this constitutional claim is directly contrary to clearly established United States Supreme Court precedents.

4.      There are no bars to habeas review or relief.

5.      The United States Supreme Court in *Presley* utilized the "summary disposition" method when confronted with a claim identical to the claim asserted in the instant case.

## RELIEF REQUESTED

WHEREFORE, for the foregoing reasons, Petitioner Pouncy prays that this Honorable Court grant summary judgment in his favor, and thereby issue a conditional writ of habeas corpus.

LAW OFFICES OF
DAVID L. MOFFITT & ASSOCIATES

s/David L. Moffitt
By: _____
David L. Moffitt (P30716)
Attorney for Petitioner Omar Rashad Pouncy

Dated: March 6, 2015