UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR RASHAD POUNCY,

      Petitioner,                           Case No. 13-cv-14695
                                               Hon. Matthew F. Leitman

v.

CARMEN D. PALMER,

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION FOR
SUMMARY JUDGMENT (ECF #33); DENYING IN PART HABEAS
RELIEF, AND GRANTING A CERTIFICATE OF APPEALABILITY**

In 2006, a Michigan state-court jury convicted Petitioner Omar Rashad Pouncy ("Pouncy") of several counts of carjacking, armed robbery, and other offenses. Pouncy has filed a petition for a writ of habeas corpus, and an amended petition, in this Court challenging his convictions on numerous grounds (collectively, the "Petition"). (*See* ECF ## 1-3.) Pouncy has now moved for summary judgment on one of his claims: that the state trial court violated his Sixth Amendment right to a public trial when it excluded the public from voir dire and from pre-trial argument on two motions in limine. (*See* ECF #33.) For the reasons explained below, the Court **DENIES** Pouncy's motion for summary judgment, **DENIES** him habeas relief based upon his public-trial claim, and **GRANTS** him a certificate of appealability on his public-trial claim.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In late 2005, the State of Michigan charged Pouncy with four counts of carjacking (M.C.L. § 750.529A); four counts of armed robbery (M.C.L. § 750.529); two counts of carrying a firearm during the commission of a felony (M.C.L. § 750.227b); and one count of felon in possession of a firearm (M.C.L. § 750.224f). (*See* ECF #8-42 at 1, Pg. ID 3203.) Pouncy was tried in the Genesee County Circuit Court beginning on January 24, 2006. (*See* Tr. I.)

Just prior to the beginning of the voir dire process, the state-court trial judge cleared the courtroom of all observers:

> **The Court:** Okay then I think we should get ready to have the jury brought down and Trish if you'll go get the jury and we'll start jury selection. *I want to ask those of you in the audience if you would step in the hallway for now just until we get the jury selected and then we'll go from there.*

(*Id.* at 23, Pg. ID 478 (emphasis added).) Pouncy's appointed counsel did not object to the exclusion of the public. (*See id.*)

While the court clerk went to get the potential jurors – and with the public now excluded from the courtroom – the trial judge heard argument on two motions. First, he heard the State's motion in limine to admit evidence that Pouncy allegedly participated in carjackings for which Pouncy had been charged in a separate case. (*See id.* at 23-28, Pg. ID 478-83.) The trial judge granted the State's motion. (*See id.* at 28-29, Pg. ID 483-84.) Second, the trial judge heard

2

argument on the State's request to admit an audio recording of Pouncy allegedly threatening a victim of one of the carjackings.  (*See id.* at 29-34, Pg. ID 484-89.) The trial judge also granted that request.  (*See id.* at 34, Pg. ID 489.)

At that point, the court clerk returned to the courtroom with the pool of potential jurors, and the trial judge conducted the voir dire process in the closed courtroom.  (*See id.* at 35, Pg. ID 490.)  The trial judge permitted observers from the public to re-enter the courtroom only after he completed voir dire, and they were allowed to remain for the duration of the trial.  (*See, e.g.*, Trial Transcript II, ECF #8-8 at 8, Pg. ID 778 (judge addresses observers in the audience).)

The jury ultimately convicted Pouncy on all counts.  (*See* Trial Transcript V, ECF #8-15 at 104-05, Pg. ID 1892-93.)  The trial judge thereafter sentenced Pouncy to concurrent terms of imprisonment of 562 months to 800 months for each carjacking and armed robbery conviction and 24 months to 120 months for each felon in possession conviction.  (*See* ECF #8-16 at 81-83, Pg. ID 1983-85.)  The trial judge also sentenced Pouncy to concurrent terms of 24 months for each felony firearm conviction, to be served consecutively to the other terms of imprisonment. (*See id.*)

