UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR RASHAD POUNCY,

      Petitioner,

v.

CARMEN D. PALMER,

      Respondent.

_____/

Case No. 13-cv-14695
Hon. Matthew F. Leitman

## OPINION AND ORDER (1) GRANTING PETITIONER'S MOTION FOR RELEASE ON BOND (ECF #80) AND STAYING GRANT OF BOND FOR 21 DAYS, (2) GRANTING RESPONDENT'S MOTION FOR STAY PENDING APPEAL (ECF #85), (3) DENYING PETITIONER'S MOTION TO REDUCE TIME TO COMPLY WITH CONDITIONAL WRIT (ECF #82) AS MOOT, AND (4) DENYING PETITIONER'S MOTION FOR ORAL ARGUMENT (ECF #92)

**INTRODUCTION**

On January 11, 2016,[1] this Court issued a conditional writ of habeas corpus vacating Petitioner Omar Rashad Pouncy's convictions for carjacking, armed robbery, and felon in possession of a firearm (the "Amended Opinion and Order"). (*See* ECF #76.)  In the Amended Opinion and Order, the Court held that Petitioner was entitled to habeas relief because the state appellate court's decision affirming Petitioner's convictions involved an unreasonable application of *Faretta v. California*, 422 U.S. 806 (1985).  In *Faretta*, the Supreme Court held, among other things, that a criminal defendant's waiver of his right to counsel must be voluntary – the product of a truly "free choice." *Id.* at 833-34.  Petitioner's waiver of counsel here was plainly involuntary under *Faretta* because he was forced to choose between admittedly and obviously unprepared defense counsel, on one hand, and representing himself, on the other hand.  As explained in the Amended Opinion and Order, the state appellate court unreasonably applied *Faretta* when it upheld the validity of Petitioner's waiver of counsel under these circumstances.

Respondent has appealed the Amended Opinion and Order.  (*See* ECF #78.) She now asks the Court to stay that ruling and keep Petitioner in custody while she appeals (the "Motion for Stay").  (*See* ECF #85.)  Petitioner has moved the Court

---

[1] The Court initially granted Petitioner relief on January 8, 2016.  (*See* ECF #74.) It then issued an Amended Opinion and Order on January 11, 2016, that corrected two non-substantive errors in the Court's initial ruling.  (*See* ECF #76.)

to release him on bond pending Respondent's appeal (the "Motion for Bond"). (*See* ECF #80.)  He also asks the Court to require the State to retry him in no more than sixty days (the "Expedited Retrial Motion").  (*See* ECF #82.)  For the reasons explained below, the Court will stay the Amended Opinion and Order; release Petitioner on bond (subject to the very strict conditions described below) while Respondent appeals; and deny as moot the Expedited Retrial Motion.  Proceeding in this fashion properly balances the legitimate interests of both parties.  (The Court will also stay the portion of this ruling granting Petitioner bond on appeal in order to permit Respondent to appeal that part of the Court's decision before it takes effect.)

## **GOVERNING LEGAL STANDARD**

Petitioner's Motion for Bond and Respondent's Motion for Stay are each governed by Rule 23(c) of the Federal Rules of Appellate Procedure.  That rule provides that

> [w]hile a decision ordering the release of a prisoner is under review, the prisoner must – unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise – be released on personal recognizance, with or without surety.

Fed. R. App. P. 23(c).

Rule 23(c) "creates a presumption" that a successful habeas petitioner should be "release[d] from custody" pending appeal.  *Hilton v. Braunskill*, 481

U.S. 770, 774 (1987).  But that presumption "may be overcome" upon a sufficient

showing by a habeas respondent.  *Id.*  When a district court considers whether to

release a successful habeas petitioner or to stay an order granting habeas relief

pending appeal, it should consider and balance the following four factors

(hereinafter, the "*Hilton* factors"):

> (1) whether the stay applicant has made a strong showing
> that he is likely to succeed on the merits; (2) whether the
> applicant will be irreparably injured absent a stay; (3)
> whether issuance of the stay will substantially injure the
> other parties interested in the proceeding; and (4) where
> the public interest lies.

*Id*. at 776.

The Supreme Court has offered the following guidance to lower courts

applying the *Hilton* factors:

> The interest of the habeas petitioner in release pending
> appeal, always substantial, will be strongest where the
> factors mentioned in the preceding paragraph are
> weakest. The balance may depend to a large extent upon
> determination of the State's prospects of success in its
> appeal. Where the State establishes that it has a strong
> likelihood of success on appeal, or where, failing that, it
> can nonetheless demonstrate a substantial case on the
> merits, continued custody is permissible if the second and
> fourth factors in the traditional stay analysis militate
> against release.  Where the State's showing on the merits
> falls below this level, the preference for release should
> control.

*Id.* at 777-78 (citations omitted).

Finally, the Supreme Court has also explained that "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.* at 777.

## ANALYSIS

As explained below, the *Hilton* factors weigh in favor of releasing Petitioner on bond (subject to very strict conditions). The Court will therefore grant Petitioner's Motion for Bond. The Court will also grant Respondent's Motion for Stay because Respondent has a substantial interest in avoiding a re-trial of Petitioner prior to a ruling on her appeal.

## I. Respondent Has Not Shown a Strong Likelihood of Success on the Merits

In the Motion for Stay, Respondent argues that the Court committed several serious errors when it granted habeas relief. Respondent insists that these errors will lead the United States Court of Appeals for the Sixth Circuit to reverse the Court's judgment. Respondent's criticisms of the Court's ruling raise fundamental questions about the manner in which a federal court may analyze claims in a habeas petition and about the case law that a federal court may consider when conducting its analysis. Respondent has set forth its claims of error in a careful and thoughtful manner, and they warrant a detailed response.

