UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR RASHAD POUNCY,

        Petitioner,                       Case No. 13-cv-14695
                                            Hon. Matthew F. Leitman

v.

MATT MACAULEY,[1]

        Respondent.

_____/

## ORDER DENYING MOTION FOR RECONSIDERATION (ECF No. 342)

In this habeas action, Petitioner Omar Rashad Pouncy challenges his state court convictions for armed robbery and carjacking on several grounds. (*See* Petition, ECF No. 1.)  In one of Pouncy's habeas claims, he argues that the state trial court violated his Sixth Amendment right to a public trial when it closed the courtroom during *voir dire*. (*See id.*, PageID.4; Pouncy Mem. of Law, ECF No. 9, PageID.4904, 4992-4996.)  The Court previously issued an Opinion and Order in which it denied relief on that claim. (*See* Opinion and Order, ECF No. 58.)  Pouncy

---

[1] The proper respondent in a habeas action is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where he is incarcerated. *See* Rule 2(a), 28 U.S.C. § 2254; *Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006).  Pouncy is presently incarcerated at the Bellamy Creek Correctional Facility where Matt Macauley is Warden.  *See* https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1388-5481--,00.html.

now moves the Court to reconsider its denial of relief on his public trial claim. (*See* Mot. for Reconsid., ECF No. 342.)   For the reasons explained below, Pouncy's motion is **DENIED**.

**I**

**A**

On February 1, 2006, a state court jury convicted Pouncy of four counts of carjacking, four counts of armed robbery, two counts of carrying a firearm during the commission of a felony, and one count of being a felon in possession of a firearm. He then appealed his convictions to the Michigan Court of Appeals.  In that appeal, he argued, among other things, that the state trial court violated his Sixth Amendment right to a public trial by closing the courtroom during *voir dire* without applying the pre-closure analysis required by *Waller v. Georgia*, 467 U.S. 39 (1984). (Pouncy Supp. Br., ECF No. 8-44, PageID.3560-3562.)   In *Waller*, the Supreme Court held that where a criminal defendant objects to the closure of the courtroom, the trial court must apply the following four-factor test before proceeding with the closure: "[(1)] the party seeking to close a public hearing must advance an overriding interest that is likely to be prejudiced, [(2)] the closure must be no broader than necessary to protect that interest, [(3)] the trial court must consider reasonable alternatives to closing the proceeding, and [(4)] it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48. *See also United States v. Simmons*, 797

2

F.3d 409, 413 (6th Cir. 2015) (identifying the four-factor "*Waller* test"). Pouncy

sought reversal of conviction the ground that the state trial court did not apply the

*Waller* test before closing the courtroom during *voir dire*. (Pouncy Supp. Br., ECF

No. 8-44, PageID.3560-3562.)

The Michigan Court of Appeals addressed Pouncy's public trial claim on the

merits and denied relief. *See People v. Pouncy*, 2008 WL 9869818, at *27 (Mich.

Ct. App. Mar. 25, 2008). Pouncy thereafter sought leave to appeal in the Michigan

Supreme Court. That court declined to hear his appeal. *See People v. Pouncy*, 753

N.W.2d 188 (Mich. July 29, 2008) (Table).

Pouncy next filed a motion for relief from judgment in the state trial court.

(*See* Supp. to St. Ct. Mot. for Relief from J., ECF No. 8-26.) In that motion, he again

claimed that the trial court had violated his right to a public trial by closing the

courtroom during *voir dire* without applying the *Waller* test. (*See id*.) In support of

that claim, he cited to the decision of the United States Supreme Court in *Presley v.*

*Georgia*, 558 U.S. 209 (2010), which had been issued after the Michigan Court of

Appeals decided his direct appeal. (*See id*.) In *Presley*, the Supreme Court held that

a trial court violated the Sixth Amendment when it closed a courtroom during *voir*

*dire* over the defendant's objection and without applying the *Waller* test. *Presley*,

