UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR RASHAD POUNCY,

          Petitioner,                        Case No. 13-cv-14695
                                                     Hon. Matthew F. Leitman

v.

MATT MACAULEY,

          Respondent.
_____/

**ORDER DENYING PETITIONER'S**
**MOTIONS FOR RECONSIDERATION (ECF Nos. 404, 406, 407)**

On June 28, 2021, this Court issued a 140-page Opinion and Order resolving the final remaining claims in Petitioner Omar Rashad Pouncy's Petition for a Writ of Habeas Corpus (the "Opinion and Order"). (*See* Op. and Order, ECF No. 401.) Pouncy has now filed a Motion for Reconsideration (*see* Mot., ECF No. 404), a Supplemental Motion for Reconsideration (*see* Supp. Mot., ECF No. 406), and a Second Supplemental Motion for Reconsideration (*see* Sec. Supp. Mot., ECF No. 407). Over the course of more than 100 pages of total briefing, Pouncy argues that the Court made several factual and legal errors and that the correction of those errors will lead to a different resolution of the claims in his Petition.

The Court has carefully reviewed Pouncy's three motions.  It concludes that Pouncy is not entitled to reconsideration because he has either failed to show that the Court committed any error and/or has not demonstrated that the Court erred in a manner that affected the outcome of its decision.  Accordingly, for the reasons explained in more detail below, the Court **DENIES** Pouncy's motions.

**I**

The Court will not address in this order every one of Pouncy's arguments that it deems insufficient to warrant reconsideration.  Pouncy presents myriad criticisms of the Court's reasoning and analysis, and not all of his contentions warrant a response by the Court.  Many of them are already addressed sufficiently in the Opinion and Order; others are not strong enough to require a response.  However, the Court does deem it appropriate to respond to some of the arguments Pouncy raised in his motions.  The Court's responses to those arguments that warrant a response appear below.

**II**

In the Opinion and Order, the Court ruled that Pouncy was not entitled to relief on his claim that the state trial court violated his Sixth Amendment right to counsel of choice. (*See* Op. and Order, ECF No. 401, PageID.14369-14383.)  Pouncy says that this ruling is tainted by at least two errors.  But he has not shown that the Court committed an error that warrants reconsideration of its ruling.

**A**

When analyzing Pouncy's claim that the state trial court violated his Sixth Amendment right to counsel of choice, the Court said that Pouncy had not cited "a single case" in which any court had found a violation of the right to counsel of choice where the defendant asked to retain his chosen counsel after trial had begun. (*Id.*, PageID.14382.)   The Court was wrong.   It turns out that Pouncy cited *Wilson v. Mintzes*, 761 F.2d 275 (6th Cir. 1985), a case in which the Sixth Circuit found a violation of the right to counsel of choice where the defendant asked to hire his own attorney after trial had begun.   But as explained below, *Wilson* is so materially distinguishable from the facts of Pouncy's case that it lends no meaningful support to Pouncy's counsel-of-choice claim.   Thus, the error by the Court does not undermine the soundness of the Court's ultimate conclusion that the state trial court did not violate Pouncy's right to counsel of choice.

During the underlying trial in *Wilson*, the trial judge and the petitioner's retained counsel "engaged in an ongoing verbal altercation" that disrupted the trial and resulted in defense counsel abandoning his role as the petitioner's lawyer. *Wilson*, 733 F.2d 424, 428-29 (6th Cir. 1984).[1]   The Sixth Circuit described the impact of the altercation as follows:

---

[1] The Sixth Circuit issued two published decisions in *Wilson*. *See Wilson v. Mintzes*, 733 F.2d 424 (6th Cir. 1984) and *Wilson v. Mintzes*, 761 F.2d 275 (6th Cir. 1985). Both decisions centered on the petitioner's Sixth Amendment right to counsel and

During the verbal altercation between the trial judge and defense counsel, the record indicates that defense counsel became extremely agitated at the trial judge's comments and essentially sought to protect himself rather than the interests of his client. Although most of the altercation took place outside the presence of the jury, the jury was present when defense counsel stated that (1) he refused to make any further objections, (2) he refused to continue the trial, and (3) he was no longer petitioner's attorney. Although we agree with the state court of appeals that the conduct of the trial judge was, at times, abrasive, we nevertheless hold that defense counsel's attempt to remove himself from the case in front of the jury was inexcusable and prejudicial. Defense counsel also chose to continue his heated exchange with the trial judge rather than cross-examine the police officer in charge of the investigation. That defense counsel failed to cross-examine a key government witness is further evidence that he was, at that time, unwilling or unable to protect the interests of his client. In short, we hold that this conduct, along with petitioner's unheeded statements of dissatisfaction with his counsel, evidence an irreconcilable conflict between the interests of defense counsel and petitioner which prejudiced petitioner's case and thus deprived petitioner of his sixth amendment right to effective assistance of counsel.

*Id*. at 428-29.

---

both arose out of the same conduct by counsel at the petitioner's trial. In the first decision, the Sixth Circuit treated the petitioner's claim as one for ineffective assistance of counsel. *See Wilson*, 733 F.2d at 428. The Supreme Court vacated that decision and remanded for reconsideration in light of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Mintzes v. Wilson*, 469 U.S. 926 (1984). In the second decision, the Sixth Circuit treated the petitioner's claim as one for violation of his right to counsel of his choice. *See Wilson*, 761 F.2d at 279-80. The Sixth Circuit set out the factual background of the case in its first decision, and that is why this Court cites that decision above when describing the facts in *Wilson*.