On direct appeal to the Michigan Court of Appeals, Pouncy's appellate counsel challenged Pouncy's conviction on thirteen grounds.  (*See* ECF #8-44 at 186-248 and 401-19; Pg. ID 3418-80 and 3633-51.)  Pouncy's appellate counsel

did not challenge the trial judge's exclusion of the public from portions of Pouncy's trial. (*See id.*) Pouncy, however, filed a *pro per* supplemental brief in which he argued that his conviction should be reversed because, among other things, he was deprived of his right to a public trial.[1] (*See id.* at 327-330, Pg. ID 3559-62.) The Michigan Court of Appeals determined that Pouncy's public-trial claim lacked merit and, accordingly, denied relief on that ground (the "Michigan Court of Appeals Ruling"):

> In his [*pro per*] brief, defendant raises numerous additional claims of error, which he contends warrant relief. Specifically, defendant argues that he was deprived of a fair trial by the delay in his arrest, *by the trial court's deprivation of defendant's right to have the public present during certain motion hearings and voir dire*, [and by several other alleged errors]. *We have carefully examined these claims of error and conclude that none of them have merit.*

(*See id.* at 28, Pg. ID 3260 (emphasis added).)

Pouncy then raised his public-trial claim in a motion for relief from judgment in the state trial court. (*See* ECF #8-48 at 116, Pg. ID 4342.) Pouncy argued that a recently-decided Supreme Court case – *Presley v. Georgia*, 558 U.S. 209 (2010) – confirmed that his public trial right had been violated. (*See* ECF #8-

---

[1] Michigan law permits indigent criminal defendants who insist on raising a claim against the advice of counsel to file a *pro per* brief. *See* Admin. Order 2004–6, Standard 4, available at http://courts.mi.gov/Courts/MichiganSupremeCourt/rules/ Documents/Administrative Orders.pdf; *see also Zimmerman v. Booker*, 517 Fed. App'x 333, 334 n.1 (6th Cir. 2013).

26.)  The state trial court denied Pouncy's public-trial claim pursuant to M.C.R. 6.508(D)(2) on the ground that the claim had already been "decided against the defendant in a prior appeal."  (ECF #8-48 at 116, Pg. ID 4342.)  Pouncy sought leave to appeal the trial court's denial of his motion for relief from judgment (*see id.* at 9, Pg. ID 4235), and the Michigan Court of Appeals denied leave.  (*See id.* at 1, Pg. ID 4227.) Pouncy then sought leave to appeal in the Michigan Supreme Court.  (*See* ECF #8-49.)  That court denied leave on May 28, 2013.  (*See id.*at 1, Pg. ID 4440.)

On November 12, 2013, Pouncy filed the Petition in this Court.  (*See* ECF ## 1-2.)  Pouncy seeks habeas relief on several grounds, including his claim that the trial court improperly excluded the public from portions of his trial.  (*See* ECF #2.)  Pouncy has now filed a motion for summary judgment on his public-trial claim.  (*See* ECF #33.)  The Court heard oral argument on Pouncy's motion on June 17, 2015.  The Court then permitted the parties to file supplemental briefs addressing issues raised at the hearing.  (*See* ECF #53.)  The parties have now submitted their supplemental briefs.  (*See* ECF ## 54-55.)  For the reasons explained below, the Court **DENIES** Pouncy's motion and **DENIES** him habeas relief on his public-trial claim.

## GOVERNING LEGAL STANDARDS

### I. Legal Standard Governing the Motion for Summary Judgment

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

### II. Legal Standard Governing the Petition

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Petition. In relevant part, it provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) have independent meaning." *Loza v. Mitchell*, 766 F.3d 466, 473 (6th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A decision of a state court is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision of a state court involves an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principal from th[e Supreme] Court's decisions but unreasonably applies that principal to the facts of the prisoner's case." *Id.*

AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the

doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)). Accordingly, a federal court may not "issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). Indeed, habeas relief "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03. Thus, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

For the purposes of § 2254(d)(1), "[c]learly established Federal law … includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A habeas court must not construe Supreme Court holdings at "a high level of generality." *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014). Indeed, "clearly established Federal law" is limited

8

to the "*specific question[s]*" decided by the Supreme Court.  *Id.* (emphasis added.)
Thus, it is not contrary to, nor an unreasonable application of, clearly established
Federal law "for a state court to decline to apply a *specific* legal rule that has not
been *squarely* established by th[e Supreme] Court."  *Harrington*, 562 at 101
(emphasis added).