4

**A.    The Court's Independent Consideration of Whether Petitioner's Waiver of Counsel Complied with *Faretta* Did Not Convert the Court's Deferential Review Under AEDPA Into *De Novo* Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") strictly limits the standard of review applicable to habeas petitions. Under the provision of AEDPA relevant to this case, a federal court may grant habeas relief only if, among other things, it concludes that a state court decision involved an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). This Court applied that test to Petitioner's claim challenging his waiver of counsel.

The Court began by emphasizing that Petitioner was entitled to habeas relief *because the state appellate court unreasonably applied Faretta*, *not* because this Court had independently concluded that a *Faretta* violation had occurred. (*See* Am. Op. and Order at 2, Pg. ID 6849) (noting that state appellate court unreasonably applied *Faretta* and "therefore" Petitioner was entitled to habeas relief.) Likewise, the Court concluded with a several-page explanation detailing how the state appellate court unreasonably applied *Faretta*. (*See id.* at 29-32, Pg. ID 6876-79.) Respondent nonetheless contends that this Court actually "conduct[ed] what appears to be a *de novo* review" of Petitioner's waiver of counsel claim. (Mot. for Stay at 7, Pg. ID 7012.) Respondent is incorrect.

5

Respondent appears to believe that this Court conducted a *de novo* review because the Amended Opinion and Order included the Court's own analysis of whether Petitioner's waiver of counsel satisfied *Faretta*.  In Respondent's words, the Court mistakenly "treated the unreasonableness question as a test of *its own* confidence in the preparedness of [defense] counsel." (Mot. for Stay at 8, Pg. ID 7013) (emphasis in original.)  But the Court did not stray from AEDPA's deferential standard of review when it evaluated whether Petitioner's waiver of counsel satisfied *Faretta*.  On the contrary, the Court conducted its own analysis under *Faretta* as merely one step on its way to answering "the only question that matter[ed] under [AEDPA] – whether [the] state court decision [was] contrary to, or an unreasonable application of [*Faretta*]." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  The Court first found a patent violation of *Faretta* and then proceeded to separately conclude that the state appellate court unreasonably applied *Faretta* when it ruled that no such violation had occurred.  That analytical path was fully compliant with AEDPA.

Pausing to independently consider whether a petitioner is entitled to relief under controlling Supreme Court precedent, as the Court did here, fits comfortably within AEDPA's deferential standard of review.  While AEDPA does not allow a federal court to grant relief based solely on its own conclusion that a clear constitutional error occurred, *see Lockyer*, 538 U.S. at 75, such a conclusion may

nonetheless be an important building-block of a federal court's ultimate determination that a state appellate court unreasonably applied Supreme Court precedent. Indeed, common sense tells us that the more glaring and egregious the constitutional error, the more likely it is that a state appellate court decision affirming a conviction in the face of that error involved an unreasonable application of clearly established federal law. *See, e.g.*, *Jackson v. Edwards*, 404 F.3d 612, 621, 627 (2d Cir. 2005) (granting habeas relief under AEDPA in part because state appellate court affirmed conviction despite a "catastrophic" and "egregious[]" constitutional error). Accordingly, it may be quite "useful" for a federal habeas court "to review first the underlying constitutional issue." *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001) (approving of the practice of reviewing the constitutional issue first before turning to the reasonableness of the state appellate court's resolution of that issue). As the United States Court of Appeals for the Second Circuit has explained, "it is often appropriate in considering a habeas petition under AEDPA for [a] federal court" to first reach its own conclusion as to "what the correct interpretation [and application] of Supreme Court precedent is" and, thereafter, to tackle the question of whether the state appellate court unreasonably "unders[tood] or appl[ied] that precedent." *Kruelski v. Connecticut Superior Ct. for Jud. Dist. of Dansbury*, 316 F.3d 103, 105-06 (2d Cir.

2003).[2]  Proceeding in this fashion does not transform AEDPA's deferential review into *de novo* review.

It was *especially* appropriate for this Court to begin with its own analysis of whether Petitioner's waiver of counsel was voluntary under *Faretta* because the Michigan Court of Appeals conducted *no* analysis of that issue when it affirmed Petitioner's convictions.  Instead, the state appellate court confined its analysis to whether Petitioner's waiver of counsel was knowingly made. *See People v. Pouncy*, 2008 WL 9869818, at *8-9 (Mich. Ct. App. Mar. 25, 2008).  Thus, this

---

[2] The United States Supreme Court's decision in *Lockyer, supra*, resolved a circuit split concerning whether a federal court may or even must conduct an independent review of a petitioner's constitutional claim before analyzing whether the state appellate court unreasonably applied clearly established federal law.  Prior to *Lockyer*, the Ninth Circuit had ruled that federal courts must conduct an independent analysis of the constitutional claim, *see Clark v. Murphy*, 317 F.3d 1038, 1044 n.3 (9th Cir. 2003); the Fourth and Fifth Circuits had ruled that federal courts may not conduct an independent analysis and must proceed directly to whether the state appellate court unreasonably applied clearly established federal law. *See Bell v. Jarvis*, 236 F.3d 149, 160 (4th Cir. 2000) (en banc); *Valdez v. Cockrel*, 274 F.3d 941, 954 n.19 (5th Cir. 2001).  In *Lockyer*, the Supreme Court rejected the Ninth Circuit's rule requiring independent review of a petitioner's constitutional claim and explained that "*AEDPA does not require a federal habeas court to adopt any one methodology* in deciding the only question that matters under 28 U.S.C. § 2254(d)(1) – whether a state court decision is contrary to, or an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 71 (emphasis added).  In so holding, the Supreme Court "sided with the [rule adopted by the] First and Second Circuits" in the *Hurtado* and *Kruelski* cases cited in text above. Stephen I. Vladeck, *AEDPA,* Saucier*, and the Stronger Case for Rights-First Constitutional Adjudication*, 32 Seattle U.L. Rev. 595, 607 (Spring 2009).  "Thus, [under *Lockyer*], [] federal courts are allowed, but not required, to reach whether the state court committed error before deciding whether that error was unreasonable." *Id*.