558 U.S. at 214-15.

The state trial court held that "pursuant to [Michigan Court Rule] 6.508(D)(2)," it was "unable to provide relief to Pouncy" on his renewed public trial claim. (St. Ct. Op. and Order, ECF No. 8-37, PageID.3164.)  The Michigan Court Rule cited by the trial court provides in relevant part that a "court may not grant relief to the defendant if the motion [for relief from judgment] alleges grounds for relief which were decided against the defendant in a prior appeal … unless the defendant establishes that a retroactive change in the law has undermined the prior decision." Mich. Ct. Rule 6.508(D)(2).  The court explained that the rule precluded it from granting relief on the renewed public trial claim because (1) it was the "same" claim that the Michigan Court of Appeals had rejected on direct appeal and (2) the *Presley* decision was not a "change in the law." (*Id.*)

## B

Pouncy filed his habeas petition in this Court in 2013. (*See* Pet., ECF No. 1.) He included his public trial claim in his petition. (*See id.*, PageID.4.)  In that claim, he again argued that the state trial court erred when it closed the courtroom during *voir dire* and other pretrial proceedings without applying the *Waller* test. (*See* Pouncy Mem. of Law, ECF No. 9-1, PageID.4904, 4992-4996.)  He also cited the *Presley* decision in support of his claim. (*See id.*)

On March 6, 2015, Pouncy filed a motion for summary judgment on his public trial claim. (*See* Mot. for Summ. J., ECF No. 33.)  The Court held a hearing on the motion on June 17, 2015.

During the hearing, the Court asked Pouncy's attorney whether the Court was required to review the public trial claim under the deferential standard set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").   Under that standard, a federal court may grant habeas relief on a claim that a state court decided on the merits only where the state court's decision was "contrary to" and/or involved an "unreasonable application" of "clearly established federal law." 28 U.S.C. § 2254(d)(1).

In response to the Court's questions, Pouncy's attorney confirmed that the Michigan Court of Appeals had decided the public trial claim on the merits and that the claim therefore *was* subject to AEDPA deference. (*See* 6/17/2015 Hr'g Tr., ECF No. 57, PageID.6307.[2])  Moreover, in Pouncy's briefing on the public trial claim, he

---

[2] The Court had the following exchange with counsel:

> THE COURT: What the Michigan Court of Appeals said on this issue is Pouncy raised in his supplemental or pro se brief, they reviewed it. It lacks merit. So the first thing is, you would agree with me that the Michigan Court of Appeals addressed the merits of Mr. Pouncy's public trial claim?
>
> MR. MOFFITT: Absolutely, Your Honor.

indicated that the claim was subject to review under AEDPA. (*See, e.g.*, Mot. for Summ. J., ECF No. 33, PageID.5947-5948, in which Pouncy applied AEDPA's standards to his public trial claim.)

On July 20, 2015, the Court issued an Opinion and Order denying Pouncy's motion for summary judgment and denying relief on his public trial claim. (*See* Op. and Order, ECF No. 58.)  In that ruling, the Court reviewed the public trial claim under AEDPA's deferential standard, as Pouncy confirmed it should do. (*See id.*, PageID.6397-6414.)

Applying AEDPA, the Court held that Pouncy was not entitled to relief on his claim that the trial court erred when it closed the courtroom without applying the *Waller* test.  The Court explained that Pouncy had failed to demonstrate that the Michigan Court of Appeals' decision rejecting his public trial claim was contrary to, or an unreasonable application of, clearly established federal law. (*See id.* at PageID.6403-6414.)   More specifically, the Court noted that Pouncy had not objected to the closure of the courtroom, and the Court explained that *Waller* and *Presley* did not hold that a trial court must apply the *Waller* test before closing the

---

THE COURT: So you'd agree with me that their denial of that claim receives deference.

MR. MOFFITT: Yes, Your Honor.

(6/17/2015 Hr'g Tr., ECF No. 57, PageID.6307.)