The facts of *Wilson* bear no meaningful resemblance to Pouncy's case.  First, in *Wilson*, the problems related to defense counsel's performance and to the relationship between the defendant and counsel first arose during the trial.  Thus, the defendant could first reasonably have been expected to ask to retain counsel of his choice only after trial had begun.  In Pouncy's case, in contrast, Pouncy had concerns about his relationship with his attorney and about his attorney's performance well before the trial began, and therefore Pouncy could have sought to retain counsel of his choice before the trial commenced.  Indeed, prior to trial, Pouncy apparently did make some effort to have new counsel appointed for him. (*See* 1/24/06 Trial Tr., ECF No. 8-7, PageID.460.)  Second, while Pouncy's lawyer expressed concern about his level of preparation and provided a level of performance that is open to serious criticism, in sharp contrast to the defense lawyer in *Wilson*, Pouncy's lawyer never clashed with the trial judge in front of the jury, never refused to continue to participate in the trial, and never announced that he was no longer Pouncy's lawyer.  Finally, unlike the defense lawyer in *Wilson*, Pouncy's lawyer never sought to advance his own interests at the expense of Pouncy's interests.

Given these fundamental distinctions between *Wilson* and Pouncy's case, *Wilson* lends no significant support to Pouncy's claim that the state trial court in his case violated his Sixth Amendment right to counsel of choice.[2]

Simply put, instead of saying that Pouncy had not cited "a single case" in which any court had found a violation of the right to counsel of choice where the defendant sought to retain counsel after trial had begun, the Court should have said that Pouncy had not cited "a single case involving facts that even remotely resemble those here" in which a court had found a counsel-of-choice violation. The Court's lack of precision, while regrettable, does not undermine the Court's ultimate conclusion that the state trial court did not violate Pouncy's Sixth Amendment right to counsel of his choice.

---

[2] Pouncy also directs the Court to the Sixth Circuit's decision in *Powell v. Collins*, 332 F.3d 376 (6th Cir. 2003). But *Powell* did not involve a claim that a trial court violated a defendant's Sixth Amendment right to counsel of choice. Instead, the issue in *Powell* was whether the trial court erred when it refused to grant a motion for a continuance of the penalty phase of a death penalty trial. *See id.* at 396-97. The Sixth Circuit held that the denial of the continuance violated the defendant's due process rights because it deprived him of the opportunity to obtain critical expert testimony in support of his mitigation case. The Sixth Circuit stressed that a continuance was essential given the "gravity and magnitude of the issue involved – *i.e.*, whether the death penalty should be imposed." *Id.* at 397. *Powell* does not meaningfully support Pouncy's claim here that the state trial court violated his Sixth Amendment right to counsel of choice.

**B**

Pouncy further contends that the Court's ruling on his counsel-of-choice claim is flawed because the Court ignored Sixth Circuit precedent holding that once a criminal defendant expresses dissatisfaction with his counsel, a trial court must inquire whether the defendant wishes to retain counsel of his choice. (*See* Mot., ECF No. 404, PageID.14496.)  But none of the cases cited by Pouncy hold that when a criminal defendant with appointed counsel – *i.e.*, a defendant who has attested that he is unable to afford retained counsel – expresses dissatisfaction with his lawyer, the trial court must ask if he wishes to retain counsel at his own expense.

Pouncy first cites *United States v. Iles*, 906 F.2d 1122 (6th Cir. 1990).  But the Sixth Circuit in *Iles* did not say that a court must ask a defendant with appointed counsel who raises a concern about counsel's performance whether he wishes to retain counsel.  Instead, the court in *Iles* applied the rule "that [w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel *appointed*, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel." *Id*. at 1130 (quotation omitted; emphasis added).  And the court then proceeded to discuss the inquiry that a trial court must make when deciding whether to *appoint* substitute counsel. *See id.* at 1130-31.  *Iles* does not apply here.

Pouncy next cites *Ayers v. Hall*, 900 F.2d 829 (6th Cir. 2018).  He says that *Ayers* stands for the proposition that whenever a defendant expresses dissatisfaction with counsel, a trial judge has a duty to "ask a defendant if he wants to retain counsel." (Mot., ECF No. 404, PageID.14496.)   The holding of *Ayers* is not nearly that broad.  The facts in *Ayers* were unusual.  The defendant was an "experienced criminal defense attorney." *Ayers*, 900 F.2d at 832.  During pre-trial proceedings, he represented himself. *See id.*  But it was "undisputed that he never formally elected to do so: he never waived his right to counsel on the record, filed a notice of appearance of any kind, appear[ed] with co-counsel for any purpose, or file[d] a motion to be allowed to proceed *pro se*…." *Id.*  Moreover, the trial court "failed to inform him at his arraignment that he had a right to counsel and never subsequently sought to determine whether [his] self-representation was a voluntary, intelligent, and knowing waiver of his right to counsel." *Id.*  Shortly before trial, the defendant sought a continuance "so that he could hire an attorney." *Id.*  The trial court denied the request and "forced him to proceed *pro se*." *Id.*  The issue on appeal to the Sixth Circuit was whether the defendant had validly waived his right to counsel. *See id.* at 835.  The Sixth Circuit held that he had not done so. *See id.* at 835-837.  But *Ayers* does not help Pouncy because it addresses a different issue – whether a waiver of counsel was valid as opposed to whether a defendant was denied his right to counsel

8

of choice – and because the facts and circumstances of *Ayers* are so markedly different from those of Pouncy's case.

Finally, Pouncy cites the Sixth Circuit's unpublished decision in *Cottenham v Jamrog*, 248 F. App'x 625 (6th Cir. 2007).   But even a cursory review of that decision shows that it does not provide support for Pouncy's position.  *Cottenham* involved a complicated procedural history in which several different lawyers – both retained and appointed – had appeared on the defendant's behalf as trial and/or appellate counsel.  The issue before the Sixth Circuit was whether the defendant had been denied his right to counsel of choice on appeal where the state courts did not timely honor his request to discharge retained counsel and have substitute counsel appointed for him on appeal.  The State did not oppose the counsel-of-choice claim on the merits.  Instead, it argued only that the claim was defaulted.  The Sixth Circuit held that the claim was not defaulted and, under those unusual circumstances, granted relief on the claim.  *Cottenham* sheds no meaningful light on whether the state trial court in Pouncy's case had any obligation to ask if he wished to retain counsel and/or on whether the trial court violated his right to counsel of choice.