## **ANALYSIS**

## **I.    Pouncy's Public-Trial Claim is Not Procedurally Defaulted**

Respondent  Carmen  Palmer  ("Respondent")  initially  contended  that
Pouncy's public-trial claim was procedurally defaulted because Pouncy failed to
object to the closure of the courtroom at his trial.  (*See* ECF #7 at 56, Pg. ID 93.)
Not so.[2]  A claim is procedurally defaulted if, among other things, a petitioner fails
to comply with a state-court procedural rule and the last reasoned state-court
decision "actually enforce[s] the state procedural rule in denying relief."  *Lovins v.
Parker*, 712 F.3d 283, 296 (6th Cir. 2013) (internal punctuation omitted).  "[I]t is
not sufficient that the state court *could* have applied the procedural default under
state law; it must have actually done so."  *Id.* (emphasis in original).

The last reasoned state court decision in this action was the Michigan Court
of Appeals Ruling.  Even if the Michigan Court of Appeals *could have* enforced a

---

[2] Respondent  has  since  acknowledged  that  Pouncy's  public-trial  claim  is  not
procedurally defaulted.  (*See* ECF #55 at 1, Pg. ID 6257 ("the issue here is not
procedural default").)

procedural rule when it denied relief on Pouncy's public-trial claim, that claim is not procedurally defaulted here because the Michigan Court of Appeals did not *actually* do so.  Rather, the Michigan Court of Appeals purported to "carefully examine[] the[] claim[]," and it "conclude[d] that [the claim lacked] merit."  (ECF #8-44 at 28, Pg. ID 3260.)  Because the Michigan Court of Appeals did not enforce a procedural rule barring relief, this Court will review the merits of Pouncy's public-trial claim.

## II. The Michigan Court of Appeals' Rejection of Pouncy's Public-Trial Claim Was Neither Contrary to, Nor an Unreasonable Application of, Clearly Established Federal Law Regarding the Right to a Public Trial

### A. The Right to a Public Criminal Trial

The Sixth Amendment provides that a criminal defendant "shall enjoy the right to a … public trial."  U.S. CONST. Amend. VI.  This right is made applicable to the states through the Fourteenth Amendment.  *See Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968).  The Supreme Court has emphasized the importance of the public trial guarantee:

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions….

*Waller v. Georgia*, 467 U.S. 39, 46 (1984) (quoting *In re Oliver*, 333 U.S. 257, 270, n. 25 (1948)).

The public trial guarantee "embodies a view … that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." *Id.* "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Id.* Thus, openness "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 508 (1984). Criminal trials are therefore subject to a "presumption of openness." *Id.* at 510. This presumption extends to the jury selection phase of trial and to pre-trial hearings. *See id.* (jury selection); *Presley, supra* (jury selection); *Waller, supra* (pre-trial evidentiary hearing).

**B.  The Right to a Public Trial is Not Absolute, and, Under Limited Circumstances, a Trial Court May Close Criminal Proceedings if it Makes the Required Inquiry and Findings**

Despite the presumption of openness, the right to a public trial "is not absolute." *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 606 (1982); *see also Press-Enterprise*, 464 U.S. at 510. Indeed, "the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45. "Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Id.*

11

The Supreme Court identified the relevant "interests" to be "balance[d]" in *Waller, supra*. The defendants in *Waller* were charged with participating in a gambling operation in violation of Georgia law. Prior to trial, the defendants moved to suppress certain evidence, and the state then moved to close the suppression hearing. Over the objection of some of the defendants, the trial court granted the state's motion and excluded the public from the suppression hearing. The trial court ultimately admitted some of the challenged evidence at trial, and the defendants were convicted of some of the charges.

The defendants appealed their convictions and argued that the exclusion of the public from the suppression hearing violated their right to a public trial. The Supreme Court agreed that "the closure of the entire suppression hearing plainly was unjustified." *Id.* at 48.

The Supreme Court identified certain factors a court must consider and findings a court must make before closing the courtroom over a defendant's objection (the "*Waller* Inquiry and Required Findings"):

> The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller*, 467 U.S. at 48. The Supreme Court held that the trial court erred when it closed the courtroom without making the *Waller* Inquiry and Required Findings.

12

*Id.* at 48.  The Supreme Court then remanded for a new evidentiary hearing. *Id.* at 49-50.