Court was not in a position to evaluate the state appellate court's reasoning for concluding that Petitioner's waiver of counsel was voluntary under *Faretta*; the Court could only assess the reasonableness of the result reached by that court. And the most sensible way to test the reasonableness of the state appellate court's result was to begin by conducting the appropriate voluntariness analysis under *Faretta*, as the Court did, and to then determine whether any "fairminded jurist" could reach a different conclusion. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). Under these circumstances, the Court did not err by independently analyzing whether Petitioner's waiver of counsel satisfied *Faretta* as a precursor to, and as aid in, answering the ultimate reasonableness question under AEDPA.

### B. The Court Did Not Err in Assessing Defense Counsel's Level of Preparedness

When analyzing whether Petitioner's waiver of counsel satisfied *Faretta*'s voluntariness requirement, the Court assessed whether defense counsel was prepared for trial. (*See* Am. Op. and Order at 24-27, Pg. ID 6871-74.) The Court ultimately concluded that defense counsel was "entirely unprepared for trial" and that this lack of preparation – which was obvious to Petitioner at the time he waived his right to counsel – was the key element in rendering Petitioner's waiver involuntary. (*Id.* at 26, Pg. ID 6873.) Respondent now argues that the "steps taken" by the Court "to reach [the] conclusion" that defense counsel was

9

unprepared "are faulty." (Mot. for Stay at 9, Pg. ID 7014.)  Respondent's criticisms of the Court's "steps" miss the mark.

Respondent first argues that the Court wrongly placed "heavy reliance on [defense] counsel's statement [to the trial court] that he was unprepared for trial." (*Id.* at 10, Pg. ID 7015.)  Respondent insists that the Court erred when it relied on that statement because "[m]ere statements by counsel as to their preparedness/effectiveness should not govern when questions arise concerning preparedness/effectiveness." (*Id.*)  But the Court did not blindly accept defense counsel's subjective opinion that he was unprepared.  On the contrary, the Court focused on defense counsel's objective admissions that he (1) did not have the time or resources to conduct his own investigation into Petitioner's primary defenses (of alibi and mistaken identity); (2) hired an investigator to conduct the investigation into the defenses; and (3) did not have the investigator's final report on the day of trial.  No competent attorney could have been prepared under these circumstances – and defense counsel plainly was not.

Moreover, the Court found in the record substantial other, objective, evidence that defense counsel was not prepared.  (*See* Am. Op. and Order at 25-26, Pg. ID 6872-73) (noting that defense counsel offered virtually no opposition to the prosecution's motions in limine, miscalculated Petitioner's sentencing guidelines range, and never disputed Petitioner's contention that he (defense counsel) had

failed to sufficiently meet and communicate with Petitioner prior to trial.)  And it bears repeating that at the hearing before this Court, Respondent's counsel could not identify any evidence in the record to support a finding that defense counsel was in fact prepared for trial.  (11-12-2015 Hearing Tr., ECF #73 at 24, 28-29, Pg. ID 6720, 6724-25.)

Second, Respondent insists that this Court should not have "placed great emphasis" on the fact that, at the time Petitioner's trial began, defense counsel had not yet received a final written report from the investigator he hired to investigate Petitioner's primary defenses.  (Mot. for Stay at 10-11, Pg. ID 7015-16.) According to Respondent, the failure of the investigator to complete the report prior to trial was not significant because Petitioner "never produced [the final report] or even alleged that it contained anything but what the investigator had already told [defense] counsel – *that he found nothing to assist [Petitioner]*." (*Id.*) (emphasis in original.)

That criticism confuses the issue before the Court.  The Court was not adjudicating a claim of ineffective assistance of counsel which would have required a showing that the lack of a final written report ultimately had an impact on the result at trial.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that to succeed on an ineffective assistance claim, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors,

11

the result of the proceeding would have been different."). Instead, the Court was evaluating the voluntariness of Petitioner's waiver of counsel. And whether the final report ultimately would have helped Petitioner's case has no bearing whatsoever on that issue.

The key point in time for the voluntariness inquiry was the moment at which Petitioner made the decision to waive his right to counsel, and the relevant facts were those known to Petitioner at that time. When Petitioner decided to waive his right to counsel, Petitioner had no way of knowing whether the final report would (1) reveal new and helpful information uncovered during later phases of the investigator's work or (2) merely confirm the investigator's preliminary oral report. Thus, at that moment, the lack of the final report was a fundamental problem for Petitioner and placed Petitioner in an impossible position. Moreover, even if the investigator's final report had ultimately turned out to be unhelpful to Petitioner, that would not somehow have retroactively lessened the coercive circumstances created by the absence of the final report at the time Petitioner waived his right to counsel. Thus, the ultimate contents of the report are entirely irrelevant to whether Petitioner's waiver of counsel – made *before* Petitioner knew what the final report would say – was voluntary under *Faretta*.

Third, Respondent faults the Court for citing defense counsel's response to the prosecution's motions in limine as evidence that defense counsel was

unprepared.  Respondent stresses that the Court has not identified "*any valid* basis by which [defense] counsel could have vigorously opposed the motions beyond what he did." (Mot. for Stay at 11, Pg. ID 7016) (emphasis in original.)  Again, Respondent focuses on the wrong issue.  The Court was not addressing an ineffective assistance claim in which Petitioner would have had to show that defense counsel missed a viable ground for opposing the prosecution's motions. Instead, the question before the Court focused on whether the circumstances experienced by Petitioner when he waived his right to counsel deprived him of a truly free choice.