6

courtroom where, as here, the defendant failed to object to the closure. (*See id*.)  The Court concluded that because the holdings of *Waller* and *Presley* did not directly apply to the circumstances under which the state trial court closed the courtroom – *i.e.*, in the absence of an objection – the state appellate court's decision denying relief on Pouncy's public trial claim was neither contrary to, nor an unreasonable application of *Waller* or *Prelsey*. (*See id*.)

## C

Pouncy now seeks reconsideration of the Court's ruling denying relief on his public trial claim. (*See* Mot. for Reconsid., ECF No. 342.)  Despite his prior confirmation that the claim was subject to AEDPA deference, Pouncy now contends that the Court erred when it failed to review the claim *de novo*. (*See id*. at PageID.13166-13167.)  Pouncy says that a Sixth Circuit decision issued after he filed his motion for summary judgment on his public trial claim – and of which he was not aware at the time of the hearing before the Court – revealed to him for the first time that the Court should have reviewed the claim *de novo*. (*See id*., citing *Barton v. Warden*, 786 F.3d 450 (6th Cir. 2015)).[3]

---

[3] In a prior order, the Court said that because Pouncy previously agreed that his public trial claim was subject to AEDPA deference, there was "no good faith basis" for Pouncy to argue that the Court erred in applying that standard. (*See* Order, ECF No. 340, PageID.13150.)  On further consideration, the Court concludes that there was a good faith basis for the argument that the claim should be reviewed *de novo*; that argument is not frivolous.  However, the Court continues to believe that Pouncy did not present the argument in the most appropriate manner.  He should have

Respondent filed a response opposing Pouncy's motion for reconsideration on November 6, 2020. (*See* Resp., ECF No. 358.)   Pouncy has filed a reply brief in further support of the motion. (*See* Reply, ECF No. 373.)

## II

Pouncy primarily argues that this Court was bound to review his public trial claim *de novo* under the Sixth Circuit's decision in *Barton, supra*, but his reliance on that decision is misplaced.  The petitioner in *Barton* was convicted of involuntary manslaughter and aggravated burglary, and he thereafter filed a direct appeal of his convictions. *Barton*, 786 F.3d at 456.  In that direct appeal, he did not argue that the prosecution had failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See id.* at 458.  In a later post-appeal motion for post-conviction relief in the state trial court, the petitioner presented a *Brady* claim for the first time. *See id.*   The trial court held that the petitioner was "barred" from raising the claim because he had not raised it on direct appeal. *Id.* (quoting state trial court decision).   After denying relief on the procedural ground, the trial court expressed "strong reservations" about the merits of the claim. *Id*. (quoting trial court decision).  The petitioner then appealed to the Ohio Court of Appeals, and that court

---

acknowledged his prior express agreement that the public trial claim was subject to AEDPA deference and the Court's reliance on that agreement, and he then should have explained that he had come to the opposite conclusion after reviewing additional case law.

held that he was "barred" from raising his *Brady* claim in his post-appeal motion for post-conviction relief because he had not raised the claim on direct appeal. *Id.* (quoting appellate court decision). The appellate court did not say anything about the merits of the petitioner's claim.

The petitioner later filed a federal petition for a writ of habeas corpus in which he presented his *Brady* claim for review. When the case reached the Sixth Circuit, that court had to decide whether the claim was subject to review under AEDPA or whether the claim could be reviewed *de novo*. The Sixth Circuit held that the claim was subject to *de novo* review. The basis of that holding was straightforward. The Sixth Circuit explained that a claim is subject to review under AEDPA if and only if it was decided on the merits by the state courts, and the Sixth Circuit concluded that the state courts had not decided the petitioner's *Brady* claim on the merits. Instead, those courts had invoked a procedural bar and had declined to review the merits of the petitioner's *Brady* claim. The Sixth Circuit reasoned as follows:

> Here, the Ohio Court of Common Pleas made clear that, "[b]y not raising any *Brady* issues on direct appeal, *the defendant is barred from raising this issue here,*" a classic example of applying a procedural bar to the matter at hand. R. 11–2 (Ohio Ct. of Common Pleas Decision and Entry Den. Def.'s Pet. For Post–Conviction Relief 3) (Page ID # 614) (emphasis added). The Ohio Court of Appeals affirmed, reiterating that, because "appellant did not raise any *Brady* issues on direct appeal ... appellant is barred from raising any *Brady* issues in this postconviction relief proceeding." R. 11–2 (Ohio Ct. of Appeals Op. Affirming Decision to Den. Def.'s Pet. For Post–Conviction Relief

6) (Page ID # 741). Again, instead of issuing a merits decision, both the Ohio Court of Common Pleas and the Ohio Court of Appeals made clear that they were applying a procedural bar and thus not considering the merits of Barton's *Brady* claim. The Supreme Court has held, in decisions issued post-*Richter,* that such rulings are not subject to on-the-merits AEDPA deference. *Johnson v. Williams,* ——U.S. ——, 133 S.Ct. 1088, 1097, 185 L.Ed.2d 105 (2013) ("The language of 28 U.S.C. § 2254(d) makes it clear that this provision applies only when a federal claim was adjudicated *on the merits* in State court.") (emphasis in original) (internal quotation marks omitted).

*Id.* at 460-61.

The Sixth Circuit then said, in dicta, that petitioner's *Brady* claim would still be subject to *de novo* review even if the state trial court's decision could have been regarded as "both a procedural ruling and a ruling on the merits." *Id*. at 462. The Sixth Circuit explained that the later reasoned decision of the Ohio Court of Appeals – in which that court applied a procedural bar and said nothing about the merits of the *Brady* claim – "stripped" the trial court's merits adjudication of its "effect" under AEDPA. *Id*. at 464.

For at least two reasons, *Barton* does not compel this Court to reconsider its denial of Pouncy's public trial claim and to review that claim under a *de novo* standard of review. First, the actual holding of *Barton* says nothing about whether *de novo* review applies to Pouncy's public trial claim. As set forth in detail above, the actual holding of *Barton* was that the petitioner's *Brady* claim should have been

reviewed *de novo* because no state court had ever adjudicated the claim on the merits. Here, as Pouncy acknowledged at the hearing before the Court, the Michigan Court of Appeals did adjudicate Pouncy's public trial claim on the merits. The actual holding in *Barton* does not speak to the standard of review to be applied where at least one state court has adjudicated a claim on the merits. Thus, *Barton* does not compel the Court to review Pouncy's public trial claim *de novo*.

Second, while the dicta in *Barton* did address whether AEDPA deference applies where one state court has adjudicated a claim on the merits and another court has later denied the claim for procedural reasons alone, that dicta does not help Pouncy here. There is a critical distinction between the procedural bar invoked in *Barton* and the state trial court's procedural ruling in this case on which Pouncy rests his claim for *de novo* review. In *Barton*, the procedural bar was invoked by a higher court after a lower court had expressed a view of the merits. Here, in sharp contrast, a lower court (the state trial court) held that it could not review Pouncy's public trial claim because a higher court (the Michigan Court of Appeals) had previously decided the claim against Pouncy on the merits. (St. Ct. Op. and Order, ECF No. 8-37, PageID.3164.) *Barton* cannot reasonably be read to suggest that a ruling by a lower state court that it lacks the authority to address a claim that a higher court has previously rejected on the merits somehow strips the higher court's earlier merits ruling of effect under AEDPA.