For all of these reasons, the Court declines to reconsider its denial of Pouncy's claim that the state trial court violated his Sixth Amendment right to counsel of choice.

### III

In the Opinion and Order, the Court rejected the claim by Pouncy – who chose to represent himself at trial – that he was entitled to habeas relief on the ground that the state courts unreasonably determined that his waiver of counsel was valid. (*See* Op. and Order, ECF No. 401, PageID.14383-14400.)  Pouncy now attacks that ruling on two grounds.  The Court addresses each separately below.

### A

First, Pouncy argues that the Court erred when it rejected his argument that his waiver of counsel was invalid under *Johnson v. Zerbst*, 304 U.S. 458 (1938), because the state trial court "did not make an express, on-the-record finding" that his waiver was knowing, intelligent, and voluntary. (Supp. Mot., ECF No. 406, PageID.14507-14509.)  In the Opinion and Order, the Court held that Pouncy was not entitled to relief on this claim because *Zerbst* did not clearly establish that a waiver of a constitutional right is valid only where a trial court makes an "express, on-the-record finding" that the waiver is "knowing, intelligent, and voluntary." (Op. and Order, ECF No. 401, PageID.14386-14387.)  As this Court explained, while the Supreme Court in *Zerbst* said that a trial court should "clearly determine[] whether there is a proper waiver" *Zerbst*, 306 U.S. at 464-65, the Supreme Court did not *mandate* that that determination take the form of an "express, on-the-record finding." (Op. and Order, ECF No. 401, PageID.14387.)  Instead, the Supreme Court said only

10

that "it would be fitting and appropriate for the determination to appear on the record." *Zerbst*, 306 U.S. at 465.  This Court thus concluded that the Michigan Court of Appeals did not unreasonably apply *Zerbst* when it found Pouncy's waiver of counsel to be valid despite the lack of an "express, on-the-record finding" to that effect by the state trial court. (Op. and Order, ECF No. 401, PageID.14387.)

Pouncy now contends that the Supreme Court's post-*Zerbst* decision in *Carnley v. Cochran*, 369 U.S. 506 (1962), confirms that *Zerbst* requires an "express, on-the-record finding" by a trial court that a defendant's waiver of counsel is knowing and voluntary. (Supp. Mot., ECF No. 406, PageID.14507-14509.)  But *Carnley* simply quotes verbatim the passage from *Zerbst* described above.  And that passage, as explained above, does not clearly establish that a waiver of a constitutional right is valid only where a trial court makes an "express, on-the-record finding" that the waiver is knowing and voluntary.

What *Zerbst* does clearly establish is that a trial court should "clearly determine[] whether there is a proper waiver" before permitting a defendant to waive his right to counsel. *Zerbst*, 306 U.S. at 464-65.  The Michigan Court of Appeals did not unreasonably apply that holding when it upheld Pouncy's waiver of counsel.  As the Court explained in detail in the Opinion and Order, the state trial court accepted Pouncy's waiver of counsel only *after* engaging in multiple colloquies with Pouncy during which it repeatedly warned him of the dangers of self-representation,

informed him that he had a choice to continue to be represented by counsel, and confirmed that he understood those two points. (*See* Op. and Order, ECF No. 401, PageID.14390-14393.)  The Michigan Court of Appeals held that this chronology indicated the state trial court satisfied its obligation to determine that Pouncy's waiver was knowing and voluntary before accepting the waiver. *See People v. Pouncy*, 2008 WL 9869818, at **5-8 (Mich. Ct. App. Mar. 25, 2008)  (identifying requirement that trial court find that a waiver of counsel is knowing and voluntary before accepting it, setting forth colloquies between Pouncy and state trial court concerning self-representation, and highlighting that trial court did not accept Pouncy's waiver of counsel until after the colloquies).  That ruling was neither an unreasonable assessment of the trial record nor an unreasonable application of the principles in *Zerbst*.  Accordingly, the Court declines to reconsider its denial of habeas relief on Pouncy's waiver-of-counsel claim to the extent that the claim was based upon *Zerbst*.

**B**

Pouncy next argues that the Court erred when it rejected his claim that his waiver of counsel was invalid because the state trial court did not sufficiently advise him of the range of allowable punishments before accepting the waiver. (*See* Supp. Mot., ECF No. 406, PageID.14512-14514.)  The Court held that it was not clearly established by Supreme Court precedent that a trial court must inform a criminal

12

defendant of the range of allowable punishments before accepting a waiver of counsel. (*See* Op. and Order, ECF No. 401, PageID.14393-14400.)  Pouncy contends that the Sixth Circuit's unpublished decision in *Glass v. Pineda*, 635 F. App'x 207 (6th Cir. 2015), demonstrates the error of the Court's holding.  He says that in *Glass*, the Sixth Circuit "expressly held" that a waiver of counsel is valid if and only if the defendant is informed of the range of allowable punishments." (Supp. Mot., ECF No. 406, PageID.14512.)   Pouncy's reliance on *Glass* is misplaced for several reasons.[3]

First, the Sixth Circuit in Glass did not *hold* that a waiver is valid only where a defendant is informed of the range of allowable punishments.   "The habeas claimant did not obtain relief in [*Glass*], making [the] language [concerning the range of allowable punishments] unnecessary to the decision." *Keahey v. Marquis*,

---

[3] Pouncy also argues that Respondent is bound by an oral statement by his counsel (made at an early hearing in this case) that the Supreme Court's decision in *Iowa v. Tovar*, 541 U.S. 77 (2004), clearly establishes that a waiver of counsel is valid only if the defendant is informed of the range of allowable punishments. (*See* Supp. Mot., ECF No. 406, PageID.14516-14517.)  Whether Respondent is bound is beside the point because "a State's lawyers cannot waive or forfeit the applicable 'clearly established law.'" *Langley v. Prince*, 926 F.3d 145, 162 (5th Cir. 2019).  This Court had an independent obligation to determine whether *Tovar* clearly established that a waiver of counsel is valid only where the defendant is advised of the range of allowable punishments.  The Court discharged that obligation by carefully reviewing *Tovar* and determining that it did not clearly establish that principle. (*See* Op. and Order, ECF No. 401, PageID.14395-14396.) Pouncy is not entitled to relief based upon a single statement that Respondent's counsel made at a relatively early stage in the case.