In *Presley*, *supra*, the Supreme Court reaffirmed that a trial court must make the *Waller* Inquiry and Required Findings before closing pre-trial proceedings, including voir dire, over the objection of the defendant.  In that criminal case, the trial court noticed a single observer – the defendant's uncle – in the courtroom prior to the start of voir dire.  The trial court instructed the defendant's uncle to exit the courtroom because "there just [wasn't] space for [him] to sit in the audience," and excluding the uncle was necessary to prevent him from "intermingl[ing] with members of the jury panel."  *Presley*, 558 U.S. at 210.  The defendant objected to the exclusion of his uncle but did not propose any alternatives to closing the courtroom.  The defendant was ultimately convicted.  The Supreme Court of Georgia affirmed his conviction and rejected his claim that the trial court violated his right to a public trial.  That court held that the trial court had no obligation to consider alternatives to closing the courtroom – the third step of the *Waller* Inquiry and Required Findings – because the defendant had not suggested any.  *See id*. at 211.

The United States Supreme Court summarily reversed.  The Supreme Court first explained that its prior decisions in *Waller* and *Press-Enterprise* "settled" that the Sixth Amendment right to a public trial extends to jury selection. *Id*. at 213.

13

The Supreme Court then held that the state trial court did, indeed, err when it failed to consider alternatives to closure even though Presley did not suggest any:

> The conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear not only from this Court's precedents but also from the premise that the process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system.

*Id.* at 214-215 (internal citations and punctuation omitted). The Supreme Court finally stressed that "trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Id*. at 215.

### C. The Dispositive Question Here is Whether Supreme Court Precedent Clearly Establishes That a Trial Court Must Make the *Waller* Inquiry and Required Findings Before Closing a Courtroom When the Defendant Does Not Object to the Closure

Pouncy claims that the Michigan Court of Appeals acted contrary to, and unreasonably applied, *Waller* when it rejected his public-trial claim. (*See* ECF #33 at 3-5, Pg. ID 5923-25.) Pouncy insists that *Waller* requires reversal of his conviction because the state trial judge closed the courtroom without making the *Waller* Inquiry and Required Findings – *i.e.,* without even attempting to identify any overriding interest to justify closing the courtroom; without taking any measures to ensure that the closure was no broader than necessary; without considering any reasonable alternatives to closure; and without making any findings adequate to support the closure. (*See id.*) Pouncy further argues that

*Presley* underscores his right to relief based upon the closure of voir dire in his case.

Respondent counters that *Waller* and *Presley* do not clearly establish that a trial court must make the *Waller* Inquiry and Required Findings where, as here, the defendant does not object to the closure of the courtroom. Respondent says that the defendants in *Waller* and *Presley* objected to the closure and, therefore, neither of those cases may be read as clearly establishing that a trial court must make the *Waller* Inquiry and Required Findings in the absence of an objection by the defendant. Respondent insists that the Supreme Court has not addressed whether a trial court must make the *Waller* Inquiry and Required Findings where the defendant does not object to the closure.

Thus, the dispositive question here is: does Supreme Court precedent clearly establish that a trial court must make the *Waller* Inquiry and Required Findings before closing the courtroom *when the defendant does not object*? This is a very difficult and close question, and for the reasons discussed below, the Court concludes that Supreme Court precedent does not clearly establish that requirement.

### D.   Supreme Court Precedent Does Not Clearly Establish That a Trial Court Must Make the *Waller* Inquiry and Required Findings Before Closing a Courtroom When the Defendant Does Not Object

*Waller*, the primary Supreme Court decision upon which Pouncy relies, does not clearly establish that a trial court must make the *Waller* Inquiry and Required Findings when the defendant does not object to closure.  The very first sentence of *Waller* highlights that the Supreme Court was considering *only* a closure of the courtroom over a defendant's objection: "Th[is] case[] require[s] us to decide the extent to which a hearing on a motion to suppress evidence may be closed to the public *over the objection of the defendant* consistently with the Sixth and Fourteenth Amendment right to a public trial."   *Waller*, 467 U.S. at 40-41 (emphasis added).   The Supreme Court's statement of its holding was likewise limited to a closure over the objection of a defendant: "In sum, we hold that under the Sixth Amendment any closure of a suppression hearing *over the objections of the accused* must meet the [*Waller* Inquiry and Required Findings]."   *Id.* at 47 (emphasis added).   Given that the Supreme Court specifically mentioned an objection by the defendant both when framing the issue for decision and when summarizing its holding, it stretches *Waller* too far to read it as *clearly establishing* that a trial court must make the *Waller* Inquiry and Required Findings even where the defendant does not object.   *See, e.g., Lopez*, 135 S. Ct. at 4 (emphasizing that

16

clearly established federal law springs from the holdings of the Supreme Court on the specific issues that the Court has addressed).