And the manner in which defense counsel responded to the motions did undermine Petitioner's ability to make a real choice because defense counsel's responses conveyed a clear lack of preparation.  More specifically, defense counsel announced that he would have had a valid basis on which to oppose one of the motions if only he had been aware of, and properly understood, the facts underlying the motion.  (*See* 1-24-2006 Trial Tr., ECF #8-7 at 31-34, Pg. ID 486-87.)  As the Court explained in detail in the Amended Opinion and Order, that confessed error contributed to Petitioner's reasonable conclusion that defense counsel was not prepared and reinforced for Petitioner that he faced the prospect of proceeding to trial with an unprepared attorney or representing himself.  (*See* Am. Op. and Order at 7-9, Pg. ID 6854-56.)  Simply put, even if defense counsel did not

13

actually miss a viable ground for opposing the prosecution's motions in limine, defense counsel's admission that he was not aware of the facts related to the motions did undermine the voluntariness of Petitioner's waiver of counsel.

Fourth, Respondent contends that the Court wrongly cited defense counsel's miscalculation of Petitioner's sentencing guidelines as evidence that he was not prepared for trial.  Respondent notes that calculating the guidelines before trial is a challenging endeavor and that pre-trial estimates are always subject to change based upon the facts elicited at trial.  All true.  But the magnitude of the guidelines miscalculation here was staggering – the high end of the actual range was more than *225 months* greater than the high end of defense counsel's calculations – and cannot be explained by any of the routine challenges that an attorney faces in preparing a pre-trial estimate.  The gross miscalculation surely evidences a lack of preparation.[3]

Finally, Respondent faults the Court for citing defense counsel's opening statement as evidence that he was unprepared.  Respondent makes too much of the

---

[3] The Court acknowledges that the guidelines error did not contribute to the involuntariness of Petitioner's waiver of counsel because the error was unknown to Petitioner when he made the waiver.  However, the seriousness of the error does help to confirm the Court's conclusion – amply supported by other evidence – that defense counsel was not prepared.  Notably, according to the state trial judge, defense counsel was both experienced and competent (*see* 1-24-2006 Trial Tr., ECF #8-7 at 9-11, Pg. ID 464-66), and thus the guidelines error is best understood as having been caused by a lack of preparation, not a lack of competence or lack of experience with the guidelines.

Court's treatment of the opening statement.  While the Court did describe the opening statement, it placed very little weight on the statement.  The Court simply observed that in the overall context of the other compelling evidence of defense counsel's lack of preparation, defense counsel's opening statement could reasonably have contributed to Petitioner's belief that defense counsel was not prepared.

### C.   The Court Did Not Err in Considering and Citing Circuit-Level Precedent

In support of its grant of habeas relief, the Court considered and cited the Sixth Circuit's published decision in *James v. Brigano*, 470 F.3d 636 (6th Cir. 2006).  In *Brigano*, the Sixth Circuit, applying AEDPA, affirmed a grant of habeas relief.  The Sixth Circuit held that the state appellate court unreasonably affirmed the petitioner's conviction even though, in clear violation of *Faretta*, he was forced to choose between self-representation and unprepared counsel.  Respondent insists that the Court's reliance on *Brigano* was "misplaced" because "only decisions of the United States Supreme Court constitute clearly established federal law for purposes of [AEDPA,] 28 U.S.C. § 2254(d)(1)." (Mot. for Stay at 14, Pg. ID 7019.)

Respondent is absolutely correct: a federal court may not find clearly established federal law in circuit level precedent.  But the Court did not do that.  Instead, the Court identified *Faretta* as the applicable clearly established federal

15

law.  And the Court judged the state appellate court's decision against *Faretta*'s requirement that a waiver of counsel be truly voluntary.  *The Court found the state appellate court's decision to be an unreasonable application of Faretta, not an unreasonable application of Brigano or any other circuit-level precedent*.  The Court's decision did not depend upon the existence of *Brigano;* indeed, because the state appellate court's decision is so plainly incompatible with *Faretta*'s voluntariness requirement, the Court would have reached precisely the same conclusion even without *Brigano*.

In any event, the Court did not exceed AEDPA's strict limitation on the source of clearly established federal law by looking to *Brigano* in the course of its analysis.  The decision in *Brigano* affirmed relief *under AEDPA*, and thus it *necessarily* (1) did *not* establish any new federal law and (2) applied *only* clearly established federal law.[4]  The key point here is that circuit precedent, like *Brigano*, granting or affirming relief under AEDPA (hereinafter "AEDPA Relief Circuit Precedent") *already accounts* for AEDPA's severe limitation on the source of

---

[4] The Sixth Circuit in *Brigano* was careful to note that it was adhering to the clearly established waiver of counsel standard from *Faretta*.  The respondent in *Brigano* argued that the court should not follow its prior ruling in *Fowler v. Collins*, 253 F.3d 244 (6th Cir. 2001), because that decision "was based on a reading of *Von Moltke v. Gillies,* 332 U.S. 708 (1948)." *Brigano*, 470 F.3d at 644.  But the Sixth Circuit stressed that it could properly seek guidance from *Fowler,* which was decided under AEDPA*,* because *Fowler* involved "an application of *Faretta.*" *Brigano*, 470 F.3d at 644.

clearly established federal law, and thus a federal court does not bypass AEDPA's limit on the source of that law by considering AEDPA Relief Circuit Precedent.