Indeed, Pouncy's contrary reading of *Barton* – as holding that AEDPA deference does not apply where a lower state court holds that it may not review a claim previously rejected on the merits by a higher state court – would effectively eviscerate AEDPA.  Under Pouncy's interpretation of *Barton*, a defendant who has been convicted in a Michigan state court and then lost his direct appeal could evade AEDPA's deferential standard of review simply by filing a post-appeal motion in the trial court, re-raising all of the claims he presented on direct appeal, and having the trial court rule – as it would be required to do, *see* Mich. Ct. Rule 6.508(D)(2) – that it lacked the authority to review the claims.  The Sixth Circuit could not possibly have intended to chart such a course around AEDPA.   Nor has Pouncy cited a single decision in which any other federal court has ever held that *de novo* review applies where a state appellate court has rejected a claim on the merits and a state trial court has later held that it lacks the authority to review the rejected claim.  Simply put, Pouncy has failed to persuade the Court that a petitioner may secure *de novo* review of issues he has lost on direct appeal by having a state trial court hold that it may not review the claims rejected by the appellate court.[4]

---

[4] Pouncy argues that the Sixth Circuit's decision in *Reign v. Gidley*, 929 F.3d 777 (6th Cir. 2019), provides strong support for his argument that the state trial court's ruling stripped the Michigan Court of Appeals' decision of AEDPA deference. (*See* Reply, ECF No. 373, PageID.13846-13847.)  It does not.  In that decision, the Sixth Circuit did not address any question concerning the stripping of AEDPA deference. Moreover, that case did not involve a trial court's refusal to review a claim that had previously been decided on the merits by a higher court.

**III**

Pouncy argues in the alternative that he should have prevailed even under AEDPA's deferential standard of review.  The Court disagrees.

**A**

Pouncy first argues that he should have won under AEDPA because the Michigan Court of Appeals' decision denying relief on his public trial claim cannot be squared with the relief that the Supreme Court granted to one of the defendants/appellants in *Waller* named Clarence Cole. (*See* Reply, ECF No. 373, PageID.13838-13839.)   Cole was tried in the same trial was Waller.  Unlike Waller and the other defendants, Cole did not object to the closure of the courtroom.  *See Waller*, 467 U.S. at 42 n. 2.  Even though Cole failed to object, the Supreme Court reversed his conviction and remanded for further proceedings in state court. *Id.*  The Supreme Court's entire discussion of Cole's public trial claim was contained in a single footnote that said the following:

> Counsel for petitioners Waller, Thompson, Eula Burke, and W.B. Burke lodged an objection to closing the hearing. Counsel for petitioner Cole concurred in the prosecution's motion to close the suppression hearing. App. 14a, 15a. Respondent argues that Cole is precluded from challenging the closure. The Georgia Supreme Court appears to have considered the objections of all the petitioners on their merits. 251 Ga. 124, 126–127, 303 S.E.2d 437, 441 (1983). Cole's claims in this Court are identical to those of the others. Since the cases must be remanded, we remand Cole's case as well. The state courts

13

> may determine on remand whether Cole is procedurally
> barred from seeking relief as a matter of state law.

*Id.*

Pouncy insists that there is not a single material difference between himself and Cole, and he argues that the Supreme Court's grant of relief to Cole compels this Court to grant him relief on his public trial claim. (*See* Reply, ECF No. 373, PageID.13838-13839.)   Stated another way, Pouncy contends that (1) the grant of relief to Cole clearly establishes that a trial court must apply the *Waller* test even where a defendant does not object to the closure of the courtroom and (2) the Michigan Court of Appeals' decision denying his public trial claim is "contrary to" the decision in Cole's appeal.

The Court carefully considered and rejected this argument in its earlier Opinion and Order. (*See* Opinion and Order, ECF No. 58, PageID.6408-09.)   The Court continues to believe that the Supreme Court's treatment of Cole does not clearly establish that a trial court must apply the *Waller* test even absent an objection by the defendant.  As the Court highlighted in its earlier ruling, the Supreme Court's Opinion in *Waller* – which, again, disposed of Cole's claim in a short footnote – carefully limited the scope of its holding to closures made over the defendant's objection. *See Waller*, 467 U.S. at 47 ("In sum, we hold that under the Sixth Amendment any closure of a suppression hearing *over the objections of the accused* must meet the tests set out in *Press-Enterprise* and its predecessors [i.e., the *Waller*