978 F.3d 474, 480 (6th Cir. 2020), *cert. denied,* No. 20-1298, 2021 WL 4507635 (U.S. Oct. 4, 2021).  Thus, that language does not amount to a holding. *See id.*

Second, even if the language from *Glass* did amount to a holding, it does not amount to clearly established federal law under AEDPA because *Glass* is not a decision of the United States Supreme Court. *See Lopez v. Smith*, 574 U.S. 1, 6-7 (2014).  And, while some Sixth Circuit decisions may be read as holding that the Supreme Court has clearly established a rule for AEDPA purposes, *Glass* cannot be so read because the Sixth Circuit in *Glass* denied relief under AEDPA. *See Pouncy v. Palmer*, 168 F.Supp.3d 954, 963-67 (E.D. Mich. 2016) (explaining when circuit-level precedent may be read as holding that the Supreme Court has clearly established a rule for purposes of AEDPA).

Third (and in any event), *Glass* is hardly strong support for Pouncy's contention that the state trial court's rejection of his waiver-of-counsel claim was so unreasonable as to warrant habeas relief under AEDPA.  The petitioner in *Glass*, like Pouncy, claimed that his waiver of counsel was invalid because the trial court failed to inform him of the range of allowable punishments.  The Sixth Circuit denied relief under AEDPA.  It explained that the petitioner was not entitled to relief because "to an extent" he had "some understanding of the amount of prison time he might be facing." *Glass*, 635 F. App'x at 215.  The court then summarized its holding as follows:

14

> We have held that an AEDPA petitioner fails to meet his burden when the record does not contain affirmative evidence of his ignorance of the potential sentence, even in the absence of a colloquy establishing such knowledge. *See Akins,* 648 F.3d at 399. Glass's apparent understanding regarding a potential sentence he might face—revealed days after his decision to represent himself—arguably exceeds this level of awareness. Furthermore, although the trial court did not engage in an exhaustive colloquy with respect to Glass's understanding of the punishment he might face and the elements of the statutory charges, it did convey the reasons why self-representation was risky. Finally, the record reflects a basis for the state-court majority's finding that Glass had an independent understanding of the charges against him and their statutory elements.  Even assuming that Judge Klatt—who dissented from the Ohio Court of Appeals's affirmance of Glass's conviction—was correct that the trial court's inquiry was insufficient because that court did not ask questions necessary to confirm Glass's understanding of the range of punishments he might face, the full scope and statutory elements of the charges against him, and the potential defenses to those charges, we cannot conclude on this record that the state court's application of the Supreme Court's *Faretta* line of cases was unreasonable.

*Id.* at 216.  Pouncy has failed to show how this holding supports his claim that he was entitled to relief under AEDPA on his waiver-of-counsel claim.

For all of these reasons, the Court declines to reconsider its denial of relief on Pouncy's waiver-of-counsel claim.

15

**IV**

In the Opinion and Order, the Court granted habeas relief on Pouncy's claim that he received ineffective assistance of counsel in connection with the plea-bargaining process. (*See* Op. and Order, ECF No. 401, PageID.14401-14430.) The Court concluded, among other things, that if Pouncy's counsel had provided effective assistance, then (1) the prosecution would have offered Pouncy what is known as a *Killbrew* plea offer that called for a minimum sentence of between 135-225 months in custody, (2) Pouncy would have accepted that offer, and (3) the state trial court would have sentenced Pouncy consistent with the terms of that deal. (*See id.*, PageID.14422-14423.) As a remedy for this claim, the Court ordered the prosecution to re-offer the *Killebrew* plea deal that would have been available but for counsel's ineffectiveness. (*See id.*, PageID.14431-14433.)

Pouncy now claims that the Court's remedy is insufficient. He says that while the remedy accounts for the lost *Killebrew* plea offer, it does not account for the fact that counsel's ineffective assistance also deprived him of the opportunity to seek what is known as a *Cobbs* evaluation from the state trial court. (*See* Supp. Mot., ECF No. 406, PageID.14527-14530.) A *Cobbs* evaluation is a process that grew out of the Michigan Supreme Court's decision in *People v. Cobbs*, 505 N.W.2d 208 (1993). That decision authorized trial judges "to participate in [pre-plea] sentencing discussions at the request of a party but not on the judge's own initiative." *People v.*

16

*White,* 862 N.W.2d 1, 5 (Mich. App. 2014).   Under *Cobbs*, where a defendant requests a pre-plea sentencing assessment, the judge "may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." *Id.* (quoting *Cobbs*, 505 N.W.2d at 212).   *Cobbs* further provides that "a defendant who pleads guilty or *nolo contendere* in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *Cobbs*, 505 N.W.2d at 212.   Pouncy says that because his attorney provided ineffective assistance, he (Pouncy) lost the opportunity, after the prosecution had extended its *Killebrew* plea offer, to seek a *Cobbs* evaluation from the state trial court concerning where within the *Killebrew* plea sentencing range the trial court would have imposed sentence based upon the information known to it at that time. (*See* Supp. Mot., ECF No. 406, PageID.14527-14530.)   Pouncy contends that the remedy fashioned by the Court does not account for his lost opportunity to seek a *Cobbs* evaluation. (*See id.*)