Nor does *Presley* clearly establish that a trial court must make the *Waller* Inquiry and Required Findings when the defendant does not object to closure. As Pouncy properly recognizes, *Presley* "did not establish a new rule" and "simply was lock step with *Waller*."[3]  (Hearing Transcript, ECF #57 at 8, Pg. ID 6308.) Because *Presley* went no further than *Waller* and because (as described above) *Waller* does not clearly establish that a trial court must make the *Waller* Inquiry and Required Findings absent an objection, *Presley* does not clearly establish that a court must make the *Waller* Inquiry and Required Findings even where the defendant does not object.  Moreover, the defendant in *Presley did* object to the

---

[3]  Respondent argues that *Presley* announced a new legal rule and that the decision does not apply to Pouncy's case because it was issued after his conviction became final.  (*See* ECF #43 at 8-12, Pg. ID 6089-93 – invoking 28 U.S.C. § 2254(d)(1) and *Teague v. Lane*, 489 U.S. 288 (1989)).  But as the state trial court correctly noted in its order denying Pouncy's motion for relief from judgment (*see* ECF #8-48 at 116, Pg. ID 4342), *Presley* did not announce a new legal rule.  Rather, *Presley* merely applied rules that were "well settled under *Press-Enterprise* [] and *Waller*."  *Presley*, 558 U.S. at 213.  That is why the Supreme Court decided *Presley* by summary disposition – a procedural option it reserves for cases where "precedents govern squarely and directly."  *Id.* at 217 (Scalia, J., dissenting).  Moreover, counsel for Respondent has argued in another action in this Court that *Presley did not* announce a new legal rule – exactly the opposite position that Respondent is now taking in this action.  *See Orick v. Rapelje*, No. 06-13287, ECF #32 at 32-34, Pg. ID 262-64 (E.D. Mich. Feb. 12, 2014).  Because *Presley* did not announce a new rule, Pouncy may invoke that decision here.  But as explained above, *Presley* does not entitle Pouncy to relief because it does not clearly establish that a trial court must make the *Waller* Inquiry and Required Findings even where the defendant does not object to the closure.

closure of the courtroom, and thus the Court in *Presley* did not squarely address how a trial court must proceed before closing the courtroom absent an objection.

Several courts of appeals cases underscore that neither *Waller* nor *Presley* clearly establishes that a trial court must make the *Waller* Inquiry and Required Findings even where the defendant does not object to the closure.[4] The Sixth Circuit's published decision in *Johnson v. Sherry*, 586 F.3d 439 (6th Cir. 2009), is the most important of these cases. In *Johnson*, at the start of the defendant's trial for second- degree murder and other state-law crimes, the defendant's counsel concurred with a motion by the prosecution to close the courtroom during the testimony of certain witnesses. The jury ultimately convicted the defendant, and he sought habeas relief on the grounds that he was denied his right to a public trial and that his attorney was ineffective in failing to object to the closure of the courtroom. The federal district court denied habeas relief. On appeal, the Sixth Circuit vacated the district court's judgment and remanded the case for "further

---

[4] While only holdings of the United States Supreme Court constitute "clearly established federal law," *see White*, 134 S. Ct. at 1702, this Court may "look to lower courts of appeals' decisions to the extent they illuminate the analysis of Supreme Court holdings in determining whether a legal principle had been clearly established by the Supreme Court." *Goodell v. Williams*, 643 F.3d 490, 496 (6th Cir. 2011); *cf. Marshall v. Rodgers*, 133 S. Ct. 1446, 1450-51 (2013) (per curiam) (circuit courts may "look to circuit precedent to determine whether it has already held that the particular point in issue is clearly established by Supreme Court precedent").

exploration" of whether defense counsel's failure to object fell below an objective standard of reasonableness.  *Id.* at 447.