The Supreme Court's recent decision in *Glebe v. Frost*, __ U.S. __, 135 S. Ct. 429 (2014), confirms that a federal court does not improperly expand the source of clearly established federal law by considering AEDPA Relief Circuit Precedent as part of its analysis. In *Glebe*, the Supreme Court explained that the Ninth Circuit's reliance on its own prior cases was erroneous *because those cases were not decided under AEDPA and thus did not adhere to AEDPA's extremely limited source of clearly established federal law*:

> Attempting to bridge the gap between *Herring [v. New York*, 422 U.S. 853 (1975)] and this case, the Ninth Circuit cited two Circuit precedents—*United States v. Miguel*, 338 F.3d 995 (C.A.9 2003), and *Conde v. Henry,* 198 F.3d 734 (C.A.9 2000)—for the proposition that "preventing a defendant from arguing a legitimate defense theory constitutes structural error." 757 F.3d, at 916. As we have repeatedly emphasized, however, circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1); *see, e.g.*, *Lopez v. Smith,* 574 U.S. ——, ——, 135 S. Ct. 1, 4–5, ——L.Ed.2d —— (2014) (*per curiam* ). The Ninth Circuit acknowledged this rule, but tried to get past it by claiming that circuit precedent could " 'help ... determine what law is "clearly established." ' " 757 F.3d, at 916, n. 1. But neither <u>*Miguel* nor *Conde* arose under AEDPA, so neither purports to reflect the law clearly established by this Court's holdings. The Ninth Circuit **thus** had no justification for relying on those decisions</u>. *See Parker v. Matthews,* 567 U.S. ——, ——, 132 S. Ct. 2148, 2155–2156, 183 L.Ed.2d 32 (2012) (*per curiam* ).

*Glebe*, 135 S. Ct. at 431 (all emphasis added).

Likewise, in the Supreme Court's other recent decisions disapproving of reliance on circuit court precedent, the lower courts had consulted their own prior decisions that were *not* decided in accordance with AEDPA's strict limitation on the source of clearly established federal law. *See, e.g.*, *White v. Woodall*, 134 S. Ct. 1697, 1702 n.2 (2014) (criticizing Sixth Circuit for its reliance on one of its pre-AEDPA decisions); *Lopez v. Smith*, 135 S. Ct. 1, 4-5 (2014) (criticizing Ninth Circuit for its reliance on one of its pre-AEDPA decisions); *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (criticizing Sixth Circuit for relying upon one of its prior decisions that was decided "under pre-AEDPA law"[5]); *Renico v. Lett*, 559 U.S. 766, 778-79 (2010) (criticizing Sixth Circuit for relying on its own prior decision in *Fulton v. Moore*, 520 F.2d 522 (6th Cir. 2008), a decision in which the Sixth Circuit expressly declined to decide whether AEDPA or *de novo* review applied). These decisions do not hold that a federal court erroneously expands the

---

[5]As noted above, the Supreme Court in *Parker* criticized the Sixth Circuit for relying upon one of its pre-AEDPA decisions on habeas review. The Supreme Court also said that the Sixth Circuit erred in citing one of its decisions applying AEDPA, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006). *See Parker*, 132 S. Ct. at 2155. However (and this is critical), the Supreme Court stressed that the rule the Sixth Circuit applied in *Broom* did *not* accurately reflect clearly established federal law and thus did not comply with AEDPA. *Id*. Thus, *Parker* cannot be read as faulting a circuit court for relying on AEDPA precedent, like *Brigano* here, that *properly* reflects clearly established federal law and properly applies AEDPA's restrictive standards.

source of clearly established federal law by considering AEDPA Relief Circuit Precedent.

Numerous Sixth Circuit decisions underscore that this Court's consideration of *Brigano* did not run afoul of AEDPA. This Court considered *Brigano* when analyzing whether Petitioner's waiver of counsel satisfied the clearly established voluntariness standard from *Faretta*. The Sixth Circuit has likewise regularly considered AEDPA Relief Circuit Precedent in order to determine whether a clearly established federal standard has been violated.

The Sixth Circuit's cases analyzing ineffective assistance of counsel claims under AEDPA are particularly instructive. In those cases, the Sixth Circuit has often looked to its prior decisions affirming habeas relief under AEDPA to guide its determination of whether the challenged performance by counsel fell below the *Strickland* standard.[6] *See, e.g.*, *Peoples v. Lafler*, 734 F.3d 503, 513-14 (6th Cir. 2013) (citing *Couch v. Booker*, 632 F.3d 241, 247 (6th Cir. 2011) as support for finding that counsel's failure to track down available witnesses fell below *Strickland* standard); *Couch*, 632 F.3d at 246 (citing *Bigelow v. Haviland*, 576 F.3d 284, 287-88 (6th Cir. 2009) for proposition that it is an especially clear violation of *Strickland* for counsel to fail to track down useful leads provided by defendant);

---

[6] A finding of ineffective assistance is, of course, insufficient, on its own, to support a grant of habeas relief under AEDPA. Relief is warranted only when the state appellate court has unreasonably applied *Strickland*.

19

*Bigelow*, 576 F.3d at 288 (citing *Ramonez v. Berghuis*, 490 F.3d 482, 488-89 (6th Cir. 2007) for proposition that failure to track down witnesses fell below *Strickland* standard); *English v. Romanowksi*, 602 F.3d 714 (6th Cir. 2010) (citing *Ramonez, supra*, for proposition that failure to investigate potentially favorable testimony fell below *Strickland* standard).[7]

This Court also considered *Brigano* when analyzing the ultimate question of whether the state appellate court unreasonably applied *Faretta*.  The Court did not err in considering *Brigano* for that purpose.  *Brigano* applied the same standard of review (AEDPA), applied the same clearly established federal law (*Faretta*), and involved the same core facts (a waiver of counsel by a habeas petitioner who was forced to choose between unprepared counsel and self-representation).  Few cases could be *more* relevant to the proper resolution of Petitioner's habeas claim.  Indeed, it would make no sense to conclude – and AEDPA plainly does not require the conclusion that – a federal court must ignore a prior circuit-level decision holding, under AEDPA, that a similarly-situated habeas petitioner was entitled to