test].") (Emphasis added.)   And the Supreme Court carefully framed the issue for decision with respect the appeals of *both* Waller *and* Cole as whether a closure *over the defendant's objection* violates the Sixth Amendment. *See id.* at 40-41 ("These *cases* require us to decide the extent to which a hearing on a motion to suppress evidence may be closed to the public *over the objection of the defendant* consistently with the Sixth and Fourteenth Amendment right to a public trial.") (Emphasis added.)

It would not be reasonable to read the single footnote resolving Cole's claim as clearly establishing that even absent an objection, a trial court must apply the *Waller* test before closing a courtroom.   Indeed, reading the footnote in that way would render meaningless the Supreme Court's efforts in the text of its Opinion to limit the scope of its inquiry and its holding to closures made over the objection of the defendant.   Moreover, Pouncy has not cited a single decision from any court reading the footnote concerning Cole's claim as he does – as clearly establishing that a trial court must apply the *Waller* test before closing a courtroom even where a defendant does not object to the closure.

In the end, the Supreme Court's handling of Cole's public trial claim is admittedly something of a puzzle.   And Pouncy's reliance on the fact that the Supreme Court granted relief to Cole is understandable.   But for all of the reasons explained above and in the Court's earlier ruling denying summary judgment on

Pouncy's public trial claim, the Court holds that Pouncy is not entitled to relief on the basis that the state court decision denying his public trial claims is contrary to the footnote concerning Cole's claim in *Waller*.

## B

Second, Pouncy argues that the state court decision rejecting his public trial claim is contrary to a rule established by the synthesis of two related lines of Supreme Court cases: (1) the *Waller/Presley* line of cases discussed above concerning a criminal defendant's Sixth Amendment right to a public trial and (2) a line of Supreme Court cases concerning the right of the press and public to attend trials under the First Amendment. (*See* Reply., ECF No. 373, PageID.13879, 13900-13905, citing *Press–Enterprise Co. v. Superior Court of Cal., Riverside Cty.,* 464 U.S. 501 (1984); *Gannett Co. v. DePasquale,* 443 U.S. 368 (1979); and *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)).  Pouncy contends that these lines of cases, taken together, clearly establish that a criminal defendant's right to a public trial is "self-executing" – meaning that a defendant need not object to a courtroom closure in order to trigger a trial court's duty to make findings in support of the closure. (*See id.*)  He sums up his argument on this point as follows:

> Where the Supreme Court has made it clear "that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public[,]" *Waller*, 467 U.S. at 48 (emphasis added), and the Supreme Court has made it clear that the First Amendment right to a public

16

trial is self-executing because it exists "whether or not any party has asserted the right[,]" *Presley*, 558 U.S. at 214 (emphasis added), it is clear that the explicit Sixth Amendment right to a public trial is likewise self-executing because the Sixth Amendment right is no less protective than the First Amendment right. If the public and press do not have to object in order to enjoy a public trial under the implicit First Amendment, then the accused do not have to object to enjoy the explicit Sixth Amendment right to a public trial, because after all it was "'created for the benefit of the defendant.'" *Waller*, 467 U.S. at 46 (quoting *Gannett*, 443 U.S. at 380). It would be contrary to clearly established Supreme Court precedent to conclude that the public and the press do not have to object to enjoy the implicit First Amendment right to a public trial but that Petitioner has to object and assert his explicit Sixth Amendment right to a public trial. This would mean—contrary to Supreme Court precedent—that the explicit Sixth Amendment right to a public trial is not self-executing and therefore less protective than the implicit First Amendment right to a public trial.

(*Id.*, PageID.13903-13904.)