This criticism of the Court's remedy is not supported by the evidence in the record.   For instance, Pouncy has not shown that the state trial court would have provided a *Cobbs* evaluation after being presented with a *Killebrew* plea agreement (which required the ultimate approval of the court).   Nor has Pouncy shown that the prosecution would have been willing to extend a *Killebrew* plea offer if it knew that

he would also seek a *Cobbs* evaluation.  And there is evidence in this record that suggests that Pouncy would not have had an opportunity to take advantage of both a *Killebrew* plea offer and a *Cobbs* evaluation.  At the evidentiary hearing before this Court, Pouncy's counsel asked the prosecutor from Pouncy's trial whether a defendant could "do a *Killebrew* and a *Cobbs* simultaneously," and the prosecutor responded, "not really." (1/8/2021 Evid. Hr'g Tr., ECF No. 371, PageID.13561.)  In his motion, Pouncy has not presented any evidence to the contrary.  Moreover, Pouncy testified at the evidentiary hearing and explained what he would have done differently if he had received effective assistance of counsel, but he said nothing about seeking a *Cobbs* evaluation from the state trial court.  Finally, Pouncy has not presented evidence sufficient to establish a reasonable probability that a *Cobbs* evaluation would have been favorable to him.  For all of these reasons, the Court finds the evidence in the record insufficient to support Pouncy's contention that his counsel's ineffectiveness prejudiced him by denying him an opportunity to seek a *Cobbs* evaluation from the state trial court.  The Court further concludes that its remedy is not deficient for failing to account for a lost opportunity to seek a *Cobbs* evaluation.

**V**

In the Opinion and Order, the Court denied habeas relief on Pouncy's related claims that the prosecution knowingly presented false testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959), and withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* Op. and Order, ECF No. 401, PageID.14436-14464.)   Pouncy argues that the Court made several errors in denying these claims.   The Court disagrees and responds to some of Pouncy's arguments individually below.

**A**

In Pouncy's *Napue* claim, he argued that the prosecution knowingly elicited false testimony from the lead detective that phone calls from a certain cellular telephone could not be traced.   The Court rejected that claim, in part, on the ground that Pouncy had not shown that the prosecutor knew the testimony was false. (*See id.*, PageID.14445-14446.)   Pouncy says that the Court ignored evidence proving that "the prosecution knew very well" that that the calls could be traced to a specific cellular telephone number. (Supp. Mot., ECF No. 406, PageID.14533.)   The evidence to which Pouncy refers is a subpoena that the prosecution issued to a cellular telephone provider. (*See id.*)   Pouncy contends that the contents of the subpoena prove that the prosecution knew that the calls from the perpetrator could be traced. (*See id.*, PageID.14533-14535.)

19

The problem with Pouncy's argument is one of timing.  The prosecutor issued the subpoena at issue on March 24, 2006 – roughly two months *after* Pouncy's trial concluded. (*See* subpoena, ECF No. 398, PageID.14308.)  The subpoena thus does not establish that the prosecutor knew the calls were traceable *during* Pouncy's trial when he elicited the allegedly-false testimony from the lead detective.  And because Pouncy has not shown that the prosecutor knew the testimony was false when he elicited it, the Court will not reconsider its denial of relief on Pouncy's *Napue* claim.

## B

In a *Brady* claim that bore some relation to his *Napue* claim, Pouncy argued that he was entitled to habeas relief because the prosecution failed to disclose certain exculpatory cellular telephone billing records.  The Court denied relief on that claim on the ground that Pouncy had failed to show that the records were "material" under *Brady*. (Op. and Order, ECF No. 401, PageID.14446-14464.)  The Court concluded that the records were not material because, among other things, the evidence against Pouncy was overwhelming and thus there was no reasonable probability that the result of the proceedings would have been different if the prosecution had disclosed the records. (*See id.*)  Pouncy attacks that ruling on several grounds.  The Court addresses three of those grounds below.

**1**

Pouncy first argues that the Court applied the wrong standard for "materiality" under *Brady*. (Sec. Supp. Mot., ECF No. 407, PageID.14557-14561.)   The Court said: "Evidence is material (*i.e.*, prejudicial) under *Brady* if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (Op. and Order, ECF No. 401, PageID.14437; quotation omitted.)   The Court took this standard directly from the Supreme Court's decision in *Strickler v. Greene*, 527 U.S. 263, 280 (1999).   The Sixth Circuit has applied this standard for materiality in its *en banc* decisions, *see Montgomery v. Bobby*, 654 F.3d 668, 678-79 (6th Cir. 2011) (*en banc*), and in its most recent published decisions addressing *Brady* claims. *See, e.g.*, *Hall v. Mays*, 7 F.4th 433, 446 (6th Cir. 2021) ("To prove prejudice, Hall must show that the suppressed evidence is 'material,' meaning that there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"); *United States v. Stampe*, 994 F.3d 767, 771 (6th Cir. 2021) ("Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"); *McNeill v. Bagley*, 10 F.4th 588, 598 (6th Cir. 2021) ("Evidence is material (and so shows prejudice) if there is a 'reasonable probability ... that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different.'  In order to demonstrate a reasonable probability, the petitioner must 'sufficiently undermine[ ] confidence in the outcome of the trial.'").  Given the Sixth Circuit's continued adherence to the materiality standard applied by the Court, the Court is not persuaded by Pouncy's contention that the standard has been modified.