In an especially relevant passage of its Opinion, the Sixth Circuit said that while a "prudent" trial court ought to make the *Waller* Inquiry and Required Findings even where a defendant does not object, it is the defendant's *objection* that raises the trial court's legal *duty* to make the inquiry and findings:

> While *defense counsel's objection triggers the trial court's duty to make factual findings under Waller*, the [state trial] court [here] could have averted the issues presented in this appeal by conducting a detailed inquiry before agreeing to the prosecutor's request.  The Supreme Court has made clear that trial closures infringe upon an important structural guarantee and that they should be rare.  Moreover, while First Amendment issues were not raised in this case, the public and the press also have a compelling First Amendment interest in a public trial.  Given the great, though intangible, societal loss that flows from closing courthouse doors, a *prudent* court should carefully scrutinize a party's request before agreeing to close a courtroom.

*Id.* at 447, n. 8 (emphasis added and citations omitted).  Because the Sixth Circuit said that making the *Waller* Inquiry and Required Findings absent an objection is "prudent," *not* mandatory, this Court would be hard pressed to hold that *Waller* clearly establishes that a trial court *must* make the *Waller* Inquiry and Required Findings even where a defendant does not object to a closure of the courtroom.

*Johnson* does not stand alone.  In *Downs v. Lape*, 657 F.3d 97 (2d Cir. 2011), the Second Circuit rejected the argument that *Waller* and *Presley* require a

19

trial court to make the *Waller* Inquiry and Required Findings even where the defendant does not object.  In *Downs*, a petitioner sought habeas relief on the ground that the state trial court excluded his twelve-year-old brother from the trial. The petitioner did not object his brother's exclusion from the courtroom at trial. The petitioner argued, among other things, that the trial court was "independently required" to make the *Waller* Inquiry and Required Findings prior to closing the courtroom, "even without an objection…."  *Id.* at 108.  The Second Circuit disagreed.  The Second Circuit emphasized that in both *Waller* and *Presley*, the trial court closed the courtroom *over the objection of the defendants*. *See id.*  The Second Circuit concluded that because "both *Presley* and *Waller* involved a trial court's response to a registered objection, neither decision requires courts to justify or consider alternatives to closure when … no objection is made." *Id.*[5]  Taken together, *Johnson* and *Downs* strongly suggest that Supreme Court precedent does *not* clearly establish that a trial court must make the *Waller* Inquiry and Required Findings absent an objection.

In sum, for all of the reasons explained above, Supreme Court precedent does not clearly establish that a trial court must make the *Waller* Inquiry and Required Findings even where the defendant does not object.

---

[5] *See also Addai v. Schmalenberger*, 776 F.3d 528, 534 (5th Cir. 2015) ("However, this is not a case in which a party objected to the closure, *which would require the procedure in Waller*….") (Emphasis added.)

20

   E.   **Pouncy's Arguments, While Serious and Thoughtful, Do Not Show That It is Clearly Established Under Federal Law That a Trial Court Must Make the *Waller* Inquiry and Required Findings Absent an Objection**

Pouncy makes a serious and well-supported argument that a trial court must make the *Waller* Inquiry and Required Findings absent an objection. But he fails to establish that this proposition is clearly established by Supreme Court precedent.

Most significantly, Pouncy argues that the Supreme Court's treatment of one of the co-defendants in *Waller* – a man named Clarence Cole ("Cole") – clearly establishes that a trial court must make the *Waller* Inquiry and Findings even where a defendant does not object. Unlike Defendant Waller, Cole did not object to the closure of the courtroom during the suppression hearing; on the contrary, he joined in the prosecutor's motion to close the courtroom. *See Waller*, 467 U.S. at 42, n. 2. Even though Cole did not object to the closure, the Supreme Court nonetheless remanded Cole's case for further proceedings with respect to his public-trial claim. *See id.* Pouncy insists that the Supreme remand of Cole's case despite his non-objection clearly establishes that the rule in *Waller* applies to defendants who do not object to the closure of the courtroom. (*See* ECF #51 at 9, Pg. ID 6148; ECF #54 at 7, Pg. ID 6247.)