---

[7] Other circuits likewise cite their own prior decisions granting or affirming relief under AEDPA for this same purpose. *See, e.g.*, *Campbell v. Reardon*, 780 F.3d 752, 764 (7th Cir. 2015) (citing several prior Seventh Circuit decisions granting or affirming relief under AEDPA in support of proposition that counsel's failure to present testimony fell below *Strickland* standard); *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013) (citing prior Third Circuit decision affirming relief under AEDPA for proposition that counsel's failure to introduce impeachment evidence fell below *Strickland* standard).

relief.  And case law confirms that a federal court conducting a review under AEDPA may consult similar AEDPA Relief Circuit Precedent as a guide in answering the ultimate question of whether the petitioner is entitled to habeas relief.[8]

Finally, Respondent argues that *Brigano* "is factually distinguishable" because the state trial court in *Brigano* failed to explain the risks of self-representation to the petitioner, and there was no similar failure in Petitioner's case. (Mot. for Stay at 14-15, Pg. ID 7019-20.)  The Court expressly acknowledged that distinction in the Amended Opinion and Order and, more importantly, explained why the distinction does not diminish *Brigano*'s applicability to this case. (*See* Am. Op. and Order at 28 n.5, Pg. ID 6875.)  While the Sixth Circuit in *Brigano* did conclude that the trial court violated *Faretta* by failing to warn the

---

[8] *See, e.g.*, *Yenawine v. Motley*, 402 Fed. App'x 997 (6th Cir. 2010) (reversing denial of habeas relief because Sixth Circuit had previously ruled that a petitioner was entitled to relief under AEDPA where a state appellate court affirmed his conviction in the face of a similar constitutional error), *cert. denied* 132 S. Ct. 91 (2011); *Simpson v. Warren*, 475 Fed. App'x 51, 61-63 (6th Cir. 2012) (affirming grant of habeas relief on prosecutorial misconduct claim under AEDPA and highlighting that in prior AEDPA case the Sixth Circuit previously granted habeas relief based on similar misconduct); *Jackson v. Edwards*, 404 F.3d 612, 627-28 (2d Cir. 2005) (affirming grant of habeas relief under AEDPA and citing prior similar decision affirming relief under AEDPA as support for conclusion that state appellate court decision was unreasonable application of clearly established federal law); *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013) (citing prior similar decision affirming grant of habeas relief under AEDPA for proposition that the state appellate court's rejection of petitioner's similar claim was unreasonable).

petitioner about the dangers of self-representation, the Sixth Circuit independently concluded that the trial court unreasonably violated *Faretta* when it forced the petitioner in that case to choose between self-representation and unprepared counsel. *See Brigano*, 470 F.3d at 644.  The Sixth Circuit said that the petitioner

> was attempting to deal with appointed counsel that had stated he was unprepared to go to trial and a trial court judge intent on going forward with trial regardless of appointed counsel's preparedness.
>
> As such, [petitioner's] waiver was not made knowingly and intelligently, with "eyes wide open"; the choice between unprepared counsel and self-representation is no choice at all. *Fowler v. Collins,* 253 F.3d 244, 249-50 (6th Cir. 2001) (citing *Faretta v. California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L.Ed. 2d 562 (1975)). Contrary to the Warden's assertions, *Fowler* is not based on a reading of *Von Moltke v. Gillies,* 332 U.S. 708, 68 S. Ct. 316, 92 L.Ed. 309 (1948), but instead on an application of *Faretta,* which looks at all of the circumstances surrounding waiver of counsel to ensure that such waiver was knowing and intelligent.

*Id.* at 644.  So, even though *Brigano* is not essential to the Court's ruling, it strongly supports the grant of habeas relief here.

In sum, the Court did not violate AEDPA by considering *Brigano* (and a Third Circuit decision granting relief under AEDPA under similar circumstances)

22

as part of its analysis.[9]   Thus, Respondent's argument that this Court erroneously considered *Brigano* is not likely to prevail on appeal.

### D.    The "Substantial Case on the Merits" Issue

For all of the reasons explained above, the Court has concluded that Respondent has not shown a substantial likelihood that it will succeed on appeal. Respondent contends that she has nonetheless demonstrated a "substantial case on the merits," *see Hilton*, 481 U.S. at 778, and that this Court should therefore deny Petitioner's Motion for Bond.   Respondent's criticisms of the Amended Opinion and Order are carefully made and will surely receive close attention by the Sixth Circuit.   But the Court need not definitively resolve whether Respondent has a "substantial case on the merits" because even if that were true, the Court would still grant bond.   Under *Hilton*, even in the face of a "substantial case on the merits," a court properly grants bond where the second and fourth *Hilton* factors do not "militate against release." *Id.*   As explained below, that is the case here.

---

[9] The Court also quoted from a pre-AEDPA decision from the United States Court of Appeals for the Seventh Circuit. (*See* Am. Op. and Order at  28-29 n.6, citing and quoting *Wilks v. Israel*, 627 F.2d 32, 35 (7th Cir. 1980), *cert. denied* 449 U.S. 1086 (1981).)  But the Court cited the *Wilks* decision solely because it contains a more comprehensive discussion of the same issues addressed in *Brigano* and in the Third Circuit's decision granting relief under AEDPA.   The Seventh Circuit's decision in *Wilks* simply provided helpful background in understanding some of the concepts involved in this case.   The Court did not glean from the Seventh Circuit's decision either clearly established federal law or the rule of decision it applied to Petitioner's claim.