Pouncy's argument fails because the Supreme Court has never held that the First Amendment right of the press and public to attend a criminal trial is "self-executing" in the sense that Pouncy uses that term. If anything, the Supreme Court's First Amendment public trial decisions suggest the opposite – that an objection *is* relevant to whether a trial court violates the First Amendment rights of the press and public by closing a courtroom. In *Gannett*, for instance, the Supreme Court cited the *lack* of an objection by the press and public as one factor supporting its holding that the closure did *not* violate any First Amendment right of access that the press

may have had. *See Gannett*, 443 U.S. at 392 (identifying the fact that "none of the spectators present in the courtroom, including the reporter employed by the petitioner, objected when the defendants made the closure motion" as one of the "factors [that] lead to the conclusion that the actions of the trial judge here were consistent with any right of access the petitioner may have had under the First and Fourteenth Amendments."). Moreover, in *Press-Enterprise* and *Richmond Newspapers*, the press *did* oppose and/or seek to vacate a closure order. *See Press-Enterprise*, 464 U.S. at 503 (noting opposition to closure); *Richmond Newspapers*, 448 U.S. at 560-62 (noting motion to vacate closure order).[5] Thus, the holdings in those cases – that the trial courts erred by closing the courtrooms – say nothing about whether an *unopposed* closure (or a closure order that a party has not attempted to

---

[5] Pouncy quotes the following statement from the *Richmond Newspapers* plurality opinion authored by Chief Justice Burger: "The record does not show that any objections to the closure order were made by anyone present at the time, including appellants Wheeler and McCarthy." (Reply, ECF No. 373, PageID.13900, quoting *Richmond Newspapers*, 448 U.S. at 560.) According to Pouncy, this quote shows that the Supreme Court has granted relief on a public trial claim absent an objection. (*See id*.) However, Pouncy fails to mention that after the trial court entered the closure order in *Richmond Newspapers*, members of the press filed a motion to vacate the closure order and to be permitted to attend the remainder of the trial. *See Richmond Newspapers*, 448 U.S. at 560. The trial court denied the motion to vacate, and the Virginia Supreme Court declined to overturn the trial court's ruling. *See id.* The case came to the Supreme Court on appeal from the denial of the motion to vacate the closure order. Thus, the Supreme Court in *Richmond Newspapers* reviewed a preserved contemporaneous challenge to a closure order. Nothing in Chief Justice Burger's plurality Opinion suggests that the Supreme Court would have reached the closure issue if the press had not filed a motion to vacate the order while it was still in effect.

18

vacate) violates the First Amendment.  Simply put, even if the First Amendment public trial cases are instructive in determining the contours of a criminal defendant's Sixth Amendment right to a public trial, the cases do not suggest that the lack of an objection is immaterial to a public trial claim.  Moreover, Pouncy has not cited a single decision from any court suggesting that the Supreme Court's First Amendment public trial cases support the notion that the lack objection is irrelevant to a criminal defendant's Sixth Amendment public trial claim.

Finally, Pouncy's reading of the First Amendment public trial cases is belied by the very Sixth Amendment public trial cases that he cites.  Again, Pouncy contends that the First Amendment public trial cases support the proposition that an objection is immaterial to a criminal defendant's Sixth Amendment public trial claim.  But in *Waller* and *Presley* – the two leading Sixth Amendment public trial cases – the Supreme Court cited and discussed the First Amendment public trial cases *and* carefully limited its holdings to closures made over a defendant's objection. If, as Pouncy contends, the First Amendment public trial cases supported the proposition that an objection is immaterial to a criminal defendant's Sixth Amendment public trial claim, the Supreme Court surely would not have relied upon those cases in *Waller* and *Presley*.  In short, it is not reasonable to conclude, as Pouncy does, that the Supreme Court's First and Sixth Amendment public trial cases,

taken together, clearly establish that an objection is immaterial to a criminal defendant's public trial claim.

IV

The Court concludes that it did not err when it denied relief on Pouncy's public trial claim.  Accordingly, Pouncy's motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  February 9, 2021          UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 9, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9761