Pouncy counters that the standard for materiality applied by the Court was superseded by the Supreme Court's statement in *Wearry v. Cain*, 577 U.S. 385, 392 (2016) (*per curiam*), that "[e]vidence qualifies as material when there is 'any reasonable likelihood' it could have 'affected the judgment of the jury.'" (Sec. Supp. Mot., ECF No. 407, PageID.14557.)  The Court is not persuaded that the Supreme Court in *Wearry* – a *per curiam* decision issued "without briefing or argument" *Wearry*, 577 U.S. at 396 (Alito, J., dissenting) – intended to modify its repeated admonition that "evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (internal quotation marks omitted). *See also Smith v. Cain*, 565 U.S. 73, 75 (2012) ("We have explained that 'evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'"); *Cone v. Bell*, 556 U.S. 449, 469-70 (2009) ("[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.").

As noted above, the Sixth Circuit has not changed its understanding of "materiality" following *Wearry*.  In fact, it appears that the only published Sixth Circuit decisions applying the *Wearry* materiality formulation are dissenting opinions. *See, e.g.*, *Hill v. Mitchell*, 842 F.3d 910, 952 (Cole, J., dissenting); *McNeil*, 10 F.4th at 605 (Clay, J., dissenting).  Pouncy has not shown that the Court erred by applying the materiality standard from *Strickler*.

Finally (and in any event), applying the "any reasonable likelihood" materiality standard urged by Pouncy would not change the result of this habeas case.  As the Court explained at great length in the Opinion and Order, the evidence against Pouncy was overwhelming. (*See* Op. and Order, ECF No. 401, PageID.14452-14459.)  There is no "reasonable likelihood" that the result would have been different if the phone records had been disclosed.  For this additional reason, the Court declines to reconsider its denial of habeas relief on Pouncy's *Brady* claim related to the cellular telephone records.

## 2

Pouncy next contends that the Court violated the "principle of party presentation" when it ruled that the telephone records were not material because the evidence against Pouncy was overwhelming. (Sec. Supp. Mot., ECF No. 407, PageID.14551.)  Pouncy suggests that the Court "manufactured" this materiality analysis and that Respondent "did not raise" it. (*Id.*, PageID.14547-14548, quoting

23

*Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007).)  Pouncy is

incorrect.

As Pouncy acknowledges elsewhere in the record, Respondent *did* argue that

the telephone records were not material because the rest of the evidence against

Pouncy was so strong. (*See id.*, PageID.14545.)  At an early hearing in this case,

counsel for Respondent and the Court had the following exchange:

> THE COURT: All right. Let me hear – the next issue I
> want to discuss is the telephone record issue*; Brady* claim
> about the phone records. I think I understand that but, Mr.
> Pallas, may I again start with you?
>
> [….]
>
> THE COURT: [….] can somebody explain to me why this
> claim lacks merit?
>
> MR. PALLAS: Well, looking at the standard of *Brady*,
> there isn't necessarily -- there's three prongs to a true
> *Brady* claim. The first of them being suppression. The
> second of it being something that's probative or favorable
> to the defendant either because it's impeaching or
> exculpatory.
>
> And, third, that it makes the -- I'm trying to quote the
> language exactly, result -- calls into question the result of
> the proceeding.
>
> [….]
>
> *But I think the easiest question by which to resolve Brady*
> *claims is always to focus on the materiality or prejudice*
> *aspect of it.*

The best way to do that is that if you take that evidence that was purportedly suppressed, even assuming for the record suppressed, let's say it was favorable or impeaching, does it undermine confidence in the verdict in this case?

*I read through the facts that the Court of Appeals did as well as independently looked at the trial transcript of this case. I don't see how it's possible that that evidence coming in or having that evidence would have undermined confidence in the verdict in this case; it would have made that much of a difference that a reasonable jury would have come to a different conclusion. It doesn't undermine confidence in the verdict given the quantum of evidence that was presented against the prisoner at his trial.*

To me, that's the hardest part of any *Brady* analysis for a prisoner. It might be relatively easy to show suppression sometimes; sometimes it isn't.

THE COURT: I want to make sure I understand the respondent's position on each of the elements.

Is there a dispute that these records were not turned over to the defense? On prong one, the prosecutor said at least, unless I'm mistaken, we, the prosecution, have them and the records were not turned over to the defense. Is there a dispute?

MR. PALLAS: No, no. I don't we've in this particular case suppression in light of that would necessarily be – even if it's the police officers not turning things over, that that is inferred back to the State.

THE COURT: So petitioner has satisfied the suppression element of his *Brady* claim?

MR. PALLAS: I think arguably, yes.

25

THE COURT: Then step two is -- how did you describe it for me, exculpatory?

MR. PALLAS: Exculpatory or favorable in the sense it could maybe used as impeaching evidence. I think it's arguable, again there, that prong may have been satisfied on the facts of this case. I don't want to stand here and belabor those particular points, *because I think where the prisoner absolutely loses is on prong three, which is materiality; which is, you know, somehow you come away having known what evidence is you undermine confidence in the verdict.*

*On the facts of this case where you have witnesses who really had no -- these were people that were trying to sell their vehicles and they've identified the defendant as the person who put guns to their heads or threatened them in other ways to take their vehicles. They had no reason to make these stories up or to claim otherwise.*

*So, on the circumstances of this case, even assuming prong one and prong two, which I don't know that I could really serious dispute, even though they're met – they could be met here, I think where he hits the brick wall is on the materiality or the undermining confidence prong of Brady. I think that's the best way I could explain it, if I'm answering your question.*

THE COURT: That's exactly.

(11/12/2015 Mot. Hr'g Tr., ECF No. 73, PageID.6785-6789; emphasis added.)

This exchange shows that the Court did not come up with the lack-of-materiality argument on its own. On the contrary, the Court's lack-of-materiality analysis largely follows the outline laid out by Respondent's counsel nearly six years

ago.  Pouncy is not entitled to reconsideration based on his argument that the Court violated the principle of party presentation.