This argument has some force. Indeed, it would seem fair to conclude that if the Supreme Court meant to confine its holding in *Waller* only to defendants who object to a closure, then it would not have remanded Cole's case. But this Court

need not solve the puzzle created by the Supreme Court's treatment of Cole. For the purposes of Pouncy's claim, the issue is whether the Supreme Court's treatment of Cole's public-trial claim *clearly establishes* that a trial court must make the *Waller* Inquiry and Required Findings in the absence of the defendant's objection. It does not. As noted above, in the very same opinion in which it remanded Cole's case, the Supreme Court (1) framed the question presented as whether criminal proceedings "may be closed to the public *over the objection of the defendant*" and (2) expressly stated that its holding applied to defendants who object. *Waller,* 467 U.S. at 40-41, 44 (emphasis added). In light of the Supreme Court's focus on the presence of an objection, this Court cannot conclude that the Supreme Court's treatment of Cole clearly establishes that a trial court must make the *Waller* Inquiry and Required Findings in the absence of an objection.

Pouncy next invokes the Supreme Court's statement in *Presley* that "trial courts are required to consider alternatives to closure even when they are not offered by the parties." (ECF #54 at 8, Pg. ID 6248 (quoting *Presley*, 558 U.S. at 214).) This statement, Pouncy contends, shows that trial courts are obligated to make the *Waller* Inquiry and Required Findings even where a defendant does not object. But Pouncy ignores that the defendant in *Presley did object* to the closure of the courtroom. *See Presley*, 558 U.S. at 210. Thus, *Presley* establishes that *where a defendant has objected to a closure* but failed to offer alternatives to the

closure, the trial court is still obligated consider alternatives.  In the words of the Sixth Circuit: "[*Presley*] clarified that *when a party objects* to closure, but does not propose alternatives, the judge must think of some sua sponte."  *Johnson v. Sherry*, 465 Fed. App'x 477, 480 (6th Cir. 2012) (emphasis in original).  Accordingly, *Presley* does not clearly establish that a trial court must make the *Waller* Inquiry and Required Findings absent a defendant's objection.

Pouncy also argues that the "presumption of openness" in criminal proceedings establishes that a defendant need not object to closure in order to trigger the trial court's duty to make the *Waller* Inquiry and Required Findings. (ECF #54 at 3, Pg. ID 6243 (citing *Press-Enterprise*, 464 U.S. at 510).)  But that presumption, without more, does not clearly establish that a trial court must make the *Waller* Inquiry and Required Findings absent an objection by the defendant. Indeed, the Supreme Court noted the presumption of openness in *Waller,* itself, but nonetheless confined its holding – requiring trial courts to make the *Waller* Inquiry and Required Findings – to instances in which the defendant has objected.

Pouncy further contends that his failure to object to the closure has no relevance here because the state court did not invoke a procedural bar based on his failure to object but, instead, adjudicated his public-trial claim on the merits.  In essence, Pouncy argues that the only function of an objection to a courtroom closure is to preserve a public-trial claim for appeal and that the absence of an

objection is immaterial where, as here, a state appellate court treats a public-trial claim as fully preserved. (*See* ECF #51 at 2-3, Pg. ID 6142-43; *see also* Tr. 6/17/2015, ECF #57 at 63, Pg. ID 6363.)  But Pouncy's view of an objection is at odds with the Sixth Circuit's statement in *Johnson* that it is the objection itself that plays the critical role of "tigger[ing]" the trial court's duty to conduct the *Waller* Inquiry and Required Findings. *Johnson*, 586 F.3d at 447, n. 8.  Pouncy's view is likewise in tension with the Supreme Court's emphasis on the defendant's objection in *Waller*: if the objection was merely a device to preserve a public-trial claim for appeal, it seems unlikely that the Supreme Court would have highlighted the concept of an objection in its statement of the issue and its holding.