The Court does deem it appropriate to pause here to make one observation concerning Petitioner's assessment of Respondent's position on appeal. Petitioner contends that the Amended Opinion and Order "is impenetrable" and "the epitome of unassailability"; that Respondent "has a zero percent chance of prevailing in the Sixth Circuit"; and that, any appeal from the Amended Opinion and Order would thus be "in bad faith" and "frivolous." (Mot. for Bond at 4-5, 9-10, 16; Pg. ID 6888-89, 6893-94, 6900.) This hyperbolic praise for the Amended Opinion and Order is vastly overstated, and the argument that an appeal by Respondent would be in bad faith or frivolous is, itself, frivolous.

## II.   The Irreparable Injury to the State Factor Does Not Favor Continued Detention

Respondent argues that the State has a strong interest in keeping Petitioner in custody while she appeals because he is a flight risk and a danger to the community. There is support for this argument. As Respondent fairly notes, Petitioner has a criminal record, including felony offenses. (*See* Respondent's Answer, ECF #89 at 8-9, Pg. ID 7370-71.) Likewise, Petitioner's disciplinary record while incarcerated raises cause for concern. He has been found guilty of several major misconduct violations, including possession of weapons, possession of a cellular telephone, and threatening a corrections officer. (*See id.* at 12-13, Pg. ID 7375.) Finally, Petitioner has some incentive to flee because if the grant of

habeas relief is reversed, he will be forced to serve the substantial period remaining on his sentence – at least thirty-eight more years. (*See id.* at 7-8, Pg. ID 7369-70.)[10]

However, Petitioner offers several reasonable counterarguments as to why he his level of dangerousness and risk of flight is not as high as Respondent suggests. First, Petitioner notes that the three felony convictions currently on his record were not for crimes of violence.[11] Second, he points out that he has already served an amount of time in custody that the State once deemed nearly sufficient to protect the public from him. More specifically, Petitioner says that at the time of trial, the State offered to permit him to plead guilty under a sentence agreement that called for a sentencing guidelines range of 135-225 months (11.5-18.75 years) (1-24-06 Trial Tr., ECF #8-7 at 21, Pg. ID 476), and Petitioner points out that he has already served more than ten years in custody. Petitioner stresses that the State

---

[10] Respondent also argues that the Court should decline to release Petitioner because certain witnesses who testified against Petitioner at his trial have recently been contacted as part of an allegedly improper effort to influence their testimony at a possible re-trial. However, Respondent offers no evidence linking Petitioner to this alleged misconduct.

[11] Petitioner's criminal record appears on pages 8-9 of Respondent's Answer to the Motion for Bond. (*See* Respondent's Answer, ECF #89 at 8-9, Pg. ID 7370-71.) The record includes convictions for possession with intent to deliver a small quantity of drugs, one conviction for accessory after the fact, and one conviction for attempting to carry a concealed weapon. (*Id.*) Respondent's Answer also indicates that Petitioner has been convicted of carjacking and armed robbery offenses, but those convictions have been vacated by this Court and by the Michigan Court of Appeals. Thus, there are no currently-valid convictions for violent offenses on Petitioner's criminal record.

knew about his criminal history and the circumstances of the charged offenses at the time it concluded that 11.5 years in custody would be sufficient to protect the public, and he insists that there is no substantial basis for the State to argue now that the public would face a great risk from him if he were freed after serving more than ten years.   Petitioner also observes that his co-defendants have already completed their sentences and re-joined society, and he argues that he should not be deemed to present a substantially greater danger to the public than his currently-free co-defendants.

Third, Petitioner highlights that he has established a support system that, upon his release, will keep him on the right path and mitigate any potential risk to the public.   Most importantly, Petitioner has been offered a paid position as a paralegal with the law firm owned and operated by his current counsel.   In addition, Petitioner notes that his friends and family stand ready to provide him emotional and financial support.   Petitioner reasonably argues that he is much less likely to offend and/or flee with regular employment, a steady source of income, and substantial support from his friends and family.

Fourth, Petitioner notes that while his prison disciplinary record is not pristine, he has not committed any physical assaults against other inmates or staff. And Petitioner notes that he has spent much of his time in custody intensively studying the law and developing useful legal skills and knowledge – both of which

were apparent to the Court during the two motion hearings in this case. Petitioner also points out that he has frequently helped other inmates with their own legal filings.[12]

In sum, while Respondent has raised valid concerns about Petitioner's behavior and risk of flight, Petitioner has offered some reasonable counterarguments in support of his assertion that he will neither threaten the public nor flee. After considering all of these arguments, the Court concludes that the Respondent's legitimate concerns can be adequately addressed by the imposition of a very strict set of release conditions (described in detail below). Thus, the Court concludes that this factor does not weigh in favor of continuing Petitioner's detention.

### III.   The Substantial Injury to Petitioner Factor Weighs Heavily in Favor of Release

A successful habeas petitioner suffers "a continuing injury while incarcerated." *Newman v. Metrish*, 300 Fed. App'x 342, 344 (6th Cir. 2008).[13] Thus, the interest of a prevailing habeas petitioner in release pending appeal is

---

[12] The Court has no doubt that Petitioner actually has the capability to provide quality work as a paralegal. The Court has twice allowed Petitioner to present argument on his own behalf at motion hearings, and the Court has been impressed with his mastery of complex issues of habeas procedure and constitutional law.

[13] District courts in this Circuit and elsewhere have deemed the injury to be "irreparable." *See, e.g.*, *Ward v. Wolfenbarger*, 340 F. Supp. 2d 773, 778 (E.D. Mich. 2004); *Burdine v. Johnson*, 87 F. Supp. 2d 711, 717 (S.D. Tex. 2000).

"always substantial." *Hilton*, 481 U.S. at 777.  Having succeeded on his habeas

claim, Petitioner has a strong interest in his release from custody.