### 3

Pouncy next argues that the Court's materiality analysis was flawed because the Court "erroneously combined the evidence from the separate and unrelated carjackings" when assessing the strength of the evidence against him. (Sec. Supp. Mot., ECF No. 407, PageID.14572.)  Pouncy contends that under Michigan law, "[w]hen the jury was considering whether [he] was the perpetrator of [any one of the carjackings, it] was absolutely prohibited as a matter of law from considering the evidence from the separate and unrelated [other carjackings]." (*Id.*, PageID.14573-14574.)  And Pouncy argues since the jury could not consider evidence of all three carjackings, the Court likewise could not do so. (*See id*.)

Pouncy is wrong.  As the Michigan Court of Appeals squarely held in Pouncy's direct appeal, evidence of each carjacking was admissible to prove the other carjackings under Rule 404(b) of the Michigan Rules of Evidence. *Pouncy*, 2008 WL 9869818, at ** 21-23.[4]  Thus, the Court did not err when it considered the evidence of all three carjackings.

_____

[4] Pouncy's argument that the Court erred when it considered evidence of all three carjackings rests upon the portion of the Michigan Court of Appeals' decision addressing the question of whether the carjackings could be properly joined in one trial. (*See* Sec. Supp. Mot., ECF No. 407, PageID.14573, citing Michigan Court of Appeals Opinion in this Court's record at ECF No. 9-4, PageID.5361.)  However,

**4**

Finally, in addition to holding that the cellular telephone records were not material because the evidence against Pouncy was overwhelming, the Court held that the records were not material for a second and independent reason: if Pouncy had attempted to use the records in his defense, the prosecution would have been able to present counter evidence negating the force of the records. (*See* Op. and Order, ECF No. 401, PageID.14459-14464.)   Pouncy contends that this second ground for the Court's lack-of-materiality ruling is flawed.

Before turning to the merits of Pouncy's arguments, it is essential to note that Pouncy would not be entitled to relief on his *Brady* claim even if he showed that this second ground for the Court's lack-of-materiality ruling was erroneous.  As noted above, the primary basis for the Court's ruling that the cellular telephone records were not material was the Court's separate and independent conclusion that the evidence against Pouncy was overwhelming.  Thus, Pouncy's attack on the second basis for the Court's lack-of-materiality ruling, even if meritorious, would not entitle Pouncy to habeas relief on his *Brady* claim related to the records.

---

the Michigan Court of Appeals carefully explained that its analysis of whether the carjackings could be tried together in a single trial "differed significantly" from its analysis of whether evidence of one of the carjackings was admissible to prove any of the other carjackings under Rule 404(b) of the Michigan Rules of Evidence. *Pouncy*, 2008 WL  98698180, at *21.

In any event, Pouncy has not shown that the Court erred when it concluded that records were not material because the prosecution would have been able to effectively counter any use he may have made of them.  Pouncy says that the Court's conclusion cannot stand because it rested upon the Court's erroneous belief that one page of Pouncy's presentence investigation report ("PSIR") prepared in his underlying state criminal case listed Pouncy's phone number as the same number used by the perpetrators. (*See* Sec. Supp. Mot., ECF No. 407, PageID.14594-14597.) But the Court made clear that its lack-of-materiality ruling did not rest upon the contents of Pouncy's PSIR.  Indeed, the Court expressly "admitted[]" that because the PSIR was prepared after Pouncy's trial, prosecutors would *not* have been able to use the contents of that report to rebut Pouncy's use of the phone records at that trial. (Op. and Order, ECF No. 401, Page ID.14462.)  Thus, even if the Court mistakenly concluded that Pouncy's PSIR listed his phone number as the same one used by the perpetrators – and, to be fair, Pouncy has shown that the Court may have erred in reaching that conclusion (*see* Sec. Supp. Mot., ECF No. 407, PageID.14594-14597) – the Court's mistake in that regard would not materially undermine its ultimate determination that the prosecution would have been able to effectively counter Pouncy's use of the phone records.

Pouncy ultimately cannot avoid the following highly inculpatory circumstance: the perpetrators used a cellular telephone with the phone number 810-836-5074, and of all the cellular telephone numbers in the world, that precise phone number was associated with Pouncy during one of his prior criminal cases (in a report that was completed before his trial in this case and long before any state official could have possibly had any incentive to falsely connect Pouncy to that phone number). (*See* Op. and Order, ECF No. 401, PageID.14462-14464.)   The Court remains confident that if Pouncy had attempted to use the cellular telephone records to distance himself from the carjackings at issue here, the prosecution would have been able to tie him right back to the phone used by the perpetrators.

**D**

In a separate *Brady* claim, Pouncy argued that the prosecution suppressed information showing that Wayne Grimes, Pouncy's alleged accomplice who testified for the prosecution, had been arrested in Clio, Michigan before his arrest on the carjacking charges related to Pouncy.  Pouncy said that law enforcement officers were aware of that arrest of Grimes before Pouncy's trial because prior to trial they had run an inquiry concerning Grimes on the Law Enforcement Information Network ("LEIN").  Pouncy further argued that the prosecution had an obligation to disclose the prior arrest because it would have impeached testimony by Grimes on direct examination that he had never been arrested before his arrest on the carjacking

charges related to Pouncy.  The Court denied relief on this claim on the ground that, among other things, Pouncy had not presented evidence that the lead investigator actually ran a LEIN inquiry on Grimes prior to Pouncy's trial. (*See* Op. and Order, ECF No. 401, PageID.14466.)

The Court was wrong.  Pouncy did present evidence that the lead investigator ran a LEIN inquiry on Grimes before Pouncy's trial.  More specifically, he submitted a police report in which the lead investigator said that on October 12, 2005, he "did run WAYNE DEMETRIUS GRIMES through LEIN and obtained an address of 5206 Kermit St. in the City of Flint." (Police Report, ECF No. 203-6, PageID.10060-61.)  The Court regrets its factual error.