Pouncy next argues that the right to a public trial is a "structural right" that is "applied by courts in the absence of an objection." (Tr. 6/17/2015, ECF #57 at 68, Pg. ID 6368.)  Structural rights, Pouncy contends, are "self-executing" and not dependent upon an objection. (*Id.* at 69, Pg. ID 6369.)  Pouncy is correct that the denial of the right to a public trial has been deemed a structural error, *see Johnson*, 586 F.3d at 447, and there is some appeal to his argument that an error that necessarily renders a criminal trial fundamentally unfair or unreliable, as structural errors do, *see Neder v. United States*, 527 U.S. 1, 9 (1999), must exist even in the absence of an objection.  But in this context – the strictly limited world of habeas review under AEDPA – Pouncy's structural-error argument is not enough to

overcome the lack of a Supreme Court decision holding that a trial court must make the *Waller* Inquiry and Required Findings absent an objection.

Finally, Pouncy argues that the decision of the United States Court of Appeals for the First Circuit in *United States v. Negron-Sostre*, --- F.3d ---, 2015 WL 3898794 (1st Cir. June 25, 2015), demonstrates that Supreme Court precedent requires a trial court to make the *Waller* Inquiry and Required Findings even absent an objection. (*See* ECF #56.) In *Negron-Soste,* the trial court (through its security staff) closed the courtroom without making the *Waller* Inquiry and Required Findings. The defendants did not object to the closure, but nonetheless, argued on appeal that the trial court violated *Waller*. The First Circuit reviewed the claim for plain error and determined that even though the defendants did not object to the closure, the trial court plainly violated *Waller* when it closed the courtroom without making the *Waller* Inquiry and Required Findings. That the First Circuit found a *Waller* error in the absence of an objection supports Pouncy's argument that a trial court has an independent duty to make the *Waller* Inquiry and Required Findings when the defendant does not object to the closure.

But *Negron-Soste* does not get Pouncy over the "clearly established federal law" hurdle. As described in detail above, the Supreme Court has never held that a trial court must make the *Waller* Inquiry and Required Findings absent an objection, and the First Circuit's apparent rule to that effect "does not constitute

clearly established Federal law, as determined by the Supreme Court." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam) (internal quotation marks omitted).  Moreover, *Negron-Sostre* is at odds with the decisions of the Sixth and Second Circuits in *Johnson* and *Downs*, *supra*, which indicated that a defendant's objection triggers the trial court's obligation to make the *Waller* Inquiry and Required Findings.  The tension between *Negron-Soste*, on one hand, and *Johnson* and *Downs*, on the other, strongly suggests that the Supreme Court has not clearly established that a trial court must make the *Waller* Inquiry and Required Findings where the defendant does not object.  *See Lowe v. Swanson*, 663 F.3d 258, 263 (6th Cir. 2011) (split of authority among circuit courts suggests issue is not clearly established by the Supreme Court).

> **F.    The Michigan Court of Appeals' Rejection of Pouncy's Public-Trial Claim Was Neither Contrary to, Nor an Unreasonable Application of, Clearly Established Federal Law, and Therefore Pouncy is Not Entitled to Habeas Relief on That Claim**

As explained in detail above, Supreme Court precedent does not clearly establish that a trial court must make the *Waller* Inquiry and Required Findings absent an objection by the defendant.  Accordingly, the Michigan Court of Appeals did not contravene clearly established federal law when it rejected Pouncy's claim that the trial court violated his right to a public trial when it closed the courtroom without making the *Waller* Inquiry and Required Findings.  Pouncy is therefore not

entitled to habeas relief on his public-trial claim.  The Court denies his motion for summary judgment on that claim and denies relief on that claim in the Petition.

## **CERTIFICATE OF APPEALABILITY**

In order to obtain a certificate of appealability, a habeas petitioner must make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, an applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

Pouncy's public-trial claim is a quintessential case for a certificate of appealability.  Pouncy has made several strong arguments in support of his claim, and reasonable jurists could debate the Court's conclusion that Pouncy is not entitled to habeas relief on this ground.  Accordingly, the Court will grant Pouncy a certificate of appealability as to his public-trial claim.  Pouncy may file an appeal upon the entry of a final judgment in this case.

## CONCLUSION

For the reasons explained above, **IT IS HEREBY ORDERED** that Pouncy's Motion for Summary Judgment (ECF #33) is **DENIED**. **IT IS FURTHER ORDERED** that the Petition is **DENIED WITH PREJUDICE** as to Pouncy's public-trial claim.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** solely as to Pouncy's public-trial claim.


s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 20, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 20, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113