Respondent counters with the following quote from *Hilton*:

> But we also think that a successful habeas petitioner is in
> a considerably less favorable position than a pretrial
> arrestee, such as the respondent in *Salerno,* to challenge
> his continued detention pending appeal.  Unlike a pretrial
> arrestee, a state habeas petitioner has been adjudged
> guilty beyond a reasonable doubt by a judge or jury, and
> this adjudication of guilt has been upheld by the appellate
> courts of the State.

*Id.* at 779.  But the context of this observation is important.  The Supreme Court

made this statement in response to a successful petitioner's argument that a district

court should not be permitted to consider evidence of his dangerousness when

deciding whether to grant bond.  The Supreme Court held that a district court may

consider such dangerousness.  That conclusion does not in any way undermine the

Supreme Court's earlier determination that a successful habeas petitioner "always"

has a substantial interest in securing his release pending appeal.

This factor weighs heavily in favor of releasing Petitioner pending

Respondent's appeal.

## IV.   The Public Interest Factor Does Not Weigh in Favor of Continued Detention

As Petitioner properly notes, the public has an interest "in the state not

continuing to incarcerate individuals [like Petitioner] who have not been accorded

their constitutional right to a fair trial." *House v. Bell*, 2008 WL 972709, at *2 (E.D. Tenn., April 7, 2008), vacated in part on other grounds, 2008 WL 2235235 (E.D. Tenn., May 29, 2008).  And while the public also plainly has a right to be safe from those who pose an immediate and serious threat to public safety, the Court concludes that the release of Petitioner, subject to the very strict conditions outlined below, will not pose such a threat to the public.  The public interest factor thus does not weigh in favor of continued detention.[14]

## V.    The Final Balance and the Strict Conditions of Release

For all of the reasons explained above, the Court concludes that Respondent does not have a substantial likelihood of success on appeal and that the second and fourth *Hilton* factors – the interests of Respondent and the public – do not "militate against release." *Hilton*, 481 U.S. at 777-78.  Accordingly, the Court concludes that the presumption of release has not been rebutted and that Petitioner should be released from custody pending appeal.

But the Court also believes that imposing strict conditions of release is appropriate to strike the proper balance between the interests of Petitioner, Respondent, and the public.  Accordingly, Petitioner must comply with all of the

---

[14] The Court notes that Respondent also has an interest in continuing Petitioner's custody and rehabilitation pending a final determination of its appeal, and that this interest is strengthened given the substantial time that remains on Petitioner's sentence.  Nonetheless, for all of the reasons stated above, the Court concludes that Petitioner's interest in release still outweighs Respondent's interest in continued detention.

standard conditions of pre-trial release adopted by this Court for federal criminal cases pending here and with the following special conditions:

1.   Within seven days of his release, Petitioner shall commence paid employment with his current counsel of record in this action and shall remain so employed throughout the period that he remains free on bond. Petitioner shall provide written proof of such employment to the Court within seven days after commencing employment.

2.   Petitioner shall designate a single residence and shall remain present in that residence at *all* times other than when Petitioner is at his place of employment, at a meeting with his attorney(s), or at medical and/or mental health appointments.

3.   Petitioner shall submit to 24-hour GPS monitoring and shall pay for said monitoring at his own expense.

4.   Petitioner shall not have any contact, directly or indirectly, with any person who testified against Petitioner at his criminal trial or any person who may reasonably be expected to testify against Petitioner at a re-trial. Petitioner shall not in any way encourage or condone any other person to have such contact. Nothing in this order shall prohibit Petitioner's attorney (or an investigator employed by Petitioner's attorney) from attempting to contact potential witnesses.

5.   Petitioner shall refrain from consuming alcoholic beverages and from using any controlled substances (except if prescribed by, and as directed by, a licensed physician).

6.    The Pre-Trial Services unit of the Court shall supervise Petitioner while he is free on bond and shall monitor his compliance with all of the conditions imposed by the Court.

## VI.   A Stay of This Court's Order to Re-Try Petitioner is Appropriate

The State has a strong interest in a stay of this Court's order requiring the State to re-try Petitioner within ninety days of its grant of habeas relief. A re-trial will require the State to expend substantial resources. In contrast, given the Court's decision to release Petitioner during the appeals process, Petitioner has no strong countervailing interest in a prompt re-trial. Accordingly, the Court's prior Order requiring the State to re-try Petitioner is stayed until further written order of this Court.

## VII.   A Stay of This Order Granting Bond is Appropriate

Respondent has requested that this Court stay any order granting bond in order to allow an appeal of such order to the Sixth Circuit. That is a reasonable request. Accordingly, this Court stays this Order granting bond to Petitioner for twenty-one days. If the Court's Order granting bond remains undisturbed at the conclusion of the twenty-one day period, Petitioner may request that the Court issue the actual bond papers requiring his release.

31

## <u>CONCLUSION</u>

For the reasons stated above, **IT IS HEREBY ORDERED** that:

- Petitioner's Motion for Bond (ECF #80) is **GRANTED** subject to the conditions detailed above (all of which Petitioner shall strictly and literally comply with while free on bond).  However, this grant of bond is **STAYED** for twenty-one days from the entry of this Order.  If the Court's Order granting bond remains undisturbed at the conclusion of the twenty-one day period, Petitioner may request that the Court issue the actual bond papers requiring his release.

- Respondent's Motion for Stay (ECF #85) is **GRANTED,** and the State is under no obligation to re-try Petitioner during the pendency of Respondent's appeal.

- Petitioner's Expedited Retrial Motion (ECF #82) is **DENIED** in light of this Court's decision to stay pending appeal the portion of its Amended Opinion and Order requiring the State to re-try Petitioner.

- Petitioner's Motion for Oral Argument (ECF #92) is **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 4, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 4, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113