However, the Court adheres to its determination that Pouncy failed to establish that the LEIN report at issue put the lead investigator and/or the prosecution on notice of Grimes' prior arrest in Clio.  Pouncy has not offered sufficient proof to support his contention that the LEIN inquiry by the investigator actually revealed Grimes' prior arrest in Clio.  For instance, he does not direct the Court to any evidence that the specific type of LEIN inquiry run by the lead investigator revealed arrest history information.[5]  Moreover, when that officer described the contents of

---

[5] Instead of presenting concrete evidence that the LEIN report on Grimes run by the lead investigator reflected Grimes' arrest in Clio, Pouncy cites to a prior decision in which a court described a LEIN inquiry run in a different case by a different law enforcement agency and said that that particular inquiry revealed a particular arrest of a suspect. (*See* Pouncy Br., ECF No. 300, PageID.12328, citing *United States v.*

the LEIN system that he accessed, he identified numerous types of information in the system, but he did not say that the system includes an arrest history.[6] (*See* 1/26/06 Trial Tr., ECF No. 8-11. PageID.1331.)

Pouncy further argues that the prosecution must have known of Grimes' Clio arrest because during the trial the court ordered the prosecution to provide Pouncy with Grimes' "criminal record" as reflected "[t]hrough LEIN." (Mot., ECF No. 406, PageID.14537.)   But for the reasons explained by Respondent, the Court is not persuaded that the portion of the record upon which Pouncy relies is sufficient to support a finding that the trial prosecutor knew (or should be deemed to have known) that Grimes testified falsely when he claimed that he had never been arrested before his arrest in this case. (*See* Response, ECF No. 435, PageID.14807-14808.[7])

---

*Butler*, 223 F.3d 368, 371 (6th Cir. 2000).)  That decision sheds little, if any, light on the question of whether the particular LEIN inquiry of Grimes run by the lead investigator actually revealed Grimes' Clio arrest.

[6] Even if it could be established that LEIN inquiries generally reveal arrest history information, Pouncy's reliance on the LEIN inquiry here would still fall short because he has not presented evidence that Grimes' specific Clio arrest actually appeared in the LEIN system at the time the lead investigator ran Grimes through LEIN.  There could have been a delay in entering that arrest into the system, or the Clio Police Department could have neglected to enter it altogether.  The point is that on this record, it would be speculation to conclude that the particular LEIN inquiry run by the lead investigator on Grimes before trial actually revealed Grimes' Clio arrest.

[7] In the cited pages from Respondent's response brief, Respondent said that Pouncy's *Brady* claim is reviewed under AEDPA's deferential standards.   The Court previously concluded that the claim should be reviewed *de novo* because the state trial court reviewed it under the wrong legal standard. (*See* Op. and Order, ECF No.

Next, Pouncy contends that the trial prosecutor should be deemed to have known about Grimes' arrest in Clio because a presentence investigation report was prepared in connection with the case arising out of that arrest, and that case was also prosecuted by the Genesee County Prosecutor's Office. (*See* Mot., ECF No. 406, PageID.14538.)  In support of this contention, Pouncy cites *Thomas v. Westbrooks*, 849 F.3d 659, 666-67 (6th Cir. 2017). (*See id*.)  But for the reasons explained by Respondent, the Court finds Pouncy's reliance on *Thomas* to be misplaced. (*See* Response, ECF No. 435, PageID.14810-14811.)

Finally, the Court agrees with Respondent that even if Pouncy could establish that the prosecution knew (or should be deemed to have known) about Grimes' prior arrest at the time Grimes testified, Pouncy still would not be entitled to relief because he has not shown that Grimes' prior arrest history was material. (*See id*., PageID.14811, incorporating arguments from ECF No. 321, PageID.12622-12626.) To be sure, Pouncy would have "scored some points" if he had been able to impeach Grimes with his prior arrest record.  However, as the Court explained at great length in its earlier Opinion and Order, the evidence against Pouncy was overwhelming, and there is thus no reasonable likelihood that impeaching Grimes on the one aspect

---

401, PageID.14444.)  While the Court disagrees with Respondent's contention about the standard of review at the pages of the Response cited above, it otherwise agrees with the arguments presented on those pages.

of his testimony concerning his lack of a prior arrest would have had an impact on the jury's verdict.

Two additional points are worth noting here.  First, the trial prosecutor did not attempt to make any use of Grimes' inaccurate testimony concerning his arrest history.  For instance, the prosecutor did not argue to the jury that it should discount the inconsistencies between Grimes' various statements to the police on the ground that, as Grimes wrongly testified, he gave his first statement shortly after he was arrested for the first time in his life.  That the prosecution did not use Grimes' false testimony concerning his arrest history to insulate him from Pouncy's attack on his credibility further suggests that impeachment of Grimes on his false testimony would not have been material.

Second, Pouncy vigorously and repeatedly Grimes during his closing argument. (*See, e.g.*, Tr. 2-1-06, ECF 8-15, PageID.1816, 1818, 1821-1825, 1831-1832, 1834-1841, 1848.)  Given Pouncy's all-out assault on Grimes, it seems likely that one of two things is true.  Either the jury agreed with Pouncy that Grimes was a liar, discounted his testimony, and convicted Pouncy based upon the (very strong) testimony of the victims.  Or the jury was unmoved by Pouncy's arguments and found Grimes to be believable.  In that event, it seems highly unlikely that one additional point of impeachment would have tipped the scales and persuaded the

jury to reject Grimes' testimony. All of this further convinces the Court that Pouncy is not entitled to relief on his claim related to Grimes' testimony and arrest record.

## VI

For all of the reasons explained above, **IT IS HEREBY ORDERED** that Pouncy's three Motions for Reconsideration (ECF Nos. 404, 406, 407) are **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: November 23, 2021

 

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 23, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764
